# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>NELNET SERVICING, LLC,<br><br>　　　　　Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| --- | --- |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>NELNET SERVICING, LLC,<br><br>　　　　　Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>NELNET SERVICING, LLC,<br><br>　　　　　Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>     Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>     Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3259 |
| | The Honorable John M. Gerrard, U.S.D.J. |
| Plaintiffs, | The Honorable Cheryl R. Zwart, U.S.M.J. |
| | CLASS ACTION |
| v. | |
| NELNET SERVICING, LLC, | |
| Defendant. | |

**PLAINTIFFS' MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a), APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3), AND TO FILE A CONSOLIDATED COMPLAINT AND SET A BRIEFING SCHEDULE**

**PLEASE TAKE NOTICE**, that pursuant to Fed. R. Civ. P. 42(a) and 23(g)(3), Plaintiffs William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazard, and Bridget Cahill in *Spearman, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3191 (D. Neb.) (the "*Spearman* Plaintiffs"), Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, and Rachel Woods in *Bump, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3204 (D. Neb.) (the "*Bump* Plaintiffs"), and Ian Scott, Lesly Canales, Eric Polanco, Joshua Sanchez, and Delilah Oliveira in *Scott, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3259 (D. Neb.) (the "*Scott* Plaintiffs") (together with the *Spearman* and *Bump* Plaintiffs, collectively, the "Plaintiffs") respectfully move this Court for entry of an Order: (1) consolidating the above captioned related District of Nebraska Actions; (2) appointing Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Interim Co-Lead Class Counsel; and (3) setting a briefing schedule for Plaintiffs to file their Consolidated Complaint and for Defendants to respond.

**PLEASE TAKE FURTHER NOTICE**, this motion is based on the accompanying [Proposed] Order, Plaintiffs' memorandum of law, the firm resumes of Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP, and all the papers and pleadings in the above-captioned actions.

**PLEASE TAKE FURTHER NOTICE**, that Plaintiffs request oral argument on this motion. Pursuant to Local Civil Rule 7.1(e), oral argument is necessary here given the large number of putative class actions filed in this District and the pendency of a scheduled mediation (described more fully in Plaintiffs' accompanying memorandum of law) that is expected to take place with Defendants and only a select group of plaintiffs' counsel without interim class counsel being appointed to represent the Class. Plaintiffs estimate they will require no more than ten (10) minutes for direct oral argument.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant their motion to consolidate the above captioned related District of Nebraska Actions pursuant to Fed. R. Civ. P. 42(a), appoint Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Interim Co-Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3), set a briefing schedule for Plaintiffs to file a Consolidated Complaint and for Defendants to respond, and enter the [Proposed] Order submitted in conjunction with this motion.

Dated: December 13, 2022

Respectfully submitted,

/s/ Joel M. Carney
Joel M. Carney, #21922
Jeana L. Goosmann, #22545
Joseph V. Messineo, #21981
**GOOSMANN LAW FIRM, PLC**
17838 Burke Street, Ste. 250
Omaha, NE 68118
Telephone: (402) 280-7648
carneyj@goosmannlaw.com
goosmannj@goosmannlaw.com
messineoj@goosmannlaw.com

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square
Fifteenth Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Christian Levis
Johnathan Seredynski
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035

2

clevis@lowey.com
jseredynski@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

*Counsel for Plaintiffs William Spearman,
Brittni Linn, Jessica Alexander, Christopher
Sangmeister, Taylor Vetter, Nichole Allocca,
Kayli Lazard, Bridget Cahill, Pamela Bump,
Melissa Charbonneau, Douglas Conley, Noah
Helvey, Dallin Iler, Dustin Jones, Devinne
Peterson, Justin Randall, Sofia Rodriguez,
Rachel Woods, Ian Scott, Lesly Canales, Eric
Polanco, Joshua Sanchez, and Delilah
Oliveira*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2022, a copy of this motion was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

*/s/ Joel M. Carney*
Joel M. Carney

# Exhibit 1



LOWEY DANNENBERG

# Firm Resume



www.lowey.com

info@lowey.com

**New York**
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

**Pennsylvania**
One Tower Bridge, 100 Front St.
Suite 520
West Conshohocken, PA 19428
(215) 399-4770

# Contents

1   **Firm Overview**

2   **Antitrust Class Actions**
2   In re GSE Bonds Antitrust Litigation
2   In re European Government Bonds Antitrust Litigation
2   In re Mexican Government Bonds Antitrust Litigation
3   Sullivan, et al. v. Barclays plc, et al. (Euribor)
3   Laydon v. Mizuho Bank, Ltd., et al.; Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al. (Yen-LIBOR and Euroyen TIBOR)
3   In re London Silver Fixing Ltd., Antitrust Litig.
4   Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG et al.
4   Fund Liquidation Holdings LLC v. Citibank, N.A.
4   Dennis, et al. v. JPMorgan Chase & Co., et al.

5   **Commodities Litigation**
5   Sumitomo
5   In re Natural Gas
6   Amaranth
6   Pacific Inv. Mgmt. Co. ("PIMCO")
6   Optiver
6   White v. Moore Capital Management, L.P.
6   In re Crude Oil Commodity Futures Litigation
7   Kraft Wheat Manipulation
7   Lansing Wheat Manipulation
7   The Andersons Wheat Manipulation
8   In re JPMorgan Precious Metals Spoofing Litigation
8   Bouchard, et al. v. Gandhi, et al. — E-mini Index Futures Spoofing
8   JPMorgan Treasuries Spoofing
8   Deutsche Treasury and Eurodollar Spoofing
8   In re NatWest Treasury Futures Spoofing Litigation

9   **Healthcare: Prescription Overcharge Antitrust Litigation**
9   Drugs Failing to Meet FDA's Manufacturing Standards
9   "Pay-for-Delay" Antitrust Claims
10  Price Fixing of Pharmaceutical Drugs
10  Deceptive Marketing Claims
11  Class Action Defense/Lien Recovery Cases

12  **Securities Litigation**
12  **Active Securities Cases**
12  Jedrzejczyk v. Skillz Inc.
12  In Re: Kirkland Lake Gold LTD Securities Litigation
12  Vega v. Energy Transfer LP
13  Said-Ibrahim et al v. FuboTV Inc. et al
13  United Industrial Workers Pension Plan v. Waste Management, Inc., et al.
13  Boykin v. K12, Inc.
13  **Notable Recoveries**

17  **Consumer Protection**
17  In re FedLoan Student Loan Servicing Litigation
17  Broder v. MBNA Corp.
17  In Re Archstone Westbury Tenant Litigation
17  Lyons v. Litton Loan Servicing LP
17  In re Warfarin Sodium Antitrust Litigation
17  Snyder v. Nationwide Insurance Company

18  **Data Breach Class Actions**
18  Barr v. Drizly, LLC, Case No. 20-CV-11492 (D. Mass.)
18  In re Wawa, Inc. Data Security Litigation, No. 19-cv-06019 (E.D. Pa.)
18  In re Rutter's Inc. Data Security Breach Litigation, No. 20-cv-00382 (M.D. Pa.)
18  Hozza v. PrimoHoagies Franchising, Inc., No. 20-cv-04966 (D.N.J.)
18  In re USAA Data Security Litigation, No. 21-cv-05813 (S.D.N.Y.)

19  **Privacy Class Actions**
19  In re Google Assistant Privacy Litigation, No. 19-cv-04286 (N.D. Cal.)
19  Lopez v. Apple, Inc., No. 19-cv-04577 (N.D. Cal.)
19  In re Apple Processor Litigation, No. 18-cv-00147 (N.D. Cal.)
19  Frasco v. Flo Health, Inc., No. 21-cv-00757 (N.D. Cal.)
19  Wesch v. Yodlee, Inc., No. 20-cv-05991 (N.D. Cal.)

20  **Lowey Dannenberg's Recognized Expertise**



## Firm Overview

Since the firm's founding by Stephen Lowey in the 1960s, Lowey Dannenberg, P.C. ("Lowey Dannenberg") has represented sophisticated clients in complex federal antitrust, commodities, and securities litigation. Lowey Dannenberg also regularly represents some of the world's largest health insurers in healthcare cost recovery actions.

Lowey Dannenberg has recovered billions of dollars for its clients and the classes they represent. Those clients include some of the nation's largest pension funds, e.g., the California State Teachers' Retirement System ("CalSTRS"), the Treasurer of the Commonwealth of Pennsylvania and the Pennsylvania Treasury Department, the New York State Common Retirement Fund, and the New York City Pension Funds; sophisticated institutional investors, including Federated Investors, which manages more than $600 billion in assets; and Fortune 100 companies like Aetna, Anthem, CIGNA, Humana, and Verizon.

Aetna and Humana have publicly lauded Lowey in Corporate Counsel Magazine as their "Go To" outside counsel because of the firm's years of service to Fortune 100 health insurers in opt-out litigation involving state and federal fraud claims.



# Antitrust Class Actions

Lowey Dannenberg regularly serves as court-appointed lead or co-lead counsel on some of the most important and complex antitrust class actions against some of the world's largest corporations, financial institutions, and producers. The firm has more than 40 attorneys who specialize in prosecuting these cases, including the following representative matters.

> *The Court itself had occasion to notice the high quality of [Lowey Dannenberg's] work, both in briefs and oral argument. Moreover, counsels' achievement in obtaining valuable recompense and forward-looking protections for its clients is particularly noteworthy given the caliber and vigor of its adversaries.*
>
> Judge Jed Rakoff, In re GSE Bonds Antitrust Litigation, No. 19-CV-1704 (S.D.N.Y.)

## In re GSE Bonds Antitrust Litigation

Lowey Dannenberg served as Court-appointed Co-Lead Counsel in an antitrust class action alleging that several of the world's largest banks and brokers conspired to fix the prices of debt securities issued by government sponsored entities (e.g., Fannie Mae, Freddie Mac, Federal Farm Credit Banks, and Federal Home Loan Banks) between 2009 and 2016. *In re GSE Bonds Antitrust Litigation*, No. 19-cv-1704 (S.D.N.Y.) (Rakoff, J.).

On June 16, 2020, Judge Jed S. Rakoff finally approved settlements with all defendants totaling more than $386 million. Judge Rakoff praised "the high quality of [Lowey's] work, both in briefs and oral argument," and Lowey's achievement in "obtaining valuable recompense and forward-looking protections for its clients" in the face of vigorous opposition from adversaries of the highest caliber. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020). Notably, in addition to the substantial financial recovery in the case, Lowey worked closely with its client, the Treasurer of the Commonwealth of Pennsylvania, to curb future misconduct and successfully negotiated settlement provisions that required each defendant to maintain or create a compliance program designed prevent and detect future anticompetitive conduct in the GSE Bond Market.

## In re European Government Bonds Antitrust Litigation

Lowey Dannenberg serves as court-appointed co-lead counsel in *In re European Government Bonds Antitrust Litigation*, Case No. 19-cv-2601 (VM) (S.D.N.Y.). The case is currently pending before Judge Victor Marrero in the Southern District of New York, and involves alleged price-fixing by dealers responsible for bringing bonds issued by Eurozone member countries to the secondary market. On July 23, 2020, Judge Marrero sustained antitrust claims against three dealers and allowed Plaintiffs to seek leave to replead their claims against the remaining defendants. Judge Marrero has also preliminarily approved two Settlements with State Street and JPMorgan, resulting in a settlement fund of $13 million. *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-2601 (VM), 2020 WL 4273811 (S.D.N.Y. July 23, 2020).

## In re Mexican Government Bonds Antitrust Litigation

Lowey Dannenberg serves as Court-appointed sole Lead Counsel in a class action against 10 global financial institutions that allegedly violated the Sherman Act by colluding to fix the prices of debt securities issued by the Mexican Government between 2006 and 2016. Plaintiffs are eight institutional investors that transacted in Mexican government debt, including directly with Defendants. The case is pending before Judge J. Paul Oetken in the Southern District of New York. On October 28, 2021, Judge Oetken granted final approval of a settlement with Defendants JPMorgan Chase and Barclays PLC for $20.7 million. *In re Mexican Government Bonds Antitrust Litigation*, 1:18-cv-02830 (S.D.N.Y.).

### Sullivan, et al. v. Barclays plc, et al. (Euribor)

Lowey Dannenberg is co-lead counsel prosecuting claims against international financial institutions responsible for setting the Euro Interbank Offered Rate ("Euribor"), a global reference rate used to benchmark, price and settle over $200 trillion of financial products. Co-Lead Plaintiffs include the California State Teachers' Retirement System ("CalSTRS"). So far, Lowey Dannenberg has recovered a total of $546.5 million for Euribor-based derivatives investors, which includes (1) a $94 million settlement with Barclays plc and related Barclays entities; (2) a $45 million settlement with Defendants HSBC Holdings plc and HSBC Bank plc; (3) a $170 million settlement with Defendants Deutsche Bank AG and DB Group Services (UK) Ltd.; and (4) a $182.5 million settlement with Defendants Citigroup Inc., Citibank, N.A., JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. On May 9, 2022, Judge Castel issued an Order granting final approval of an additional $55 million settlement with Defendants Crédit Agricole S.A. and Crédit Agricole CIB.

The claims against the remaining defendants in the case are presently on appeal before the United States Court of Appeals, Second Circuit.

### Laydon v. Mizuho Bank, Ltd., et al.; Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al. (Yen-LIBOR and Euroyen TIBOR)

Lowey Dannenberg is sole lead counsel prosecuting claims against international financial institutions responsible for the intentional and systematic manipulation of the London Interbank Offered Rate ("LIBOR") for the Japanese Yen and Euroyen TIBOR (the Tokyo Interbank Offered Rate). The firm represents clients in two actions relating to manipulation of products price-based on these benchmarks ("Euroyen-based derivatives"): *Laydon v. Mizuho Bank, Ltd. et al.*, 12-cv-03419 (S.D.N.Y.) (Daniels, J.) (involving exchange based Euroyen-based derivatives) and *Sonterra Capital Master Fund, Ltd. et al. v. UBS AG et al.*, 15-cv-5844 (Daniels, J.) (involving over-the-counter Euroyen-based derivatives). Co-Lead Plaintiffs in the *Sonterra* matter include CalSTRS. In the *Sonterra* action, Lowey Dannenberg recently prevailed on its appeal before the United States Court of Appeals, Second Circuit, which reversed the lower court's dismissal of the case. *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529 (2d Cir. 2020).

Lowey Dannenberg has thus far recovered $307 million for the Settlement Class and received substantial cooperation from settling defendants that it is using in the actions against the remaining defendants. In 2016, Judge Daniels granted final approval of a $35 million settlement with HSBC Holdings plc and HSBC Bank plc, a $23 million settlement with Citigroup, Inc. and several Citi entities, and a cooperation settlement with R.P. Martin. In 2017, Judge Daniels granted final approval of a $77 million settlement with Deutsche Bank AG and DB Group Services (UK) Ltd. and a $71 million settlement with JPMorgan Chase & Co. and related entities. On July 12, 2018, Judge Daniels granted final approval of a $30 million settlement with the The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Mitsubishi UFJ Trust and Banking Corporation. In December 2019, the court finally approved two sets of settlements, one with Bank of Yokohama, Ltd., Shinkin Central Bank, The Shoko Chukin Bank, Ltd., Sumitomo Mitsui Trust Bank, Ltd. and Resona Bank, Ltd. for $31.75 million, and the second with Mizuho Bank, Ltd., Mizuho Corporate Bank, Ltd., and Mizuho Trust & Banking Co., Ltd., The Norinchukin Bank, and Sumitomo Mitsui Banking Corporation for $39.25 million. On October 4, 2022, Judge Daniels granted preliminary approval of three settlements with Barclays Bank PLC, Barclays Capital Inc., and Barclays PLC for $17,750,000; Nex International Limited (f/k/a ICAP plc) and ICAP Europe Limited for $2,375,000; and TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc) for $2,375,000.

### In re London Silver Fixing Ltd., Antitrust Litig.

Lowey Dannenberg is serving as co-lead counsel on behalf of a class of silver investors, including Commodity Exchange Inc. ("COMEX") silver futures contracts traders, against banks that allegedly colluded to fix the London Silver Fix, a global benchmark that impacts the value of more than $30 billion in silver and silver-based financial instruments. Judge Valerie E. Caproni sustained Sherman Antitrust Act and CEA claims alleged in Lowey Dannenberg's complaint, which relied predominately on sophisticated econometric analysis that Lowey Dannenberg developed in conjunction with a team of leading financial markets experts. *See In re London Silver Fixing Ltd., Antitrust Litig.*, No. 14-md-2573, 2016 WL 5794777 (S.D.N.Y. Oct. 3, 2016). In appointing Lowey Dannenberg, the Court praised Lowey Dannenberg's

experience, approach to developing the complaint, attention to detail, and the expert resources that the firm brought to bear on behalf of the class. *See In re London Silver Fixing Ltd., Antitrust Litig.*, Case No. 14-md-2573 (VEC), ECF No. 17 (Nov. 25, 2014 S.D.N.Y.) (Caproni, J.). On June 15, 2021, Judge Caproni granted final approval of a $38 million settlement with Deutsche Bank AG and several of its subsidiaries. *See Final Approval Order of Settlement with Deutsche Bank AG, Deutsche Bank Americas Holding Corporation, DB U.S. Financial Markets Holding Corporation, Deutsche Bank Securities, Inc., Deutsche Bank Trust Corporation, Deutsche Bank Trust Company Americas, and Deutsche Bank AG New York Branch, In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-md-2573 (S.D.N.Y. Jun. 15, 2021), ECF No. 536. The case is ongoing against the remaining defendants.

## Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG et al.

Lowey Dannenberg is court-appointed sole lead counsel in a class action against numerous global financial institutions responsible for setting the London Interbank Offered Rate for the Swiss Franc (Swiss Franc LIBOR). Defendants settled with global regulators, paid billions in fines, and/or were granted leniency by the European Commission for alleged anti-competitive conduct in the Swiss Franc LIBOR and Swiss Franc LIBOR derivatives market. On September 21, 2021, the Second Circuit Court of Appeals vacated dismissal and remanded the case to Judge Stein, where it remains pending. *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG, et al.*, Case No. 15-cv-0871 (S.D.N.Y.).

## Fund Liquidation Holdings LLC v. Citibank, N.A.

Lowey Dannenberg filed a proposed class action in July 2015 alleging that the 20 global financial institutions responsible for setting the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR") manipulated these benchmark rates to benefit their own derivatives positions at the expense of U.S. investors. The Monetary Authority of Singapore investigated these banks and found that traders manipulated SIBOR and SOR, imposing sanctions. On March 17, 2021, the Second Circuit Court of Appeals vacated dismissal of the action and remanded the case to Judge Hellerstein for further proceedings. On November 29, 2022, Judge Hellerstein granted final approval of seven settlements totaling $155,458,000 with all Defendants in the case. *Fund Liquidation Holdings LLC v. Citibank, N.A., et al.*, 16-cv-5263 (S.D.N.Y.).

## Dennis, et al. v. JPMorgan Chase & Co., et al.

Lowey Dannenberg is co-lead counsel in an antitrust class action against numerous global financial institutions responsible for setting the Australian Bank Bill Swap Reference Rate ("BBSW"), pending before Judge Lewis A. Kaplan in the Southern District of New York. *Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-6496 (LAK) (S.D.N.Y.). The case alleges that the defendants engaged in uneconomic transactions in Prime Bank Bills, a type of short-term debt instrument, to manipulate BBSW. In addition to prevailing against most of the defendants on their motions to dismiss, (*see Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018), adhered to on denial of reconsideration, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018); *Dennis v. JPMorgan Chase & Co.*, 439 F. Supp. 3d 256 (S.D.N.Y. 2020)), Lowey Dannenberg has negotiated class settlements totaling $185,875,000 with those defendants. Judge Kaplan granted final approval of the settlements on November 1, 2022.

# Commodities Litigation

Lowey Dannenberg has successfully prosecuted the most important and complex commodity manipulation actions since the enactment of the Commodity Exchange Act ("CEA"). As court-appointed lead counsel, Lowey Dannenberg has a history of successfully certifying classes of investors harmed by market manipulation schemes.

## Sumitomo

In *In re Sumitomo Copper Litigation* ("*Sumitomo*"), Master File No. 96 CV 4854 (S.D.N.Y.) (Pollack, J.), Lowey Dannenberg was appointed as one of three executive committee members. Stipulation and Pretrial Order No. 1, dated October 28, 1996, at ¶ 13. Plaintiffs' counsel's efforts in *Sumitomo* resulted in a settlement on behalf of the certified class of more than $149 million, which represented **the largest** class action recovery in the history of the CEA at the time. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998). One of the most able and experienced United States District Court judges in the history of the federal judiciary, the Honorable Milton Pollack, took note of counsel's skill and sophistication:

> *The unprecedented effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results. Settlement posed a saga in and of itself and required enormous time, skill and persistence. Much of that phase of the case came within the direct knowledge and appreciation of the Court itself. Suffice it to say, the Plaintiffs' counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of natural, virtually overwhelming, resistance.*

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).

## In re Natural Gas

Lowey Dannenberg served as co-lead counsel in *In re Natural Gas Commodity Litigation*, Case No. 03 CV 6186 (VM) (S.D.N.Y.) ("*In re Natural Gas*"), which involved manipulation of the price of natural gas futures contracts traded on the NYMEX by more than 20 large energy companies.

Plaintiffs alleged that Defendants, including El Paso, Duke, Reliant, and AEP Energy Services, Inc., manipulated the prices of NYMEX natural gas futures contracts by making false reports of the price and volume of their trades to publishers of natural gas price indices across the United States, including Platts. Lowey Dannenberg won significant victories throughout the litigation, including:

> defeating Defendants' motions to dismiss (*In re Natural Gas*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004));

> prevailing on a motion to enforce subpoenas issued to two publishers of natural gas price indices for the production of trade report data (*In re Natural Gas*, 235 F.R.D. 199 (S.D.N.Y. 2005)); and

> successfully certifying a class of NYMEX natural gas futures traders who were harmed by defendants' manipulation of the price of natural gas futures contracts traded on the NYMEX from January 1, 2000 to December 31, 2002. *In re Natural Gas*, 231 F.R.D. 171, 179 (S.D.N.Y. 2005), *petition for review denied, Cornerstone Propane Partners, LP, et al. v. Reliant Energy Services, Inc., et al.*, Docket No. 05-5732 (2d Cir. August 1, 2006).

The total settlement obtained in this complex litigation—$101 million—was at the time, the **third largest** recovery in the history of the CEA.

## Amaranth

Lowey Dannenberg served as co-lead counsel in *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y.) (SAS) ("*Amaranth*"), a certified CEA class action alleging manipulation of NYMEX natural gas futures contract prices in 2006 by Amaranth LLC, one of the country's largest hedge funds prior to its widely-publicized multi-billion dollar collapse in September 2006. Significant victories Lowey Dannenberg achieved in the *Amaranth* litigation include:

> On April 27, 2009, Plaintiffs' claims for primary violations and aiding-and-abetting violations of the CEA against Amaranth LLC and other Amaranth defendants were sustained. *Amaranth*, 612 F. Supp. 2d 376 (S.D.N.Y. 2009).

> On April 30, 2010, the Court granted Plaintiffs' motion for pre-judgment attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure and Section 6201 of the New York Civil Practice Law and Rules against Amaranth LLC, a Cayman Islands company and the "Master Fund" in the Amaranth master-feeder-fund hedge fund family. *Amaranth*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010).

> On September 27, 2010, the Court granted Plaintiffs' motion for class certification. *Amaranth*, 269 F.R.D. 366 (S.D.N.Y. 2010). In appointing Lowey Dannenberg as co- lead counsel for plaintiffs and the Class, the Court specifically noted "the impressive resume" of Lowey Dannenberg and that "Plaintiffs' counsel has vigorously represented the interests of the class throughout this litigation." On December 30, 2010, the Second Circuit Court of Appeals denied Amaranth's petition for appellate review of the class certification decision.

> On April 11, 2012, the Court entered a final order and judgment approving the $77.1 million settlement reached in the action. The $77.1 million settlement is **more than ten times greater** than the $7.5 million joint settlement achieved by the Federal Energy Regulatory Commission ("FERC") and the Commodity Futures Trading Commission ("CFTC") against Amaranth Advisors LLC and at that time, represented the **fourth largest** class action recovery in the 85-plus year history of the CEA.

## Pacific Inv. Mgmt. Co. ("PIMCO")

Lowey Dannenberg served as counsel to certified class representative Richard Hershey in a class action alleging manipulation by PIMCO of the multi-billion-dollar market of U.S. 10-Year Treasury Note futures contracts traded on the Chicago Board of Trade ("CBOT"). *Hershey v. Pacific Inv. Management Co. LLC*, 571 F.3d 672 (7th Cir. 2009). The case settled in 2011 for $118.75 million, the **second largest** recovery in the history of the CEA at that time.

## Optiver

Lowey Dannenberg acted as co-lead counsel in a proposed class action alleging that Optiver US, LLC and other Optiver defendants manipulated NYMEX light sweet crude oil, heating oil, and gasoline futures contracts prices in violation of the Sherman Antitrust Act and CEA. *In re Optiver Commodities Litigation*, Case No. 08 CV 6842 (S.D.N.Y.) (LAP), Pretrial Order No. 1, dated February 11, 2009. The Honorable Loretta A. Preska of the Southern District of New York granted final approval of a $16.75 million settlement in June 2015.

## White v. Moore Capital Management, L.P.

Lowey Dannenberg acted as counsel to a class representative in an action alleging manipulation of NYMEX palladium and platinum futures prices in 2007 and 2008 in violations of the Sherman Antitrust Act, CEA, and RICO. *White v. Moore Capital Management, L.P.*, Case No. 10 CV 3634 (S.D.N.Y.) (Pauley, J.). Judge William H. Pauley III granted final approval of a settlement in the amount of $70 million in 2015.

## In re Crude Oil Commodity Futures Litigation

Lowey Dannenberg served as counsel to a class representative and large crude oil trader in a Sherman Antitrust Act class action involving the alleged manipulation of NYMEX crude oil futures and options contracts. *In re Crude Oil Commodity Futures Litigation*, Case No. 11-cv-03600 (S.D.N.Y.) (Forrest, J.). The Court granted final approval to a $16.5 million settlement in January 2016.

## Kraft Wheat Manipulation

Lowey Dannenberg serves as court-appointed co-lead counsel for a class of wheat futures and options traders pursuing claims against Kraft Foods Group, Inc. and Mondelēz Global LLC (collectively, "Kraft"), alleging Kraft manipulated the prices of Chicago Board of Trade wheat futures and options contracts. On June 27, 2016, Judge Edmond E. Chang denied Kraft's motion to dismiss Plaintiffs' CEA, Sherman Act and common law unjust enrichment claims relating to Kraft's alleged "long wheat futures scheme." *See Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037 (N.D. Ill. 2016). On January 3, 2020, Judge Chang certified a class of wheat futures and options traders to bring the claims in the case. *See Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003 (N.D. Ill. 2020). Kraft filed a petition to the United States Court of Appeals for the Seventh Circuit, seeking permission to immediately appeal Judge Chang's certification of the class, which was denied on February 21, 2020. The case is currently pending before Judge John F. Kness in the Northern District of Illinois.

## Lansing Wheat Manipulation

Lowey Dannenberg is serving as co-lead counsel for a class of wheat futures and options traders pursuing claims against Lansing Trade Group, LLC and Cascade Commodity Consulting, LLC, alleging they manipulated the prices of Chicago Board of Trade wheat futures and options contracts in 2015. *See Budicak, et al. v. Lansing Trade Group, LLC, et al.*, No. 19 CV 2499 (JAR) (D. Kan.). On March 25, 2020, Chief District Judge Julie A. Robinson denied Defendants motions to dismiss and sustained claims under the Sherman Act, the CEA, and for unjust enrichment. *Budicak, Inc. v. Lansing Trade Grp., LLC*, No. 2:19-CV-2449-JAR-ADM, 2020 WL 2892860 (D. Kan. Mar. 25, 2020). On April 29, 2022, Plaintiffs filed a motion for preliminary approval of settlements with Lansing Trade Group and Cascade Commodity Consulting totaling $18 million.

## The Andersons Wheat Manipulation

Lowey Dannenberg is leading the prosecution of claims on behalf of a class of wheat futures and options traders against The Andersons, Inc. for alleged manipulation of the wheat futures and options market in the fourth quarter of 2017. On July 9, 2021 and May 3, 2022, respectively, the Court denied Defendants' motions to dismiss in their entirety. *Dennis v. The Andersons Inc.*, Case No. 20-cv-04090 (N.D. Ill.).



## SPOOFING LITIGATION

Lowey Dannenberg continues to innovate and is at the forefront of litigation under the CEA arising from claims of market participants spoofing various futures markets.

### In re JPMorgan Precious Metals Spoofing Litigation

Lowey Dannenberg serves as Court-appointed sole Lead Counsel in a commodities manipulation class action against JPMorgan and several of its traders, alleging spoofing in the market for precious metals futures and options between 2009 and 2015. Plaintiffs filed a motion for preliminary approval of a $60 million settlement with Defendant JPMorgan on November 20, 2021. On July 7, 2022, the Court granted final approval of the settlement with JPMorgan. *In re JPMorgan Precious Metals Spoofing Litigation*, No. 18-CV-10356 (S.D.N.Y.).

### Boutchard, et al. v. Gandhi, et al. — E-mini Index Futures Spoofing

Lowey Dannenberg is prosecuting claims on behalf of a class of investors that transacted E-mini Index Futures (e.g., Dow, S&P, Nasdaq) and options against Tower Research Capital LLC and several of its traders for alleged spoofing violations between 2012 and 2014. On July 30, 2021, Judge John J. Tharp, Jr. granted final approval of a $15 million settlement with Tower. *Boutchard v. Gandhi et al*, No. 18-CV-07041 (N.D. Ill).

### JPMorgan Treasuries Spoofing

On October 9, 2020, the Court appointed Lowey Dannenberg to serve as Interim Co-Lead Counsel in a commodities manipulation class action against JPMorgan, alleging manipulation in the market for U.S. Treasuries futures and options between 2009 and the present. On September 22, 2021, Plaintiffs filed a motion for preliminary approval of a $15.7 million settlement. On June 3, 2022, the Court granted final approval of the settlement with JPMorgan. *In re JPMorgan Treasuries Spoofing Litigation*, No. 20-CV-3515 (S.D.N.Y.).

### Deutsche Treasury and Eurodollar Spoofing

On September 1, 2020, Lowey Dannenberg was appointed Interim Co-Lead Counsel in a commodities manipulation class action against Deutsche Bank, alleging manipulation in the market for U.S. Treasury and Eurodollar futures and options throughout 2013. The case is pending before Judge Joan B. Gottschall in the Northern District of Illinois, *Rock Capital Markets, LLC v. Deutsche Bank Securities Inc.*, No. 20-CV-3638.

### In re NatWest Treasury Futures Spoofing Litigation

On March 8, 2022, Lowey Dannenberg was appointed Interim Co-Lead Counsel in a commodities manipulation class action against NatWest, alleging manipulation in the market for U.S. Treasury futures and options from at least January 1, 2008 through May 31, 2014. The case is pending before The Honorable John F. Kness in the Northern District of Illinois, *In re NatWest Treasury Futures Spoofing Litigation*, No. 21-CV-6816.

# Healthcare: Prescription Overcharge Antitrust Litigation

Lowey Dannenberg is the nation's premier pharmaceutical recovery law firm. It is known in the healthcare industry for its market-leading initiatives, depth of experience, and consistent results. The Firm's advice is valued by the largest health benefits companies in the United States, including Aetna CVS, Anthem, the Blue Cross and Blue Shield Association, Cigna, HCSC, Humana, and numerous other companies. Lowey Dannenberg's expertise was highlighted when Aetna and Humana each identified Lowey as a "Go-to Law Firm" for litigation services Corporate Counsel magazine's *In House Law Departments at the Top 500 Companies."*

Health insurers routinely turn to Lowey Dannenberg for its industry expertise, particularly in the areas of:

> **Defective Drugs and Products** – Litigating on behalf of insurers to recover overpayments for defective drugs and medical products, including those manufactured in violation of FDA standards

> **Prescription Drug and Device Price Manipulation** – Recovering overcharges from prescription drug and medical device price manipulation, including "generic delay" cases, price fixing, and "off-label" marketing

> **Lien Recovery** – Prosecuting and negotiating medical lien reimbursements in mass tort litigation

> **Class Action Defense** – Representing health insurers facing class actions in state and federal courts

### Drugs Failing to Meet FDA's Manufacturing Standards

> *Blue Cross Blue Shield Ass'n, et al. v. GlaxoSmithKline LLC.* Lowey Dannenberg and its co-counsel represented 39 health insurers (accounting for 60% of the U.S. market for non-governmental health insurance) in a novel recovery action seeking billions in damages against British drug maker GlaxoSmithKline for selling prescription drugs manufactured under conditions that amounted to egregious violations of federal standards. After defeating summary judgment (*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC,* 417 F. Supp. 3d 531 (E.D. Pa. 2019)), the parties confidentially settled on the literal eve of trial.

> *Rezulin Litigation.* Lowey Dannenberg, representing a class of endpayers, made law that has influenced every third party payer prescription drug case since. Louisiana BlueCross BlueShield ("LABCBS"),

sued Warner Lambert and Pfizer for alleged misrepresentations about the qualities of their antidiabetic medication, Rezulin, injuring LABCBS in excessive purchases of the drug. Lowey successfully argued to reverse dismissal of LABCBS' class action in a precedent-setting appeal to the Second Circuit. This case established the direct rights (as contrasted with derivative, and more limited, subrogation rights) of third-party payers to sue pharmaceutical manufacturers for drug overcharges for defective drugs. *Desiano v. Warner-Lambert Co.,* 326 F.3d 339 (2d Cir. 2003).

### "Pay-for-Delay" Antitrust Claims

> **Aggrenox Generic Delay Litigation:** Lowey Dannenberg represented Humana and 10 other health insurers in a generic delay antitrust case against defendant Boehringer Ingelheim Pharmaceuticals, Inc., the Aggrenox brand manufacturer, and generic manufacturer Barr Pharmaceuticals Inc. (later acquired by Teva Pharmaceuticals), before Judge Stefan R. Underhill in the District of Connecticut in connection with their antitrust claims. Class actions on behalf of direct purchasers reached a $146 million settlement and indirect purchasers reached a $54 million settlement. The litigation asserted claims under state antitrust law, claiming a $100 million co-promotion agreement was a disguised pay-for-delay, and as a result, insurers overpaid for Aggrenox. Lowey achieved confidential settlements on behalf of Humana and several other health insurers who opted-out of the class to separately litigate their claims. *Humana Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG,* et al., No. 3:14-cv- 00572 (D. Conn.).

> **Lidoderm Generic Delay Litigation:** Lowey Dannenberg represented 21 health insurers in connection with their antitrust claims against sellers of branded and generic Lidoderm. *Government Employees Health Association v. Endo Pharmaceuticals, Inc., et al.*, No. 3:14-cv-02180-WHO (N.D. Cal.).

> **Hytrin Generic Delay Litigation:** Lowey Dannenberg represented a class of health insurers asserting antitrust claims against Abbott Laboratories and Geneva Pharmaceuticals, sellers of branded and generic Hytrin, and ultimately settled the case for $28.7 million. *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-MD-01317 (S.D. Fl.).

> **Cardizem CD Generic Delay Litigation:** In 1998, Lowey Dannenberg filed the first-ever generic delay class action antitrust cases for endpayers (a term reflecting consumers and health insurers). Those cases were centralized by the Judicial Panel on Multidistrict Litigation ("JPML") under the caption *In re Cardizem CD Antitrust Litigation*, MDL No. 1278 (E.D. Mich.). After the court certified a class (200 F.R.D. 326 (E.D. Mich. 2001)) and affirmed partial summary judgment for plaintiffs (332 F.3d 896 (6th Cir. 2003)), the case was settled for $80 million.

> *Federal Trade Commission v. Actavis*, 570 U.S. 756 (2013). America's Health Insurance Plans (AHIP), the national trade association representing health insurers, retained Lowey Dannenberg to represent it before the United States Supreme Court as *amicus curiae* in a seminal "pay-for-delay" pharmaceutical case. *Federal Trade Commission v. Actavis*, 570 U.S. 756 (2013).

### Price Fixing of Pharmaceutical Drugs

> **Generic Pharmaceuticals Price Fixing.** Lowey Dannenberg represents 39 of the nation's largest health insurers, including Anthem, Aetna, Humana, and 23 BlueCross BlueShield licensees in connection with their claims relating to widespread price-fixing of generic pharmaceutical products. Lowey Dannenberg's clients collectively purchased billions of dollars of these drugs during the alleged price-fixing conspiracies. Some of this litigation has been centralized before the Honorable Cynthia M. Rufe in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.).

### Deceptive Marketing Claims

> *In re Neurontin Marketing and Sales Practices Litig.* Lowey represented Aetna in an individual action seeking recovery against Pfizer for its off-label marketing of Neurontin and served as class counsel on the Plaintiffs' Steering Committee. The firm secured the first-ever verdict in history against a pharmaceutical manufacturer finding it engaged in a RICO enterprise by fraudulently marketing its drug, resulting in a $142 million trebled award. This pivotal decision reversed a negative trend in off-label drug marketing cases. The Court's conclusion that "Aetna's economic injury was a foreseeable and natural consequence" of Pfizer's scheme represents a common-sense application of the law to the economic realities of the prescription drug market.

Lowey later argued and won a landmark RICO decision in the United States Court of Appeals for the First Circuit, holding drug manufacturers accountable to health insurers for damages attributable to marketing fraud. *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 51 (1st Cir. 2013).

> *Warfarin Sodium Antitrust Litig.* Lowey Dannenberg represented health insurers asserting antitrust and unfair trade practices claims against DuPont Pharmaceuticals Company. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3rd Cir. 2004).

HEALTHCARE: PRESCRIPTION OVERCHARGE ANTITRUST LITIGATION

### Class Action Defense/Lien Recovery Cases

> Lowey Dannenberg secured judgments dismissing the class action lawsuits, which sought to apply New York State's anti-subrogation law to void health insurance plans' subrogation and reimbursement rights in New York. *Meek-Horton v. Trover, et al.*, 910 F. Supp. 2d 690 (S.D.N.Y. 2013); *Potts v. Rawlings Co. LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012).

> Lowey Dannenberg defended Aetna and secured judgments dismissing the class action lawsuits seeking to bar certain reimbursement lien recoveries under New Jersey law. *Minerley v. Aetna, Inc.*, No. 13-cv-1377, 2019 WL 2635991 (D.N.J. June 27, 2019), *aff'd*, No. 19-2730, 2020 WL 734448 (3d Cir. Feb. 13, 2020) and *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016), *aff'd*, 681 F. App'x 117 (3d Cir. 2017).

> Lowey Dannenberg successfully established Medicare Advantage Organizations' reimbursement recovery rights under the Medicare Secondary Payer Act. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012).



# Securities Litigation

Lowey Dannenberg has represented clients in cases involving financial fraud, auction rate securities, options backdating, Ponzi schemes, challenges to unfair mergers and tender offers, statutory appraisal proceedings, proxy contests and election irregularities, failed corporate governance, stockholder agreement disputes, and customer/brokerage firm arbitration proceedings.

Lowey securities litigation practice has recovered billions of dollars on behalf of defrauded investors. The firm has also achieved landmark, long term corporate governance changes at public companies, including reversing results of elections and returning corporate control to the companies' rightful owners, its stockholders.

Lowey Dannenberg's public pension fund clients include the California State Teachers' Retirement System (CalSTRS), the New York State Common Retirement Fund, the State of Connecticut Retirement Plans and Trust Funds, the Treasurer of the Commonwealth of Pennsylvania, and the Pennsylvania Treasury Department. Representative institutional investor clients include Federated Investors, Inc., Glickenhaus & Co., Millennium Partners LLP, Karpus Investment Management LLP, Amegy Bank, Monster Worldwide Inc., Zebra Technologies, Inc., and Delcath Systems, Inc.

## Active Securities Cases

### Jedrzejczyk v. Skillz Inc.

Lowey Dannenberg currently serves as Lead Counsel for a proposed class of investors alleging that Skillz misled investors by (1) reporting metrics unrelated to the company's performance instead of disclosing its true key metrics, including revenue per paying user; (2) touting a synchronous gameplay feature and an expansion into India that could not be accomplished on the company's announced timelines; and (3) misclassifying liabilities as equity. The case is pending before Judge Richard Seeborg in the Northern District of California. *Jedrzejczyk v. Skillz Inc.*, No. 3:21-CV-03450-RS (N.D. Cal.).

### In Re: Kirkland Lake Gold LTD Securities Litigation

Lowey Dannenberg serves as sole Lead Counsel representing a proposed class of shareholders against Toronto-based gold-mining company Kirkland Lake Gold Ltd. (now merged with Agnico Eagle Mines Ltd. as of February 2022). Plaintiffs allege that the company misled investors when its CEO Anthony Makuch repeatedly downplayed the possibility that the company would engage in any mergers or acquisitions, while simultaneously negotiating the acquisition of Detour Gold

Corporation in 2019. On September 30, 2021, Judge Paul Oetken in the Southern District of New York sustained Plaintiff's securities fraud claims, finding that "Plaintiff sufficiently pleaded facts supporting his contention that Kirkland materially misled investors" when discussing the company's acquisition strategy. *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-cv-4953 (JPO), 2021 WL 4482151 (S.D.N.Y. Sept. 30, 2021).

### Vega v. Energy Transfer LP

In June 2022, Lowey filed its most recent class action lawsuit against Energy Transfer LP, alleging that Energy Transfer made materially false and misleading statements related to an investigation by the Federal Energy Regulatory Commission ("FERC") into a drilling incident that caused a severe environmental disaster near the Tuscarawas River in Ohio. The case is currently pending before Judge Hellerstein in the Southern District of New York. *Vega v. Energy Transfer LP*, 22-CV-04614 (S.D.N.Y.).

### Said-Ibrahim et al v. FuboTV Inc. et al

Lowey Dannenberg serves as a court-appointed lead counsel in Said-Ibrahim et al v. FuboTV Inc. et al, No. 1:21-CV-01412 (S.D.N.Y.). The case is currently pending before Judge Andrew L. Carter, Jr., and is at the motion to dismiss stage. The securities lawsuit alleges FuboTV's false and misleading statements concerning their business operations and performance metrics, including, among others, its ability to grow subscription and advertising revenue, cost escalations and its prospects of entering the arena of online sports wagering. Said-Ibrahim et al v. FuboTV Inc. et al, 1:21-CV-01412 (S.D.N.Y.).

### United Industrial Workers Pension Plan v. Waste Management, Inc., et al.

Lowey Dannenberg filed a class action lawsuit against Waste Management Inc. alleging that the company and its senior executives made false and misleading statements to investors regarding its anticipated merger with Advance Disposal Services ("ADS"). More specifically, plaintiff alleges that Waste Management failed to disclose that the U.S. Department of Justice had indicated to Waste Management that it would require the company to divest assets in excess of the $200 million Antitrust Revenue Threshold contained in the Merger Agreement in order to obtain antitrust clearance. As a result, the merger would not be completed by the end date under the Merger Agreement as Waste Management represented, which would trigger the mandatory redemption of the redeemable senior notes issued to finance the merger, to the financial detriment of investors who purchased the notes at inflated prices between February 13, 2020 and June 23, 2020, inclusive. United Industrial Workers Pension Plan . v. Waste Management, Inc., et al., No. 22-CV-04838 (S.D.N.Y.).

### Boykin v. K12, Inc.

Lowey Dannenberg filed and is currently litigating a class action alleging that K12, an education company, misled the investing public by claiming it was well-positioned to take advantage of the sudden demand for online education caused by the onset of the COVID-19 pandemic, when K12 lacked the technological, administrative, and cybersecurity abilities to take on a large number of new customers while providing adequate training and a functional product. The case is currently pending before the United States Court of Appeals for the Fourth Circuit. Boykin v. K12, Inc., No. 21-2351 (4th Cir.).

## Notable Recoveries

Notable achievements for our securities clients include the following:

> *Norfolk County Retirement System v. Community Health Systems, Inc., et al.* 11-cv-0433 (M.D. Tenn.). Lowey Dannenberg recovered $53 million on behalf of Lead Plaintiff, the New York City Pension Funds, and the certified class of investors in Community Health System common stock. As Lead Counsel in this hard-fought and long-standing securities class action, Lowey Dannenberg charged Community Health Systems, one of the largest for-profit hospital systems in the United States, with failing to disclose that its highly-touted growth and performance were achieved through a scheme to improperly inflate Medicare patient admissions.

U.S. District Judge Eli J. Richardson addressed Lowey Dannenberg's efforts at the final approval hearing finding that *"counsel for plaintiff has been diligent, very diligent, has worked very hard, knows the case, knows the facts, is very experienced in these sorts of securities fraud class actions, and has gone to the mat for their client for many years."* During the litigation, Lowey Dannenberg achieved a unanimous reversal of the lower court's dismissal of the case before the Sixth Circuit Court of Appeals and successfully opposed Supreme Court review. *Norfolk Cty. Ret. Sys. v. Community Health Sys., Inc.,* 877 F.3d 687 (6th Cir. 2017), cert. denied 139 S. Ct. 310 (2018). Following extensive discovery, the court preliminarily approved the settlement in January 2020, which the Court approved and made final on June 19, 2020.

> *In re Beacon Associates Litigation,* 09-CV-0777 (S.D.N.Y.); *In re J.P. Jeanneret Associates, Inc., et al.,* 09-cv-3907 (S.D.N.Y.). Lowey Dannenberg represented several unions, which served as Lead Plaintiffs, in litigation arising from Bernie Madoff's Ponzi scheme. On March 15, 2013, the Honorable Colleen McMahon of the United States District Court for the Southern District of New York granted final approval of the $219.9 million settlement of Madoff feeder-fund litigation encompassing the In re Beacon and In re Jeanneret class actions. Lowey Dannenberg, as Liaison Counsel, was instrumental in achieving this outstanding

result. The settlement covered several additional lawsuits in federal and New York state courts against the settling defendants, including suits brought by the United States Secretary of Labor and the New York Attorney General. Plaintiffs in these cases asserted claims under the federal securities laws, ERISA, and state laws arising out of hundreds of millions of dollars of losses sustained by unions and other investors in Bernard Madoff feeder funds. The settlement recovered an extraordinary 70% of investors' losses. This settlement, combined with anticipated recovery from a separate liquidation of Madoff assets, is expected to restore the bulk of losses to the pension funds for the local unions and other class members. In granting final approval, Judge McMahon praised both the result and the lawyering in these coordinated actions, noting that "[i]n the history of the world there has never been such a response to a notice of a class action settlement that I am aware of, certainly, not in my experience," and that "[t]he settlement process really was quite extraordinary." In her written opinion, Judge McMahon stated that "[t]he quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement." In re Beacon Associates Litig., 09 CIV. 777 CM, 2013 WL 2450960, at *14 (S.D.N.Y. May 9, 2013).

> In re Juniper Networks, Inc. Sec. Litig., No. C-06-04327 JW (N.D. Cal.). In 2010, as lead counsel for the Lead Plaintiff, the New York City Pension Funds, Lowey Dannenberg achieved a settlement in the amount of $169.5 million, one of the largest settlements in an options backdating case, after more than three years of hard-fought litigation.

> In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP (Del. Ch.). Lowey Dannenberg successfully challenged a multi-billion-dollar merger between Xerox Corp. and Affiliated Computer Systems ("ACS"), which favored Affiliated's CEO at the expense of our client, Federated Investors, and other ACS shareholders. In expedited proceedings, Lowey achieved a $69 million settlement as well as structural protections in the shareholder vote on the merger. The settlement was approved in 2010.

> In re Bayer AG Securities Litigation, 03 Civ. 1546 (WHP) (S.D.N.Y.). We represented the New York State Common Retirement Fund as Lead Plaintiff in a securities fraud class action arising from Bayer's marketing and recall of its Baycol drug. Lowey Dannenberg was appointed as lead counsel for the New York State Common Retirement Fund at the inception of merits discovery, following the dismissal of the New York State Common Retirement Fund's former counsel. The class action settled for $18.5 million in 2008.

> In re WorldCom Securities Litigation, Master File No. 02 Civ. 3288 (DLC) (S.D.N.Y.). Lowey Dannenberg's innovative strategy and zealous prosecution produced an extraordinary recovery in the fall of 2005 for the New York City Pension Funds in the WorldCom Securities Litigation, substantially superior to that of any other WorldCom investor in either class or opt-out litigation. Following our advice to opt out of a class action in order to litigate their claims separately, the New York City Pension Funds recovered almost $79 million, including 100% of their damages resulting from investments in WorldCom bonds.

> Federated American Leaders Fund, Inc., No. 08-cv-01337-PB (D.N.H.). In 2008, Lowey Dannenberg successfully litigated an opt-out case on behalf of client Federated Investors, Inc., arising out of the Tyco Securities Litigation. The client asserted claims unavailable to the class (including a claim for violation of § 18 of the Securities Exchange Act of 1934 and a claim for violations of the New Jersey RICO statute). Pursuit of an opt-out strategy resulted in a recovery of substantially more than the client would have received had it merely remained passive and participated in the class action settlement.

> *In re Philip Services Corp., Securities Litigation*, No. 98 Civ. 835 (AKH) (S.D.N.Y.). On March 19, 2007, the United States District Court for the Southern District of New York approved a $79.75 million settlement of a class action, in which Lowey Dannenberg acted as Co-Lead Counsel, on behalf of United States investors of Philip Services Corp., a bankrupt Canadian resource recovery company. $50.5 million of the settlement was paid by the Canadian accounting firm of Deloitte & Touche, LLP, perhaps the largest recovery from a Canadian auditing firm in a securities class action, and among the largest obtained from any accounting firm. Earlier in the litigation, the United States Court of Appeals for the Second Circuit issued a landmark decision protecting the rights of United States citizens to sue foreign companies who fraudulently sell their securities in the United States. *DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002).

> *In re New York Stock Exchange/Archipelago Merger Litigation*, No. 601646/05 (N.Y. Sup. Ct.). Lowey Dannenberg acted as co-lead counsel for a class of seatholders seeking to enjoin the merger between the New York Stock Exchange ("NYSE") and Archipelago Holdings, Inc. As a result of the action, the merger terms were revised, providing the seatholders with more than $250 million in additional consideration. Further, the NYSE agreed to retain an independent financial adviser to report to the court as to the fairness of the deal to the NYSE seatholders. Plaintiffs also provided the court with their expert's analysis of the new independent financial adviser's report so that seatholders could assess both reports prior to the merger vote. The court noted that "these competing presentations provide a fair and balanced view of the proposed merger and present the NYSE Seatholders with an opportunity to exercise their own business judgment with eyes wide open. The presentation of such differing viewpoints ensures transparency and complete disclosure." *In re New York Stock Exchange/Archipelago Merger Litigation*, No. 601646/05, 2005 WL 4279476, at *14 (N.Y. Sup. Ct. Dec. 5, 2005).

> *Delcath Systems, Inc. v. Ladd, et al.*, No. 06 Civ. 6420 (S.D.N.Y.). On September 25, 2006, Lowey Dannenberg helped Laddcap Value Partners win an emergency appeal, reversing a federal district court's order disqualifying the votes Laddcap solicited to replace the board of directors of Delcath Systems, Inc. Prior to Lowey Dannenberg's involvement in the case, on September 20, 2006, the district court enjoined Laddcap, Delcath's largest stockholder, from submitting stockholder consents on the grounds of alleged and unproven violations of federal securities law. After losing an injunction proceeding in the district court on September 20, 2006, and with the election scheduled to close on September 25, 2006, Laddcap hired Lowey Dannenberg to prosecute an emergency appeal, which Lowey won on September 25, 2006, the last day of the election period. *Delcath Systems, Inc. v. Ladd*, 466 F.3d 257 (2d Cir. 2006). Shortly thereafter, the case settled with Laddcap gaining seats on the board, reimbursement of expenses, and other benefits.

> *Salomon Brothers Municipal Partners Fund, Inc. v. Thornton*, No. 05-cv-10763 (S.D.N.Y.). Lowey Dannenberg represented Karpus Investment Management in its successful proxy contest and subsequent litigation to prevent the transfer of management by Citigroup to Legg Mason of the Salomon Brothers Municipal Partners Fund. We defeated the Fund's preliminary injunction action which sought to compel Karpus to vote shares it had solicited by proxy but withheld from voting in order to defeat a quorum and prevent approval of the transfer. *Salomon Brothers Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330 (S.D.N.Y. 2006).

> *In re DaimlerChrysler AG Sec. Litigation*, Master Docket No. 00-993-JJF (D. Del.). Lowey Dannenberg represented Glickenhaus & Co., a major registered investment advisor and, at the time, the second largest stockholder of Chrysler, in an individual securities lawsuit against DaimlerChrysler AG. Successful implementation of the firm's opt-out strategy led to a recovery for its clients far in excess of that received by other class members. *See Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002); *In re DaimlerChrysler AG Sec. Litig.*, 269 F. Supp. 2d 508 (D. Del. 2003).

> *Doft & Co. v. Travelocity.com, Inc.*, No. Civ. A. 19734 (Del. Ch.). Following a three-day bench trial in a statutory appraisal proceeding, the Delaware Chancery Court awarded the firm's clients, an institutional investor and investment advisor, $30.43 per share plus compounded prejudgment interest, for a transaction in which the public shareholders who did not seek appraisal were cashed out at $28 per share. *Doft & Co. v. Travelocity.com, Inc.*, No. Civ. A. 19734, 2004 WL 1152338 (Del. Ch. May 20, 2004), *modified*, 2004 WL 1366994 (Del. Ch. June 10, 2004).

> *MMI Investments, LP v. NDCHealth Corp., et al.*, 05 Civ. 4566 (S.D.N.Y.). Lowey Dannenberg filed an individual action on behalf of hedge fund, MMI Investments, asserting claims for violations of the federal securities laws and the common law, including claims not available to the class, most notably a claim for violation of § 18 of the Securities Exchange Act of 1934 and a claim for common law fraud. After zealously litigating the client's claims, the Firm obtained a substantial settlement, notwithstanding the fact that the class claims were dismissed.

> *Omnicare, Inc. v. NCS Healthcare, Inc.* Lowey Dannenberg, as Co-Lead Counsel on behalf of an institutional investor, obtained an injunction from the Delaware Supreme Court, enjoining a proposed merger between NCS Healthcare, Inc. and Genesis Health Ventures, Inc., in response to Lowey Dannenberg's argument that the NCS board breached its fiduciary obligations by agreeing to irrevocable merger lock-up provisions. As a result of the injunction, the NCS shareholders were able to benefit from a competing takeover proposal by Omnicare, Inc., a 300% increase from the enjoined transaction, providing NCS's shareholders with an additional $99 million. *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914 (Del. 2003).

> *meVC Draper Fisher Jurvetson Fund 1, Inc. v. Millennium Partners.* Lowey Dannenberg successfully represented an affiliate of Millennium Partners, a major private investment fund, in litigation in the Delaware Chancery Court over a board election. Lowey's efforts resulted in the voiding of two elections of directors of meVC Draper Fisher Jurvetson Fund 1, Inc., a NYSE-listed closed end mutual fund, on grounds of breach of fiduciary duty. In a subsequent proxy contest litigation in the United States District Court for the Southern District of New York, the entire board of directors was ultimately replaced with Millennium's slate. *meVC Draper Fisher Jurvetson Fund 1, Inc. v. Millennium Partners*,260 F. Supp. 2d 616 (S.D.N.Y. 2003); *Millenco L.P. v. meVC Draper Fisher Jurvetson Fund 1, Inc.*, 824 A.2d 11 (Del. Ch. 2002).

> *In re CINAR Securities Litigation*, Master File No. 00 CV 1086 (E.D.N.Y. Dec. 2, 2002). Lowey Dannenberg acted as Lead Counsel, obtaining a $27.25 million settlement on behalf of client the Federated Kaufmann Fund and a class of purchasers of securities of CINAR Corporation. The court found that "the quality of [Lowey Dannenberg's] representation has been excellent."

> *In re Reliance Securities Litigation*, MDL No. 1304 (D. Del. 2002). In proceedings in which Lowey Dannenberg acted as co-counsel to a Bankruptcy Court-appointed estate representative, the firm obtained recoveries in a fraudulent conveyance action totaling $106 million.

# Consumer Protection

Lowey Dannenberg has served as lead or co-lead counsel in many challenging consumer protection cases. The firm has recovered millions of dollars on behalf of consumers injured as a result of unfair business practices. The firm's Consumer Protection Group has experience litigating class actions under state and federal consumer protection law and before state and federal courts.

## In re FedLoan Student Loan Servicing Litigation

Attorneys from Lowey Dannenberg were appointed by Judge C. Darnell Jones, II as Co-Lead Counsel and Executive Committee members in *In re FedLoan Student Loan Servicing Litigation*, No. 18-MD-2833 (E.D. Pa.) ("*FedLoan*"). Lowey Dannenberg filed the first action in the *FedLoan* litigation alleging that one of the nation's largest student loan servicers, the Pennsylvania Higher Education Assistance Agency, failed to properly service student loans in order to maximize the fees it received from the Department of Education under its loan servicing contract. Lowey Dannenberg also brought claims against the U.S. Department of Education for failing to comply with the Higher Education Act and its own regulations and rules. The alleged scheme harmed student loan borrowers by causing them to accrue additional interest on their loans, improperly extending their repayment terms, and erroneously placing their loans into forbearance. The litigation is ongoing.

## Broder v. MBNA Corp.

Lowey Dannenberg served as Lead Counsel in *Broder v. MBNA Corp.*, No. 605153/98 (Sup. Ct., N.Y. County), and recovered $22.8 million dollars on behalf of a class of holders of credit cards issued by MBNA Bank, who took cash advances in response to a deceptive MBNA promotion. The Court noted that Lowey Dannenberg is an "able law firm having long-standing experience in commercial class action litigation."

## In Re Archstone Westbury Tenant Litigation

As lead counsel, Lowey Dannenberg successfully represented a class of renters of mold-infested apartments in a $6.3 million settlement of a complex landlord-tenant class action in *In Re Archstone Westbury Tenant Litigation*, Index No. 21135/07 (N.Y. Sup. Ct. Nassau County).

## Lyons v. Litton Loan Servicing LP

In *Lyons v. Litton Loan Servicing LP, et al.*, No. 13-cv-00513 (S.D.N.Y.), Lowey Dannenberg served as Class Counsel and recovered $4.1 million on behalf of a class of homeowners alleging that mortgage servicers colluded to force them to buy unnecessary lender-placed insurance.

## In re Warfarin Sodium Antitrust Litigation

In *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3rd Cir. 2004), the Third Circuit Court of Appeals affirmed the United States District Court for the District of Delaware's approval of a $44.5 million class action settlement paid by DuPont Pharmaceuticals to consumers and third-party payers nationwide to settle claims of unfair marketing practices in connection with the prescription blood thinner, Coumadin. Lowey Dannenberg, appointed by the District Court to the Plaintiffs' executive committee as the representative of third-party payers, successfully argued the appeal.

## Snyder v. Nationwide Insurance Company

In *Snyder v. Nationwide Insurance Company*, Index No. 97/0633 (Sup. Ct. Onondaga Co. December 17, 1998), Lowey Dannenberg, as co-lead counsel, secured a $100 million dollar settlement for consumers purchasing "vanishing premium" life insurance policies. In approving the settlement, the Court found that the attorneys of Lowey Dannenberg are "great attorneys" who did a "very, very good job" for the class.

# Data Breach Class Actions

Lowey Dannenberg represents both consumers and financial institutions in some of the largest data breach class actions this year, including those affecting tens of millions of customers across the hospitality, healthcare, and retail industries.

### Barr v. Drizly, LLC, Case No. 20-CV-11492 (D. Mass.)

Lowey Dannenberg served as court-appointed class counsel on behalf of millions of consumers impacted by a data breach at one of the largest alcohol delivery companies, Drizly LLC ("Drizly"). On March 30, 2021, U.S. District Judge Leo T. Sorokin granted preliminary approval of a settlement in which Drizly agreed to pay a total of no less than $1,050,000 and no more than $3,150,000, and issue service credits up to $447,750. Drizly also agreed to implement and maintain sufficient data security measures to prevent future data breaches. On November 22, 2021, the Court granted final approval of the settlement. As a result of Lowey Dannenberg's robust notice program, Drizly paid the maximum amount under the terms of the settlement.

### In re Wawa, Inc. Data Security Litigation, No. 19-cv-06019 (E.D. Pa.)

Lowey Dannenberg serves as co-lead counsel in a class action against Wawa, Inc. ("Wawa") on behalf of a class of financial institutions affected by Wawa's failure to properly secure their card processing system. As a result of Wawa's conduct, unauthorized third parties were able to gain access to customers' payment card information for over nine months. The data breach is estimated to have impacted more than 30 million individuals at 850 locations. Judge Gene E.K. Pratter of the U.S. District Court for the Eastern District of Pennsylvania sustained several of Plaintiffs' claims, including negligence and injunctive relief.

### In re Rutter's Inc. Data Security Breach Litigation, No. 20-cv-00382 (M.D. Pa.)

Lowey Dannenberg is serving as co-lead class counsel in a class action on behalf of consumers against Rutter's Holdings, Inc. ("Rutter's"). The action arises out of Rutter's failure to secure its point-of-sale system, which allowed hackers to compromise customers' payment card information. The breach is estimated to have lasted approximately eight months.

Chief Judge John E. Jones, III of the U.S. District Court for the Middle District of Pennsylvania sustained several of Plaintiffs' key claims, including negligence, breach of implied contract, and unjust enrichment. During discovery, Lowey Dannenberg successfully argued that Rutter's must turn over investigative reports prepared by third party consultants, which Rutter's argued were protected by the attorney-client privilege and work product doctrine.

### Hozza v. PrimoHoagies Franchising, Inc., No. 20-cv-04966 (D.N.J.)

Lowey Dannenberg recently settled a class action against PrimoHoagies Franchising, Inc. ("PrimoHoagies") arising out of the company's deficient data security that exposed consumers' personal data, including credit card information. The data breach is estimated to have lasted seven months, impacting dozens of locations across seven states.

### In re USAA Data Security Litigation, No. 21-cv-05813 (S.D.N.Y.)

On November 17, 2021, Judge Vincent L. Briccetti appointed Lowey Dannenberg as co-lead counsel representing a proposed class of consumer plaintiffs. The case alleges that United Services Automobile Association ("USAA") allowed unauthorized third parties to intentionally target and improperly obtain Plaintiffs' and class members' personally identifiable information, including Driver's License numbers, through the use of USAA's online insurance quote and/or policy process.

# Privacy Class Actions

Lowey Dannenberg is at the forefront of some of the most high-profile and largest privacy cases in the country, including those involving new and emerging technology.

### In re Google Assistant Privacy Litigation, No. 19-cv-04286 (N.D. Cal.)

Lowey Dannenberg serves as co-lead class counsel in one of the largest privacy cases in the country, representing a class of consumers against tech giant Google. Plaintiffs' claims arise out of Google's unlawful and intentional recording of Plaintiffs' and class members' confidential communications without their consent through its Google Assistant software. Lowey Dannenberg has successfully defeated several rounds of motion to dismiss briefing over two years of litigation.

### Lopez v. Apple, Inc., No. 19-cv-04577 (N.D. Cal.)

Similar to the case above, Lowey Dannenberg serves as co-lead class counsel in a class action on behalf of consumers alleging that Apple unlawfully and intentionally recorded Plaintiffs' and class members' confidential communications without their consent through its Siri-enabled devices. On September 2, 2021, Judge Jeffrey S. White of the Northern District of California credited Plaintiffs' well-pled allegations in sustaining several of Plaintiffs' claims, including those under the Federal Wiretap Act, the California Invasion of Privacy Act, and the California Constitution.

### In re Apple Processor Litigation, No. 18-cv-00147 (N.D. Cal.)

Lowey Dannenberg currently serves as co-lead class counsel in a proposed class action against Apple alleging that Plaintiffs and the class were harmed by Apple's failure to disclose defects in its central processing units

(CPUs) that Apple designed and placed in millions of its devices, which exposed users' sensitive personal information to unauthorized third parties. After dismissal for lack of standing, Lowey Dannenberg led the appellate efforts before the U.S. Court of Appeals for the Ninth Circuit who ultimately vacated the District Court's decision and remanded for further proceedings.

### Frasco v. Flo Health, Inc., No. 21-cv-00757 (N.D. Cal.)

Lowey Dannenberg serves as court appointed co-lead counsel in a class action against Flo Health, Inc. ("Flo"), Google, LLC, Facebook, Inc., AppsFlyer, Inc. and Flurry, Inc. Plaintiffs represent a class of consumers alleging that Flo collected and disclosed their intimate health data to some of the largest data analytics and advertising companies in the world. Plaintiffs allege claims for invasion of privacy, breach of contract, and violation of the Federal Wiretap Act, among others.

### Wesch v. Yodlee, Inc., No. 20-cv-05991 (N.D. Cal.)

Lowey Dannenberg is leading the prosecution against Yodlee, Inc., one of the largest data and analytics companies in the world. Lowey Dannenberg represents a class of consumers whose financial data Yodlee, Inc. surreptitiously collected and sold without consent through software incorporated in third party applications. Lowey Dannenberg has successfully defeated two rounds of motion to dismiss briefing, leaving intact claims for invasion of privacy, fraudulent deceit, and violation of California's Anti-Phishing Act, among others.

# Lowey Dannenberg's Recognized Expertise

Courts have repeatedly recognized the attorneys of Lowey Dannenberg as expert practitioners in the field of complex litigation.

For example, on March 15, 2013, the Honorable Colleen McMahon of the United States District Court for the Southern District of New York granted final approval of the $219 million settlement of Madoff feeder-fund litigation encompassing the In re Beacon and In re Jeanneret class actions. In a subsequent written decision, with glowing praise, Judge McMahon stated:

> "The quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement."

> "I thank everyone for the amazing work that you did in resolving these matters. **Your clients—all of them— have been well served.**"

> "Not a single voice has been raised in opposition to this remarkable settlement, or to the Plan of Allocation that was negotiated by and between the Private Plaintiffs, the NYAG and the DOL."

> "All formal negotiations were conducted with the assistance of two independent mediators - one to mediate disputes between defendants and the investors and another to mediate claims involving the Bankruptcy Estate. Class Representatives and other plaintiffs were present, in person or by telephone, during the negotiations. The US Department of Labor and the New York State Attorney General participated in the settlement negotiations. **Rarely has there been a more transparent settlement negotiation. It could serve as a prototype for the resolution of securities-related class actions, especially those that are adjunctive to bankruptcies.**"

> "**The proof of the pudding is that an astonishing 98.72% of the Rule 23(b)(3) Class Members who were eligible to file a proof of claim did so (464 out of 470), and only one Class Member opted out [that Class Member was not entitled to recover anything under the Plan of Allocation]. I have never seen this level of response to a class action Notice of Settlement, and I do not expect to see anything like it again.**"

> "I am not aware of any other Madoff-related case in which counsel have found a way to resolve all private and regulatory claims simultaneously and with the concurrence of the SIPC/Bankruptcy Trustee. Indeed, I am advised by Private Plaintiffs' Counsel that the Madoff Trustee is challenging settlements reached by the NYAG in other feeder fund cases [Merkin, Fairfield Greenwich] which makes the achievement here **all the more impressive.**"

In *Juniper Networks, Inc. Securities Litigation*, the court, in approving the settlement, acknowledged that "[t]he successful prosecution of the complex claims in this case required the participation of highly skilled and specialized attorneys." *In re Juniper Networks, Inc.*, C06-04327, Order dated August 31, 2010 (N.D. Cal.). In the WorldCom Securities Litigation, the court repeatedly praised the contributions and efforts of the firm. On November 10, 2004, the court found that "the Lowey Firm . . . has worked tirelessly to promote harmony and efficiency in this sprawling litigation .

[Lowey Dannenberg] has done a superb job in its role as Liaison Counsel, conducting itself with professionalism and efficiency . . . ." *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288, 2004 WL 2549682, at *3 (S.D.N.Y. Nov. 10, 2004).

**LOWEY DANNENBERG'S RECOGNIZED EXPERTISE**

In the *In re Bayer AG Securities Litigation*, 03 Civ. 1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) order approving a settlement of $18.5 million for the class of plaintiffs, Judge William H. Pauley III noted that the attorneys from Lowey Dannenberg are "nationally recognized complex class action litigators, particularly in the fields of securities and shareholder representation," that "provided high-quality representation."

In the *In re Luminent Mortgage Capital, Inc., Securities Litigation*, No. C07-4073 (N.D. Cal.) hearing for final approval of settlement and award of attorneys' fees, Judge Phyllis J. Hamilton noted that "[t]he $8 million settlement . . . is excellent, in light of the circumstance." Judge Hamilton went on to say that "most importantly, the reaction of the class has been exceptional with only two opt- outs and no objections at all received." *See* Tr. of Hearing on Plaintiff's Motion for Final Approval of Settlement/Plan of Allocation and for an Award of Attorneys' Fees and Reimbursement of Expenses, *In re Luminent Mortgage Capital, Inc., Securities Litigation*, No. C07-4073-PJH (N.D. Cal. Apr. 29, 2009), ECF No. 183.







**New York**
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

**Pennsylvania**
One Tower Bridge, 100 Front St.
Suite 520
West Conshohocken, PA 19428
(215) 399-4770

www.lowey.com

info@lowey.com

# Exhibit 2





# FIRM QUALIFICATIONS

## STAMFORD

One Landmark Square
Floor 15
Stamford, CT 06901

## HARTFORD

225 Asylum Street
Floor 15
Hartford, CT 06103

## NEW HAVEN

195 Church Street
Floor 11
New Haven, CT 06510

# OVERVIEW

Silver Golub & Teitell LLP is a plaintiffs' law firm of trial lawyers who have taken the important, life changing cases the wellbeing of our clients depend on for nearly 50 years. We built our reputation by litigating resource-intensive cases and, after five decades, our track record speaks for itself: we've returned billions of dollars in jury verdicts and settlements in class action, complex litigation, personal injury, and medical malpractice matters.

SGT's Class Action and Complex Litigation practice group has represented individuals, consumers, state and local governments, unions, and retirement funds throughout the years to help offset the impact of controversies touching our communities.

Some notable representations include representing the State of Connecticut against the American tobacco industry, representing unionized employees whose first amendment rights were violated via anti-union layoffs, recovering amounts lost to Enron and Bernie Madoff on behalf of Connecticut municipalities, and establishing the right of political parties to determine the eligibility of non-party members to vote in primaries.

SGT's attorneys are also proud to serve in leadership roles in various organizations and institutions. Our name partners have taught trial practice at Yale Law School, the University of Connecticut School of Law, and Quinnipiac University Law School, and several SGT partners have served as President of the Connecticut Trial Lawyers Association.



2

# CLASS ACTION & COMPLEX LITIGATION

## Prior Representations

*State Employees Bargaining Coalition, et al. v. Rowland.*

In *SEBAC v. Rowland,* SGT achieved a court-approved settlement which has provided $250+ million in compensation to thousands of unionized state employees who alleged they were deliberately and illegally singled out for layoffs by the State of Connecticut in violation of their First Amendment rights. Specifically, the class members alleged that after their union refused to yield statutorily statutorily-protected contract rights during negotiations, the State of Connecticut, in violation of the unions' and their members' exercise of protected First Amendment rights of free speech and free association, and with anti-union animus, ordered the layoff of thousands of state employees.

The State of Connecticut argued that the layoffs were carried out to force the union to agree to concessions that would ultimately save the State of Connecticut money. However, the United States Court of Appeals for the Second Circuit in a precedential decision disagreed and found found that the layoffs violated the unions' and union members' First Amendment right to freedom of association. SGT's work achieved a settlement of over $250 million for a class of more than 40,000 unionized public employees in 2015. The settlement was approved on October 1, 2015.

The case was *State Employees Bargaining Coalition, et al v. Rowland,* No. 03-CV-221 and was brought in the United States District Court for the District of Connecticut before Hon. Alfred C. Covello, Senior United States District Judge.



SILVER GOLUB & TEITELL LLP

3

## *State of Connecticut v.  Philip Morris, Inc., et al.*

Silver Golub & Teitell served as lead private counsel for the State of Connecticut from 1996-98 in its action against the American tobacco industry. SGT was one of only a few Connecticut firms to answer the Connecticut Attorney General's call for firms to represent the State in the litigation. Connecticut's action was part of the nationwide litigation which resulted in the November 1998 Master Settlement Agreement for $246 billion being entered between plaintiffs and the four major tobacco companies Philip Morris USA, R. J. Reynolds, Brown & Williamson Tobacco Corp., and Lorillard.

The terms of Master Settlement Agreement provided for Connecticut to receive $3.6 billion. Additionally, a special panel of former attorneys general concluded that contribution of Connecticut's SGT-led legal team to the national litigation and settlement warranted that the State of Connecticut receive an additional $370 million of the national settlement proceeds, bringing Connecticut's total recovery to nearly $4 billion.

The case was *State of Connecticut v. Philip Morris, Inc.*, et al., No. X02-CV-960148414S.

## *Spencer v. Hartford Financial Services Group, et al.*

SGT served as court-appointed co-lead counsel and obtained a $72.5 million cash settlement on the eve of trial for two certified subclasses of approximately 22,000 owners of structured settlement annuities in a nationwide class action against Hartford Financial Services Group, Inc and its affiliates. Plaintiffs and the class alleged that in order to fund class members' structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life. By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit – all of which was concealed from the settling claimants.

The case was *Spencer v. Hartford Financial Services Group, Inc.*, No. 05-CV-1681 and was brought in the United States District Court for the District of Connecticut before Hon. Janet C. Hall.



## *Town of New Hartford, et al. v. Conn. Resources Recovery Authority.*

SGT obtained a $40+ million trial judgment as court-appointed lead counsel in a certified class action for 70 Connecticut municipalities to recover for losses sustained as a result of a quasi-public trash authority's improper dealings with Enron Corporation. The plaintiffs alleged they suffered damages in the form of increased costs when Enron defaulted on a $220 million loan made by the Connecticut Resources Recovery Authority ("CRRA") to Enron.

Plaintiffs' complaint alleged that the CRRA's loan to Enron was illegal and that the expenditure of funds was an *ultra vires* act on the part of the CRRA. Plaintiffs further alleged, *inter alia*, that that CRRA breached a fiduciary duty which it owed to the municipalities, and that CRRA breached its duty of fair dealing and good faith.

The case was *Town of New Hartford, et al v. Connecticut Resources Recovery Authority,* No. UWY-CV-04-0185580S and was brought in Connecticut Superior Court, Judicial District of Waterbury before Hon. Dennis G. Eveleigh.

## *United States ex rel. Keeth v. United Technologies Corporation.*

Silver Golub & Teitell represented the relator in a federal False Claims Act ("FCA") action against United Technologies Corporation which alleged, *inter alia*, that UTC had prematurely billed the government for work not yet performed on a helicopter contract and had inflated material inventories used as a basis for progress bills on its fixed-price contracts. The relator Douglas Keeth also alleged that UTC officials attempted to suppress disclosure of the improper Sikorsky practices after the company discovered and investigated the practices while participating in the Defense Department's voluntary disclosure program.

The *qui tam* litigation resulted in a $150 million settlement which at the time was the largest ever recovery for an action brought under the FCA. SGT's client received a relator's share of $22.5 million which was then also the largest such FCA award ever given to a relator.

The case was *United States ex rel. Keeth v. United Technologies Corporation,* No. H-89-323 brought in the United States District Court for the District of Connecticut before Hon. Alan H. Nevas.



SILVER GOLUB & TEITELL LLP

### In re AllianzGI Structured Alpha Class Action Litigation.

SGT served as court-appointed co-class counsel for a putative class of investors in a series of hedge funds managed by Allianz Global Investors U.S. LLC, a US-based asset management company owned by the German insurance giant Allianz SE. On September 30, 2021, United States District Court Judge Katharine Polk Failla issued an opinion denying in substantial part Allianz's motion to dismiss 15 consolidated actions. In April 2022, SGT's clients settled their claims on individual bases on confidential terms. The case was *In re AllianzGI Structured Alpha Class Action Litigation*, No. 20-cv-07154, filed in the United States District Court for the Southern District of New York.

### Anglim v. Xerox Corporation.

Silver Golub & Teitell served as lead counsel in nationwide class action for 40,000 Xerox pensioners for violations under ERISA, resulting in a settlement that provided increased pension benefits for approximately 40,000 present and former Xerox employees. The case was *Anglim x. Xerox Corporation*, B-83-2511 and was brought in the United States District Court for the District of Connecticut.

### Town of Fairfield v. Madoff.

Silver Golub & Teitell represented the Town of Fairfield, Connecticut and its pension plans from 2008-2013 in litigation against several feeder fund entities that enabled the Town to successfully recover $15+ million it had invested in Madoff-related investment vehicles. The case *was Town of Fairfield, et al. v. Bernard L. Madoff, et al.*, X08 1 CV09 5011561S.

### Westport Taxi Service, Inc. v. Westport Transit.

SGT represented a Westport, Connecticut taxi service against the Westport Transit District, claiming that the district had intentionally engaged in monopolistic practices in violation the Connecticut Antitrust Act. The trial court found that defendants Westport Transit District had gained monopoly power and engaged in predatory pricing. As a result, the trial court-imposed liability on the defendant Westport Transit District and awarded the treble damages, including lost profits, business value, and prejudgment interest.


SILVER GOLUB
& TEITELL LLP

# CLASS ACTION & COMPLEX LITIGATION

# Pending Matters

## *Allianz Global Investors Mutual Fund Litigation.*

On November 1, 2022, SGT and co-counsel filed a motion seeking preliminary approval of a $145 million settlement reached on behalf of several institutional and individual investors in a series of mutual funds managed by Allianz Global Investors U.S. LLC, a US-based asset management company owned by the German insurance giant Allianz SE.

The AllianzGI "Structured Alpha" mutual funds were an off-shoot of a suite of hedge funds advertised as capable of returning several percentage points of "alpha"—or returns uncorrelated to broader market movements—via a "market neutral" complex options trading strategy.

In May 2022, the DOJ and SEC announced criminal and civil charges against AllianzGI US and three AllianzGI US employees for fraudulently misrepresenting the risk profile of several Structured Alpha hedge funds. Although the charges and restitution orders did not address mutual fund investors, SGT's investigation and analysis of the funds revealed that mutual fund shareholders were victimized by the same activity which led to the criminal charges.

The case is *Jackson v. Allianz Global Investors U.S. LLC*, Index No. 651233/2021 (N.Y.S.), and is currently pending before Justice Andrew Borrok of the New York State Supreme Court, New York County Commercial Division.



7

## *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*

SGT filed the first class action in the United States against Philips North America LLC, Philips Respironics North America LLC, and the Dutch parent entity arising out of Philips' recall of CPAP, BiPAP, and mechanical ventilator devices due to the presence of a dangerous PE-PUR Foam that could cause users to suffer adverse health effects.

The cases were subsequently consolidated in an MDL proceeding before Senior United States Judge for the Western District of Pennsylvania, Judge Joy Conti. SGT Partner Ian Sloss is currently serving in a court-appointed leadership position and on the Discovery Committee.

The case is *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, No. 21-cv-01230 (W.D. Pa.).

## *Diaz v. Griffin Hospital.*

Silver Golub & Teitell represents a court certified class of over 3,100 individuals who were patients of defendant Griffin Hospital from between September 2008 and May 2014 and received insulin administered via multi-dose insulin pens. The certified class alleges that they suffered damages and emotional distress upon learning, via letter, that they had potentially been exposed to blood-borne pathogens as a result of at least eleven Griffin Hospital employees or agents improperly using multi-dose insulin pens.

The complaint alleged that the types of misuse include using a single pen on multiple patients, using a pen prescribed for a specific patient for whom it was not prescribed, drawing insulin from a pen prescribed for a specific patient into a separate syringe and administering the insulin to another patient, or removing the patient identification label affixed to a pen and then administering insulin from the pen to other patients. The court certified the proposed class of individuals on November, 23, 2020.

The case is *Diaz v. Griffin Hospital*, No. UWYCV156029965S and is pending before Hon. Linda Lager of the Connecticut Superior Court, Judicial District of Waterbury.



SILVER GOLUB
& TEITELL LLP

## Aerospace Industry No-Poach Litigation.

SGT partner Ian W. Sloss represents lead plaintiff Zoe Borozny in a putative class action pending in the United States District Court for the District of Connecticut against defendants Pratt & Whitney (a division of Raytheon Technologies Corp.) and several aerospace engineer staffing companies alleging that they conspired to restrict competition and suppress wages via "no-poach" agreements in violation of antitrust laws.

The case is *Borozny et al. v. v. Raytheon Technologies Corporation, Pratt & Whitney Division, et al,* No.3:21-cv-01657 and is pending before Hon. Sarala V. Nagala in the United States District Court for the District of Connecticut.

## Underwood et al. v Coinbase Global, Inc.

Silver Golub & Teitell has been appointed co-lead counsel on behalf of a putative class of users of the digital asset trading platform operated by Coinbase Global, Inc. ("Coinbase"), alleging that Coinbase has been illegally operating an unlicensed securities exchange. Plaintiffs, on behalf of themselves and the proposed class of digital asset investors, are seeking, *inter alia*, rescissory damages pursuant to the Federal Securities laws.

The case is *Underwood et al. v. Coinbase Global, Inc.,* No. 21-cv-08353 (S.D.N.Y.) and is currently pending before United States Judge for the Southern District of New York Paul A. Engelmayer.

## In re EpiPen Direct Purchaser Litigation.

SGT is part of a committee with court-appointed interim co-lead counsel representing direct purchaser plaintiff drug wholesalers Rochester Drug Co-Operative, Inc. ("Rochester Co-op") and Dakota Drug, Inc. ("Dakota Drug") in a proposed class action alleging that brand-name and generic EpiPen manufacturers and a group of pharmacy benefit managers ("PBMs") conspired to maintain supracompetitive prices for brand-name and generic EpiPens.

The case is *In re EpiPen Direct Purchaser Litigation,* No. 20-CV-00827 and is pending before Hon. Eric. C. Tostrud in the United States District Court for the District of Minnesota.



SILVER GOLUB
& TEITELL LLP

9

## Contaminated Aerosol Spray Products Litigation.

Silver Golub & Teitell LLP is leading a coalition of firms that have reached a tentative settlement with consumer product manufacturer Procter & Gamble of claims arising out of the sale of aerosol spray products, including antiperspirants, deodorants, and dry shampoos, that contained the carcinogen benzene. SGT filed the first case in the Southern District of Ohio and successfully argued that all cases filed nationwide should be consolidated there.

Shortly thereafter, SGT and co-counsel engaged in extensive mediation with P&G which resulted in a tentative settlement agreement for up to $8 million in cash refunds for class members and important injunctive relief. On October 28, 2022, Judge Michael H. Watson, United States District Judge for the Southern District of Ohio preliminarily approved the settlement and SGT as Settlement Class Counsel.

The case is *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Practices Litig.*, MDL No. 3025, (S.D. Ohio).

## Contaminated Baby Food Litigation.

SGT has taken a leading role in class action litigation against baby food producers alleging that for years they have sold baby food tainted with dangerous levels of toxic heavy metals. SGT has been appointed co-lead counsel by the court in *In re: Beech-Nut Nutrition Company Baby Food Litigation*, 1:21-cv-00133-DNH-CFH (N.D.N.Y), and to the Plaintiffs' executive committees by the court in *Wilson et al v. Walmart Inc. et al.*, No. 3:21-CV-00082 (E.D. Ark.) against Walmart.

## Zaluda v. Apple Inc.

Silver Golub & Teitell represents a proposed class of users of Apple Siri-enabled devices in Illinois alleging Apple illegally created, collected, or otherwise obtained and stored their biometric voiceprints without consent in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS/14 *et seq*. On December 9, 2020, the Court sustained Plaintiffs' claims and denied Apple's motion to dismiss.

The case is *Zaluda v. Apple Inc.*, No. 2019-CH-11771 and is pending before Hon. Michael T. Mullen of the Circuit Court of Cook County, Illinois, Chancery Division.



# SGT CLASS ACTION & COMPLEX LITIGATION ATTORNEYS

We have the people and resources to litigate against any opponent.

## David S. Golub, Partner

David Golub is a founding member of SGT and head of the firm's Class Action & Complex Litigation practice group. David is a graduate of Yale College and Yale Law School. Throughout his legal career, he utilized the law to further constitutional and civil rights and protection of the disadvantaged in a trial and appellate practice encompassing virtually every aspect of litigation.

## Steven L. Bloch, Partner

Steven L. Bloch has more than 20 years of experience in the litigation of complex class, group and direct actions involving insurance and financial products and services, consumer fraud, employee and health benefits, antitrust and securities violations. Steve's expertise in pursuing civil RICO (Racketeer Influenced and Corrupt Organizations Act) has been invaluable for SGT's clients.

## Ian W. Sloss, Partner

Ian W. Sloss joined SGT in 2019 and focuses his practice on representing investors and consumers in class, group, and direct antitrust, commodities securities, environmental, data privacy, consumer protection, and other types of litigation. Ian was named as "One to Watch" by Best Lawyers for 2022. Prior to joining SGT, Ian practiced at a boutique commodities and antitrust litigation firm based in New York.



SILVER GOLUB & TEITELL LLP

# FIRM QUALIFICATIONS

Our Attorneys

## Jonathan M. Levine, Partner

Jonathan M. Levine graduated from Harvard College and Yale Law School and has been associated with SGT since 1990. Jonathan focuses his practice on complex matters, including class actions, involving employment and commercial litigation, constitutional law, medical malpractice and serious personal injury. Jonathan currently oversees SGT's efforts in SEBAC v. Rowland, where SGT has gained court approval of a $250+ million settlement.

## Sean K. McElligott, Partner

Sean K. McElligott, a graduate of Trinity College and Yale Law School, is an experienced trial lawyer that focuses his practice on complex litigation involving catastrophic injuries from medical malpractice, dangerous products and negligence. Sean previously practiced at Cohen Milstein Hausfeld & Toll where he focused his practice on antitrust litigation.

## Paul A. Slager, Partner

Paul Slager represents plaintiffs in complex, high-value cases concerning life-changing personal or financial injuries. Paul is former President of the Connecticut Trial Lawyers Association, has been listed as one of the Top 10 Attorneys in Connecticut in each of the past four years (2019-22), and Best Lawyers has been named "Lawyer of the Year" four separate times in the fields of plaintiffs' Mass Tort Litigation/Class Actions and Product Liability Litigation by *Best Lawyers*.

## Ernie Teitell, Partner

Ernie Teitell has 40 years of experience litigating criminal and civil matters. He currently serves as court-appointed lead counsel for a certified class of over 3,100 individuals who were patients of defendant Griffin Hospital from between September 2008 and May 2014 and received insulin administered via multi-dose insulin pens.


SILVER GOLUB & TEITELL LLP

# FIRM QUALIFICATIONS
Our Attorneys

## Marco A. Allocca, Partner

Marco focuses his civil litigation practice in the areas of medical malpractice resulting in traumatic or catastrophic injuries, wrongful death, serious personal injury and sexual abuse/assault. Along with Ernie Teitell, Marco currently serves as court-appointed lead counsel for a class action lawsuit against a local hospital relating to the alleged misuse of multi-dose insulin pens — a claim that affects thousands of patients.

## Zachary A. Rynar, Associate

Zachary A. Rynar joined Silver Golub & Teitell in 2018 and has worked on a variety of complex civil litigation and class action matters. Zach's practice includes cases on behalf of defrauded mutual fund investors in the wake of a major investment fund being liquidated as well as a series of false claims *qui tam* actions against two major banks seeking to recover millions of dollars in unredeemed cashier's checks improperly withheld from the states in which they were purchased.

## Jennifer Sclar, Associate

Jennifer is deeply committed to protecting the rights of those who have been harmed by corporate malfeasance through the thoughtful use of class action litigation. Prior to joining SGT, Jennifer participated in the *In re Managed Care Litigation*, MDL No. 1334, Master File No. 00-1334-MD-MORENO (S.D. Fla. June 19, 2006), a multi-district litigation brought on behalf of over 600,000 physicians against the largest health insurers in America, alleging that payments were reduced, delayed and denied through the improper use of automated claims adjustment software. The recovery was valued at over $500 million and lead to significant changes in the health care industry.

## Krystyna D. Gancoss, Associate

A detail-oriented and diligent attorney, Krystyna enjoys the meaningful work of tackling complex legal issues to attain a favorable outcome on behalf of clients. Her most recent work has been focused on helping to make whole again class action plaintiffs who have been wrongfully damaged physically, emotionally, or financially.


SILVER GOLUB & TEITELL LLP

13

Our Attorneys

## Marissa Ganz, Associate

Marissa is an Associate in SGT's Class Action & Complex Litigation practice groups. In addition to her work at SGT, Marissa works with the Center for Children's Advocacy on the Immigrant Children's Justice Project *pro bono*, representing abused, neglected, or abandoned undocumented children. Prior to joining the firm, Marissa was an associate at several other reputable firms in Connecticut, and served as a clerk in the Bridgeport Superior Court.

## Ugo A. DePunzio, Associate

Ugo is an Associate in SGT's Class Action & Complex Litigation practice groups. He is a multilingual, multicultural attorney with 19+ years of legal industry experience, focused on domestic / international corporate litigation and investigations related to the Foreign Corrupt Practices Act (FCPA), and/or intellectual property litigation, and/or privacy statutes (HIPAA, CCPA, GDPR, CPRA, etc.), and/or shareholder litigation, including class-action.

## William McElligott , Associate

Bill McElligott is an Associate in SGT's Class Action & Complex Civil Litigation practice groups. He came to SGT after working for more than 20 years in a small family practice where he worked on a wide range of civil and criminal matters. Most recently at SGT, Bill litigated on behalf of a putative class of private hedge fund investors against the United States asset manager Allianz Global Investors U.S. LLC, a subsidiary of the German insurance company Allianz SE.

## Brett L. Burgs, Associate

Brett is an Associate in SGT's Class Action and Complex Litigation practice groups. He focuses on bringing value to clients in complex litigation and class actions. Brett's practice has included assisting with SGT's efforts on behalf of investors in who were defrauded by insurance giant Allianz SE's United States-based investment manager Allianz Global Investors U.S. LLC in a multi-billion dollar decades long fraud.


SILVER GOLUB & TEITELL LLP

# FIRM QUALIFICATIONS
Our Attorneys

## Robert Valenti, Jr., Associate

Robert brings almost 18 years of class action and complex litigation discovery experience to SGT. Robert's most recent accomplishment has been participating in litigation against Allianz Global Investors U.S. LLC ("AllianzGI"), a United States-based asset management subsidiary of German insurance giant Allianz SE that recently pleaded guilty to securities fraud after the equities market turmoil of 2020 exposed a decade-plus long multi-billion dollar fraud.

## Christopher M. Brain, Law Clerk (admission pending)

Christopher brings his own unique insights and experiences to his practice, having first qualified as a barrister in England and Wales and as a civil and commercial mediator before joining SGT. Christopher is well adept with various aspects of legal practice; particularly with written and oral advocacy, legal research, and drafting – having received specialist training in those areas.





SILVER GOLUB
& TEITELL LLP

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>NELNET SERVICING, LLC,<br><br>            Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>NELNET SERVICING, LLC,<br><br>            Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>NELNET SERVICING, LLC,<br><br>            Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| FRANCINE SIMMONS, individually and on behalf all others similarly situated, | Case No. 4:22-cv-3194 |
|---|---|
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated, | Case No. 4:22-cv-3195 |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3196 |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |

| | |
|---|---|
| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No.  4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| MAX EICHENBLATT, individually and on behalf of all others similarly situated, <br><br>      Plaintiff, <br><br>      v. <br><br> NELNET SERVICING, LLC, <br><br>      Defendant. | Case No. 4:22-cv-3227 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
|---|---|
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals, <br><br>      Plaintiff, <br><br>      v. <br><br> NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive, <br><br>      Defendants. | Case No. 4:22-cv-3241 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated, <br><br>      Plaintiff, <br><br>      v. <br><br> EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC, <br><br>      Defendants. | Case No. 8:22-cv-413 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3259<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a), APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3), AND TO FILE A CONSOLIDATED COMPLAINT AND SET A BRIEFING SCHEDULE**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND .................................................................................................. 2

III. ARGUMENT ....................................................................................................... 4

   A.   The District of Nebraska Actions Should Be Consolidated ................................ 4

   B.   The Court Should Appoint Interim Co-Lead Class Counsel ............................... 7

      1.   Legal Standard Under Fed. R. Civ. P. 23(g)(3) ........................................... 7

         i.   Lowey/SGT Performed Substantial Work in Investigating this Action ....................... 9

         ii.  Lowey/SGT are Knowledgeable and Experienced in Leading and Successfully Resolving Complex Consumer Class Actions, Including Data Breach Litigation ..... 10

         iii. Lowey/SGT are Committed to Devoting Significant Resources to Representing and Advancing the Interests of the Class ........................................................... 16

         iv.  Other Matters Pertinent to Lowey/SGT's Ability to Fairly and Adequately Represent the Interests of the Class ............................................................................ 17

            a.   Lowey/SGT Propose a Lean, Inclusive Structure ................................... 17

            b.   Lowey/SGT Will Promote Efficiency and Expedite the Litigation ....................... 18

   C.   The Court Should Set a Briefing Schedule for Filing and Responding to a Consolidated Complaint ...................................................................................... 20

IV.  CONCLUSION ................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Chen v. Target Corp.*, No. 21-cv-1247 (DWF) (DTS),
    2021 WL 6063632 (D. Minn. Dec. 22, 2021) ............................................................ 8

*Cisler v. Paul A. Willsie Co.*,
    No. 8:09-cv-365, 2010 WL 3237222 (D. Neb. Aug. 13, 2010) ................................. 4

*Cohen v. Ne. Radiology, P.C.*,
    No. 20-cv-1202 (VB), 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ....................... 11

*Delre v. Perry*,
    288 F.R.D. 241 (E.D.N.Y. 2012) ............................................................................. 7

*Duqum v. Scottrade, Inc.*,
    No. 4:15-cv-1537 (SPM), 2016 WL 1700427 (E.D. Mo. Apr. 28, 2016)................. 7

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ............................... 10

*Gennaro v. Nat'l Rsch. Corp.*,
    No. 4:17-cv-3152, 2017 WL 5905512 (D. Neb. Nov. 30, 2017) ............................. 6

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)............................... 10

*In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. 14-cv-10318, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015)................................ 8

*In re Rutter's Data Sec. Breach Litig.*,
    No. 1:20-cv-382, 2021 WL 3733137 (M.D. Pa. July 22, 2021) ............................ 11

*In re Rutter's Inc. Data Sec. Breach Litig.*,
    511 F. Supp. 3d 514 (M.D. Pa. 2021) .................................................................... 11

*In re Sonic Corp. Customer Data Breach Litig.*,
    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)....................... 10

*In re Terazosin Hydrochloride Antitrust Litigation*,
    220 F.R.D. 672 (S.D. Fla. 2004) ............................................................................ 10

*In re USAA Data Sec. Litig.*,
    No. 21-cv-5813 (VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022)..................... 11

ii

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) ..................................................... 11

*Kaplan v. 21st Century Oncology Holdings, Inc.*,
No. 2:16-cv-210, 2016 WL 9383330 (M.D. Fla. July 21, 2016), *report and recommendation adopted*, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) .......................... 5, 6

*Outten v. Wilmington Tr. Corp.*,
281 F.R.D. 193 (D. Del. 2012) ................................................................................................. 10

*UNeMed Corp. v. ProMera Health, LLC*,
No. 8:15-cv-135, 2016 WL 1259387 (D. Neb. Mar. 30, 2016) .................................................. 5

*Valentine v. Brown*,
No. 8:16-cv-131, 2016 WL 3910259 (D. Neb. July 14, 2016) .................................................... 4

## Rules

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................................... 8

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................................... 8, 18

Fed. R. Civ. P. 23(g)(3) ........................................................................................................... 1, 7

Fed. R. Civ. P. 23(g)(4) ............................................................................................................... 7

Fed. R. Civ. P. 42(a) ................................................................................................................ 1, 4

## Treatises

9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (2d ed. 1994)... 4

*Manual for Complex Litigation*, § 21.11 (4th ed. 2004) ........................................................ 7, 19

The Lowey and SGT Plaintiffs[1] submit this memorandum of law in support of their motion to: (1) consolidate the aforementioned 22 class actions pending against Defendants Nelnet Servicing, LLC ("Nelnet") and EdFinancial Services, LLC ("EdFinancial") (collectively, the "Defendants") in this District, including any and all subsequently-filed related actions, or cases filed involving similar facts or claims, pursuant to Fed. R. Civ. P. 42(a); (2) appoint Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT") as Interim Co-Lead Class Counsel (collectively, "Lowey/SGT") pursuant to Fed. R. Civ. P. 23(g)(3); and (3) to set a schedule for consolidated plaintiffs to file their Consolidated Complaint and for Defendants to respond.

## I.    INTRODUCTION

It has now become apparent that a minority group of Plaintiffs and Defendants are rushing to settle this case out from under the Class prior to the filing of a consolidated complaint or the appointment of interim class counsel. Lowey/SGT learned this disappointing fact shortly after oral argument before the JPML on December 1, 2022.[2] While it is easy to see why Defendants may want to rush to settle this case given the egregious violation of law and potential for tremendous liability resulting from their disclosure of 2.5 million student loan borrowers highly sensitive information, Defendants do not get to choose lead, interim class counsel. Nor should a few plaintiffs be allowed to hijack this case without going through the process created by Fed. R. Civ. P 23(g)(3).

---

[1] The Lowey and SGT Plaintiffs are William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazard, and Bridget Cahill in *Spearman, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3191 (D. Neb.) (the "*Spearman* Plaintiffs"); Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, and Rachel Woods in *Bump, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3204 (D. Neb.) (the "*Bump* Plaintiffs"); and Ian Scott, Lesly Canales, Eric Polanco, Joshua Sanchez, and Delilah Oliveira in *Scott, et al. v. Nelnet Servicing, LLC*, Case No. 4:22-cv-3259 (D. Neb.) (the "*Scott* Plaintiffs") (together with the *Spearman* and *Bump* Plaintiffs, collectively, the "Plaintiffs").

[2] *See In re: Nelnet Servicing, LLC, Customer Data Security Breach Litigation*, MDL No. 3053.

The Court should act swiftly and appoint Lowey/SGT, who as counsel in the *Spearman*, *Bump*, and *Scott* Actions represent 23 plaintiffs from 16 states—**more than half of all plaintiffs** asserting claims in this District—as Interim Co-Lead Class Counsel to protect the interests of the Class. As explained below, Lowey/SGT meet each of Rule 23(g)(3)'s requirements: they have done the work needed to prosecute the consolidated action and have the knowledge and experience required to do so; the Lowey/SGT structure also benefits from being extremely efficient, having only 2 firms, and will avoid waste or duplication of effort; and given their size, resources and experience, and history of working together (and with the assistance of capable local Omaha, Nebraska counsel, the Goosmann Law Firm, PLC), Lowey/SGT can cover any need that could arise for the Class without duplication, or unnecessary expense typically generated by the bloated leadership structures that appear in most data breach cases.

## II.  BACKGROUND

Nelnet is one of the largest student loan servicers in the United States, servicing $589.5 billion in student loans for over 17 million borrowers. In addition to servicing student loans, Nelnet provides online technology services such as web portal and payment processing services to other student loan servicers, including EdFinancial and the Oklahoma Student Loan Authority ("OSLA").

On August 26, 2022, Nelnet began publicly notifying state Attorneys General and approximately 2,501,324 impacted current and former Nelnet account holders that their highly valuable, protected personally identifiable information, including without limitation, their names, addresses, email addresses, phone numbers, and Social Security numbers (collectively, "PII") had been accessed and stolen by an unauthorized third-party (the "Data Breach").

In the aftermath of Nelnet's Data Breach announcement, beginning on August 30, 2022, 23 putative class action complaints were ultimately filed against Nelnet, with 2 actions naming both Nelnet and EdFinancial.[3] All but 3 actions were filed in or removed to the District of Nebraska.[4] Plaintiffs' complaints[5]—*Spearman*, *Bump*, and *Scott*—contain the *most plaintiffs* (23) and are brought by plaintiffs from the *most states* (16) (*i.e.,* Arizona, California, Connecticut, Colorado, Florida, Illinois, Indiana, Massachusetts, Michigan, New Mexico, New York, Pennsylvania, South Carolina, Texas, Utah, and Wisconsin). These states account for more than 60% of the nation's population, demonstrating that Lowey/SGT's clients are the most representative of the Class.

Plaintiffs' initiation of MDL proceedings ultimately had its desired catalyst effect. While the JPML denied transfer of the *Kohrell* Action to the District of Nebraska, Plaintiffs' MDL motion caused all but 1 out of the 23 actions to be filed in, removed to, or transferred to this District, ensuring that this litigation will primarily be litigated in Nebraska, where Nelnet is headquartered.

Additionally, all actions similarly allege that Nelnet failed to properly secure and safeguard the PII for approximately 2.5 million impacted current and former Nelnet account holders which was exposed in a hack that allowed unauthorized access to Nelnet's systems. All actions involve near identical factual allegations regarding the same Data Breach, have materially similar allegations against Defendants, and seek to certify materially similar classes.

---

[3] *See Kohrell v. Nelnet Servicing, LLC et al.*, Case No. 3:22-cv-314 (E.D. Tenn.) (the "*Kohrell* Action") and the *Quinn* Actions.

[4] The *Kitzler* Action was initially filed in the Central District of California and then transferred to the District of Nebraska; the *Quinn* Action was initially filed in Illinois state court, removed to the Northern District of Illinois, and then ultimately transferred to the District of Nebraska; and the *Kohrell* Action was filed in the Eastern District of Tennessee, where it remains pending.

[5] *See* Complaints in *Spearman*, *Bump*, and *Scott* Actions.

3

## III.   **ARGUMENT**

### A.  **The District of Nebraska Actions Should Be Consolidated**

"Federal Rule of Civil Procedure 42(a) allows for consolidation of cases involving common issues of law or fact as a matter of convenience and economy in judicial administration" *Valentine v. Brown*, No. 8:16-cv-131, 2016 WL 3910259, at *2 (D. Neb. July 14, 2016) (citing Fed. R. Civ. P. 42(a)). The Court has "broad discretion" to decide whether to consolidate matters. *Cisler v. Paul A. Willsie Co.*, No. 8:09-cv-365, 2010 WL 3237222, at *2 (D. Neb. Aug. 13, 2010) (internal citation omitted). Further, "[t]he consent of the parties is not required by Rule 42(a) for consolidation." *Valentine*, 2016 WL 3910259, at *2 (citing 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (2d ed. 1994)). When deciding whether to consolidate the actions, "the court must weigh the saving of time and effort that would result from consolidation against any inconvenience, expense, or delay that it might cause." *Valentine*, 2016 WL 3910259, at *2. "[D]istrict courts generally take a favorable view of consolidation." *Id.* (quoting Wright & Miller, § 2383).

Here the actions should be consolidated. Consolidation would save time and effort, as it would avoid duplicative motion practice and discovery. The actions raise the same common questions of law and arise from the same set of facts surrounding common Defendants' alleged failure to properly secure, safeguard, and protect the PII of Nelnet student loan borrowers in the same Data Breach.[6] The District of Nebraska Actions will involve substantially the same discovery. Consolidation would add efficiency and consistency in judicial rulings and would reduce delay and costs. *See UNeMed Corp. v. ProMera Health, LLC*, No. 8:15-cv-135, 2016 WL

---

[6] That fact that EdFinancial is named is not an impediment to consolidation *See UNeMed Corp.*, 2016 WL 1259387, at *3 (granting consolidation when the actions involved the same parties and the same issues, even though one of the actions involved additional parties).

1259387, at *3 (D. Neb. Mar. 30, 2016) ("Consolidation for discovery will promote the goals of

efficient use of judicial resources without leading to inconvenience, delay, unfair prejudice, or

additional expense.").

Indeed, if not consolidated, the District of Nebraska Actions would result in virtually

identical discovery requests, duplicative motion practice, and would cause an unnecessary drain

on judicial resources. This is still true despite minor variations in class definitions and state-

specific causes of actions. As explained in *Kaplan v. 21st Century Oncology Holdings*, a data

breach case, where the court granted a motion to consolidate various class complaints:

> [T]he Undersigned first finds that there is a substantial threat of
> inconsistent adjudications of common factual and legal issues if
> the cases are allowed to proceed separately. As stated above, all of
> the cases are pled as class actions and all of the cases allege a
> negligence claim. The majority of the cases share other substantive
> claims as well…
> …
> To be sure, the complaints in some of the cases assert claims that
> are not raised in the other related cases. Moreover, the putative
> class definitions vary among the related cases. Consolidation does,
> therefore, carry with it some risk of prejudice and also the
> possibility of confusion based upon these variations. The
> Undersigned finds, nevertheless, that the specific risks of prejudice
> and possible confusion are overborne by the risk of inconsistent
> adjudications of common factual and legal issues. In other words,
> with thirteen separate cases pending, the Undersigned finds that the
> risk of inconsistent adjudications of common factual and legal
> issues far outweighs any specific risks of prejudice and possible
> confusion that may be caused by variations in claims and class
> definitions. Moreover, the nuances in claims and putative class
> definitions can likely be addressed in the consolidated amended
> complaint through the use of putative subclasses once the request
> to appoint interim class counsel has been addressed.

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3

(M.D. Fla. July 21, 2016), *report and recommendation adopted*, No. 2:16-cv-210, 2016 WL

4204781 (M.D. Fla. Aug. 10, 2016) (internal citations omitted). To this end, courts have

recognized that consolidation is appropriate in data breach cases where two or more cases arise from the same occurrence. *See, e.g., Id.*, 2016 WL 9383330, at *2 ("all of the cases appear to arise from the same alleged data breach. Additionally, all of the cases are pled as class actions with class allegations under Fed. R. Civ. P. 23, and all of the cases share at least one similar substantive claim: negligence. Moreover, all cases were filed against a common Defendant"); *In re Rutter's Inc. Data Security Breach Litigation*, No. 1:20-cv-382, ECF No. 12 (M.D Pa. Mar. 26, 2020) (consolidating two data breach class actions), ECF No. 17 (April 3, 2020) (later consolidating two additional actions that were filed into the consolidated action).

In addition, to ensure continued judicial efficiency, the Court should order that any future actions that are filed, transferred, or removed to this Court based on the same or similar facts and circumstances be consolidated with this case. *See, e.g., Gennaro v. Nat'l Rsch. Corp.*, No. 4:17-cv-3152, 2017 WL 5905512, at *2 (D. Neb. Nov. 30, 2017) ("This Order shall apply to this Consolidated Action and any future-filed actions relating to the subject matter of this case."); *In re Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (consolidating "any future related actions, under the docket number of this, first filed case"), ECF No. 17 ("the Clerk of Court is directed to mark as "Related" and to consolidate with this action all future actions that are filed in, transferred to, or removed to this District that relate to the same data breach at issue in this case").

Finally, Defendants will suffer no prejudice by litigating one consolidated action rather than these 22—or potentially more—separate actions, and as a result, consolidation in the District of Nebraska would therefore benefit of all parties involved.

## B. The Court Should Appoint Interim Co-Lead Class Counsel

### 1. Legal Standard Under Fed. R. Civ. P. 23(g)(3)

Federal Rule of Civil Procedure 23(g)(3) provides "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The appointment of leadership here is appropriate (*and necessary*) in light of the large number of cases (22) involving overlapping claims and issues, as well as the recent development that mediation is currently being planned. *See Manual for Complex Litigation*, § 21.11 at 246 (4th ed. 2004) ("*Manual*") (when "there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. ***In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during*** precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and ***negotiating settlement***.") (emphasis added).[7] Given the number of lawyers involved in the various District of Nebraska Actions, the Court should appoint Interim Co-Lead Class Counsel, which will clarify the responsibilities among counsel for protecting the interests of the Class, and who will be able to speak with one legitimate, unified voice for all District of Nebraska Actions when negotiating with Defendants whenever mediation occurs.

Federal Rule of Civil Procedure 23(g)(4) mandates that class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). While, Federal Rule of

---

[7] "[A]ppointment of interim counsel is appropriate here because it will clarify responsibility for protecting the interest of the class during precertification activities and will promote efficient case management." *Duqum v. Scottrade, Inc.*, No. 4:15-cv-1537 (SPM), 2016 WL 1700427, at *1 (E.D. Mo. Apr. 28, 2016) (data breach case); *see also Delre v. Perry*, 288 F.R.D. 241, 247 (E.D.N.Y. 2012) ("In cases…where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management.") (internal citations and quotations omitted).

Civil Procedure 23(g)(3) provides no criteria for selecting interim counsel, however, Federal

Rule of Civil Procedure 23(g)(1)(A), which addresses the appointment of class counsel, provides

in appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv). The Court may also consider "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P.

23(g)(1)(B). "When appointing interim class counsel under Rule 23(g)(3), courts generally look

to the same factors used in determining the adequacy of class counsel set forth in Rule

23(g)(1)(A)." *Chen v. Target Corp.*, No. 21-cv-1247 (DWF) (DTS), 2021 WL 6063632, at *2

(D. Minn. Dec. 22, 2021); *see also In re Navistar Maxxforce Engines Mktg., Sales Pracs. &

Prod. Liab. Litig.*, No. 14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015) ("It is

generally accepted that the same considerations that govern the appointment of class counsel

once a class is certified govern the designation of interim class counsel before certification.").

Thus, the same factors apply here for the Court's analysis.

As discussed below, each of the relevant Rule 23(g)(1)(A) factors demonstrate that

proposed Interim Co-Lead Class Counsel of Lowey/SGT will be able to fairly and adequately

represent the interests of the Class in the consolidated action, including at any eventual

mediation.

i.       **Lowey/SGT Performed Substantial Work in Investigating this Action**

Under the first Rule 23(g)(1)(A) factor, Lowey/SGT have each committed appropriate, yet substantial, time and resources to organizing and working toward the advancement of this litigation, investigating and researching the potential legal theories and claims at issue (including multiple state consumer protection statutes), and researching and reviewing information relating to the factual underpinnings of the Data Breach and this litigation. Lowey/SGT are familiar with the facts and legal issues in this matter and intend to continue their pursuit of the claims on behalf of Plaintiffs and the Class.

Lowey/SGT have already: (1) drafted 3 class action complaints on behalf of 23 plaintiffs for 16 states – collectively the largest representation of plaintiffs from the greatest number of states (*see* Section II, *supra*); (2) initiated, briefed, and argued at the JPML proceedings – which ultimately had the desired catalyst effect of causing all but 1 out of the 23 actions to be filed in, removed to, or transferred to this District; and (3) coordinated with Defense counsel to negotiate extensions for their motion to dismiss, and conferred with Defense counsel regarding the planned mediation with their preferred counsel.

Lowey/SGT continues to perform substantial work that has been (and will be) valuable to the Class as the case moves forward. This includes, but is not limited to: (1) reviewing consumer communications concerning the Data Breach; (2) fielding outreach from impacted Nelnet borrowers and Class Members – as evidence by the recent filing of the *Scott* Action on December 7, 2022; (3) investigating the scope of the Data Breach, and Defendants' public response regarding the same; (4) researching additional potential claims arising from the Data Breach and defenses thereto; and (5) using this research to begin preparing a detailed, Consolidated Complaint.

Lowey/SGT have conducted all of the work necessary to aggressively and efficiently prosecute this litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of all necessary costs and expenses, including expert costs) necessary to aggressively litigate the claims on behalf Plaintiffs and the Class, in order to reach the best possible result, not just the quickest.

### ii.    Lowey/SGT are Knowledgeable and Experienced in Leading and Successfully Resolving Complex Consumer Class Actions, Including Data Breach Litigation

Lowey/SGT more than satisfy the second and third Rule 23(g)(1)(A) factors. Lowey/SGT have the requisite knowledge and experience in Data breach cases, which present unique and novel issues of fact and law that are always evolving. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases… are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Because data breach cases require an understanding of the technical issues of data hacking, data privacy measures, and industry standards, appointing interim co-lead class counsel experienced in such complex class action litigation, including data breach litigation and related issues, is in the best interest of the Class. *See, e.g., Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."); *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) ("The

consideration that the Court finds to be most persuasive, however, relates to Co-Lead Counsel's experience in, and knowledge of, the applicable law in this field.").

Here, Lowey/SGT, and their attorneys who will lead the litigation, both have extensive experience leading consumer class actions, including those involving data breach and data privacy issues against large corporate defendants such as Apple, Google, Wawa, Rutter's, Drizly – and have also created and developed significant favorable case law for data breach plaintiffs at the discovery and motion to dismiss stage on key issues, including Article III standing and the discoverability of internal investigative reports regarding the causes of the breach. *See, e.g., Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202 (VB), 2021 WL 293123, at *2 (S.D.N.Y. Jan. 28, 2021) (finding plaintiff adequately alleged Article III standing; allowed plaintiff's claims for negligence, breach of implied contract, and GBL § 349 to proceed); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514 (M.D. Pa. 2021) (finding plaintiffs adequately alleged Article III standing; allowed plaintiffs' claims for negligence, breach of implied contract, and unjust enrichment to proceed); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) (sustaining plaintiffs' claims for negligence and declaratory and injunctive relief to proceed); *In re Rutter's Data Sec. Breach Litig.*, No. 1:20-cv-382, 2021 WL 3733137 (M.D. Pa. July 22, 2021) (compelling production of defendant's forensic investigation report and related communications despite defendant's assertion of work product doctrine and the attorney-client privilege); *In re USAA Data Sec. Litig.*, No. 21-cv-5813 (VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) (finding plaintiffs adequately alleged Article III standing; allowed plaintiffs' claims for negligence, negligence *per se*, the federal Driver's Privacy Protection Act ("DPPA"), and injunctive relief to proceed).

11

Combined Lowey/SGT has approximately 67 attorneys (not including support staff) and have a history of working together. The qualifications and experience of Lowey/SGT are detailed in the accompanying firm resumes attached hereto as Exhibit 1 (Lowey Firm Resume) and Exhibit 2 (SGT Firm Resume).

### Christian Levis – Lowey Dannenberg, P.C.

Christian Levis is a partner in Lowey Dannenberg, P.C.'s New York office and head of the firm's data breach and privacy practice group. An avid computer programmer with experience developing both iOS and Android apps, Mr. Levis is involved in leading the prosecution of several consumer privacy actions against some of the largest technology companies in the world. *See, e.g.,* *Frasco v. Flo Health, Inc., et al.*, No. 3:21-cv-757 (JD) (N.D. Cal.) (class action against Meta and Google, amongst other companies, related to their surreptitious collection of sensitive medical information); *In re Google Assistant Priv. Litig.*, No. 5:19-cv-4286 (N.D. Cal.) (class action on behalf of Google Assistant Enabled Device users whose conversations were obtained by Google, LLC and shared with third parties without users' consent); *Lopez v. Apple, Inc.*, No. 19-cv- 4577 (N.D. Cal.) (class action on behalf of Siri-enabled device users whose conversations were obtained by Apple, Inc. and shared with third parties without users' consent); *Wesch, et al. v. Yodlee*, No 3:20-cv-5991 (N.D. Cal.) (class action on behalf of tens of millions of individuals whose financial data was collected without their consent by one of the largest data aggregators in the United States).

Mr. Levis has also levered his technological experience as lead or co-lead counsel in class actions on behalf of consumers and financial institutions adversely impacted by deficient data security and handling practices. This includes major payment card data breaches. *See, e.g., In re Wawa Data Security Litigation*, No. 19-cv-6019, <u>ECF No. 120</u> (E.D. Pa.) (appointing Mr. Levis as interim co-lead counsel on behalf of class of financial institutions in data breach compromising

12

tens of millions of individuals personal information); *In re Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (appointing Mr. Levis interim co-lead counsel on behalf of consumers impacted by data breach at Rutter's gas station and convenience store locations). As well as data breaches involving malware infected mobile apps and websites. *See Barr, et al. v. Drizly, LLC, et al.*, No. 1:20-cv-11492 (D. Mass.) (securing $7.1 million settlement in a data breach action against one of the largest alcohol delivery companies); *Hozza v. PrimoHoagies Franchising, Inc.*, No. 20-cv-4966 (D.N.J.) (representing cardholders impacted by data breach resulting from malware on restaurant chains ordering system).

Beyond just data breach and privacy cases, Mr. Levis has a proven track record of securing extraordinary results for Class members in complex class actions. For instance, Mr. Levis served with two other Lowey attorneys as court-appointed co-lead counsel representing Commonwealth of Pennsylvania Treasurer Joseph Torsella in *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (S.D.N.Y.) ("*GSE Bonds*"), a class action against sixteen of the world's largest banks that allegedly conspired to fix the prices of debt securities issued by government sponsored entities for almost a decade. Operating under an extremely tight litigation schedule, Mr. Levis led the Lowey team responsible for preparing the case for trial. Plaintiff settled the action with Defendants for more than $386 million. Mr. Levis, as well as other Lowey attorneys, received the *American Antitrust Institute* award for Outstanding Antitrust Litigation Achievement in Private Law Practice as recognition for these significant results. Mr. Levis has also been directly involved in achieving similar results in other large, complex class cases, such as:

- ***Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y.):** Lowey serves co-lead counsel representing CalSTRS in this proposed class action against 12 banks and brokers for the alleged manipulation of the Euro Interbank Offered Rate ("Euribor"). Settlements approved to date bring the total amount recovered for investors in Euribor-based derivatives to more than $491.5 million.

13

- ***Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y.):** Lowey is sole lead counsel of this proposed class action alleging that a group of 44 banks and brokers conspired the intentional and systematic manipulation of the Yen LIBOR and the Euroyen TIBOR benchmark, interest rates. To date, the court has granted final approval to $307 million in settlements.

Mr. Levis also manages Lowey's e-discovery infrastructure and has substantial experience in the use of analytics and technology-assisted document review in large class actions. For example, Mr. Levis developed "An Analytics Cookbook for Complex Cases" that was presented at a leading industry conference after this workflow saved the class in *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y.) an estimated $2.5 million in time and expenses. Mr. Levis leveraged these same techniques in the *GSE Bonds* case, to prioritize the review of more than 9.1 million pages of documents on an extremely tight discovery schedule. These skills are essential in large privacy cases where discovery tends to involve highly technical issues, the depositions of software engineers and other technology professionals, and the review of thousands (if not millions) of documents.

### Steven L. Bloch & Ian W. Sloss – Silver Golub & Teitell LLP

SGT partners Steven L. Bloch and Ian W. Sloss, along with founding partner David S. Golub, helm SGT's class action and complex litigation practice, which represents consumers and investors in data privacy, consumer protection, securities, antitrust, and environmental matters, among others. SGT undertook its first class action in 1983 successfully representing a nationwide class of 40,000 Xerox Corp. pensioners and, in the 1990's served as private lead counsel for the State of Connecticut in its sovereign enforcement action against the American tobacco industry, recovering $3.9 billion for Connecticut, with $370 million coming via special award from a panel of former Attorneys General in recognition of the contribution of Connecticut's SGT-led legal team in helping to achieve the national settlement. *See State of*

*Connecticut v. Philip Morris, Inc., et al.*, No. X02-CV-960148414S. And in, SGT obtained a $250+ million settlement on behalf of public sector union employees fired in violation of their First Amendment rights of free speech and association. *See SEBAC v. Rowland*, No. 3:03-cv-221 (D. Conn.).

More recently, SGT achieved extraordinary results on behalf of institutional and individual investors who were defrauded by Allianz Global Investors U.S. LLC ("AllianzGI") via knowingly representations made by AllianzGI regarding the risk profile of a complex options strategy used in a series of investment vehicles, including private hedge funds and publicly-traded mutual funds. SGT served as court-appointed co-class counsel for the putative private hedge fund investors in *In re Allianz Global Investors Structured Alpha Litigation*, No. 20-cv-7154 (S.D.N.Y.). After AllianzGI's motion to dismiss was denied in substantial part, AllianzGI settled with SGT's clients and other investors on individual bases. SGT then represented investors in the AllianzGI mutual funds in *Jackson v. Allianz Global Investors*, Index No. 651233/2021 (N.Y.S.), and on November 1, 2022, announced a $145 million settlement on their behalf. On December 6, 2022, Justice Andrew Borrok preliminarily approved the settlement.

Other representative matters in which Mr. Bloch and Mr. Sloss served or are serving in leadership roles include:

- ***Spencer v. Hartford Financial Services Group, Inc.*, No. 05-cv-1681(D. Conn.):** SGT served as court-appointed co-lead counsel and obtained a $72.5 million cash settlement on the eve of trial for two certified subclasses of approximately 22,000 owners of structured settlement annuities in a nationwide class action against Hartford Financial Services Group, Inc and its affiliates.

- ***Underwood et al. v. Coinbase Global, Inc.*, No. 21-cv-8353 (S.D.N.Y.):** SGT has been appointed co-lead counsel on behalf of a putative class of users of the digital asset trading platform operated by Coinbase Global, Inc. ("Coinbase"), alleging that Coinbase has been illegally operating an unlicensed securities exchange. Plaintiffs, on behalf of themselves and the proposed class of digital asset investors, are seeking, *inter alia*, rescissory damages pursuant to the Federal Securities laws. The case is currently pending

before Judge Engelmeyer in the Southern District of New York.

- ***Baby Food Contamination Litigation***. SGT is currently serving a leading role prosecuting claims against baby food manufacturers accused of producing baby food tainted with dangerous levels of toxic heavy metals. SGT Partner Steven L. Bloch has been appointed co-lead counsel by the Court in *In re: Beech-Nut Nutrition Company Baby Food Litigation*, No. 1:21-cv-133 (DNH) (CFH) (N.D.N.Y), and was appointed to the plaintiffs' executive committees by the courts in *Wilson, et al. v. Walmart Inc. et al.*, No. 3:21-cv-82 (E.D. Ark.) against Walmart.

- ***In re EpiPen Direct Purchaser Litigation***, **No. 20-cv-827 (D. Minn.):** SGT is part of a committee with court-appointed interim co-lead counsel representing direct purchaser plaintiff drug wholesalers Rochester Drug Co-Operative, Inc. ("Rochester Co-op") and Dakota Drug, Inc. ("Dakota Drug") in a proposed class action alleging that brand-name and generic EpiPen manufacturers and a group of pharmacy benefit managers ("PBMs") conspired to maintain supracompetitive prices for brand-name and generic EpiPens.

- ***In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation***, **No. 21-cv-1230 (W.D. Pa.):** SGT filed the first class action in the United States arising out of Philips' recall of CPAP, BiPAP, and mechanical ventilator devices due to the presence of a dangerous PE-PUR Foam that could cause users to suffer adverse health effects. SGT Partner Ian W. Sloss currently serves in a court-appointed leadership committee role in the MDL pending in the Western District of Pennsylvania.

These examples ultimately demonstrate that Lowey and SGT, and their attorneys, are both well-qualified to serve as Interim Co-Lead Class Counsel in the consolidated action.

### iii.   Lowey/SGT are Committed to Devoting Significant Resources to Representing and Advancing the Interests of the Class

As to the fourth, Rule 23(g)(1)(A) factor, Lowey/SGT are ready, willing, and able to expend the necessary resources to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in these cases. Far from a fly by night operation or 'new kid on the block,' both firms are well capitalized and have existed in their current firm structure for decades, with minimal attorney departures. Lowey/SGT have years of experience prosecuting and self-funding complex class action litigation, including actions against some of the largest companies in the world. Each firm has advanced millions of dollars to fund expenses in several of its cases, demonstrating a commitment to providing the resources and staffing needed to successfully prosecute class

actions. Lowey/SGT are also willing to advance all costs to prosecute this action and see it through completion, including advancing costs for document hosting, expert witnesses (both for liability and damages if necessary), and for trial.

Their resumes demonstrate their lengthy records of success leading complex class action cases. The experience here will be no different. In sum, Lowey/SGT are committed to pursuing the best interests of Plaintiffs and the Class in an efficient manner. They understand the time and resources necessary to pursue this action to a successful resolution. Their firms have already made significant investments of resources and time into the prosecution of these claims.

Lowey also brings its state-of-the-art in-house e-discovery infrastructure and proprietary algorithms to help speed up discovery and save the class time and money. An ISO 27001 certified law firm, Lowey maintains the unique capability to conduct end-to-end e-discovery completely in-house on its own secure discovery environment, a capability it developed and applied in numerous complex cases involving millions of documents, including most recently the *In re Google Assistant* privacy class action.[8] Lowey/SGT's ability to securely conduct discovery in-house is especially useful in a case of this nature, where the data at issue is particularly sensitive. Their firms possess the resources needed to prosecute this case to a successful resolution and will do so here.

### iv. Other Matters Pertinent to Lowey/SGT's Ability to Fairly and Adequately Represent the Interests of the Class

#### a. Lowey/SGT Propose a Lean, Inclusive Structure

The Court may also consider "any other matter pertinent to counsel's ability to fairly and

---

[8] This technology has resulted in significant cost-savings. For example, in *Sullivan v. Barclays plc*, Lowey litigated Sherman Act claims against eight multi-national banks on behalf of a class of investors for five years and requested only $155,362.11 in discovery-related expenses from a $491 million settlement. *See Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC), ECF Nos. 411, 483 (S.D.N.Y.); *see also GSE Bonds*, No. 19-cv-1704 (JSR), ECF No. 159 (S.D.N.Y.) ("Lowey Dannenberg represents that it maintains its own e-discovery infrastructure. Again, this is not a dispositive factor, but it weighs slightly in []Lowey's favor.").

adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Lowey/SGT propose a lean, inclusive structure—comprised of just 2 law firms—that avoids the "repeat player dynamic" often seen in large class actions, while simultaneously putting forth highly skilled attorneys with significant experience and the resources necessary to vigorously litigate the actions. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices For Large and Mass-Tort MDLs*, at 37, 46 (2d ed., Sept. 2018) ("[T]he strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued…Research shows that having a mix of experienced and new players enhances creativity and innovation, leads to better decision making and problem solving, and promotes discussion of novel concepts raised by those who historically have not been in leadership").[9] Leadership roles should be made available to *newer lawyers*, *In re Robinhood Outage Litig.*, No. 20-cv-1626 (JD), 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020), including attorneys like Mr. Levis and Mr. Sloss who are both under 40 years of age.

### b. Lowey/SGT Will Promote Efficiency and Expedite the Litigation

Often the greatest challenge in appointing a leadership structure is appointing counsel who will work cooperatively and collaboratively. For example, prior to working at SGT, Mr. Sloss used to work at Lowey, where he often worked with Mr. Levis and the rest of the Lowey team. Lowey/SGT will work aggressively to secure a just, speedy, and inexpensive determination in this action, all in the interest of achieving the best possible outcome for all Plaintiffs and the Class.

---

[9] *Available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

Lowey/SGT are confident they will be able to implement strategies to ensure the efficient and economical litigation of this matter. Lowey/SGT will recommend the use of proven methodologies from prior cases to monitor billing, control costs, review assignments, and avoid duplication of efforts of Plaintiffs' counsel. Both firms would be required to maintain contemporaneous timekeeping records recorded in one-tenths of an hour and report detailed monthly timekeeping records for review by the leadership structure. All block-billing will be prohibited and strictly enforced. Additionally, Lowey/SGT will also appropriately staff this action and communicate effectively to ensure that multiple attorneys and/or firms are not performing duplicative or unnecessary work. With the Court's approval, Lowey/SGT will also encourage the use of Zoom and other videoconferencing options for hearings and depositions. Such applications have been used successfully during the COVID-19 pandemic and the continued use of remote meetings, when feasible, will be an invaluable cost-saving measure.

Additionally, Lowey/SGT urge the Court to avoid appointing and oversized executive or steering committee and guarantee the consolidated action will only be litigated by the firms of the Court's choosing to efficiently litigate on the Class's behalf. *See Manual* §10.221 (explaining "[c]ommittees of counsel . . . sometimes lead to substantially increases costs, and . . . should try to avoid unnecessary duplication of effort and control fees and expenses."). All too often in data breach cases of this size, in order to garner support for a lead interim class counsel application, attorneys agree to bloated, oversized executive or steering committees, that come with the implicit promise of work to those supporting firms, which results in duplicative and unnecessary work product, unnecessary billing, and inflated lodestars. Ultimately, these inefficient structures disadvantage the Class in favor of creating unnecessary leadership positions that can hamstring interim class counsel who are forced to prioritize doling out assignments to fulfill promises over

what is best for the litigation. Lowey/SGT have not promised any work or position to any other counsel—the consolidated action will be litigated *only* by the Lowey/SGT attorneys at their respective firms.

Finally, Lowey/SGT have access to state-of-the-art in-house e-discovery infrastructure and top-notch data security—essential resources in safeguarding sensitive data in a data breach case. Lowey/SGT's combined talent, resources, and diverse perspectives will undoubtably ensure the most efficient and economical prosecution of the case.

### C. The Court Should Set a Briefing Schedule for Filing and Responding to a Consolidated Complaint

Plaintiffs propose an expeditious and efficient briefing schedule for the consolidated action. Plaintiffs propose filing a Consolidated Complaint within thirty (30) days from the consolidation order. Defendants will then have thirty (30) days from the date on which Plaintiffs file their Consolidated Complaint to file a response thereto. In the event that Defendants' response is a motion to dismiss, Plaintiffs will have twenty-one (21) days to file their opposition brief, and Defendants will have fifteen (15) days to file their reply brief.[10]

### IV.    CONCLUSION

Based upon the foregoing, Plaintiffs respectfully ask the Court to grant their motion and enter an Order: (1) consolidating the aforementioned District of Nebraska Actions; (2) appointing Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Interim Co-Lead Class Counsel; and (3) setting a briefing schedule for filing a Consolidated Complaint and motions to dismiss.

---

[10] *See Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (order consolidating data breach action and ordering plaintiffs to file an operative, consolidated amended complaint within sixty (60) days of the consolidation order; defendants to have thirty (30) days to file a response thereto; where defendants' response is a motion to dismiss, plaintiffs to have thirty (30) days to file their opposition brief; and defendants to have twenty-one (21) days to file a reply brief).

Dated: December 13, 2022

Respectfully submitted,

/s/ Joel M. Carney
Joel M. Carney, #21922
Jeana L. Goosmann, #22545
Joseph V. Messineo, #21981
**GOOSMANN LAW FIRM, PLC**
17838 Burke Street, Ste. 250
Omaha, NE 68118
Telephone: (402) 280-7648
carneyj@goosmannlaw.com
goosmannj@goosmannlaw.com
messineoj@goosmannlaw.com

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square
Fifteenth Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Christian Levis
Johnathan Seredynski
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
jseredynski@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

*Counsel for Plaintiffs William Spearman,
Brittni Linn, Jessica Alexander, Christopher
Sangmeister, Taylor Vetter, Nichole Allocca,
Kayli Lazard, Bridget Cahill, Pamela Bump,
Melissa Charbonneau, Douglas Conley, Noah
Helvey, Dallin Iler, Dustin Jones, Devinne
Peterson, Justin Randall, Sofia Rodriguez,
Rachel Woods, Ian Scott, Lesly Canales, Eric
Polanco, Joshua Sanchez, and Delilah
Oliveira*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(d)(3)

Undersigned counsel for Plaintiffs hereby certifies that this memorandum of law (the "Brief") complies with the word-count limit described of Local Civil Rule 7.1(d)(1)(A). Undersigned relied on the word count feature of the word-processing system, Microsoft Word, Version 2018, used to prepare the Brief. The actual number of words in the Brief, including all text (the caption, body, headings, footnotes, and quotations), is 8,169 words.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

*/s/ Joel M. Carney*_____
Joel M. Carney

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 13, 2022, a copy of this memorandum of law was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

                          */s/ Joel M. Carney*_____
                          Joel M. Carney

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

In Re:

Data Security Cases against NELNET
SERVICING, LLC,

                        Defendant.

Case No. 4:22-cv-03191

---

**DEFENDANT NELNET SERVICING, LLC'S NOTICE OF NON-OPPOSITION
TO CONSOLIDATION**

      Defendant, Nelnet Servicing, LLC ("Nelnet") does not oppose the Motions for

Consolidation pending before this Court. Nelnet takes no position on the pending requests for the

Court to appoint a leadership structure.

Dated:  January 17, 2023                Respectfully submitted,

                                  */s/ Claudia D. McCarron*

                                  Claudia D. McCarron
                                  MULLEN COUGHLIN LLC
                                  426 W. Lancaster Avenue, Suite 200
                                  Devon, PA 19333
                                  Telephone: (267) 930-4770
                                  Facsimile: (267) 930-4771
                                  cmccarron@mullen.law

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, a copy of this motion was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

*/s/ Claudia D. McCarron*
Claudia D. McCarron

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| JENNIFER HEGARTY, individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>        v. <br><br> NELNET SERVICING, LLC, <br><br>        Defendant. | Case No. 4:22-cv-3186 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| --- | --- |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>        v. <br><br> NELNET SERVICING, LLC, <br><br>        Defendant. | Case No. 4:22-cv-3187 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>        v. <br><br> NELNET SERVICING, LLC, <br><br>        Defendant. | Case No. 4:22-cv-3188 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3189 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3191 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3193 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| | |
|---|---|
| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No.  4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3207 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
|---|---|
| RYAN GAMEN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3209 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3211 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| MAX EICHENBLATT, individually and on behalf of all others similarly situated, <br><br>              Plaintiff, <br><br>              v. <br><br> NELNET SERVICING, LLC, <br><br>              Defendant. | Case No. 4:22-cv-3227 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
|---|---|
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals, <br><br>              Plaintiff, <br><br>              v. <br><br> NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive, <br><br>              Defendants. | Case No. 4:22-cv-3241 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated, <br><br>              Plaintiff, <br><br>              v. <br><br> EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC, <br><br>              Defendants. | Case No. 8:22-cv-413 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3259<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| GARNER J. KOHRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NELNET SERVICING, LLC, EDFINANCIAL SERVICES, LLC<br><br>Defendants. | Case No. 4:22-cv-3267<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J. |

**LOWEY/SGT PLAINTIFFS' RESPONSE TO
(1) KAPLAN FOX & KILSHEIMER LLP/MASON LLP'S AND (2) MILBERG
COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC/MORGAN & MORGAN
COMPLEX BUSINESS DIVISION/STUEVE SIEGEL HANSON LLP'S MOTIONS TO
APPOINT INTERIM CO-LEAD CLASS COUNSEL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

I.    INTRODUCTION ....................................................................................................... 1

II.   ARGUMENT ............................................................................................................... 3

      A.   MMS's Application is Lawyer Driven and Not in the Best Interests of the Class ............. 4

           i.    Premature Mediation was Not in the Best Interest of the Class ...................... 4

           ii.   MMS Group's Proposed Structure is Bloated and Inefficient ........................ 5

      B.   Lowey/SGT Represent the Majority of the Plaintiffs and the Most States ......................... 6

III.  CONCLUSION ........................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*In re 5-Hour Energy Mktg. v. Innovation Venture, LLC*,
  No. 13-cv-4001 (PSG), 2013 WL 12134144 (C.D. Cal. Nov. 8, 2013)...................................... 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 NRB, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ..................................... 7

*In re Packaged Ice Litig.*,
  No. 08-md-01952, 2009 WL 1518428 (E.D. Mich. June 1, 2009) ............................................ 3

**Rules**

Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv) ................................................................................................ 3

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................................................. 3

Fed. R. Civ. P. 23(g)(2)............................................................................................................ 3, 4, 5, 6

Fed. R. Civ. P. 23(g)(3)................................................................................................................... 3

**Treatises**

*Manual for Complex Litigation*, § 21.11 (4th ed. 2004) ............................................................... 5

The Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT")

Plaintiffs ("Lowey/SGT")[1] submit this memorandum of law in response to (1) the Kaplan Fox &

Kilsheimer LLP and Mason LLP (collectively, "KFM"), and (2) Milberg Coleman Bryson

Phillips Grossman, PLLC ("Milberg"), Morgan & Morgan Complex Business Division

("Morgan"), and Stueve Siegel Hanson LLP (collectively, "MMS") groups' motions to

respectively appoint themselves as interim co-lead class counsel.

## I.      **INTRODUCTION**

Of the three competing applicants for appointment as interim co-lead class counsel

Lowey/SGT stands out as the *only* applicant that can say they: (1) represent a *majority* of the

plaintiffs who have filed actions; (2) represent plaintiffs from the *greatest* number of states; (3)

propose an efficient leadership structure, with two highly capable law firms committed to

providing all necessary resources to litigate the consolidated action; and (4) have not put their

own interests before that of the Class or the majority of plaintiffs by working with Defendants to

end this case before it even started.

Lowey/SGT proactively filed their opening leadership motion when it became aware that

the MMS group was planning to seek a quick and cheap resolution of this matter that appeared to

put the interest of counsel before that of the Class. *See* ECF No. 35. The MMS's group's

application only confirms their intentions.

*First*, as Lowey/SGT and the Court learned in the MMS group's papers, the MMS group

was not just planning to settle this case quickly, they *already* conducted an all-day mediation on

November 21, 2022 – without notifying or including other plaintiffs' counsel, or even disclosing

the mediation to this Court, or to the JPML at the December 1, 2022 hearing. In fact, the

---

[1] The Plaintiffs in the *Spearman*, *Bump*, and *Scott* Actions are collectively referred to as the "Lowey/SGT Plaintiffs."

members of the MMS group seemingly took steps to actively conceal their plan by arguing to the JPML that the MDL proceedings, initiated by Lowey/SGT, was causing undue "delay" in the case and making it impossible for the parties to press forward.[2]

*Second*, the MMS group purports to seek a three-firm leadership structure that has the support of counsel in seventeen of the twenty-three Related Actions. But what the MMS group actually proposes is a *full employment program* for plaintiffs' lawyers – a bloated leadership structure with three firms 'herding cats' and twenty-one other firms expecting a piece of the pie. While courts are increasingly skeptical of the wisdom of multi-firm, pre-packaged leadership structures given their potential for duplication of effort and fees, patronage rewarding, and inefficiency, their proposal is particularly perplexing here, where the MMS group's application and actions to date suggest that they believe this case is both ripe for settlement before the filing of even a consolidated complaint, *and also* necessitates the work of twenty-four firms to litigate it. The MMS group's application implicitly recognized these inherent inefficiencies (and attempted to gloss over them) by attaching a "time and expense protocol" to one of their motions. *See* Morgan Brief, Exhibits A – B, *Carlson*, ECF Nos. 24-1 – 24-2. But no "protocol" can create an efficient way for twenty-four firms to efficiently participate in a case of this size.

*Third*, the MMS group's focus on the number of plaintiffs' counsel who support them and the number of "actions" they control again shows where they think the focus of this case

---

[2] *See, e.g., Kitzler*, JPML Response, MDL ECF No. 38 at 1 ("Plaintiff Kitzler believes that Movants' Motion under 28 U.S.C. §1407 (hereafter "Section 1407") is premature, unnecessary, ***and would cause undue delay*** and inconvenience to the Court and to the parties."); *Carlson*, JPML Response, MDL ECF No. 36 at 5 ("Based on the foregoing, transfer and consolidation under ***Section 1407 will not serve the convenience of the parties and witnesses or further the just and efficient conduct of the related actions***."); *Herrick, et al.*, JPML Response, MDL ECF No. 34 at 1, 3, 4 ("Plaintiffs oppose consolidation and centralization of the Member Cases and Related Actions, ***since there is no need to create additional delay*** and litigation through further briefing when voluntary coordination under 28 U.S.C. § 1404 is already taking place… ***The Motion to Transfer will only serve to delay*** relief for Class Members or potentially stifle it altogether… ***A pending MDL will only serve to stifle voluntarily coordination efforts, delay recovery for the Class***, and force the parties and their counsel to expend unnecessary resources on wasteful motion practice.").

should be – *on the lawyers*. But this case is not about counsel, or the number of actions – it is about the millions of Class members who had their data stolen as a result of the Defendants' misconduct. And, unlike the MMS group, it is Lowey/SGT who represent a *majority of the plaintiffs* in the Related Actions —twenty-three—by far the largest group of any leadership applicant; and who *represent plaintiffs from the greatest number of states*—sixteen.[3] And while the KFM group propose a similar leadership structure to Lowey/SGT, they represent only two plaintiffs in two Related Actions. It is the Lowey/SGT group who has moved this litigation forward both at the JPML and by moving for interim class counsel.

As a result, Lowey/SGT are the applicants who *most appropriately* meet each of <u>Fed. R. Civ. P. 23(g)(1)(A)(i)</u> – (iv); 23(g)(1)(B); 23(g)(2); and 23(g)(3)'s requirements, and are the applicants *best* able to represent the interests of the Class. Lowey/SGT possess a breadth and depth of expertise in complex litigation – particularly data breach and data privacy litigation – and are committed to expending the resources necessary to serve as interim co-lead class counsel in the consolidated action.

## II.   <u>ARGUMENT</u>

<u>Federal Rule of Civil Procedure 23(g)(2)</u> provides that "[i]f more than one adequate applicant seeks appointment, ***the court must appoint the applicant <u>best</u> able to represent the interests of the class***." <u>Fed. R. Civ. P. 23(g)(2)</u> (emphasis added). When appointing interim class counsel, "a court should conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *In re Packaged Ice Litig.*, No. 08-md-01952, <u>2009 WL 1518428</u>, at *1 (E.D. Mich. June 1, 2009). As KFM's and MMS's

---

[3] These states account for more than 60% of the nation's population, demonstrating that Lowey/SGT's plaintiffs are the most representative of the Class, given Nelnet's national role as a student loan servicer.

motions demonstrate, Lowey/SGT is still the applicant "best able to represent the interests of the class" under Fed. R. Civ. P. 23(g)(2).

**A. MMS's Application is Lawyer Driven and Not in the Best Interests of the Class**

  **i.  Premature Mediation was Not in the Best Interest of the Class**

MMS admits that they began trying to settle this case as early as September 2022, and then conducted an all-day mediation with Nelnet on November 21, 2022, while the JPML motions were pending. Milberg Brief at 2, 6, *Herrick*, ECF No. 25; Klinger Decl. at ¶ 6, *Herrick*, ECF No. 26. MMS would have this Court believe, that as the first-to-file, the mediation is evidence of their efforts to "lead the litigation on behalf of the Class," which allowed them to "gain[] an intimate understanding," of the case, as a result of informal non-adversarial discovery, supposedly making them "particularly well-suited to lead this litigation and ultimately resolve it on behalf of the class." Milberg Brief at 6. However, the only thing MMS did was use their position as first-to-file as a head start to get the case resolved before it even started.

Tellingly, the MMS group attempts to bolster this claim by pointing to their collective history of settling data breach cases with Nelnet's counsel in this case (Mullen Coughlin). Milberg Brief at 23, n. 11. However, MMS's relationship with Defense counsel, and their assembly line approach to data breach litigation – file, stay, mediate, settle, rinse, repeat, does not benefit the Class. In fact, it benefits everyone *but* the Class, including: the MMS group, their supporting counsel, and the Defendants, by providing quick resolution that limit the Defendants' liability and generates a risk-free fee for plaintiffs' counsel with minimal work. *See, e.g., Carrera Aguallo v. Kemper Corp., et al.*, Case No. 1:21-cv-01883, ECF No. 10 (N.D. Ill. April 22, 2021) (plaintiffs' counsel from the MMS group agreed with defendants to move the responsive pleading deadline back in order to conduct mediation with defendants, just 14 days

4

after filing the complaint); *Heath, et al. v. Insurance Technologies Corp., et al.*, Case No. 3:21-cv-01444, ECF No. 13 (N.D. Texas August 20, 2021) (joint motion to stay pending mediation with plaintiffs' counsel from the MMS group, filed 63 days after filing complaint and before motion to dismiss was filed).

MMS had already set this plan in motion when they appeared at the December 1st JPML hearing and failed to disclose to the Panel, or other plaintiffs' counsel, that they had conducted mediation just ten days prior when arguing *against* Section 1407 transfer to the District of Nebraska and claiming in their briefing that their cases had been 'delayed' as a result of the MDL proceedings. *See, e.g.,* MDL ECF Nos. 34, 36, 38.

Avoiding this exact type of situation is precisely why courts appoint interim class counsel. The *Manual for Complex Litigation*, § 21.11 at 246 (4th ed. 2004) ("*Manual*") states that when there are overlapping, duplicative, or competing suits pending the "designation of interim counsel clarifies responsibility for protecting the interests of the class" especially while "***negotiating settlement***." (emphasis added). MMS accepting Defendant's chosen pre-mediation documents in lieu of discovery and attempting to a settle quickly with friendly defense counsel is precisely why the *Manual* calls for the designation of interim class counsel in order to "protect[] the interests of the class." *Manual*, § 21.11.

### ii. MMS Group's Proposed Structure is Bloated and Inefficient

Pursuant to Fed. R. Civ. P. 23(g)(2), courts consider the *size* and *structure* of any proposed leadership slate in determining which applicant is best suited to serve as interim lead counsel. As noted above, MMS proposes a bloated, lawyer-driven, multi-firm structure with three co-lead applicants and *more than* a dozen and a half supporting counsel.[4] The only reason

---

[4] In addition, KFM argues in the alternative and "request[s] that Mr. George and Ms. Perry be appointed to an executive committee." (*Simmons*, ECF No. 23). In this consolidated action an executive committee is not warranted

the twenty-one non-leadership firms would agree to such an arrangement is MMS promising that those firms receive work, which would ultimately syphon fees away from the class. These sorts of arrangements are inherently fraught with inefficiencies and cuts against the goals of limiting unnecessary litigation cost by reducing duplication of work, and the creation of 'make-work.' Moreover, selecting that type of bloated leadership structure rewards such gamesmanship and encourages large numbers of firms filing in cases for the sole purposes of creating an aura of strength or momentum for a lead counsel bid. The MMS group offers no explanation for why such a large litigation team is necessary to prosecute this particular consolidated action.

In support of their bid, MMS submitted a proposed "time and expense protocol," to try assuage concerns about overbilling and inefficiency. *See* Morgan Brief, Exhibit A – B. However, the need for such an intensive billing "protocol" is itself indicative of the problems with MMS' proposed structure. By contrast, Lowey/SGT have not promised <u>any</u> work or position to any other firm or counsel. Lowey and SGT – along with capable, Omaha-based local counsel[5] – will be the *only* firms working on this matter and will be able to benefit the Class with a clear and effective division of labor and deployment of resources.

**B. Lowey/SGT Represent the Majority of the Plaintiffs and the Most States**

Under <u>Fed. R. Civ. P. 23(g)(2),</u> courts consider which firm represents the *largest* number

---

and would only add to inefficiencies, increased costs, and unnecessary duplication of efforts. Executive committees "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." *In re 5-Hour Energy Mktg. v. Innovation Venture, LLC*, No. 13-cv-4001 (PSG), <u>2013 WL 12134144</u>, at *2 (C.D. Cal. Nov. 8, 2013). This consolidated action does not call for an executive committee. It is comprised of lawsuits with substantially identical common law and state consumer law claims. Further, KFM does not contend that any plaintiffs' or Class members' interests are dissimilar or otherwise conflicting.

[5] Lowey/SGT is the *only* applicant seeking interim class counsel that has *true* Nebraska based local counsel located in this District: The Goosmann Law Firm ("Goosmann Law"). Goosmann Law is a women-owned law firm based in Omaha with experience litigating large, complex federal court cases. Rather than rush into this District and file the first complaint, Lowey/SGT took the time to affiliate with Nebraska-based counsel whose participation give the Class the benefit of counsel familiar with this District's litigation practices and customs.

of plaintiffs—both in terms of their overall numbers and from which states they come from.[6]

Lowey/SGT represent a *majority* of the plaintiffs in the Related Actions, twenty-three out of forty-five, or approximately 51%. KFM represents only two plaintiffs, and MMS—despite having support from almost as many law firms—represent a clear *minority* of the plaintiffs, nineteen. MMS misleadingly claims that "*the overwhelming majority of plaintiffs* and their counsel" support their application as class counsel. Milberg Brief at 6 (emphasis added). But that argument simply highlights the MMS group's prioritization of counsel (and actions) over *actual* plaintiffs and Class members. When it comes to *actual* "plaintiffs," Lowey/SGT is the clear leader.

Similarly, Lowey/SGT represent plaintiffs from the *greatest number of states*—sixteen (Arizona, California, Connecticut, Colorado, Florida, Illinois, Indiana, Massachusetts, Michigan, New Mexico, New York, Pennsylvania, South Carolina, Texas, Utah, and Wisconsin)—which accounts for more than 60% of the nation's population, making Lowey/SGT's plaintiffs the *most* representative of the Class *writ large*.[7]

Finally, appointment of Lowey/SGT and Goosmann Law will provide the Class with the benefit of the diversity of representation. Lowey, SGT, and Goosmann Law each boast diverse rosters of eminently qualified class action attorneys ready to contribute their experience and knowledge to this consolidated litigation on behalf of the Class.

## III.  **CONCLUSION**

As discussed in Lowey/SGT's opening consolidation and leadership motion, each of the relevant Rule 23(g) factors demonstrate that Lowey/SGT are the applicants who are <u>best</u> able to

---

[6] *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 NRB, <u>2011 WL 5980198</u>, at \*4 (S.D.N.Y. Nov. 29, 2011) ("The diversity and ***sheer number of plaintiffs*** supporting the Kirby McInerney Proposal are compelling factors in favor of their appointment") (emphasis added).
[7] KFM represents plaintiffs from two states and MMS represents plaintiffs from fourteen states.

represent the interests of the Class. Based upon the foregoing, the Lowey/SGT Plaintiffs respectfully ask the Court to deny KFM's and MMS's respective motions to appoint themselves as interim co-lead class counsel.

Dated: January 17, 2023                         Respectfully submitted,

                                                */s/ Joel M. Carney*
                                                Joel M. Carney, #21922
                                                Jeana L. Goosmann, #22545
                                                Joseph V. Messineo, #21981
                                                **GOOSMANN LAW FIRM, PLC**
                                                17838 Burke Street, Ste. 250
                                                Omaha, NE 68118
                                                Telephone: (402) 280-7648
                                                carneyj@goosmannlaw.com
                                                goosmannj@goosmannlaw.com
                                                messineoj@goosmannlaw.com

                                                Steven L. Bloch
                                                Ian W. Sloss
                                                Zachary Rynar
                                                **SILVER GOLUB & TEITELL LLP**
                                                One Landmark Square
                                                Fifteenth Floor
                                                Stamford, Connecticut 06901
                                                Telephone: (203) 325-4491
                                                Fax: (203) 325-3769
                                                sbloch@sgtlaw.com
                                                isloss@sgtlaw.com
                                                zrynar@sgtlaw.com

                                                Christian Levis
                                                Johnathan Seredynski
                                                **LOWEY DANNENBERG, P.C.**
                                                44 South Broadway, Suite 1100
                                                White Plains, NY 10601
                                                Telephone: (914) 997-0500
                                                Fax: (914) 997-0035
                                                clevis@lowey.com
                                                jseredynski@lowey.com

                                                Anthony M. Christina
                                                **LOWEY DANNENBERG, P.C.**
                                                One Tower Bridge

100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

*Counsel for Plaintiffs William Spearman,
Brittni Linn, Jessica Alexander, Christopher
Sangmeister, Taylor Vetter, Nichole Allocca,
Kayli Lazard, Bridget Cahill, Pamela Bump,
Melissa Charbonneau, Douglas Conley, Noah
Helvey, Dallin Iler, Dustin Jones, Devinne
Peterson, Justin Randall, Sofia Rodriguez,
Rachel Woods, Ian Scott, Lesly Canales, Eric
Polanco, Joshua Sanchez, and Delilah
Oliveira*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(d)(3)

Undersigned counsel for Plaintiffs hereby certifies that this memorandum of law (the "Brief") complies with the word-count limit described of Local Civil Rule 7.1(d)(1)(A). Undersigned relied on the word count feature of the word-processing system, Microsoft Word, Version 2018, used to prepare the Brief. The actual number of words in the Brief, including all text (the caption, body, headings, footnotes, and quotations), is 3,856 words.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

*/s/ Joel M. Carney*
Joel M. Carney

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, a copy of this memorandum of law was filed

electronically with the United States District Court for the District of Nebraska and served on all

counsel of record through the CM/ECF system.

/s/ Joel M. Carney
Joel M. Carney

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NELNET SERVICING, LLC,<br><br>  Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NELNET SERVICING, LLC,<br><br>  Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NELNET SERVICING, LLC,<br><br>  Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>   Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>   Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-3259 <br><br> The Honorable John M. Gerrard, U.S.D.J. <br> The Honorable Cheryl R. Zwart, U.S.M.J. <br><br> CLASS ACTION |
| GARNER KOHRELL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | **Case No. 4:22-cv-3267** <br><br> **The Honorable John M. Gerrard, U.S.D.J.** <br> **The Honorable Cheryl R. Zwart, U.S.M.J.** <br><br> **CLASS ACTION** |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a) AND FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

I.     INTRODUCTION .......................................................................................... 1

II.    BACKGROUND ............................................................................................ 4

III.   CONSOLIDATION ....................................................................................... 6

       A.     Legal Standard ..................................................................................... 6

       B.     Consolidation of the Related Actions is Warranted................................. 7

IV.   APPOINTMENT OF INTERIM CO-LEAD COUNSEL............................................ 9

       A.     Legal Standard ..................................................................................... 9

       B.     The Court Should Appoint Milberg, Morgan & Morgan, and Stueve Siegel Hanson as Interim Co-Lead Counsel Under Rule 23(g) ...................................... 10

             i.    Proposed Interim Co-Lead Counsel have performed substantial work investigating and litigating the claims ............................................ 10

             ii.   Proposed Interim Class Counsel Have Significant Relevant Experience ....... 12

                     a.   Milberg....................................................................................... 12

             iii. Proposed Interim Co-Lead Counsel have committed, and will continue to commit, the resources necessary to represent the class ............................. 16

             iv. Other Factors Support Designating Proposed Interim Co-Lead Counsel ....... 17

       C.     The First-to-File Rule Further Supports the Appointment of Proposed Interim Co-Lead Counsel.......................................................................... 24

V.     CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK),
    2014 WL 835174 (D. Minn. Mar. 4, 2014) ...................................................................... 9, 10

*Biondi v. Scrushy*,
    820 A.2d 1148 (Del. Ch. 2003) ........................................................................................ 25

*Blair v. Equifax Check Servs. Inc.*,
    181 F.3d 832 (7th Cir. 1999) ............................................................................................ 7

*Cappello v. Franciscan All., Inc.*,
    No. 3:16-CV-290-TLS-MGG, 2017 WL 781609 (N.D. Ind. Feb. 28, 2017) ........................ 10

*Carlin v. DairyAmerica, Inc.*,
    2009 WL 1518058 (E.D. Cal. May 29, 2009) ...................................................................... 24

*Devlin v. Transp. Commc'ns Int'l Union*,
    175 F.3d 121 (2d Cir.1999) (internal citations and quotations omitted) .................................. 7

*E.E.O.C. v. HBE Corp.*,
    135 F.3d 543 (8th Cir. 1998) ............................................................................................ 7

*Enter. Bank v. Saettele*,
    21 F.3d 233 (8th Cir. 1994) .............................................................................................. 7

*First Choice Federal Credit Union v. The Wendy's Co., et al.*,
    2:16-cv-506, ECF No. 20 (W.D. Pa. July 12, 2016) ............................................................ 9

*Greater Chautauqua Federal Credit Union v. Kmart Corp. et al.*,
    1:15-cv-02228, ECF No. 44 (N.D. Ill.) .............................................................................. 9

*In re Aluminum Phosphide Antitrust Litig.*,
    No. 93-2452, 1994 WL 481847 (D. Kan. May 17, 1994).................................................... 17

*In re Insulin Pricing Litig.*,
    2017 WL 4122437 (D.N.J. Sept. 18, 2017) ........................................................................ 24

*In re Mun. Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) ...................................................................................... 24

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004) ...................................................................................... 12

*In re Wendy's Co. S'holder Derivative Litig.*,
No. 1:16-cv-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018)............................................ 17

*Kaplan v. 21st Century Oncology Holdings, Inc.*,
No. 2:16-cv-210, 2016 WL 9383330 (M.D. Fla. July 21, 2016), report and recommendation
adopted, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) (internal citations
omitted) ..................................................................................................................................... 8

*Kubiak v. Barbas*,
No. 3:11-cv-141, 2011 WL 2443715 (S.D. Ohio June 14, 2011)........................................... 17

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)................................................................................................................. 7

*Michelle v. Arctic Zero, Inc.*,
2013 WL 791145 (S.D. Cal. Mar. 1, 2013) ........................................................................... 24

*Moehrl v. Nat'l Ass'n of Realtors*,
No. 19-cv-01610, 2020 WL 5260511 (N.D. Ill. May 30, 2020)........................................... 9

*Moradi v. Adelson*,
2011 WL 5025155 (D. Nev. Oct. 20, 2011) ......................................................................... 25

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ................................................................................................. 8

*Richey v. Ells*,
2013 WL 179234 (D. Colo. Jan. 17, 2013)........................................................................... 24

*Roe v. Arch Coal, Inc.*,
No. 4:15-cv-910, 2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ............................................ 9

*Seguro de Servicio de Salud v. McAuto Sys. Group*,
878 F.2d 5 (1st Cir. 1989)...................................................................................................... 7

*Steele v. United States*,
2015 WL 4121607 (D.D.C. June 30, 2015)........................................................................... 24

*Syzmczak v. Nissan N. Am., Inc.*,
Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306 (S.D.N.Y. May 15, 2012) ........ 9

*UNeMed Corp. v. ProMera Health, LLC*,
No. 8:15CV135, 2016 WL 1259387 (D. Neb. Mar. 30, 2016) ................................................ 8

**<u>STATUTES</u>**

<u>28 U.S.C. § 1404</u> ................................................................................................. 5

<u>28 U.S.C. § 1407</u> ................................................................................................. 5

**<u>OTHER AUTHORITIES</u>**

7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005) ............................... 10

Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018) ........................................................ 22

*Manual for Complex Litig.* § 10.21 ........................................................................ 22

*Manual for Complex Litig.* § 10.22 ................................................................. 10, 17

*Manual for Complex Litig.* § 21.11 (4th ed. 2004) ................................................. 9

**<u>RULES</u>**

<u>Fed. R. Civ. P. 23(g)</u> .................................................................................. 1, 10, 24

<u>Fed. R. Civ. P. 23(g)(1)(A)</u> ............................................................................. 10

<u>Fed. R. Civ. P. 23(g)(1)(A)</u>-(B) ....................................................................... 10

<u>Fed. R. Civ. P. 23(g)(1)(B)</u> ............................................................................. 10

<u>Fed. R. Civ. P. 23(g)(1)(C)</u> ............................................................................. 16

<u>Fed. R. Civ. P. 23(g)(2)</u> .................................................................................... 1

<u>Fed. R. Civ. P. 23(g)(3)</u> ............................................................................. 1, 9, 12

<u>Fed. R. Civ. P. 42</u> ........................................................................................ 1, 6, 7

Pursuant to Fed. R. Civ. P. 23(g), Milberg Coleman Bryson Phillips Grossman LLC ("Milberg") moves for appointment as interim class counsel together with Stueve Siegel Hanson LLP and Morgan & Morgan Complex Litigation Group (collectively, "Proposed Interim Co-Lead Counsel"). As explained below, the appointment of Milberg, Stueve Siegel Hanson, and Morgan & Morgan as Interim Co-Lead Class Counsel will provide the counsel "best able to represent the interests of the class." See Fed. R. Civ. P. 23(g)(2).

Under Federal Rules of Civil Procedure 23(g)(3) and 42, Plaintiffs Jesse Herrick, Carey M. Ballard, Amanda Beasley, Jennifer Hegarty, and Barbara Miller (the "First Filed Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move for consolidation of the above captioned actions currently pending in this Court (the "Related Actions") and for the appointment of Milberg, Morgan & Morgan, and Stueve Siegel Hanson as Interim Co-Lead Counsel in this matter.[1] First Filed Plaintiffs further move the Court to set a schedule for the filing of a consolidated complaint and briefing on any motions related to the same.

## I.      INTRODUCTION

Proposed Interim Co-Lead Counsel are the right team to guide this litigation for the putative class members. They are nationally recognized as leaders in data breach litigation and have litigated and resolved more data breach class actions than any other law firm involved in this litigation, including some of the most high-profile data breach cases ever filed. Moreover, with over 800 attorneys combined among the three firms, they have the resources necessary to prosecute and take to trial a complex data breach class action like the one before this Court. Their appointment will best serve the Class.

---

[1] Undersigned counsel met and conferred with Defendant's counsel. Defendant's Counsel takes no position regarding this Motion to Consolidate and Appoint Interim Class Counsel.

1

Proposed Interim Co-Lead Counsel were the first to file a case arising out of this data breach[2] and since then have been intimately involved in investigating, prosecuting, and coordinating this litigation, including hosting an initial plaintiffs' coordination call on September 9, 2022 and working with cases pending outside of the District of Nebraska under 1404 to transfer those cases to this District for the efficient prosecution of this matter. Declaration of Gary M. Klinger in Support of Plaintiffs' Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(3) ("Klinger Decl."), ¶¶ 2-4. Proposed Interim Co-Lead Counsel have also conducted a mediation with Defendant Nelnet Servicing, LLC ("Defendant" or "Nelnet") to explore resolution of this case. *Id.* ¶ 6. Although a settlement was not reached, Proposed Interim Co-Lead Counsel became intimately familiar with this case as they exchanged informal discovery with Defendant and learned about the defenses Defendant may raise should this litigation move forward. *Id.* Moreover, Defendant's counsel has indicated they are ready to re-engage in settlement discussions should this Court appoint Proposed Interim Co-Lead Counsel as class counsel. ***Notably, Proposed Interim Co-Lead Counsel are supported by Plaintiffs' counsel in 16 of the 23 Related Actions***.[3] *See* Klinger Decl. ¶¶ 7-19.

---

[2] *Herrick v. Nelnet Servicing, LLC*, No. 4:22-cv-03181 (filed Aug. 30, 2022).

[3] Proposed Interim Co-Lead Counsel have the support of counsel for Plaintiffs in the following actions: *Herrick v. Nelnet Servicing, LLC*, No. 4:22-cv-03181-JMG, (D. Neb.); *Carlson v. Nelnet Servicing, LLC*, No. 4:22-cv-03184-JMG (D. Neb.); *Ballard v. Nelnet Servicing, LLC*, No. 4:22-cv-03185, (D. Neb.); *Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb.); *Beasley v. Nelnet Servicing, LLC*, No. 4:22-cv-03187 (D. Neb.); *Varlotta v. Nelnet Servicing, LLC*, No. 4:22-cv-03188, (D. Neb.); *Hollenkamp v. Nelnet Servicing, LLC*, No. 4:22-cv-03189, (D. Neb.); *Miller v. Nelnet Servicing, LLC*, No. 4:22-cv-03193, (D. Neb.); *Freeman v. Nelnet Servicing, LLC*, No. 4:22-cv-03197, (D. Neb.); *Sayers v. Nelnet Servicing, LLC*, No. 4:22-cv-03203, (D. Neb.); *Gamen v. Nelnet Servicing, LLC*, No. 4:22-cv-03209, (D. Neb.); *Freeland v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03211 (D. Neb.); *Kitzler v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03241, (D. Neb.); *Quinn v. EdFinancial Services, LLC et al*, No. 8:22-CV-00413, (D. Neb.); *Eichenblatt v.*

In stark contrast, counsel for plaintiffs in the later filed actions who filed a competing application[4] have done nothing to advance this litigation. As described below, without consultation with counsel for any of the Related Actions, they filed an unsuccessful motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking centralization. The motion only served to delay this litigation and was ultimately denied because self-consolidation in the District of Nebraska was already well underway thanks to the efforts of Proposed Interim Co-Lead Counsel, who contacted plaintiff's counsel for the actions pending in California, Illinois and Florida and convinced them to transfer their actions. Klinger Decl. ¶ 4. Additionally, following their unsuccessful motion with the JPML, the Minority Leadership Application then moved for leadership and consolidation in this Court—again, without conferring with any of the counsel in the Related Actions. Had they done so, they would have realized that the vast majority of plaintiffs and law firms involved in this litigation prefer Proposed Interim Co-Lead Counsel to represent the interests of the Class.

For these reasons, First Filed Plaintiffs propose that Interim Co-Lead Counsel, in consultation with counsel for all Related Actions, have responsibility for strategic decisions associated with the prosecution of these consolidated cases (and any subsequently filed consolidated case). As described herein, this proposed leadership structure has the support of the majority of firms involved in this litigation, and it will permit Plaintiffs to prosecute this case efficiently and in the best interests of the putative classes. Proposed Interim Co-Lead Counsel are

---

*Nelnet Loan Servicing, LLC*, 4:22-cv-03227 (D. Neb.); and *Joaquin-Torres v. Nelnet Servicing, LLC*, 4:22-cv-03196 (D. Neb.).

[4] *Spearman, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3191 (D. Neb.) ("*Spearman*") and *Bump, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3204 (D. Neb.) ("*Bump*") (hereinafter the "Minority Leadership Application"). Counsel for the Minority Leadership Application also filed third case in this litigation (*Scott v. Nelnet Servicing, LLC*, No. 4:22-cv-03259 (D. Neb. Dec. 7, 2022) ("*Scott*")) in an apparent attempt to self-promote support for their proposed leadership group.

experienced with handling class action litigation, especially data breach and privacy cases, and have performed substantial work investigating, originating, coordinating, and litigating these claims. Furthermore, Proposed Interim Co-Lead Counsel have the experience, knowledge, and resources to continue to prosecute this action in the putative classes' best interest, including substantial experience litigating privacy and data breach class actions. Additionally, Proposed Interim Co-Lead Counsel have a history of working together and with counsel for most of the Related Actions, and will continue to work cooperatively and effectively towards the interests of the proposed classes in the event they are appointed as Interim Co-Lead Counsel.

## II.    BACKGROUND

This action stems from a data breach suffered by Defendant Nelnet Servicing, LLC (the "Data Breach"), a technology service provider headquartered in Lincoln, Nebraska. Nelnet administers loan services to student loan borrowers and financial institutions and collects and maintains the sensitive, non-public personal identifying information ("PII") of millions of consumers nationwide. On or about July 21, 2022, an unknown criminal actor breached Defendant's security system and accessed the PII stored therein. The Data Breach was reported by Defendant on or around August 26, 2022 and resulted in the theft of PII of over 2.5 million student loan borrowers.

Counsel for First Filed Plaintiffs began investigating the claims at issue here two weeks before Defendant publicly announced the Data Breach and filed the very first action, *Herrick v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03181, on August 30, 2022, in the District of Nebraska. Since the filing of this action, Nelnet has been named in an additional 22 actions related to the Data Breach, all but four of which have been filed in this District. Three of the four actions not filed in this District were subsequently transferred to this District thanks to the efforts Proposed

Interim Co-Lead Counsel. In particular, Attorney Gary M. Klinger of Milberg, affirmatively contacted plaintiff's counsel for three of the actions—*Quinn v EdFinancial Services, LLC et al.*, No. 1:22-CV-05467 (N.D. Ill. filed October 5, 2022); *Kitzler v. Nelnet Servicing, LLC*, No. 2:22-cv-06550 (C.D. Cal., filed Sept. 13, 2022); and *Eichenblatt v. Nelnet Servicing, LLC*, No. 6:22-CV-01794 (M.D. Fla. filed Oct. 3, 2022)—and convinced them that this litigation should be self-consolidated in the District of Nebraska. As a result, those actions voluntarily transferred to the District of Nebraska. *See* Klinger Decl. ¶ 4.

Nonetheless, without consulting counsel in other Related Actions, plaintiffs in two late-filed actions, the *Spearman* and *Bump* actions, moved before the JPML under 28 U.S.C. § 1407 to centralize this litigation in the District of Nebraska, which was largely opposed by First Filed Plaintiffs as unnecessary given that self-consolidation was already underway and the JPML motion would only serve to delay the litigation and cause the parties to incur unnecessary costs to brief and argue the motion—all to the detriment of the class. Counsel on the first-filed case, *Herrick*, presented oral argument for the position that centralization was premature, inefficient, and interfered with informal consolidation between the parties under 28 U.S.C. § 1404 – a position ultimately accepted by the JPML. *Id*. ¶ 5. In denying the *Spearman* and *Bump* cases' hasty § 1407 request, the JPML concluded that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, MDL No. 3053, ECF No. 60.[5] The JPML further noted that "voluntary cooperation and coordination among the parties" is preferred to centralization, just as Proposed Interim Co-Lead Counsel was already orchestrating. *Id*.

---

[5] Counsel in the *Spearman* and *Bump* actions subsequently filed a third action following the JPML's denial of their attempt to centralize proceedings, *Scott, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3259 (D. Neb.).

While the JPML motion was pending, Proposed Interim Co-Lead Counsel continued to lead the litigation on behalf of the Class. On November 21, 2022, they participated in an all-day mediation with the Hon. Louis Meisinger (Ret.) of Signature Resolution. Klinger Decl. ¶ 6. Prior to that mediation, First Filed Plaintiffs served, and Defendant responded to, informal discovery requests regarding the nature of the data breach, the size and scope of the breach, and other information necessary to evaluate a potential classwide settlement. *Id*. In other words, Proposed Interim Co-Lead Counsel have gained an intimate understanding of the data breach that make them particularly well-suited to lead this litigation and ultimately resolve it on behalf of the class.

On December 13, 2022, and following their unsuccessful JPML motion, plaintiffs in the *Spearman, Bump, and Scott* actions then filed a motion to consolidate the actions against Nelnet and to appoint their attorneys as lead counsel. *See Spearman*, Case No. 4:22-cv-03191-JMG-CRZ, ECF Nos. 33-35. Counsel for plaintiffs in the *Spearman*, *Bump, and Smith* actions, who are the same counsel across the three cases, again did not confer with counsel in any of the other Related Actions before filing their motion. It appears no other plaintiffs or counsel support the Minority Leadership Application. Conversely, Proposed Interim Co-Lead Counsel have worked together and with counsel for the Related Actions to self-organize and their cooperative efforts have secured the support of plaintiffs and their counsel for 16 of the 23 Related Action. *See* Klinger Decl. ¶¶ 7-19. In other words, the overwhelming majority of plaintiffs and their counsel support the appointment of Proposed Interim Co-Lead Counsel as class counsel.

## III.    CONSOLIDATION

### A.    Legal Standard

Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure, which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a). FRCP 42 permits consolidation of cases involving common questions of law or fact. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998) ("All claims and issues sharing common aspects of law or fact may be consolidated to avoid unnecessary cost or delay."). Consolidation is meant to promote judicial convenience and judicial economy and "should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir.1999) (internal citations and quotations omitted); *see also Blair v. Equifax Check Servs. Inc.*, 181 F.3d 832, 839 (7th Cir. 1999) ("By far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single judge."). The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law." *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994) (quoting *Seguro de Servicio de Salud v. McAuto Sys. Group*, 878 F.2d 5, 8 (1st Cir.1989)). The Court must also consider whether consolidation would lead to "inefficiency, inconvenience, or unfair prejudice to a party." *HBE Corp.*, 135 F.3d at 551.

### B. Consolidation of the Related Actions is Warranted

Here, consolidation of the Related Actions under Rule 42 is warranted, as the actions raise the same questions of law, arise from the same set of facts surrounding the Data Breach, and define substantially overlapping classes of impacted individuals. Each of the Related Actions seek to represent classes of individuals whose PII was compromised as a result of Defendant's acts and

omissions regarding data security, and each seek to represent at least a nationwide class of individuals whose PII was compromised in the Data Breach. Moreover, of the 23 Related Actions, each names Nelnet as a Defendant while only two[6] name EdFinancial Services LLC in addition to Nelnet as a Defendant. *See UNeMed Corp. v. ProMera Health, LLC*, No. 8:15CV135, 2016 WL 1259387, at *3 (D. Neb. Mar. 30, 2016) (ordering consolidation because "[a]lthough the one action involves four parties and the other two, it appears the cases involve common questions of law and fact."). Similarly, all of the Related Actions assert claims for negligence and breach of contract against Nelnet in addition to other tort and/or state statutory claims. Accordingly, despite minor variations in the state specific classes or claims across the Related Actions, the common claims arising out of the same factual allegations make consolidation appropriate. As the Middle District of Florida noted:

> [T]he specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. In other words, with thirteen separate cases pending, the Undersigned finds that the risk of inconsistent adjudications of common factual and legal issues far outweighs any specific risks of prejudice and possible confusion

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3 (M.D. Fla. July 21, 2016), report and recommendation adopted, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) (internal citations omitted).

Indeed, data breach cases like the one at issue here are particularly well suited to consolidated proceedings and federal courts routinely order that such cases be consolidated. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 690 (7th Cir. 2015); Order of July 12, 2016, *First Choice Federal Credit Union v. The Wendy's Co., et al.*, 2:16-cv-506, ECF No. 20 (W.D. Pa.

---

[6] *Kohrell v. Nelnet Servicing, LLC*, No. 4:22-CV-03267, (D. Neb.) and *Quinn v. EdFinancial Services, LLC et al*, No. 8:22-CV-00413 (D. Neb.).

July 12, 2016); *see generally* Consol. Am. Compl., *Greater Chautauqua Federal Credit Union v. Kmart Corp. et al.*, 1:15-cv-02228, ECF No. 44 (N.D. Ill.).

If not consolidated, separately litigating the Related Actions would result in virtually identical discovery requests, duplicative motion practice, and would cause an unnecessary drain on party and judicial resources. In the interest of efficiency, First Filed Plaintiffs also ask that the Court enter a schedule for the filing of a consolidated complaint and any motions or briefing related to the same.

## IV.   APPOINTMENT OF INTERIM CO-LEAD COUNSEL

### A.   Legal Standard

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3) (cited in *Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK), 2014 WL 835174, at *2 (D. Minn. Mar. 4, 2014)); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020).  Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements.  *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig*. § 21.11 (4th ed. 2004)).

Determining the appointment of lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action

and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *Adedipe*, 2020 WL 835174, at *2 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig*. § 10.22 (4th ed. 2004) . The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of the Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all the parties on their side, and that their charges will be reasonable." *Manual for Complex Litig*. § 10.22. The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221.

### B. The Court Should Appoint Milberg, Morgan & Morgan, and Stueve Siegel Hanson as Interim Co-Lead Counsel Under Rule 23(g)

Proposed Interim Co-Lead Counsel satisfy all requirements for appointment by the Court.

#### i. *Proposed Interim Co-Lead Counsel have performed substantial work investigating and litigating the claims.*

10

The Proposed Interim Co-Lead Counsel have been diligent in investigating and advancing this litigation. Among other things, counsel for First Filed Plaintiffs began investigating the Data Breach two weeks before it was publicly announced by Defendant. Klinger Decl. ¶ 2. Counsel's investigation prior to filing the first filed Related Action included: analyzing the circumstances surrounding the Data Breach, interviewing consumers injured by the Data Breach, researching legal claims, drafting initial pleadings, engaging a retired FBI agent to investigate the scope of the Data Breach, engaging other experts in the area of data security and damages, organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward. *Id*. ¶¶ 2-4. Counsel also appeared at the JPML hearing and successfully defeated an unnecessary and wasteful JPML motion. *Id*. ¶ 5. Indeed, counsel for First Filed Plaintiffs assisted with investigating, researching, and drafting complaints in five of the Related Actions and, as a result of their efforts, counsel for 16 of the 23 Related Actions support the proposed leadership structure. *See id*. ¶¶ 7-19.

Moreover, Proposed Interim Co-Lead Counsel have worked with counsel for Defendant to explore a mediated resolution of the litigation. While Proposed Interim Co-Lead Counsel were unable to reach an agreement with Defendant regarding settlement, having the support of 16 of the 23 Related Actions and deep experience negotiating with Defendant, Proposed Interim Class Counsel remain best suited to lead future settlement discussions with Defendant on behalf of the proposed classes.

Because the data breach at issue is egregious in terms of the information exposed and the number of victims affected, Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Co-Lead Counsel's efforts at self-organization were

successful as 16 of the 23 Related Actions support the organizational structure advanced by Proposed Interim Co-Lead Counsel herein. *Id.*

The Proposed Interim Co-Lead Counsel operate as a cohesive, well-organized group. Work assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity. Going forward, and if appointed, the Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing the Proposed Interim Lead Counsel under Fed. R. Civ. P. 23(g)(3).

### ii. Proposed Interim Class Counsel Have Significant Relevant Experience

Proposed Interim Lead Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Proposed Interim Co-Lead Counsel have ample experience handling class actions (including class actions involving data breaches), complex litigation, and consumer claims. The qualifications and experience of Morgan & Morgan and Stueve Siegel Hanson are detailed in their concurrently filed motions to consolidate and for appointment of interim lead counsel. As one of the Proposed Interim Co-Lead Counsel, Milberg's representative experience is set forth below:

### a. Milberg

Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and

recovered over $50 billion in verdicts and settlements.[7] Milberg has been instrumental in obtaining

precedent setting decisions at every level, including at the United States Supreme Court.[8] The firm

pioneered federal class action litigation and is widely recognized as a leader in defending the rights

of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a]

powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to

aggrieved shareholders and customers."

The firm currently is involved in some of the largest and well-known class action cases in

the country and is particularly active in the field of data breach and privacy litigation. The firm is

comprised of more than one hundred attorneys who work from offices across the United States

and in Portugal, the United Kingdon, the Netherlands, and Germany. Milberg attorneys come from

diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—

from the standpoint of age, gender, experience, and geographic location.[9]

***Gary M. Klinger*** is a Partner at Milberg.  At only 37-years-old, Mr. Klinger is one of the

most well-known and respected data privacy attorneys in the United States. Mr. Klinger has settled

more than fifty class actions as lead or co-lead counsel and recovered over $100 million in the

process. In the past two years alone, Mr. Klinger has settled several high-profile privacy and data

breach class actions. *See, e.g.*, *Boone, et al. v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir.

---

[7] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[8] See https://milberg.com/precedent-setting-decisions/page/3/.

[9] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers for violation of Illinois' Biometric Information Privacy Act); *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million); *Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger served as lead counsel and reached a class-wide settlement for $11 million for a major data breach involving more than 4 million consumers); *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger was appointed Co-Lead Counsel in a data breach case involving approximately one million class members and reached a settlement for $4.35 million); *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger served as lead counsel in a data breach class action involving more than 2.4 million class members and reached a settlement for $4.75 million).

Mr. Klinger presently serves as court appointed co-lead counsel to more than 2 million class members in the data breach litigation styled *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.). Mr. Klinger also serves as appointed co-lead counsel to represent more than 3 million class members in another major data breach class action in the Seventh Circuit. *See In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.).

Simply put, Mr. Klinger and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., In re Blackbaud Data Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of

consumers); *Jackson-Battle v. Navicent Health, Inc.*, No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. filed Apr. 29, 2020) (Mr. Klinger appointed Class Counsel in data breach case involving 360,000 patients; settlement valued at over $72 million); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (Mr. Klinger appointed Class Counsel; settlement value of over $13 million).[10]

Mr. Klinger has also successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id*. The case ultimately settled for $6.5 million. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

In addition to his data privacy litigation experience, Mr. Klinger is a Certified Information Privacy Professional (CIPP/US) and presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

**Harper Segui** is a partner and practice leader in the Consumer Products Group at Milberg. Ms. Segui is an experienced litigator who focuses her practice on representing plaintiffs in complex class action litigation, including data breach and privacy litigation. In addition to individual class actions, Ms. Segui has played active roles in multidistrict litigation and has several

---

[10] Additional information regarding Mr. Klinger and his firm is set forth in the Biography attached hereto as Exhibit A.

times been appointed by courts to serve on Plaintiffs' Steering Committees. She was recently appointed as Co-Lead Counsel in one of the largest data breach MDLs in the country *In Re: Blackbaud, Inc., Customer Data Breach Litigation*, 3:20-mn-02972-JMC, MDL No. 2972 (D.S.C.). Ms. Segui has particularly honed technical skills which arm her with the ability to develop complex issues of science and technology at the heart of her cases, including the ability to engage experts and present these technical aspects in court. She been appointed to a number of leadership roles, and provided integral support for many more. Representative cases include *In Re: Windsor Wood Clad Windows Prods. Liab. Litig.*, 16-md-02668, MDL No. 2688 (E.D. Wis.) and *In Re: Allura Fiber Cement Siding Litig.*, No. 2:19-mn-02886 (D.S.C.), where she also serves as Co-Class Counsel. She also played essential supporting roles, including as a member of expert teams, in *In Re: MI Windows and Doors, Inc, Prods. Liab. Litig.*, 2:12-mn-00001, MDL No. 2333 (D.S.C.), *In Re: Pella Corp. Architect and Designer Series Windows, Mktg., Sales Prac. and Prods. Liab. Litig.*, 2:14-mn-00001, MDL No. 2514 (D.S.C.). Ms. Segui has been regularly selected to Super Lawyers as a Top-Rated Attorney in the areas of "Class Action & Mass Torts." She has co-authored several publications on product liability and other topics and has been a lecturer on complex legal issues.

### iii. *Proposed Interim Co-Lead Counsel have committed, and will continue to commit, the resources necessary to represent the class.*

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). With more than 800 attorneys at their collective firms, Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members.

16

In fact, Proposed Interim Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. Proposed Interim Class Counsel have already engaged in discussions with experts and have expended significant resources in investigating the data breach, communicating with affected consumers, researching, and drafting complaints, and engaging in settlement discussions, that while unsuccessful, will help pave the way for future efforts at a negotiated resolution. To ensure that adequate funds are available to prosecute this litigation on behalf of the putative classes, Proposed Interim Co-Lead Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicate, Proposed Interim Co-Lead Counsel have the resources and willingness to see this litigation through to its conclusion, including trial.

### iv.  Other Factors Support Designating Proposed Interim Co-Lead Counsel

Notably, the proposed leadership structure has the support of 16 of the 23 Related Actions and the majority of Plaintiffs' counsel. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel. Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Manual for Complex Litig.* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Counsel's success in self organizing and securing the support of the majority of Plaintiffs' counsel in the Related Actions demonstrates

17

their suitability for leadership roles. Proposed Interim Co-Lead Counsel have the support of some

of the most experienced and successful data breach and privacy litigation attorneys in the country,

including:

**Rachele Byrd**: Rachele R. Byrd is a managing partner of Wolf Haldenstein Adler Freeman & Herz LLP's San Diego office and has more than twenty-one (21) years of experience handling class and other representative actions, including data breach, consumer, corporate derivative, securities, antitrust, and employment class actions. Ms. Byrd served as Co-Lead Counsel in *Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.), a data breach class action that resulted in a settlement valued at over $17 million. Ms. Byrd also sits on the Plaintiffs' Steering committee in *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 3:20-cv-02155-LB (N.D. Cal.), where the court recently granted final approval of an $85 million settlement. She also sits on the Executive Committees in *In re Lakeview Loan Servicing Data Breach Litigation*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (data breach class action) and *Erazo, et al. v. The Regents of the University of California, et al*., Case No. RG21097796 (Alameda Cnty. Super. Ct.) (data breach class action) and is Co-Lead Counsel in *Hinds v. Community Medical Centers, Inc*., Case No. 2:22-cv-01207-JAM-AC (E.D. Cal.) (data breach class action).

**Raina Borrelli**: Raina Borrelli brings more than ten years of experience in data breach litigation and class actions generally. Ms. Borrelli is a partner at Turke & Strauss LLP where she leads the firm's class action practice group. Ms. Borrelli has significant experience in data privacy litigation and is currently litigating more than fifty data breach cases in courts around the country as lead counsel or co-counsel, including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.) (appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by the court has Interim Co-Lead Counsel); *In re Lincare Holdings Inc. Data Breach Litig.*, 8:22-cv-1472-TPB-AAS (M.D. Fla.) (appointed to the Interim Executive Leadership Committee); *McLaughlin v. Flagstar*, 22-cv-11470 (E.D. Mich.); *Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Henson v. SuperCare, Inc.*, 22-cv-2820 (C.D. Cal.).

**M. Anderson Berry**: M. Anderson Berry is the head of the Complex Litigation Department at the Arnold Law Firm, with an extensive background in privacy and consumer/government fraud litigation. He is litigating more than fifty class action cases across the country involving data breaches, including the following representative matters in which he holds a leadership position: *Holmes v. Elephant Insurance Company, et al*., No. 3:22-cv-00487-JAG (E.D.VA.) (Co-Lead Counsel); *In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D.Ill.) (Co-Lead Counsel); *In re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523 (W.D.TX filed June 2, 2021) (Co-Lead Counsel) (settled); *In re: Mednax*

*Servs., Inc., Customer Data Security Breach Litig.*, No. 21-MD-02994 (S.D. Fla.) (Executive Comm.); and *A.A. ex rel. Altes v. AFTRA Ret. Fund*, No. 1:20-cv-11119 (S.D.N.Y. filed Dec. 31, 2020) (Co-Lead Counsel).

**Lori G. Feldman:** Lori G. Feldman chairs GGM's Class Action department and is the Managing Partner of the Firm's New York office. She has more than 25 years of experience in litigating complex consumer protection class actions, including data breach and privacy class cases, in federal courts throughout the country. Ms. Feldman serves and/or served in a leadership capacity in, among others: *In re Morgan Stanley Data Breach Litig.* (S.D.N.Y.) ($50 million settlement); *In re WaWa Data Breach Settlement* (E.D.Pa.) ($8 million settlement); *In re EyeMed Data Breach Litigation* (S.D. Ohio) (co-lead counsel); *In re Shields Data Breach Litigation* (co-lead counsel); *In re Paxton Data Breach Litigation* (W.D. Ky.) (co-lead counsel); *In re Lakeview Loan Servicing Litigation* (S.D. Fl.) (committee member). Ms. Feldman is a member of the Bar of the District of Nebraska and successfully litigated a complex securities fraud class action against ConAgra Foods, Inc. resulting in a $14 million settlement for class members. *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003).

**Terence R. Coates:** Terence R. Coates is the managing partner of Markovits, Stock & DeMarco, LLC in Cincinnati, Ohio and is the member of plaintiffs' counsel (on behalf of Plaintiff Jesse Herrick) to present oral argument in New York on December 1, 2022 for the position adopted by the Judicial Panel on Multidistrict Litigation in this litigation. Mr. Coates is currently participating as a member of plaintiffs' counsel in the over 70 data breach and data privacy cases pending around the country and is frequently appointed to leadership positions for plaintiffs in such cases. *See John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.; Court-appointed interim co-lead counsel in a pixel data breach case); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio; interim co-lead counsel); *Vansickle v. C.R. England, Inc.*, No. 2:22-cv-00374 (D. Utah; court-appointed interim co-lead counsel); *Rodriguez v. Professional Finance Company, Inc.*, No. 1:22-cv-1679 (D. Colo.; court-appointed interim lead counsel); *Migliaccio v. Parker Hannifin Corp.*, No. 1:22-CV-00835 (N.D. Ohio; court-appointed interim lead counsel); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga.; court-appointed interim class counsel); *Tracy v. Elekta, Inc.*, No. 1:21-cv-02851-SDG (N.D. Ga.; court-appointed interim class counsel); *Devine v. Health Aid of Ohio, Inc.*, No. CV-21-948117 (Cuyahoga County Court of Common Pleas, Ohio) (court appointed class counsel in finally-approved class action settlement); *Engle v. Talbert House*, No. A 2103650 (Hamilton County Court of Common Pleas, Ohio) (court-appointed class counsel in preliminarily-approved class action settlement); *Lutz v. Electromed, Inc.*, No. 0:21-cv-02198 (D. Minn.; co-lead counsel for plaintiffs in $825,000 settlement); *Morelli v. Jim Koons Management Co.*, No. 8:22-cv-00292-GJH (D. Md.; court-approved co-lead counsel in preliminarily-approved settlement); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio; court-approved interim co-liaison counsel); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-00036 (S.D.

Ohio; court-approved liaison counsel); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275 RAR (S.D. Fla.; Plaintiffs' Executive Committee); and, *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.; Plaintiffs' Steering Committee).

**Joseph M. Lyon**: Joseph M. Lyon is the founding and sole member of The Lyon Firm, LLC. He has represented thousands of individual clients in over 47 MDL proceedings. Mr. Lyon has also served, and is serving, as Class Counsel, on Executive and Steering Committees, and as plaintiffs' counsel in over 60 class actions, including over 30 data breach cases, many of which include cases involving similar data security issues and claims brought in this matter. Mr. Lyon's experience in specific data breach cases includes, among others: *Hawkins v. Navy Federal Credit Union*, Case No: 1:19-cv-01186 (U.S District Court, E.D. of VA) (Final Approval of $9.25 million nationwide non-reversionary common fund settlement for TCPA violations); *Devine v. Health Aid of Ohio*, Case No: CV-21-948117(Cuyahoga County) (Final Approval granted in data breach class action for claims made settlement valued at $12.5 million); *In Re Southern Ohio Health System Data Breach*, Case No:A210886 (Hamilton County, OH) (Final Approval granted for nationwide non-reversionary common fund settlement of $1.95 million); *Migliaccio v. Parker Hannifin Corp.*, Case No. 1:22-cv-00835 (U.S. District Court, N.D. of OH)(Interim Class Counsel in data breach class action impacting over 100,00 current and former employees); *Alvarado v. JDC Healthcare Management, LLC*, Case No. DC-22-03137 (Dallas County, TX) (Interim Class Counsel in data breach action impacting over a million dental patients); *Forslund v. R.R. Donnelley & Sons Co.*, Case No: 1:22-cv-04260 (U.S. District Court, N.D. of IL) (Interim Class Counsel in data breach impacting over 100,000 customers); and *Rodriquez v. Professional Finance Co., Inc.*, Case No: 1:22-cv-01679 (U.S. District Court, Dist. of CO) (Interim Class Counsel in data breach action impacting over a million customers).

**Bryan L. Bleichner**: Bryan L. Bleichner is a shareholder at Chestnut Cambronne PA and has extensive experience serving as leadership or class counsel in numerous class action data breach cases including: *Johnson v. Yuma Regional Medical Center*, No. 2:22-cv-01061 (D. Ariz.); *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210, (D. Minn.); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275-RAR (S.D. Fla.); *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.); *In re Herff Jones Data Security Breach Litigation*,No. 1:21-cv-01329-TWP-DLP (S.D. Ind.); *In re EyeMed Vision Care, LLC Data Security Breach Litigation*, No. 1:21-cv-00036-DRC (S.D. Ohio); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio); *Greenstate Credit Union v. Hy-Vee, Inc.*, No. 20-621-DSD-DTS (D. Minn.); *Village Bank v. Caribou Coffee Co., Inc.*, No. 0:19-cv-01640 (D. Minn.); *In re WaWa, Inc. Data Security Litigation*, No. 19-cv-6019-GEKP (E.D. Pa.); *In re Equifax, Inc., Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.); *Midwest American Federal Credit Union v. Arby's Restaurant Group, Inc.*, No. 17-cv-00514-AT (N.D. Ga.); *Bellwether Cmty.*

*Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102 (D. Colo); *First Choice Fed. Credit Union v. The Wendy's Company*, No. 2:16-cv-00506 (W.D. Pa.); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.); *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583 (TWT) (N.D. Ga.); *In re Target Corporation Customer Data Security Breach Litigation*, No. 0:14-md-02522-PAM-JJK (D. Minn.); *Lutz v. Electromed, Inc.*, No. 70-CV-21-11814 (D. Minn.); *Thomas v. Pawn America Minnesota, LLC*, No. 0:21-cv-02554 (D. Minn.); and *Seabrian v. St. Joseph's/Candler Health System, Inc.*, No. STCV21-01652 (State Court of Chatham County, Georgia).

**Nicholas A. Migliaccio and Jason S. Rathod**: Nicholas A. Migliaccio and Jason S. Rathod are the founding partners of Migliaccio & Rathod LLP ("M&R") based in Washington D.C. They represent Plaintiff Veronica Joaquin-Torres in the instant litigation. M&R is plaintiffs' counsel in dozens of putative data breach and data privacy class action cases pending across the country, including in this District. The firm has been appointed to leadership positions in a number of these cases. *See, e.g., In re: Practice Resources, LLC Data Security Breach Litigation*, Case No. 22-CV-0890 (N.D.N.Y.) (appointed co-lead interim class counsel); *McHenry v. Advent Health Partners, Inc.*, Case No. 3:22-cv-00287 (M.D. Tenn.) (appointed co-lead interim class counsel in preliminarily approved settlement); *In re Netgain Technology, LLC Consumer Data Breach Litigation*, Case No. 210cv01210 (SRN/LIB) (D. Minn.) (interim class counsel steering committee appointment), *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.) (same), and *In Re Rutter's Inc. Data Security Breach Litigation*, Case No. 1:20-cv-382 (M.D. Pa.) (same).

**William B. Federman**: William B. Federman is the founder and Managing Member of Federman & Sherwood ("F&S"). F&S has been a key player in data breach class actions for many years and has garnered great success. Mr. Federman has over forty years of experience in all areas of complex litigation, including appeals and trials in various federal and state courts, and arbitrations nationwide. Mr. Federman has been actively involved in all aspects of the subject litigation since its inception. On September 2, 2022, F&S filed the fourth class action lawsuit addressing the Data Breach. *See Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb. Sept. 2, 2022). After filing their initial case, Mr. Federman diligently worked with the Milberg law firm, primarily Gary M. Klinger, to coordinate the later filed cases. Mr. Federman also successfully argued against centralization of the actions at issue at the Multi-District Litigation hearing, opining that because every case (apart from one) was now before this Court, centralization under 28 U.S.C. § 1407 was rendered unnecessary. Additionally, Mr. Federman coordinated with the plaintiffs' counsel in the prior filed actions to have several meet and confer conferences which allowed for an early mediation with Defendant and defense counsel. Although the mediation was unsuccessful, common issues were established, which could lead to additional meaningful discussions as the case progresses. Notably, among the cases currently on file before this Court, F&S is the only law firm to have served notice under the Oklahoma Governmental Tort Claims Act to the Oklahoma Student Loan Authority

("OSLA") for its involvement and negligence in the Data Breach. On January 3, 2023, a lawsuit was filed in the District Court of Oklahoma County, Oklahoma against the OSLA and Nelnet. *Carr v. Oklahoma Student Loan Authority and Nelnet Servicing, LLC*, No. CJ-2023-002 (Okla. Co., OK 2023). Through coordination with Mr. Klinger and the Milberg law firm, these cases will be coordinated and efficiently prosecuted.

Plaintiffs' counsel for the majority of the Related Actions support the appointment of Proposed Interim Co-Lead Counsel as they recognize that Proposed Interim Co-Lead Counsel will best serve the interests of the class members in the most efficient and cooperative manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation. *See Manual for Complex Litig.* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.*

Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge together to form an alliance against often well-financed opponents, as is the case here where counsel for the vast majority of the Related Actions have coordinated organizational efforts. Because the consolidation process has the potential to breed disorganization, in-fighting, and inefficiencies, it is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines"), at 43. Selecting lawyers who have previously worked

together, as is the case here with Proposed Interim Co-Lead Counsel, has many benefits. They have developed working relationships, know of complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*.

Here, as demonstrated above, Proposed Interim Co-Lead Counsel have strong working relationships with other Plaintiffs' counsel in the Related Actions and moved quickly and effectively to organize the majority of the Related Actions to support the leadership structure proposed herein. Moreover, Proposed Interim Co-Lead Counsel have developed a working relationship with counsel for Defendant as a result of their efforts to negotiate a settlement on behalf of class members. Though unsuccessful, the negotiations nurtured a professional, albeit antagonistic, relationship with counsel for Defendant that will inform future litigation or settlement discussions.[11]

Importantly, Proposed Interim Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Klinger Decl. ¶ 20. Proposed Interim Lead Counsel understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party funding to do so. *Id*. While Proposed Interim Co-Lead Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed

---

[11] Also worth noting, Proposed Interim Co-Lead Counsel have all settled data breach class actions on a classwide basis with Defendant's counsel in this case (Mullen Coughlin). *See, e.g., Kyle Nelson v. Idaho Central Credit Union,* Case No. CV03-20-00831(Idaho, Bannock County) (where Milberg served as lead counsel and negotiated with defendant's counsel, Mullen Coughlin, a non-reversionary cash settlement paying $86.93 per class member, 12 months of additional credit monitoring services and identity restoration, and additional business practice commitments). Accordingly, Proposed Interim Co-Lead Counsel are well-positioned to negotiate a successful settlement on behalf of the Class here.

Interim Lead Counsel have already discussed how best to organize to effectively use its members' diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

### C.   The First-to-File Rule Further Supports the Appointment of Proposed Interim Co-Lead Counsel.

As mentioned above, Proposed Interim Co-Lead Counsel filed the very first action (*Herrick*) arising out of this data breach. When dueling motions for appointment as interim class counsel are filed pursuant to Rule 23(g), federal courts across the country give deference to counsel in the first-filed case when they are qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment

24

of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

Proposed Interim Co-Lead Class respectfully submits this Court should follow the majority of courts across the country to address this issue and reach a similar result.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order the Related Actions (and all subsequently filed related actions) be consolidated under the first filed and lowest numbered case, *Herrick v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03181, further order the appointment of Milberg Coleman Bryson Phillips Grossman, LLC, of Morgan & Morgan, and of Stueve Siegel Hanson as Interim Co-Lead Counsel, and enter a schedule for the filing of a consolidated complaint and any motions or briefing related to the same.  If the Court is inclined to entertain the oral argument on the suitability of the Related Actions for consolidation and for appointment of Interim Co-Lead Counsel, First Filed Plaintiffs respectfully request the opportunity to present oral argument in support of their motion.

Dated: January 3, 2022

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 3, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Gary M. Klinger*
Gary M. Klinger

# **EXHIBIT A**

**Gary M. Klinger** is a Partner at Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg").[1] At only 37-years old, Mr. Klinger has gained extensive experience serving as leadership in numerous high-profile consumer and privacy class actions. Notably, Mr. Klinger has settled on a class-wide basis more than forty class actions, the majority of which were privacy cases, as lead or co-lead counsel recovering more than a hundred million dollars for consumers in the process. Some of Mr. Klinger's representative cases include the following:

- Carrera Aguallo v. Kemper Corp., Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger obtained final approval of a class-wide settlement valued at $17.6 million for a major class action involving more than six million consumers);
- Heath v. Insurance Technologies Corp., No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $11 million);
- In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Mr. Klinger serves as one of the lead attorneys in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million);
- Smid v. Nutranext, LLC, Case No. 20L0190 (Cir. Ct. St. Clair, County) (class counsel in consumer class action involving heavy metals in prenatal vitamins; final approval granted to $7M settlement)
- In re: Herff Jones Data Breach Litigation, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.35 million);
- In re: CaptureRx Data Breach Litigation, No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.75 million);
- In re Arthur J. Gallagher Data Breach Litigation, No. 1:21-cv-04056 (N.D. Ill.) (where Mr. Klinger serves as appointed co-lead counsel to represent more than 3 million class members in a major class action).

Mr. Klinger has also successfully litigated class actions through contested class certification. In *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.* At the time, it was the largest litigation class ever to be certified for violations of the Telephone Consumer Protection Act. In a nationwide class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

Mr. Klinger is admitted to practice in the State of Illinois and the following federal courts: The U.S. District Court of Colorado, The U.S. District Court of Central District of Illinois, The U.S.

---

[1] A copy of Milberg's Firm Resume is attached hereto as Exhibit 1.

District Court of Northern District of Illinois, The U.S. District Court of Southern District of Illinois, The U.S. District Court of Southern District of Indiana, The U.S. District Court of Eastern District of Michigan, The U.S. District Court of District of Nebraska, The U.S. District Court of Eastern District of Texas, and The U.S. District Court of Eastern District of Wisconsin.

Mr. Klinger received his undergraduate degree and juris doctorate (*cum laude*) from the University of Illinois.

Mr. Klinger is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

Mr. Klinger is also a member of the International Association of Privacy Professionals.

# EXHIBIT 1



# Who We Are

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer, and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations—wherever they operate.

www.milberg.com

# Practice Areas

### Antitrust & Competition Law

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

### Complex Litigation

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for business and plaintiffs outside of class action context, business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property. The repeated success of our attorneys against well-funded adversaries with top-tier counsel has established Milberg as the go-to firm for complex litigation.

### Consumer Products

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims, unfair trade practices, and notable product cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

### Consumer Services

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy. We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

## Class Action Lawsuits

Milberg pioneered federal class action litigation is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

## Dangerous Drugs & Devices

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits, at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most powerful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

## Data Breach, Cyber Security & Biometric Data Lawsuits

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cyber security threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

## Environmental and Toxic Torts Litigation

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

## Finance & Insurance Litigation

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

**Public Client Representation**

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

**Securities Litigation**

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

**Whistleblower & Qui Tam**

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients.Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring **impressive victories** against companies guilty of outrageous behavior."*

- Forbes

*" A **powerhouse** that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers"*

- New York Times

# Recent Leadership Roles

In re **Google Play** Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)

In re: **Elmiron** (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973

In re: **Johnson & Johnson** Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: **Blackbaud** Data Privacy MDL No. 2972

In re: **Paragard** IUD Products Liability Litigation MDL No. 2974

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation MDL No. 3009, Master Case No. 21-cv-04447

In re: **Zicam**
In re: **Ortho Evra**
In re: **Yaz**
In re: **Kugel Mesh**
In re: **Medtronic Sprint Fidelis Leads**
In re: **Depuy Pinnacle**
In re: **Stand 'N Seal**
In re: **Chantix**
In re: **Fosamax**
In re: **Mirena**
In re: **Incretin**
In re: **Depuy Pinnacle**
In re: **Fluoroquinolones**
In re: **Olmesartan**

In re: **Zimmer Nexgen Knee**
In re: **Fresenius Granuflo**
In re: **Propecia**
In re: **Transvaginal Mesh**
In re: **Guidant Corp.** Implantable Defibrillators
In re: **Onglyza (Saxagliptin) And Kombiglyze XR**

State Court:
In Re Risperdal & Invega Product Liability Cases, CA
In Re Chantix, NY
In Re Reglan, NJ
In Re Propecia, NJ
In Re Levaquin Litigation, NJ

# Notable Recoveries

**$3.2 Billion** Settlement – In re Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

**$4 Billion** Settlement – In re Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

**$1.14 Billion** Settlement – In re Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

**$1 Billion-plus** Trial Verdict – Vivendi Universal, S.A. Securities Litigation

**$1 Billion** Settlement – NASDAQ Market-Makers Antitrust Litigation

**$1 Billion** Settlement – W.R. Grace & Co

**$1 Billion-plus** Settlement – Merck & Co., Inc. Securities Litigation

**$775 Million** Settlement – Washington Public Power Supply System Securities Litigation

# Locations

CHICAGO
227 W. Monroe Street Suite, Suite 2100
Chicago, Illinois 60606

NEW JERSEY
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

NEW YORK
100 Garden City Plaza
Garden City, New York 11530

NORTH CAROLINA
900 W. Morgan Street
Raleigh, North Carolina 27603

PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

SEATTLE
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

WASHINGTON D.C.
5335 Wisconsin Avenue NW , Suite 440
Washington, D.C., 20015





**www.milberg.com**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated, | Case No. 4:22-cv-3197 |
|---|---|
| Plaintiffs, | The Honorable John M. Gerrard, U.S.D.J. The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated, | Case No.  4:22-cv-3203 |
| Plaintiffs, | The Honorable John M. Gerrard, U.S.D.J. The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3204 |
| Plaintiffs, | The Honorable John M. Gerrard, U.S.D.J. The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>    Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>    Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3259 |
| | The Honorable John M. Gerrard, U.S.D.J. The Honorable Cheryl R. Zwart, U.S.M.J. |
| Plaintiffs, | |
| | CLASS ACTION |
| v. | |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| GARNER KOHRELL, individually and on behalf of all others similarly situated, | **Case No. 4:22-cv-3267** |
| | **The Honorable John M. Gerrard, U.S.D.J. The Honorable Cheryl R. Zwart, U.S.M.J.** |
| Plaintiff, | |
| | **CLASS ACTION** |
| v. | |
| NELNET SERVICING, LLC, | |
| Defendant. | |

**DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a) AND FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3)**

I, Gary Klinger, being competent to testify, make the following declaration based on my personal knowledge, and where stated, upon information and belief. I declare:

1.     I am a partner in the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), and am one of the lead attorneys for Plaintiffs Jesse Herrick, Carey M. Ballard, Amanda Beasley, Jennifer Hegarty, and Barbara Miller ("Plaintiffs") in this matter. I submit this declaration in support of Plaintiffs' Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(3) (the "Motion"). Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     In August of 2022, Milberg began investigating potential claims arising out of the compromise of the PII belonging to over 2.5 million individuals as a result of Defendant's failure to implement proper data security safeguards. As part of that investigation, Milberg researched factual and legal issues pertaining to the breach, communicated with consumers impacted by the data breach, and engaged a retired FBI agent to investigate the scope of the data breach. On August 30, 2022, Milberg and co-counsel filed the first filed case in this matter on behalf of Plaintiff Jesse Herrick, captioned *Herrick v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03181. Milberg and co-counsel subsequently investigated, researched, and filed four additional actions in this District, captioned *Ballard v. Nelnet Servicing, LLC*, No. 4:22-cv-03185, (D. Neb.); *Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb.); *Beasley v. Nelnet Servicing, LLC*, No. 4:22-cv-03187 (D. Neb.); and *Miller v. Nelnet Servicing, LLC*, No. 4:22-cv-03193 (D. Neb.).

3.     Counsel for the majority of cases filed as of September 9, 2022 including the *Kohrell* case then pending in the Eastern District of Tennessee participate in a plaintiffs' coordination phone call on September 9, 2022 in an attempt to work together as much as possible

to make these proceedings more efficient for the Court and the parties. I was part of the counsel on the *Herrick* case who coordinated this phone call.

4.      In September and October of 2022, I spoke with counsel for Plaintiffs in three actions filed outside of this district, *Quinn v Edfinancial* Services, *LLC et al.*, No. 1:22-CV-05467 (N.D. Ill. filed October 5, 2022); *Kitzler v. Nelnet Servicing, LLC*, No. 2:22-cv-06550 (C.D. Cal., filed Sept. 13, 2022); and *Eichenblatt v. Nelnet Servicing, LLC*, No. 6:22-CV-01794 (M.D. Fla. filed Oct. 3, 2022), and as a result of our discussion, counsel for Plaintiffs in those actions agreed to voluntarily transfer their actions to the District of Nebraska.

5.      My co-counsel on the Herrick complaint, Terence R. Coates, attended the JPML hearing in New York on December 1, 2022 and argued that the request to centralize the cases in this litigation under § 1407 was premature, inefficient, and conducting in a manner that would put a chilling effect on the parties ability to informally coordinate to consolidate cases under § 1404. Ultimately, the JPML agreed with Mr. Coates's argument and denied the *Spearman* and *Bump* Plaintiffs' attempt to create an MDL for this case.

6.      In September of 2022, Plaintiffs entered into discussions with counsel for Defendant regarding the potential for a negotiated class wide settlement. On November 21, 2022, the parties engaged in mediation before the Hon. Louis Meisinger (Ret.) of Signature Resolution. Prior to mediation, Plaintiffs served, and Defendant responded to, informal discovery requests regarding the nature of the data breach, the size and scope of the breach, and other information necessary to evaluate a potential classwide settlement. While negotiations were professional, albeit antagonistic, the parties were unable to realize a settlement.

7.      In December of 2022 I spoke with Norman Siegel of Stueve Siegel Hanson, counsel for the plaintiff in *Freeland v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03211 (D. Neb.). During

the course of our conversation, Mr. Siegel indicated his assent to the leadership structure proposed in the Motion.

8. In December of 2022 I spoke with John Yanchunis of Morgan & Morgan, counsel for the plaintiff in *Carlson v. Nelnet Servicing*, LLC, No. 4:22-cv-03184-JMG (D. Neb.). During the course of our conversation, Mr. Yanchunis indicated his assent to the leadership structure proposed in the Motion.

9. In December of 2022 I spoke with Raina Borrelli of Turke & Strauss LLP, counsel for the plaintiff in *Miller v. Nelnet Servicing, LLC*, No. 4:22-cv-03193, (D. Neb.). During the course of our conversation, Ms. Borrelli indicated that she supports the leadership structure proposed in the Motion.

10. In December of 2022 I emailed with Bryan Bleichner of Chestnut Cambronne PA, counsel for the plaintiff in *Ballard v. Nelnet Servicing, LLC*, No. 4:22-cv-03185, (D. Neb.). During the course of our communications, Mr. Bleichner indicated that he supports the leadership structure proposed in the Motion.

11. In January of 2023 my co-counsel, Terence R. Coates, spoke with Rachele Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, counsel for the plaintiff in *Freeman v. Nelnet Servicing, LLC*, No. 4:22-cv-03197, (D. Neb.). During the course of their conversation, Ms. Byrd indicated that she supports the leadership structure proposed in the Motion.

12. In January of 2023 my co-counsel, Terence R. Coates, communicated with Brandon Wise of Peiffer Wolf Carr Kane Conway & Wise LLP, counsel for the plaintiffs in *Varlotta v. Nelnet Servicing, LLC*, No. 4:22-cv-03188, (D. Neb.) and *Hollenkamp v. Nelnet Servicing, LLC*, No. 4:22-cv-03189, (D. Neb.). During the course of those communications, Mr. Wise indicated that he supports the leadership structure proposed in the Motion.

13.　　In January of 2023 I emailed with Joseph Lyon of The Lyon Firm, counsel for the plaintiff in *Beasley v. Nelnet Servicing, LLC*, No. 4:22-cv-03187 (D. Neb.). During the course of our emails, Mr. Lyon indicated that he supports the leadership structure proposed in the Motion.

14.　　In December of 2022 I spoke with Lori Feldman of George Gesten McDonald, PLLC, counsel for the plaintiff in *Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb.). During the course of our conversation, Ms. Feldman indicated that she supports the leadership structure proposed in the Motion.

15.　　In December of 2022 I spoke with William Federman of Federman & Sherwood, counsel for the plaintiff in *Sayers v. Nelnet Servicing, LLC*, No. 4:22-cv-03203, (D. Neb.). During the course of our conversation, Mr. Federman indicated that he supports the leadership structure proposed in the Motion.

16.　　In December of 2022 I spoke with Anderson Berry of The Arnold Law Firm, counsel for the plaintiff in *Gamen v. Nelnet Servicing, LLC*, No. 4:22-cv-03209, (D. Neb.). During the course of our conversation, Mr. Berry indicated that he supports the leadership structure proposed in the Motion.

17.　　In December of 2022 and January of 2023 my co-counsel, Terence R. Coates, spoke and emailed with Nicholas Migliaccio and Jason Rathod of Migliaccio & Rathod LLP, counsel for the plaintiff in *Joaquin-Torress v. Nelnet Servicing, LLC*, 4:22-cv-03196 (D. Neb.). During the course of those communications, counsel indicated that they support the leadership structure proposed in the Motion.

18.　　In January of 2023 I emailed with Kiley Grombacher of Bradley/Grombacher, LLP, counsel for the plaintiff in *Kitzler v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03241, (D. Neb.).

During the course of our communications, Ms. Grombacher indicated that she supports the leadership structure proposed in the Motion.

19. In January of 2023 I spoke with Bryan Thompson, counsel for the plaintiff in *Quinn v. Edfinancial Services, LLC et al*, No. 8:22-CV-00413, (D. Neb.). During the course of our conversation, Mr. Thompson indicated that he supports the leadership structure proposed in the Motion.

20. Milberg is well equipped to prosecute this action on behalf of the putative classes. Milberg is self-funded, capable of advancing the costs of litigation, and does not rely on third party financing. Milberg has not entered into any agreements with counsel for the Related Actions with respect to funding, cost-sharing, pooling clients, fees, or any other matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Chicago, IL on this 3rd day of January, 2023.

/s/ *Gary M. Klinger*
Gary Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 3, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Gary M. Klinger*
Gary M. Klinger

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated, Plaintiffs, v. NELNET SERVICING, LLC, Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated, Plaintiffs, v. NELNET SERVICING, LLC, Defendant. | Case No. 4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated, Plaintiffs, v. NELNET SERVICING, LLC, Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>NELNET SERVICING, LLC,<br><br>            Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
|---|---|
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>            Plaintiff,<br><br>            v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>            Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>            Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated, <br><br>         Plaintiffs, <br><br>         v. <br><br>NELNET SERVICING, LLC, <br><br>         Defendant. | Case No. 4:22-cv-3259 <br><br>The Honorable John M. Gerrard, U.S.D.J. <br>The Honorable Cheryl R. Zwart, U.S.M.J. <br><br>CLASS ACTION |
| GARNER KOHRELL, individually and on behalf of all others similarly situated, <br><br>Plaintiffs <br><br>         v. <br><br>NELNET SERVICING, LLC, <br><br>Defendant. | **Case No. 4:22-cv-3267** <br><br>**The Honorable John M. Gerrard, U.S.D.J.** <br>**The Honorable Cheryl R. Zwart, U.S.M.J.** <br><br>**CLASS ACTION** |

**FIRST FILED PLAINTIFFS' NOTICE RELATING TO THE LEADERSHIP APPLICATION OF MILBERG, MORGAN & MORGAN, AND STUEVE SIEGAL HANSON**

Plaintiffs Jesse Herrick, Carey M. Ballard, Amanda Beasley, Jennifer Hegarty, and Barbara Miller (the "First Filed Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this Notice Relating to the Leadership Application of Milberg, Morgan & Morgan & Stueve Siegal Hanson.

Since filing their Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(3)[1] on January 3, 2023 First Filed Plaintiffs have secured the support of their proposed leadership structure from counsel for the plaintiff in *Kohrell v. Nelnet Servicing, LLC et al*, No. 4:22-CV-03267, (D. Neb.) See Declaration of Gary M. Klinger in support of First Filed Plaintiffs' Notice Relating to the Leadership Application of Milberg, Morgan & Morgan & Stueve Siegal Hanson ¶ 2. With *Kohrell*, First filed Plaintiffs have the support of 17 of the 23 Related Actions for the appointment of Milberg, Morgan & Morgan, and Stueve Siegal Hanson as Interim Co-Lead Counsel.

Dated: January 6, 2022        Respectfully submitted,

            /s/ *Gary M. Klinger*

            Gary M. Klinger
            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
            221 West Monroe Street, Suite 2100
            Chicago, IL 60606
            (847) 208-4585
            *gklinger@milberg.com*

            *Attorneys for Plaintiffs*

---

[1] *See* ECF Nos. 25-26.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 6, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Gary M. Klinger*
Gary M. Klinger

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3181<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ROBERT CARLSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3184<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3185<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No.  4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>    Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| --- | --- |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| MAX EICHENBLATT, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3227 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| | |
| Defendant. | |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals, | Case No. 4:22-cv-3241 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive, | |
| | |
| Defendants. | |
| ANTHONY QUINN, individually and on behalf of all others similarly situated, | Case No. 8:22-cv-413 |
| | |
| Plaintiff, | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | |
| | CLASS ACTION |
| EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC, | |
| | |
| Defendants. | |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | Case No. 4:22-cv-3259<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| GARNER KOHRELL, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NELNET SERVICING, LLC,<br><br>       Defendant. | **Case No. 4:22-cv-3267**<br><br>**The Honorable John M. Gerrard, U.S.D.J.**<br>**The Honorable Cheryl R. Zwart, U.S.M.J.**<br><br>**CLASS ACTION** |

**DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a) AND FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3)**

I, Gary Klinger, being competent to testify, make the following declaration based on my personal knowledge, and where stated, upon information and belief. I declare:

1.      I am a partner in the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), and am one of the lead attorneys for Plaintiffs Jesse Herrick, Carey M. Ballard, Amanda Beasley, Jennifer Hegarty, and Barbara Miller ("Plaintiffs") in this matter. I submit this declaration in support of Notice Relating to the Leadership Application of Milberg, Morgan & Morgan & Stueve Siegal Hanson. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      On January of 2023 I spoke with Kate Baxter-Kauf of Lockridge Grindal Nauen P.L.L.P., counsel for the plaintiff in *Kohrell v. Nelnet Servicing, LLC et al*, No. 4:22-CV-03267, (D. Neb.). During the course of our conversation, Ms. Baxter-Kauf indicated that she supports the leadership structure proposed in First Filed Plaintiffs Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(3). *See* ECF Nos. 25-26.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Chicago, IL on this 6th day of January, 2023.

/s/ *Gary M. Klinger*
Gary Klinger
**MILBERG    COLEMAN    BRYSON**
**PHILLIPS GROSSMAN, PLLC**

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT CARLSON,<br><br>on behalf of himself and all others<br>similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>     Defendant. | Case No.: 4:22-cv-03184-JMG-CRZ<br><br>**MOTION TO APPOINT INTERIM<br>COUNSEL** |

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Morgan & Morgan, P.A. moves for appointment as Interim Counsel. As explained below, the appointment of Morgan & Morgan, together with Stueve Siegel Hanson LLP and Milberg Coleman Bryson Phillips Grossman, PLLC, is best able to serve the interests of the class and will provide the class the "best representation." See Fed. R. Civ. P. 23(g).

## I.      INTRODUCTION

"Federal Rule of Civil Procedure 23 provides '[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).'" *Klug v. Watts Regulator Co.*, No. 8:15-CV-61, 2015 WL 13893248, at *1 (D. Neb. July 31, 2015). ""While not statutorily required, the appointment of interim class counsel may be helpful in 'clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *Roe v. Arch Coal, Inc.*, No. 4-15-CV-910 (CEJ), 2015 WL 6702288, at *2 (E.D. Mo. Nov. 2, 2015) (quoting Federal Judicial Center, *Manual for Complex Litigation* § 21.11 (4th ed. 2004)).

1

By seeking this appointment, Morgan & Morgan proposes to have responsibility for strategic decisions associated with the prosecution of these consolidated cases (and any subsequently filed cases). As described below, Morgan & Morgan's appointment as interim class counsel has the support of representative plaintiffs in most of the related cases. The appointment of Morgan & Morgan will permit plaintiffs to prosecute this case efficiently and effectively, serving the best interests of the putative class. In addition, Morgan & Morgan has performed substantial work investigating the circumstances surrounding the breach with the assistance of two former FBI agents and a cyber consultant. Morgan & Morgan has experienced experts in this area on both liability and damages. Morgan & Morgan has extensive experience litigating data privacy and data breach claims and has the experience, knowledge, and resources to continue to prosecute this action in the putative class's best interests.

## II.    BACKGROUND

This litigation arises out of Defendant's alleged failure to exercise reasonable care to safeguard Plaintiff's and absent class members' personally identifiable information ("PII"). Plaintiff Carlson alleges Defendant did not have appropriate measures in place to protect against a breach. *See, e.g.*, Complaint (Doc. 1) ¶ 11. As a result, in July 2022, Defendant learned that it had experienced a serious data breach. *See id.* ¶¶ 5-6. After Defendant became aware of this breach, it took another month before it began informing the victims. *Id.* ¶¶ 7-8. The information that Defendant permitted to be breached was comprehensive and included the PII of more than 2.5 million student loan borrowers, including name, address, email address, phone number, and Social Security number. *Id.* ¶¶ 1, 32.

On August 31, 2022, one day after the filing of the first lawsuit in the nation arising out of this data breach, Morgan & Morgan filed the second lawsuit in the nation arising out of this data

breach. More than ten additional cases were subsequently filed in this District. Given the nature of the harm in this case and the size of the class, additional suits may be filed against Defendant. Morgan & Morgan seeks the Court's appointment as Interim Counsel to facilitate the prosecution of this litigation in an orderly and expeditious manner.

### III.    APPLICABLE LAW

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]" MANUAL FOR COMPLEX LITIG. § 21.11; *see Roe*, 2015 WL 6702288, at *2 (same). Indeed, the Advisory Committee Notes to Rule 23 recognize "that in many cases the need to progress toward the certification determination may *require* designation of interim counsel." Fed. R. Civ. P. 23, advisory committee note to 2003 amendment (emphasis added).

"Rule 23(g)(3) provides no criteria for selecting interim counsel. However, Rule 23(g)(1)(A), which addresses the appointment of class counsel, provides:

In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class."

*Klug*, 2015 WL 13893248, at *1-2 (quoting Fed. R. Civ. P. 23(g)(1)(A)).

3

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of the Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all the parties on their side, and that their charges will be reasonable." MANUAL FOR COMPLEX LITIG. § 10.22. The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221.

## IV.    ARGUMENT

Morgan & Morgan satisfies all requirements for appointment by the Court.  Morgan & Morgan, a law firm with over 800 lawyers, brings to this litigation a core team of 12 class action litigation lawyers, a number of whom clerked at District Court and Circuit Court levels.  This team is both racially and gender diverse and has successfully litigated numerous class actions involving data breaches and privacy claims on behalf of millions of consumers. Because of its size as the largest plaintiffs only law firm in America, Morgan & Morgan has the necessary resources to prosecute the litigation and is already working to efficiently and effectively manage the litigation, as it has repeatedly done in the past. Morgan & Morgan will not utilize litigation funding for any aspect of this case. Moreover, even before the litigation was commenced, Morgan & Morgan began an investigation outside formal discovery to develop an understanding of the vulnerability which led to the breach and the development of evidence to support liability. This investigation is aided by two former FBI agents, one of whom ran the Enron investigation when he was an active agent with the Bureau, and the other who specialized in cybercrimes with the Bureau. These individuals are a unique resource which will be used throughout the case. Experts who have extensive experience in many other data breach case, including most of the largest litigated to date, have also been engaged for both liability and damages.  Finally, Morgan & Morgan has the case management

and complex litigation and trial skills, knowledge of the relevant factual and legal issues, and extensive personnel and technological resources needed to efficiently prosecute this action. Accordingly, Plaintiff's motion should be granted.

**A.      Morgan & Morgan has performed substantial work investigating and litigating the claims.**

Immediately after the public announcement of the data breach, Morgan & Morgan began investigating potential legal claims and remedies for the victims of the breach, including Plaintiff. Those investigations included, among other things:

- Investigating through former FBI agents and a cyber consultant the facts surrounding the data breach;

- Interviewing numerous consumers injured by the data breach;

- Researching legal claims;

- Drafting initial pleadings; and

- Investigating and retaining experts in the area of data security and damages, including seeking the advice of these experts on the issues and facts central to the case.

The facts alleged are egregious in terms of the information exposed and the scope of the victims. Accordingly, Plaintiff's counsel attempted to address the merits on an expedited basis. As such, Morgan & Morgan is working diligently and efficiently to draft and file the Consolidated Class Action Complaint as previously ordered by the Court (Doc. 21).

For the work completed following the appointment of Interim Counsel, the only attorneys committing substantive time to an assignment are those necessary for its execution. This ensures that the work is completed efficiently, and the time and expense is well managed. A billing protocol and expense report (attached as **Exhibits A and B**) will be implemented for use by all

counsel to promote efficiency and minimize duplication. Work assignments will be allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity. Accordingly, the substantial work and investigation to date described above weigh in favor of appointing Morgan & Morgan under Rule 23(g)(3), as it is committed to working for the best interests of the class.

**B.      Morgan & Morgan Has Significant Relevant Experience**

Over the last five years, the class action attorneys at Morgan & Morgan have devoted much of their practice to litigating and leading many of the largest data privacy cases in the country, including *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation,* 1:15-mc-01394-ABJ (D.D.C.); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.); *Aguallo v. Kemper Corp. and Infinity Ins. Co.*, No. 1:21-cv-01883 (N.D. Ill.); and *In re Morgan Stanley Data Security Litig.,* No. 1:20-cv-05914-PAE (S.D.N.Y.). Morgan & Morgan has led class certification efforts in the relatively few data privacy cases in which certification orders have been entered. See, *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) ((b)(2) certification); *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal.) ((b)(2) certification); and *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ((b)(3) certification).

### MORGAN & MORGAN CLASS ACTION DEPARTMENT

The core group within the class action department consists of the following:

**a. John A. Yanchunis, Esq.**

Mr. Yanchunis leads the class action section of Morgan & Morgan. His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., S. D. Tex.—has concentrated on complex litigation and spans over 38 years, including consumer class actions for more than two-thirds of that time. As a result of his extensive experience in privacy and data-breach litigation, he regularly lectures at seminars regarding privacy litigation.

Alongside his experience in the area of privacy, he also served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. In 2014 and 2020, he was recognized by the National Law Journal as a trailblazer in the area of privacy litigation, and in 2020, he was recognized by LAW 360 for the second year in a row as one of 4 MVPs in the area of privacy and cyber security litigation. For his work in the area of privacy litigation, he was awarded Florida Lawyer of the Year by The Daily Business Review.

As a result of his experience in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys

General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of my clients.

He began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-Lead Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act (DPPA) against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). See *Fresco v. Automotive Directions, Inc.,* No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, he served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank of America,* No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank and Trust,* No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

8

He has been appointed and served in leadership positions a number of multidistrict litigation in the area of privacy and data breaches: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.)(Co- Lead)(final judgment entered approving $190,000,000); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.) ("Yahoo") (Lead Counsel) (final judgment approving $117,500,000.00); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (Co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving $380.5 million fund for 145 million consumers ); *In re: U.S. Office of Personnel Management Data Security Breach Litigation,* 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (active litigation with approximately 22.5 million present and former federal employees); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers).

His court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, and includes: *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) (class certified for 8 million members, subsequently settlement of the class was approved by the court) ; *Walters v. Kimpton Hotel & Restaurant,* No. 3:16-cv-05387 (N.D. Cal.) (Lead Counsel) (class action settlement final approval order entered July 11, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation,* Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June

6, 2019); and Jackson, et al., v. Wendy's International, LLC, No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019); *Henderson v. Kalispell Regional Healthcare*, No. CDV-19-0761 (Montana Eighth Judicial Court – Cascade County) (final approval of class settlement entered January 5, 2021); *In re: Citrix Data Breach Litigation*, No. 19-cv-61350 (S.D. Fla.) (preliminary approval of class action settlement entered on January 26, 2021); *Kuss v. American HomePatient, Inc.,* et al., 18-cv-2348 (M.D. Fla.) (final approval of class action settlement entered on August 13, 2020); *Fulton-Green v. Accolade, Inc*., 18-cv-274 (E.D. Pa.) (final approval of class action settlement entered September 23, 2019); *Nelson v. Roadrunner Transportation Systems, Inc.,* 18-cv-7400 (N.D. Ill.) (final approval of class action settlement entered September 15, 2020).

His experience in these major data breach matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs in major data breach cases such as Capital One, Yahoo, and Facebook. In addition, he has defended experts used in these cases and also deposed defense liability and damage experts.

As result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation.

He is a frequent lecturer on privacy and class litigation nationally and internationally, including at international conferences in London, Amsterdam and Haifa, Israel.

While at the University of Florida, he was a member of Florida Blue Key and Omicron Delta Kappa. He received his Juris Doctor degree from the South Texas College of Law in 1980, where he graduated magna cum laude. During law school, he was a member of the Order of the Lytae, Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal.

### b. Michael F. Ram.

Mr. Ram is a consumer class action lawyer with 40 years of experience. He graduated cum laude from Harvard Law School in 1982. He has co-tried several class action trials and frequently lectures on class trials. In 1992 he was a co-recipient of the Trial Lawyer of the Year Award given by Trial Lawyers for Public Justice for *National Association of Radiation Survivors v. Walters* No. 83-c-1861 (N.D. Cal.) (tried to class-wide judgment on remand from Supreme Court).

From 1993 through 1997, Mr. Ram was a partner with Lieff, Cabraser, Heimann and Bernstein where he represented plaintiffs in several major class actions, including: *Cox v. Shell*, Civ. No 18,844 (Obion County Chancery Court, Tenn.) national class of six million owners of property with defective polybutylene plumbing systems; *In re Louisiana-Pacific Inner-Seal Litigation*, No. 95-cv-879 (D. Oregon) (co-lead counsel) national class of homeowners with defective siding; *ABS Pipe Litigation,* Cal. Judicial Council Coordination Proceeding No. 3126 (Contra Costa County) national class of homeowners.

In 1997, Mr. Ram founded Levy, Ram & Olson which became Ram & Olson and then Ram, Olson, Cereghino & Kopczynski. He was co-lead counsel in many consumer class actions including a national class of half a million owners of dangerous glass pane gas fireplaces in *Keilholtz et al. v. Superior Fireplace Company*, No. 08-cv-00836 (N.D. Cal. 2008). He was co-lead counsel for plaintiffs in *Chamberlan v. Ford Motor Company,* No. 03-cv-2628 (N.D. Cal.), a class action involving defective intake manifolds that generated four published opinions, including one by the Ninth Circuit, 402 F.3d at 950, and settled one court day before the class trial. He was also co-counsel for plaintiffs in a number of other consumer class actions, including: *In re General Motors Corp. Product Liability Lit.* MDL. No. 1896 (W.D. Wash.) (defective speedometers); *Richison v. American Cemwood Corp.,* San Joaquin Superior Court Case No. 005532 defective

Cemwood Shakes); *Williams v. Weyerhaeuser,* San Francisco Superior Court Case No. 995787 (defective hardboard siding); *Naef v. Masonite,* Mobile County, Alabama Circuit Court Case No. CV-94-4033 (defective hardboard siding on their homes); *Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) (approving class action settlement); *McAdams v. Monier, Inc.* (2010) 182 Cal. App. 4th 174 (reversing denial of class certification in consumer class action involving roof tiles); *Gardner v. Stimson Lumber Co.* (King County Wash. No. 2-17633-3-SEA) (defective siding); *Rosenberg v. U-Haul* (Santa Cruz Superior Ct. No. CV-144045 (certified consumer class action for false and deceptive conduct; tried successfully to judgment); *In re Google Buzz User Privacy Litigation*, No. 10-cv-00672-JW (N.D. Cal. 2011) (international class action settlement for false and deceptive conduct); *Whitaker v. Health Net of California, Inc.*, *and International Business Machines Corp*, No. 2:11-cv-0910 KJM DAD (E.D. Cal.) (electronic privacy class action under the California Confidentiality of Medical Information Act); and *In re Kitec Plumbing System Products Liab. Litigation MDL No 2098*, N.D. Texas, No. 09-MD-2098 (MDL class action involving claims concerning defective plumbing systems).

From 2017 to 2020, Mr. Ram was a partner at Robins Kaplan LLP. In August 2020, Mr. Ram joined Morgan & Morgan to open a San Francisco office for them. He is currently co-lead counsel in numerous consumer class actions, including *Gold v. Lumber Liquidators,* N.D. Cal. No. 14-cv-05373-RS, a certified multistate class action involving bamboo floors, and *Fowler v. Wells Fargo,* N.D. Cal. No. 3:17-cv-02092-HSG, a class action involving interest charges that settled for $30 million. In addition, he is also currently serving on the Plaintiffs' Steering Committee in the *In re Philips CPAP MDL Litigation,* where he is co-chair of the Law and Briefing Committee.

c. **Jean Sutton Martin.**

Ms. Martin has devoted the majority of her 24 years of practice to helping consumers. Ms. Martin presently serves by appointment as interim co-lead counsel in, *Combs, et al. v. Warner Music Group*, Case No. 1:20-cv-07473-PGG (S.D.N.Y.), *In Re: Ambry Genetics Data Breach Litigation*, No. 20-cv-00791 (C.D. Cal.), and *Johnson, et al. v. Yuma Regional Medical Center*, 2:22-cv-01061-SMB (D. Ariz.). She also serves as a member of the Plaintiffs' Steering Committee for the cases proceeding against LabCorp, Inc. in *In re: American Medical Collection Agency Data Breach Litigation*, 19-md-2904 (D. N.J.) and a steering committee member *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 19-md-2921 (D. N.J.).

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).

She has served in leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including inter alia: *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.)($68 million settlement for 15 million class members); *Aguallo, et al. v. Kemper Corp., et al.*, Case No.: 1:21-cv-01883 (N.D. Ill.) (data breach settlement valued at over $17.5 million) (co-lead counsel); *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *Linnins v. HAECO Americas, Inc., et al.*, No. 16-cv-486 (M.D.N.C.) (employee data disclosure) (co-lead counsel); *Torres v. Wendy's International, LLC*, No. 6:16- cv-210 (M.D. Fla.) (data breach) (class counsel); *Fuentes, et al. v. UniRush, LLC, et al.*, No. 1:15- cv-08372 (S.D.N.Y.) (disruption in servicing of financial accounts) (co-lead counsel); *Lewis, et al., v. Green Dot Corp., et al.*, No. 2:16-cv-03557

13

(C.D. Cal.) (disruption in servicing of financial accounts) (class counsel); *Brady, et al. v. Due North Holdings, LLC, et al.*, No. 1:17-cv-01313 (S.D. Ind.) (employee data disclosure) (class counsel); *Foreman v. Solera Holdings, Inc.*, No. 6:17-cv-02002 (M.D. Fla.) (employee data disclosure) (class counsel); *In Re: Outer Banks Power Outage Litigation*, No. 4:17-cv-141 (E.D.N.C.) (extended island power outage due to defective construction practices) (class counsel); and, *McCoy v. North State Aviation, LLC, et al.*, No. 17- cv-346 (M.D.N.C.) (WARN Act violations) (class counsel).

In addition to consumer class actions, Ms. Martin has practiced in the areas of mass tort and catastrophic personal injury litigation. Prior to joining Morgan and Morgan, Ms. Martin ran her own law firm concentrating in consumer class actions and mass tort litigation. She also has served as an adjunct professor at Wake Forest University School of Law.

Ms. Martin received her Juris Doctor degree from Wake Forest University School of Law in 1998, where she served as Editor-in-Chief of the Wake Forest Law Review. She obtained eDiscovery certification from the eDiscovery Training Academy at Georgetown Law Center in 2017. Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical *Economics in 1989. She earned a Master of International Business from the University of South Carolina in 1991.*

Ms. Martin has been honored with the prestigious "AV" rating by Martindale-Hubbell. In 2016, Ms. Martin was selected by her peers as the foremost Litigation attorney in the State of North Carolina for *Business North Carolina Magazine's Legal Elite*, gaining membership in the *Legal Elite* Hall of Fame. In 2015, she was inducted as a Fellow of the Litigation Counsel of America, a prestigious trial lawyer honorary society comprised of less than one-half of one percent of American lawyers. Fellows are selected based upon excellence and accomplishment in

litigation, both at the trial and appellate levels, and superior ethical reputation. For upholding the highest principles of the legal profession and for outstanding dedication to the welfare of others, Ms. Martin has also been selected as a Fellow of the American Bar Foundation, an honorary legal organization whose membership is limited to one third of one percent of lawyers in each state. In 2002, she was recognized by LAW360 as an MVP in the area of cybersecurity and data privacy.

Before entering law school, Ms. Martin worked with the sales finance team of Digital Equipment Company in Munich, Germany developing sales forecasts and pricing models for the company's expansion into the Eastern European market after the fall of the Berlin wall. She also worked as a practice management consultant for a physician consulting group and as a marketing manager for an international candy manufacturer where her responsibilities included product development, brand licensing, market research, and sales analysis.

Ms. Martin has been a presenter on a variety of topics related to class actions including: *Fantasy Gaming Webinar: FanDuel and DraftKings Litigation*, AAJ (December 2015); *Thinking Outside the Black Box: Drug Cases in the Class Context*, Mass Torts Made Perfect (October 2019); *Mass Torts and MDLs*, Western Alliance Class Action Forum (March 2020); *Consumer Class Actions*, Western Alliance Class Action Forum (March 2022); *How to Maximize Efficiency in Document Production and Review*, Mass Torts Made Perfect (April 2022).

Ms. Martin is a member of the North Carolina bar, having been admitted in 1998. She is also admitted to practice before the United States Supreme Court, the United States Court of Federal Claims, the United States Court of Appeals for the Fourth Circuit, the Western, Middle, and Eastern Districts of North Carolina, and the United States District Court of Colorado.

### d. Marcio Valladares.

Mr. Valladares was born in Managua, Nicaragua and immigrated to the United States during Nicaragua's civil war. In 1990, Marcio obtained a Bachelor of Science degree in psychology from the University of Florida. In 1993, he obtained his Juris Doctor degree, *magna cum laude*, from Florida State University. He is pursuing a Masters in Law (LL.M.) degree from Columbia University, focusing on federal and comparative law.

Before joining Morgan & Morgan, Marcio worked in both the public and private sectors. He served as a judicial law clerk to the Honorable Steven D. Merryday, United States District Judge, Middle District of Florida, and then served as a judicial law clerk to the Honorable Susan H. Black, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit. Marcio served as an Assistant United States Attorney for the Middle District of Florida. In the private sector, Marcio practiced commercial litigation and insurance defense at Holland & Knight LLP. Marcio also worked as in-house counsel for the Mayo Clinic. Marcio is fluent in English and Spanish.

### e. Marie Noel Appel.

Ms. Appel has dedicated her career to representing consumers in both individual and class action cases involving claims under consumer protection laws and other statutory and common law claims. She earned a B.A. in French from San Francisco State University in 1992 and graduated from University of San Francisco School of Law in 1996.

For most of her career, Ms. Appel has been in private practice litigating class claims related to defective products, mortgage fraud/Truth in Lending violations, unfair business practices relating to manufactured home sales, interest overcharges by the United States on military

veterans' credit accounts, and statutory violations by the United States relating to offset of debts beyond the limitations period.

From 2012 to 2019, Ms. Appel left private practice to become the Supervising Attorney of the Consumer Project at the Justice & Diversity Center of the Bar Association of San Francisco which provides free legal services to low-income persons facing consumer issues.

In April 2019, Ms. Appel returned to private practice as Counsel at Robins Kaplan, LLP, then joined Morgan & Morgan in August 2020 where she focuses on class action litigation.

In additional to her legal practice, Ms. Appel is an Adjunct Professor at Golden Gate University School of Law in San Francisco where she teaches legal research and writing, and from 2011 to 2018 supervised students at the Consumer Rights Clinic, in which students performed legal work at the Justice & Diversity Center's Consumer Debt Defense and Education Clinics.

Ms. Appel has a long history of pro bono involvement and currently is a regular volunteer at the Community Legal Assistance Saturday Program, a monthly free legal clinic sponsored by the Alameda County Bar Association. Ms. Appel provides trainings to San Francisco Bay Area legal aid attorneys regarding consumer collection defense and related matters, focusing recently on defense of lawsuits against low-income individuals for unpaid back rent resulting during the COVID-19 pandemic. In the past, Ms. Appel has provided pro bono representation for numerous low-income consumers facing debt collection lawsuits, and volunteered regularly at free legal clinics through the Justice & Diversity Center in San Francisco which, on multiple years, designated her as one of the Outstanding Volunteers in Public Service.

Ms. Appel is admitted to practice in the Ninth Circuit Court of Appeals, and United States District Courts in the Central District of California; the Eastern District of California; the Northern District of California; and the Southern District of California.

### f.  Kenya Reddy.

Ms. Reddy represents consumers in class action litigation. She graduated from Duke University in 1997 with a degree in political science. In 2000, she received her law degree from the University of Virginia School of Law.  Prior to joining Morgan & Morgan, Ms. Reddy was a shareholder at Carlton Fields, P.A., where her primary areas of practice were antitrust, complex civil litigation, class action defense, and business litigation. She also has experience in including labor and employment, products litigation, ERISA and employee benefits law, insurance, healthcare, and securities litigation.

Ms. Reddy has served as a law clerk for the Honorable Charles R. Wilson, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit, the Honorable Anne C. Conway, former Chief Judge of the United States District Court for the Middle District of Florida, the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida, and the Honorable Karla R. Spaulding, United States Magistrate Judge, Middle District of Florida.

Ms. Reddy was a guest speaker in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on the topic of standing in data breach cases.  In October 2019, she presented on the topic of third-party litigation funding at the Mass Torts Made Perfect Conference.

Ms. Reddy is admitted to practice in the Northern, Middle, and Southern Districts of Florida.

### g.  Ryan Maxey.

Mr. Maxey grew up in Tampa, Florida. He attended the University of South Florida, where he obtained bachelor's degrees in computer science and philosophy.  During and after his undergraduate education, Mr. Maxey developed software and databases for an automotive

lubricant manufacturer located in the Port of Tampa. Mr. Maxey later attended law school at the University of Florida, graduating *order of the coif* in 2008.

From 2008 to 2011, Mr. Maxey served as a judicial law clerk to the Honorable Elizabeth A. Jenkins, United States Magistrate Judge, Middle District of Florida. Mr. Maxey then worked at one of the country's largest law firms, Greenberg Traurig, for four years. In 2015, Mr. Maxey joined Morgan & Morgan's Business Trial Group as a lead attorney handling a variety of business litigation matters. Mr. Maxey later started his own law practice, litigating claims related to breach of contract, trade secret misappropriation, the FLSA, the FDCPA, and premises liability.

Mr. Maxey was admitted to the Florida Bar in 2008 and is also admitted to practice in the Middle District of Florida and the Southern District of Florida.

### h.   Ryan J. McGee.

Mr. McGee was born and raised in Tampa, Florida. He studied business economics and history at the University of Florida, where he was a teaching assistant for technology classes in the business school, and received his law degree from Stetson University College of Law, where he was an editor on the *Stetson Law Review*, a research assistant for antitrust and consumer protection laws, and a teaching assistant for Stetson's trial advocacy program.

Ryan began his legal career as a state-appointed prosecutor, where he tried over 50 jury trials to verdict, mostly felonies, as well as a special prosecutor appointed to investigate police officers' deadly use-of-force and corruption within various law enforcement agencies. Ryan also served as a law clerk for two years for the Honorable Elizabeth A. Kovachevich, the former Chief United States District Judge, Middle District of Florida. Before joining Morgan & Morgan, Ryan's practice involved complex business disputes, antitrust, trade secret, data security, and class action investigations and defense-side litigation in state and federal courts across the country.

19

Since shifting his focus entirely to consumer class action representation, Ryan has been selected as a Florida Super Lawyer Rising Star in 2018 and 2019 in the field of Class Actions, and has extensive privacy and consumer fraud class action experience, having actively participated in the following litigations: *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal.); *Rodriguez v. Google LLC*, No. 3:20-cv-4688-RS (N.D. Cal.); *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.); *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.); *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.); *In re Google Plus Profile Litigation*, No. 5:18-cv-06164 EJD (N.D. Cal.); *Kuss v. American HomePatient, Inc., et al.*, No. 8:18-cv-02348 (M.D. Fla.); *In re Equifax, Inc. Customer Data Sec. Breach Litigation*, No. 1:17-md-02800 (N.D. Ga.); *Morrow v. Quest Diagnostics, Inc.*, No. 2:17-cv-0948(CCC)(JBC) (D.N.J.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK (N.D. Cal.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.);

Ryan was admitted to the Florida Bar in 2009 and is also admitted to practice in the Northern, Middle, and Southern Districts of Florida.

### i. Patrick Barthle.

Mr. Barthle was born and raised in Dade City, Florida. He attended the University of Florida where he was admitted to the Honors Program and graduated, *cum laude*, with a double major in History and Criminology in 2009. While at UF, Patrick was inducted into the Phi Beta Kappa Honor Society and served as President of the Catholic Student Center. Patrick attended Washington and Lee University School of Law, graduating *summa cum laude* in 2012; where he was a Lead Articles Editor for the Wash. & Lee Law Review, a member of the Order of the Coif and the Phi Delta Phi Legal Honor Society, and President of the W&L Law Families organization.

Before joining Morgan & Morgan in 2015, Patrick worked at one of the country's largest law firms, Greenberg Traurig, LLP, and then served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida. Patrick has extensive privacy and consumer fraud class action experiencing, having actively participated in the following litigations: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.); *Torres v. Wendy's International, LLC*, No. 6:16-cv-210 (M.D. Fla.); *Morrow v. Quest Diagnostics, Inc*., No. 2:17-cv-0948 (Dist. NJ); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.); *In re The Home Depot, Inc. Customer Data Security Data Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-md-02752-LHK (N.D. Cal.); and *Finerman v. Marriott Ownership Resorts, Inc.*, Case No.: 3:14-cv-1154-J-32MCR (M.D. Fla.).

Patrick was selected as a Florida Super Lawyer Rising Star in 2019 in the field of Class Actions. He is also active in speaking on privacy and class action topics, having spoken in June 2018, at the NetDiligence Cyber Risk Summit on the topic of Unauthorized Use of Personal Data; in November 2018 at the American Association for Justice's Advanced 30(b)(6) Seminar, on the topic of 30(b)(6) Depositions in in Data Breach Cases; and in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on that topics of damage models and settlements in data breach cases; and Rule 23(c)(4) classes at the Mass Torts Made Perfect conference.

Mr. Barthle was admitted to the Florida Bar in 2012 and is also admitted to practice in the Middle District of Florida, the Southern District of Florida, and the District of Colorado.

### j. Francesca Kester.

Ms. Kester was born and raised in Scranton, Pennsylvania. She attended Marywood University, where she graduated with a major in English Literature, and The Pennsylvania State University's Dickinson School of Law, where she received her Juris Doctor degree in 2017. While at Dickinson, Ms. Kester competed in the American Bar Association's National Appellate Advocacy Competition, where she was awarded the highest honor for her legal brief writing, and the Texas Young Lawyer's National Trial Competition, where she finished as a regional finalist. Ms. Kester also served as Executive Chair of the Dickinson Law Moot Court Board, Founder of the Dickinson Law partnership with Big Brothers Big Sisters, and Student Director of the Bethesda Mission Men's Shelter legal clinic. At graduation, she was honored with the D. Arthur Magaziner Human Services Award for outstanding academic achievement and service to others, the Joseph T. McDonald Memorial Scholarship for excellence in trial advocacy, and the peer-selected Lee Popp Award for her devotion to the legal field.

Ms. Kester interned as a judicial clerk to United States Magistrate Judge Martin C. Carlson while in law school. After graduation, she served for two years as a law clerk to the Honorable James M. Munley in the United States District Court for the Middle District of Pennsylvania. Ms. Kester is a member of the Lackawanna County Bar Association, the Pennsylvania Bar Association, the American Association for Justice, and Order of the Barristers. In 2018 and 2019, she served as the attorney advisor for her alma mater's high school mock trial team, coaching them to a first-place finish in the state and ninth in the nation.

Ms. Kester is admitted to practice law in both Pennsylvania and Florida.

### k. Ra O. Amen.

Mr. Amen was raised in both the California Bay Area and Massachusetts. In 2005, Ra graduated from Stanford University with a B.A. in Economics. After graduating, Ra worked as a Peace Corps volunteer in Morocco teaching English as a second language and business skills to local artisans. Before entering law school, Ra worked for several years in education and in business development for a mobile technology startup. In 2017, he obtained his Juris Doctor degree with Honors from Emory University School of Law. While at Emory Law, he was a Managing Editor of the Bankruptcy Developments Journal, interned at a consumer fraud law practice, and worked in-house with one of the globe's leading metals companies assisting in a diverse array of legal issues ranging from corporate restructuring to international tax and contract disputes.

Ra was admitted to the Georgia Bar in 2017. Before joining Morgan & Morgan in 2020, Mr. Amen worked at one of the nation's largest defense law firms in the nation where he specialized in representing clients in complex commercial, administrative, and ecclesiastical disputes.

Ra speaks both English and Spanish and is an avid guitar player.

### C. Morgan & Morgan has committed, and will continue to commit, the resources necessary to represent the class.

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative class. Fed. R. Civ. P. 23(g)(1)(C). Here, Morgan & Morgan can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. As immediate support, the class action attorneys at Morgan & Morgan can call upon a team of more than 80 attorneys (8 focused on legal research, and 75 dedicated to document review, deposition support, and trial preparation and support). Each attorney of Morgan & Morgan's class action group understands the time, energy, and skill

23

necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members. In fact, Morgan & Morgan has already demonstrated its commitment to this litigation by devoting substantial resources to this litigation and filing this leadership proposal and committing to draft the Consolidated Class Action Complaint. Morgan & Morgan has the economic resources to fund this case and will not use litigation funding to prosecute this litigation. And, as its resume and experience indicate, Morgan & Morgan has all necessary resources to see this litigation through to its conclusion, including trial.

### D.     Other Factors Support Appointing Morgan & Morgan

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation. *See* MANUAL FOR COMPLEX LITIG. § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.*

Morgan & Morgan will formulate (in consultation with other counsel) and present positions on substantive and procedural issues during the litigation. MANUAL FOR COMPLEX LITIG., § 10.221 ("Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.").

Morgan & Morgan has a proven record of working successfully with many, if not most,

of the firms that represent the plaintiffs in the related cases.

Morgan & Morgan has also previously litigated against Defendant's counsel in other data breach cases. *See, e.g.*, *Morales, et al. v. Orlando Family Physicians, LLC*, No.: 2021-ca-009153-o (Fla. 9th Jud. Cir. (Orange County)); *In re US Fertility LLC Data Breach Cases*, No. 8:21-cv-299 (D. Md.); *Hayes v. Automation Personnel Services, Inc.*, No. 2:21-cv-00859-AMM (N.D. Ala.); *Roderick v. Fla. Hospital Physician Group, Inc.*, No. 2021-CA-001152 (Fla. 13th Jud. Cir. (Hillsborough County)); *In re Shields Health Care Group, Inc. Data Breach Litig.*, No. 1:22-cv-10901 (D. Mass.); *Shriver v. Partnership Healthplan of California*, No. 4:22-cv-03719 (N.D. Cal.); *Retsky v. Super Care, Inc.*, No. 22STCV16267 (Los Angeles County); *Castillo v. Illinois Gastroenterology Group, PLLC*, No. 1:22-cv-02953 (N.D. Ill.); *Llamas v. Truefire, LLC*, No. 8:20-cv-857-WFJ-CPT (M.D. Fla.); *Tafelski v. Logan Health Medical Center*, No. ADV-22-0108 (Montana 8th Jud. Dist. Ct.).

## V.     CONCLUSION

For the foregoing reasons, Morgan & Morgan respectfully requests that the Court appoint the firm as Interim Counsel, together with Stueve Siegel Hanson LLP and Milberg Coleman Bryson Phillips Grossman, PLLC.

Date: January 3, 2023                      Respectfully Submitted,

/s/ John A. Yanchunis
John A. Yanchunis
Ryan D. Maxey
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com

25

rmaxey@ForThePeople.com

*Attorneys for Plaintiff Carlson and the Proposed Class*

# Exhibit A

## TIME AND EXPENSE PROTOCOL

It is important that all plaintiffs' counsel on this case follow the same consistent, standard, and accurate billing practices. Time keeping has both a substantive and procedural component: We must only bill for time that is justifiably billed to the case (and that we would feel comfortable requesting payment from a fee-paying client), and we must document that time contemporaneously, accurately, and completely so that the Court and/or our clients can understand the work that we have done. At the direction of Lead Counsel, the following billing protocols are now in place. Please forward this memo to all timekeepers at your firm.

If there are any questions or if clarification is needed about any of the items addressed herein, please address your questions to _____.

## I.  OVERALL POLICIES AND GUIDELINES

**A.  All Time and Expenses Must Be Authorized**. Plaintiffs' counsel will only be entitled to fees or reimbursement of expenses for functions or expenses authorized in advance by Lead Counsel. If you have any doubts about whether your time has been so authorized, please reach out to Lead Counsel for clarification. Time and expenses will only be submitted to the Court for work authorized in advance. ***Therefore, each billing entry must indicate who assigned you the function (or Litigation Phase category) for each task that is billed.***

**B.  Adherence to This Protocol Required**. Simply reporting the time does not mean a firm will be paid for that time or that such time will be included in any fee application. We will not be able to include in any fee petition any time that is not expended and timely reported in accordance with this protocol. Further, Lead Counsel will evaluate the propriety of all reported time to ensure that the tasks were efficiently handled and are reasonable.

**C.  Minimum Number of Attorneys**. As few attorneys as reasonably possible should be on any conference call, deposition, hearing, or meeting. At all times, care and attention shall be paid to avoid overbilling and overstaffing the case. It is not necessary for all lawyers appointed to leadership positions to attend hearings or status conferences with the Court. Going forward, our general policy is that no one other than Lead Counsel and Liaison Counsel shall attend hearings. Typically, the Court arranges for lawyers to participate in hearings and conferences telephonically, so there should not generally be a compelling reason for in-person appearances. Of course, there may be good reason to depart from this policy, such as when a lawyer is particularly knowledgeable about a matter to be taken up with the Court. Decisions to depart from the policy will be made by Lead Counsel on a hearing-by-hearing basis.

**D.  Weekly Calls.** We intend to have weekly leadership calls during which we will bring each other up to speed on the work we're each doing in this litigation and the progress of the

litigation as a whole. For billing purposes, these calls should generally be limited to lawyers who have been selected to a leadership position by the Court or, if that person is unavailable, a designee from the lawyer's firm, unless otherwise approved by Lead Counsel.

**E.** **Avoid Over-Staffing and Over-Billing**. Everyone must be mindful of the kinds of activities that are done by certain billers. Assignments within a firm should be delegated commensurate with years of experience and with the goal of avoiding over-staffing and over-billing. As an example, a senior partner should not be performing and billing for dozens of hours of document review.

**F.** **Common Benefit Time Only.** Time and expenses incurred prior to the appointment of Lead Counsel will be considered for compensation only to the extent they contributed to the advancement of the litigation as a whole. Any time billed prior to appointment shall include an explanation as to how the work performed was directed by the Court or otherwise benefitted the class.

**G.** **Casual Review of Filings and Emails**. Do not bill for casual review of filings, orders, transcripts, emails, or other documents not directly related to work assigned by Lead Counsel. This will not be considered compensable time and should not be submitted. If you are reviewing for a reason (*i.e.*, to revise and edit, or to prepare for a hearing, conference call, or deposition), so state. Moreover, if you are not doing work relating to a specific area, you should not be billing to review those documents at all. For example, if you are not working on discovery issues, you do not need to bill to review motion to compel briefs and responses. Also, do not bill an inordinate amount of time to reviewing/responding to emails, and never bill for administrative emails.

**H.** **Administrative Tasks and Administrative Staff.** Do not bill time for communication with administrative staff (except for very lengthy substantive conversations, such as training staff on document review protocols or other supervisory matters). Do not bill attorney time for administrative tasks that could be handled by a secretary or paralegal, such as organizing files, copying and mailing. Do not bill for leaving a voicemail.

**I.** **Contract Attorneys**. We intend to be particularly mindful about the use of contract lawyers. No contract lawyers should be used to work on this case without Lead Counsel's prior written approval. Further, in seeking approval for the use of contract lawyers, please disclose to Lead Counsel both the amount that you will be paying those contract lawyers, as well as the rate at which you intend to bill for their time. We may cap such rates to the extent contract attorneys are ever used.

**J.** **Allocation of Fees.** If we are fortunate enough to be awarded a fee in this litigation, the allocation of the fee among the participating firms will be made by Lead Counsel after the fee

has been awarded. In allocating any fee, Lead Counsel will be guided by the concept that each firm will be rewarded for the value it has contributed to the results obtained for our clients. While each firm's lodestar will be a substantial factor in determining value, it will not be the only factor. Significant weight will be given to factors such as how efficiently and effectively a firm has handled its responsibilities, the nature of the work that was done, creativity, collegiality, equity, and any other considerations that Lead Counsel deem relevant.

## II.     GENERAL BILLING RULES

### A.     Format

- Time must be maintained accurately and contemporaneously. Failure to maintain such records contemporaneously, as well as an insufficient description of the activity, may result in disallowed time.

- All time must be billed in six-minute (tenth-of-an-hour) increments.

- At the end of any call or meeting, confirm the time to be billed. If it is a team conference call, or other call with a number of participants, the person chairing the meeting, shall state the amount of time at the end of the call or send an email thereafter. Do this also for meetings with attorneys in your own firm. **Important!** If you join a call late, or get off a call early, please state "(partial)" in your time records, so as to avoid confusion about how long the call or meeting lasted.

- **Block billing is expressly prohibited**. Time shall be recorded by specific task and lawyer or other professional performing the task. Time must be recorded by each task such that if there are multiple tasks billed to this case in a single day, each task must be its own entry including its allotted time spent on that specific task alone.

- Use descriptive and detailed summaries and action words. When describing the documents you are working on, instead of writing "review order," provide more details by specifying the subject or date of those documents (*e.g.*, "review stipulation to continue Rule 16 conference"). If you do an in-depth and long review of a document, list why (*e.g.*, "in preparation for a deposition") or at least list further descriptive words (*e.g.*, "review and analyze"). Similarly, when describing your actions, avoid using phrases like "work on x" or "follow up on y," as these do not make clear what you actually did (instead use words like review, draft, analyze, annotate, research, etc.).

- Each time entry shall include an "approved by" column so that the timekeeper must state which Lead or Committee Chair approved of the function (or Litigation Phase category) your time entry falls into and for which your time entry is being submitted. For example, if you are

assigned to Defensive Discovery, then you will designate each task performed under the function "Defensive Discovery." You do not need separate approval for each task that you perform under the Defensive Discovery umbrella.

- Always include subject matter in your entries. References to "phone call," "review documents," "legal research," "attend meeting," "review email," standing alone, are insufficient.

- Always list other participants on telephone calls or in meetings, either by title (*i.e.*, "opposing counsel," or, preferably, by name). If there are large team conference calls or meetings, we can designate one person to list all participants in the billing record, and others can then record "phone call with team." It may not be possible or desirable to list all recipients of emails, but try to specify the general group (*i.e.*, "exchange email with opposing counsel re:...," "exchange email with Lead Counsel re:...," or "exchange email with J. Doe re:..."). **We will use first initial and last names** (*i.e.*, "teleconf with M. Smith  re: ESI protocol"). Using initials or only first names makes it difficult to understand the entry and to compare entries between firms.

- Check spelling and grammar and avoid abbreviations that may make sense to you alone, or to you and other plaintiffs' counsel, but not to the Court.

- You may not bill for time spent entering or summarizing time and/or expense reports.

## B. Billing Rates

- Billing rates must be "your customary billing rates" for this type of case. You must have some objectively verifiable proof of your customary billing rates.

- With your first submission of time and expenses, you shall also provide to us a list of the proposed attorneys/paralegals who will bill time on this case and their customary and usual court-approved hourly rates. For each attorney, you must also specify whether the attorney is a partner or associate (including of counsel or other designations), and the year of law school graduation.

## III. EXPENSES

All expenses that are contemporaneously recorded, specifically documented, and timely reported will be eligible for reimbursement.

During the course of the litigation, common benefit expenses that benefit all plaintiffs (referred to below as "Shared Costs") will be paid from the litigation fund to be managed by _____. "Held Costs" are those that will be carried by each attorney in this case and are described in more detail below.

4

All cost reimbursements will be subject to the limitations set forth below.

## A. Shared Costs

Shared Costs are costs incurred for the common benefit of this case as a whole. Any Shared cost in excess of $5,000 will require advance approval from Lead Counsel before the expense is paid. Shared Costs submitted to Cohen Milstein for reimbursement will be reviewed for adherence to these guidelines. Shared Costs that are approved by Lead Counsel may be eligible for reimbursement on a rolling basis from the litigation fund. Shared Costs include:

- Filing and service costs;

- ESI hosting and review expenses;

- Deposition and court reporter fees;

- Expert witness costs;

- Document depository and other database costs;

- Website creation and hosting costs;

- Administrative expenses;

- Bank or financial institution charges;

- Investigative services;

- Notice/claims administrator charges;

- Special Master charges; and

- Mediator charges.

## B. Held Costs

Held costs must be incurred for the global benefit of this case. No specific client-related costs may be considered as held costs, unless authorized by Lead Counsel. All Held Costs should be reported at cost with no mark-up. All attorneys seeking reimbursement for Held Costs must retain all receipts and billing records necessary to justify reimbursement. Held Costs must be reported on a monthly basis consistent with the policies set forth below. Held Costs must be incurred in performance of tasks authorized in advance and in writing by Lead Counsel. Held Costs include the categories listed below, and are subject to the following limitations:

5

- **Air travel.** Counsel shall use their best efforts to obtain reasonably-priced airfare, presumptively the cost of a coach fare seat or its equivalent. First-class travel will not be reimbursed.

- **Ground transportation.** All rental or taxi fees should be reasonable for the type of travel required. No black cars or limousines will be reimbursed unless no other services were available or a larger car can be justified by the number of travelers.

- **Hotel:** Counsel shall stay in accommodations that do not exceed the cost of standard, business-class hotels in the city in which the stay occurs. No suites or excessive hotel costs will be reimbursed.

- **Meals.** Meal expenses shall be reasonable, accounting for the purpose of the meal and the options available. Expenses for alcohol will not be reimbursed.

- **Legal Research Costs.** Expenses for legal research servers incurred in connection with work assigned by Lead Counsel may be submitted as appropriately allocated to the case.

- **Cash Expenses.** Please avoid miscellaneous cash expenses for which receipts generally are not available (e.g., tips, luggage handling). They may be reimbursed provided the expenses are properly itemized, not excessive, and accurately described.

- **Other:** fax charges; postage; long distance telephone charges; in-house photocopying; computerized legal research; and secretarial or clerical overtime.

## C. Billing Rules

The following guidelines apply to both Shared Costs and Held Costs:

- All requests for reimbursement must be at actual cost and supported by receipts.

- Only reasonable expenses will be reimbursed.

- Expenses should be reported in the month incurred. On expenses reported later, due to delays caused by slow third-party billing statements or billing cycles, the expense should be reported in the first-possible submission, along with an explanation for the delay.

- All expenses should include a description of the reason for the cost and reference the task associated with the cost.

## IV.   SUBMISSION OF TIME AND VERIFICATION

      **A.**      **Format.** Time and expense reports will be compiled, reviewed and maintained by _____. Please transmit your monthly time and expense reports electronically in PDF and Excel format to _____. If you have any questions regarding the reports, please contact Jean or Andréa directly by email or telephone.

      Each monthly time and expense submission must include the Time and Expense Reports Excel workbook attached hereto. This means that each monthly submission email will consist of one PDF file and one Excel file, within which there will be three tabs: Monthly Expense Report; Monthly Time Report; and Monthly Time Report Summary. **Submissions must be made using the attached Time and Expense Reports. Time and expenses not submitted using these Reports will not be considered.**

      All Time and Expense Reports must be certified by an attorney with authority in each firm attesting to the accuracy of the submissions. This requirement may be satisfied by including such a certification along with each submission, either as a separate attachment to the email containing the submissions, or, if the submission email is sent directly by the certifying attorney, then in the body of the email containing the submissions.

      You must maintain the underlying time and expense records that support your monthly submissions, including original receipts.

      **B.**      **Schedule.** The first time and expense reports are **due** _____, and should include all qualified time and expenses incurred through _____. Time and expense reports thereafter are to be submitted **by the 15th of each month** (or the first business day thereafter) for the preceding month. **Lead Counsel may not consider, compile or include time and expenses that are submitted significantly late**.

# Exhibit B

**IN RE PREMERA BLUE CROSS CUSTOMER DATA SECURITY BREACH LITIGATION - MDL NO. 2633**

**MONTHLY TIME REPORT**

Dates:

Firm Name: Morgan & Morgan

**Categories:** 1. Lead and/or Liaison Calls/Meetings/Duties  2. Litigation Strategy & Analysis  3. Court Appearance  4. Pleadings
5. Plaintiff Vetting & Discovery  6. Defendant or 3rd Party Discovery  7. Doc. Review  8. Deposition Prep/Taken/Defend  9. Experts/Consultants
10. Briefs/ Motions/Legal Research  11.Class Certification  12. Settlement  13. Trial Prep and Trial 14. Appeal  15. Miscellaneous (describe)

| Firm Name | Last Name, First Name | Professional Level | Date of Service | Category Name | Detailed Description of Work Performed | Billing Rate | Time Spent (.1hr) | Fees Total |
|---|---|---|---|---|---|---|---|---|
| Morgan & Morgan | Adams, Sam | | | 1 - Lead and/or Liaison Calls/Meetings/Duties | | 850 | 0.50 | 425.00 |
| Morgan & Morgan | Jordan, Michael | | | 4 - Pleadings | | 250 | 1.00 | 250.00 |
| Morgan & Morgan | Stewart, Martha | | | 3 - Court Appearance | | 450 | 0.75 | 337.50 |
| Morgan & Morgan | Wayne, John | | | 5 - Plaintiff Vetting & Discovery | | 350 | 0.75 | 262.50 |
| Morgan & Morgan | Wayne, John | | | 6 - Defendant or Third Party Discovery | | 350 | 0.25 | 87.50 |
| Morgan & Morgan | Aniston, Jennifer | | | 5 - Plaintiff Vetting & Discovery | | 650 | 0.25 | 162.50 |
| Morgan & Morgan | Aniston, Jennifer | | | 6 - Defendant or Third Party Discovery | | 650 | 0.75 | 487.50 |
| Morgan & Morgan | Adams, Sam | | | 1 - Lead and/or Liaison Calls/Meetings/Duties | | 850 | 0.50 | 425.00 |
| Morgan & Morgan | Stewart, Martha | | | 3 - Court Appearance | | 450 | 0.25 | 112.50 |
| Morgan & Morgan | Obama, Barry | | | 2 - Litigation Strategy & Analysis | | 750 | 0.50 | 375.00 |
| Morgan & Morgan | Obama, Barry | | | 2 - Litigation Strategy & Analysis | | 750 | 0.50 | 375.00 |
| Morgan & Morgan | | | | | | | | - |
| Morgan & Morgan | | | | | | | | |
| Morgan & Morgan | | | | | | | | |
| Morgan & Morgan | | | | | | | | |
| Morgan & Morgan | | | | | | | | |
| Morgan & Morgan | | | | | | | | |
| Morgan & Morgan | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | - |
| | | | | | | | | - |
| | | | | | | | | - |
| | | | | | | | | - |
| | | | | | | | | - |
| | | | | | | | | - |

| | | | | | | 6.0 | 3300.0 |
|---|---|---|---|---|---|---|---|

Examples provided in the chart.
Put the firm name up top in cell B2 and it will autopopulate.
Column E is a dropdown menu.
Column I is a formula and will autopopulate
The Sums at the end of the page are a formula and will autopopulate even if you add more rows

*Except for lead or liaison counsel, attendance at a status conference will not be deemed Common Benefit Time, unless requested or deemed appropriate in advance by lead counsel

| Timekeeper Info | | | |
|---|---|---|---|
| Last Name, First Name | Professional Level | Billing Rate | Total Hrs. |
| Adams, Sam | Partner | 850 | 1.0 |
| Jordan, Michael | Associate | 250 | 1.0 |
| Aniston, Jennifer | Contract Atty | 650 | 1.0 |
| Stewart, Martha | Staff Atty | 450 | 1.0 |
| Wayne, John | Paralegal | 350 | 1.0 |
| Obama, Barry | Partner | 750 | 1.0 |
| | Partner | | 0.0 |
| | Partner | | 0.0 |
| | Partner | | 0.0 |
| | Partner | | 0.0 |
| | Partner | | 0.0 |
| | Partner | | 0.0 |
| | | | 0.0 |
| | | | 0.0 |
| | | | 0.0 |
| | | | 6.0 |

| Summary | | |
|---|---|---|
| Category | Total Time | Total Fees |
| 1 - Lead and/or Liaison Calls/Meetings/Duties | 1.0 | $ 850.00 |
| 2 - Litigation Strategy & Analysis | 1.0 | $ 750.00 |
| 3 - Court Appearance | 1.0 | $ 450.00 |
| 4 - Pleadings | 1.0 | $ 250.00 |
| 5 - Plaintiff Vetting & Discovery | 1.0 | $ 425.00 |
| 6 - Defendant or Third Party Discovery | 1.0 | $ 575.00 |
| 7 - Doc Review | 0.0 | $ - |
| 8 - Deposition Prep/Taken/Defend | 0.0 | $ - |
| 9 - Experts/Consultants | 0.0 | $ - |
| 10 - Briefs/ Motions/Legal Research | 0.0 | $ - |
| 11 - Class Certification | 0.0 | $ - |
| 12 - Settlement | 0.0 | $ - |
| 13 - Trial Prep and Trial | 0.0 | $ - |
| 14 - Appeal | 0.0 | $ - |
| 15 - Misc *describe | 0.0 | $ - |
| | 6.0 | $ 3,300.00 |

Only need to put names once in Column B.
Column C is a drop down menu.
Column E will auto-populate from the Monthly Time Details page

This table will auto-populate

**IN RE PREMERA BLUE CROSS CUSTOMER DATA SECURITY BREACH LITIGATION - MDL NO. 2633**
**MONTHLY EXPENSE REPORT**

Dates: _____0_____

Firm Name: Morgan & Morgan

**Categories:** 1. Assessment Fees  2. Federal Express / Local Courier, etc.  3. Postage Charges  4. Facsimile Charges  5. Long Distance  6. In-House Photocopying  7. Outside Photocopying  8. Hotels  9. Meals  10. Mileage  11. Air Travel  12. Deposition Costs/Court Reporter/Other  13. Lexis/Westlaw  14. Court Fees  15. Witness / Expert Fees  16. Investigation Fees / Service Fees  17. Transcripts  18. Ground Transportation (i.e. Rental, Uber)  19. Miscellaneous (Describe)

| Firm Name | Date | Category Code | Category Name | Detailed Description | Amount | Receipt | Description if No Receipt |
|-----------|------|---------------|---------------|----------------------|--------|---------|--------------------------|
| Morgan & Morgan | | 1 | Assessment Fees | | 1,000.00 | | |
| Morgan & Morgan | | 2 | Federal Express / Courier | | 500.00 | | |
| Morgan & Morgan | | 2 | Federal Express / Courier | | 500.00 | | |
| Morgan & Morgan | | 3 | Postage Charges | | 250.00 | | |
| Morgan & Morgan | | 4 | Facsimile Charges | | 950.00 | | |
| Morgan & Morgan | | 3 | Postage Charges | | 750.00 | | |
| Morgan & Morgan | | 5 | Long Distance | | 1,000.00 | | |
| Morgan & Morgan | | 4 | Facsimile Charges | | 50.00 | | |
| Morgan & Morgan | | | | | | | |
| | | | | | $ 5,000.00 | | |

Examples provided in the chart
Columns C & D are drop down menus
Column G is a drop down - choose yes or no as to whether you have a receipt

544444.1

| Summary | |
|---|---|
| **Category** | **Amount** |
| 1 - Assessment Fees | $ 1,000.00 |
| 2 - Federal Express / Courier | $ 1,000.00 |
| 3 - Postage Charges | $ 1,000.00 |
| 4 - Facsimile Charges | $ 1,000.00 |
| 5 - Long Distance | $ 1,000.00 |
| 6 - In-House Photocopying | $ - |
| 7 - Outside Photocopying | $ - |
| 8 - Hotels | $ - |
| 9 - Meals | $ - |
| 10 - Mileage | $ - |
| 11 - Air Travel | $ - |
| 12 - Deposition Costs/Court | $ - |
| 13 - Lexis/Westlaw | $ - |
| 14 - Court Fees | $ - |
| 15 - Witness / Expert Fees | $ - |
| 16 - Investigation Fees / Service | $ - |
| 17 - Transcripts | $ - |
| 18 - Ground Transportation | $ - |
| 19 - Misc *describe | $ - |
| | $ 5,000.00 |

This chart autopopulates

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCINE SIMMONS, Individually, and on Behalf of All Others Similarly Situated, | Case No. 4:22-cv-03194 |
| Plaintiff, | |
| v. | |
| NELNET SERVICING, LLC, | |
| Defendant. | |

| | |
|---|---|
| CHRISTOPER CORDARO, Individually, and on Behalf of All Others Similarly Situated, | Case No. 4:22-cv-03207 |
| Plaintiff, | |
| v. | |
| NELNET SERVICING, LLC, | |
| Defendant. | |

# **PLAINTIFFS' MOTION TO APPOINT CO-LEAD INTERIM CLASS COUNSEL**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g) and this Court's Order (ECF No. 21), Plaintiffs Christopher Cordaro and Francine Simmons respectfully request that the Court appoint Matthew B. George of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Danielle L. Perry of Mason LLP as Interim Co-Lead Counsel for this consolidated litigation, or in the alternative, to a position on the Plaintiffs' Executive Committee. Mr. George and Kaplan Fox, and Ms. Perry and Mason LLP, have extensive experience litigating and resolving data privacy class action cases in courts throughout the nation, have obtained successful trial and appellate court rulings in this practice area, and have a demonstrated commitment to diversity and inclusion initiatives both in and out of court. Plaintiffs Cordaro and Simmons also support the consolidation of cases sought in *Spearman et al v. Nelnet Servicing LLC*, No. 4:22-cv-3191 (D. Neb.) and referenced in this Court's Order (ECF No. 21).

Numerous cases have been filed pertaining to the 2022 data breach experienced by Defendant. On September 8, 2022, Mason LLP filled a class action complaint on behalf of Plaintiff Simmons in this District. *See Simmons v. Nelnet Servicing, LLC*, No. 4:22-cv-03194-JMG-CRZ (D. Neb.). Plaintiff Simmons alleged that Nelnet Servicing LLC ("Nelnet" or "Defendant"), a student loan servicing company, failed to protect her and other similarly situated consumers' private information when Nelnet experienced a data breach sometime in June or July 2022. Then, on September 15, 2022, Kaplan Fox filed a class action complaint on behalf of Plaintiff Cordaro in this Court. *See Cordaro v. Nelnet Servicing, LLC*, No. 4:22-cv-03207 (D. Neb.). Plaintiff Cordaro similarly alleged that Nelnet failed to safeguard his private information when the breach occurred.

- 1 -

## II.     ARGUMENT

### A.     The Court Should Appoint Kaplan Fox and Mason LLP as Interim Co-Lead Class Counsel

In appointing interim class counsel under Federal Rule of Civil Procedure 23, the Court may consider the factors set forth in Rule 23(g)(1)(A) that include: "(i) the work counsel has done in identifying or investigating claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(a). The Court may also consider any other matter pertinent to counsel's ability to represent the class and "must" appoint the applicant best able to represent the class when there are multiple contenders. Fed. R. Civ. P. 23(g)(1)(B), (g)(2). As set forth below, Kaplan Fox and Mason LLP exceed all of these criteria, are best able to represent the class, and should be appointed as Interim Co-lead Class Counsel.

### B.     Kaplan Fox and Mason LLP Are Experienced in Successfully Litigating Complex Class Actions

Kaplan Fox and Mason LLP have an excellent track record of prosecuting complex class action litigation throughout the United States and can provide a vital combination of experience and subject matter expertise. Kaplan Fox maintains offices throughout the United States in New York City, Oakland, Los Angeles, Chicago, and New Jersey (which is potentially quite helpful insofar as there are plaintiffs and class members spread across the country). Mason LLP litigates cases in courts across the country and is headquartered in Washington, DC.

A few notable Kaplan Fox recoveries include: (1) *In re Bank of America Corp. Sec. Deriv., & ERISA Litig.*, No. 1:09-md-020508-PKC (S.D.N.Y.). As one of three co-lead counsel, Kaplan Fox recovered $2.4 billion for investors just weeks before trial. The result is one of the largest recoveries in the history of securities class actions. (2) *In re Air Cargo Shipping Servs., Antitrust*

*Litig.*, No. 06-md-1775 (JG) (VVP) (E.D.N.Y.). As one of four co-lead counsel representing direct purchasers alleging violations of antitrust laws, Kaplan Fox has recovered more than $1.25 billion in settlements. (3) *In re Apple Inc. Device Performance Litig.*, No. 18-md-02827-EJD (N.D. Cal.). As co-lead counsel, Kaplan Fox recovered $310 million for purchasers of iPhones who claimed their devices' performance was unlawfully degraded (pending final approval).

Mason LLP attorneys have been successfully prosecuting data privacy cases since the early 2000s resolution of the *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information) ("*Google Buzz*"), and *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active-duty personnel) ("*VA Data Theft*"). Most recently, Mason LLP served as court-appointed liaison counsel in *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017) (final approval of $63 million settlement granted October 2022).

In obtaining these results, both Kaplan Fox and Mason LLP have demonstrated a commitment to fight through lengthy, protracted litigation against well-represented and resourceful defendants. Kaplan Fox and Mason LLP have displayed all the procedural and substantive lawyering skills necessary to achieve a successful result in this case—maneuvering through consolidation and coordination proceedings, overseeing and executing e-discovery and deposition strategies, fighting through contested class certification and summary judgment proceedings, and obtaining successful rulings on appeal. *See* Declarations of Matthew B. George and Danielle L. Perry, Exhibits 1 and 2.

### C. Kaplan Fox and Mason LLP Are Experienced in Managing and Prosecuting Litigation Involving Information Privacy and Data Security

Kaplan Fox and Mason LLP also have substantial experience managing and prosecuting cases involving information privacy and data security pertinent to this matter. Kaplan Fox and Mr. George have successfully litigated some of the earliest large scale data breach cases against companies including Target and Home Depot. In *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM) (D. Minn.), Mr. George was co-chair of the third-party discovery committee that subpoenaed Target's cybersecurity vendors and in which he deposed key Target personnel. In *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 14-md-2583 (N.D. Ga.), Kaplan Fox was on the steering committee that secured a recovery of $25 million on behalf of financial institutions impacted by the breach.

Currently, Kaplan Fox is co-lead counsel in coordinated litigation against insurer Health Net, in which they filed for preliminary approval of a $10 million cash settlement. *Harbour v. Health Net of California, Inc.*, No. 5:21-cv-03322-ED (N.D. Cal.), ECF No. 48. Kaplan Fox is also liaison counsel in consolidated litigation arising from a pandemic-related Deloitte data breach that obtained final approval of a $5 million settlement in *Culbertson v. Deloitte Consulting LLP*, No. 1:20-cv-03962-LJL (S.D.N.Y.), ECF No. 151, and is appointed to the steering committee in *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 19-md-2904 (D.N.J.). Mr. George was also appointed to serve on the steering committee in *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, No. 8:16-md-02737-MSS-AEP (M.D. Fla.), a multidistrict litigation over a nationwide cancer center's mishandling of medical data that resulted in a $12.5 million settlement. Kaplan Fox was recently appointed co-lead interim counsel in *In re Illuminate Educ. Data Sec. Incident Litig.*, No. 8:22-cv-01164-JVS-ADS (C.D. Cal.), a data breach case alleging the mishandling of student records, personal, and private information.

While the *Google Buzz* and *VA Data Theft* litigations demonstrate Mason LLP's early pioneering of data breach litigation, in the last three years alone, Mason LLP attorneys have successfully litigated and obtained final approval of class action settlements in over two dozen data breach cases across the country including: *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017) (court-appointed liaison counsel; $63 million settlement; final approval granted Oct. 2022); *In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791 (C.D. Cal.) (court-appointed member of Executive Committee; $12 million settlement); *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y.) (final approval granted Feb. 2021); *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007 (M.D. Tenn.) (final approval granted Aug. 2021); *Klemm v. Maryland Health Enters. Inc.*, No. C-03-CV-20-022899 (Md. Cir. Ct. Balto. Cnty.) (final approval granted Nov. 2021); *North v. Hunt Mem'l Hosp. Dist.*, No. 89642 (Tex. 196th Jud. Dist. Ct. Hunt Cnty.) (final approval granted Dec. 2021); *Cece v. St. Mary's Health Care Sys., Inc.*, No. SU20CV0500 (Ga. Super. Ct. Athens-Clarke Cnty.) (final approval granted Apr. 2022); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo.) (final approval granted Dec. 2020); *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty.) (final approval granted Sept. 2020). *See* Exhibit 2.

In litigating these cases, Kaplan Fox and Mason LLP have developed a broad knowledge of the data security laws implicated in this case. Among other things, Kaplan Fox and Mason LLP and their attorneys have directed the litigation, class certification, and settlement strategies, researched and briefed the application of consumer protection and data privacy laws, implemented discovery strategy of defendants and third-parties, taken depositions of corporate information technology personnel and privacy compliance officers, responded to defendants' discovery, defended named plaintiffs' depositions, and worked closely with engineers and cybersecurity

experts to understand the technology issues implicated. All this experience will directly benefit the putative class.

### D. Kaplan Fox and Mason LLP Are Well Suited For Co-Lead Counsel

#### 1. Kaplan Fox Has a Demonstrated Track Record of Success in Class Actions and Support for Diversity and Inclusion Initiatives

Kaplan Fox's team in this matter will be headed by Mr. George, who is based out of the firm's Oakland, California office. He has been representing consumers, employees, and investors in complex class actions and multi-district litigation for 15 years. He is currently appointed as co-lead interim class counsel in *In re Robinhood Outage Litig.*, No. 3:20-cv-01626-JD (N.D. Cal.), representing investors on claims that their brokerage failed to prevent damaging outages across its online securities trading platform. In its Order appointing Mr. George, the Court noted that the leadership "significantly broadened in multiple ways the diversity of the attorneys designated for the interim roles." *Id.*, ECF No. 65 at 1:15-17. Mr. George also played a key role in *In re Apple Inc. Device Performance Litig.*, and assisted obtaining class certification in *In re Arizona Theranos Inc. Litig.*, No. 2:16-cv-02138-HRH (D. Ariz. Mar. 5, 2020).

Mr. George is also a member of the LGBTQ+ community, and has advanced initiatives for underrepresented communities both in and out of court. He represented classes comprised mostly of low-income, gay men living with HIV and AIDS in cases against CVS/Caremark and Aetna that recovered over $20 million on claims the companies wrongfully exposed their HIV status. *Doe One v. CVS Health Corp.*, No. 2:18-cv-00238-EAS-CMV (S.D. Ohio); *Beckett v. Aetna, Inc.*, No. 2:17-cv-03864-JS (E.D. Pa.). In those cases, the class members received base payments of $500 *without* having to file a claim (with many recovering significantly more). Mr. George has been a longstanding member of BALIF, the San Francisco Bay Area's (and nation's oldest) LGBTQ+ bar association, where he has volunteered in BALIF's formal mentorship program and worked closely

with law students and young attorneys to polish their resumes and advance their careers. He has also been a member of the Consumer Attorneys of California's ("CAOC") Diversity Committee, and he gave a presentation on the issue of implicit bias in the legal profession at CAOC's annual convention in November 2021.

Kaplan Fox's team will also be supported by the following experienced attorneys, and others, as necessary:

**Laurence D. King** is currently appointed as co-lead counsel to manage *In re Apple Inc. Device Performance Litigation*. In his Order appointing Mr. King, Judge Davila noted that plaintiffs' leadership "demonstrated an ability to cooperate with a range of different interests that span across law firms, practice groups, geography, and gender and introduce[d] smaller firms into the litigation experience." *Id.*, ECF No. 99. As part of that litigation, Mr. King successfully obtained a settlement of $310 million. *Id.*, ECF No. 415. Mr. King also has considerable experience in the area of data breach cases, including appointment to leadership positions in the *Illuminate* and *American Medical Collection Agency* matters described above.

**Blair E. Reed** is a junior associate in Kaplan Fox's Bay Area office and she has significant experience with consumer class actions, including those involving data privacy such as *Huynh v. Quora*, No. 5:18-cv-07597 (N.D. Cal. 2018), which included allegations that Quora was negligent when it disclosed users' personal information to unauthorized third parties.

### 2. Mason LLP has a Strong Record of Inclusion and Demonstrated History of Success in Complex Class Actions.

Mason LLP's team in this matter will be led by Ms. Perry. Ms. Perry, a partner of Mason LLP, offers nearly a decade of class action litigation experience to the benefit of her clients, and has spent the last few years specializing in data breach class actions. Ms. Perry has herself or as a member of her firm been appointed lead counsel on numerous occasions. She is currently

appointed to the Leadership Development Committee in *In re SoClean, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:22-mc-00152-JFC, MDL No. 3021 (W.D. Pa.), ECF No. 51 ("*SoClean, Inc. Litigation*"), where she works closely with Lead Counsel in all areas of litigation and fights for consumers rights pertaining to the purchase of defective and/or unsafe products. Ms. Perry has also played significant roles in numerous other MDLs. *See, e.g.*, *In re DevaCurl Hair Prods. Litig.*, No. 1:20-cv-01234-GHW (S.D.N.Y.) (final approval granted Jan. 3, 2022) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry undertook substantial work for clients and class members with extensive hair loss, leading client interviews, drafting pleadings, and preparing settlement and settlement approval papers) ("*DevaCurl Litigation*"); *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No. 2:19-md-02887, MDL No. 2887 (D. Kan.) (final approval granted Oct. 2021) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry played a significant part in obtaining recovery for clients and class members who purchased dog food with sometimes lethal amounts of vitamin D, participating in client intake, discovery, and preparing settlement and settlement approval papers) ("*Hill's Pet Litigation*"); *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.) (Ms. Perry contributed to plaintiff interview process and drafting of the consolidated amended complaint in data breach case). Ms. Perry herself has been appointed class counsel in numerous data breach cases which were brought to successful conclusion. *See e.g.*, *Cece v. St. Mary's Health Care Sys., Inc.*, No. SU20CV0500 (Ga. Super. Ct. Athens-Clarke Cnty.) (appointed class counsel in data breach case involving 55,652 people; final approval granted Apr. 2022); *Dekenipp v. Gastroenterology Consultants, P.A.*, No. 202161470 (Tex. 295th Jud. Dist. Ct. Harris Cnty.) (appointed class counsel in data breach case involving 163,000 people; final approval granted Oct. 2022).

Mason LLP's team will be supported by the following experienced attorneys, and others,

as necessary:

    ***Gary E. Mason*** has been prosecuting privacy cases for over 20 years, beginning as the first attorney in legal history to successfully settle a privacy case on a class-wide basis against Google. Mr. Mason was an early advocate for victims of security breaches and privacy violations, starting with the *Google Buzz* and *VA Data Theft* litigations, and continuing on more recently to his position as Liaison Counsel in *In re OPM Data Breach Litigation.* Mr. Mason holds and/or has held court appointed leadership positions in numerous MDLs. *See e.g.*, *SoClean, Inc. Litigation* (appointed co-lead counsel; litigation pending); *DevaCurl Litigation* (appointed co-lead counsel; final approval granted Jan. 2022); *Hill's Pet Litigation* (appointed co-lead counsel; final approval granted Oct. 2021).

    ***Lisa White*** is a Senior Attorney at Mason LLP. Ms. White is a writer and researcher at heart, with extensive litigation experience in product defect, product misrepresentation, data breach litigation, and wage and hour class actions.

### E. Kaplan Fox and Mason LLP Will Commit Significant Time and Resources to Prosecute This Litigation Efficiently and Cooperatively

    Kaplan Fox and Mason LLP have the personnel and financial resources required to litigate this case to a successful conclusion. The firm is well-qualified to present case management suggestions to the defendant and the Court, to work with plaintiffs' and defense counsel, to initiate and complete discovery, to examine deponents, to employ experts, to arrange for litigation support services (including document review platforms), and to ensure that all deadlines are timely met. Kaplan Fox and Mason LLP will also manage the litigation effectively and efficiently, avoid duplication of labor, assign tasks to attorneys and other firms commensurate with their experience and expertise, and employ a timekeeping and reporting protocol that they can make available to the Court for periodic review. Kaplan Fox and Mason LLP have a proven track record of working

collegially with many other plaintiffs' counsel in this case and will do so here.

## III. CONCLUSION

Based on the foregoing, Plaintiffs Cordaro and Simmons respectfully request that the Court appoint Mr. George of Kaplan Fox and Ms. Perry of Mason LLP as Co-Lead Interim Class Counsel. In the alternative, Plaintiffs request that Mr. George and Ms. Perry be appointed to an executive committee or in any role the Court deems most appropriate for this litigation.

Dated: January 3, 2023

Respectfully submitted,

By: /s/ *Danielle L. Perry*
**MASON LLP**
Gary E. Mason
Danielle L. perry
Lisa A. White
5101 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290
Facsimile: (202) 429-2294
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com

*Attorneys for Plaintiff Simmons and the Proposed Class*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King *(pro hac vice)*
Kathleen A. Herkenhoff *(pro hac vice)*
Matthew B. George *(pro hac vice)*
1999 Harrison Street, Suite 1500
Oakland, CA 94612
Tel: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com
kherkenhoff@kaplanfox.com
mgeorge@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
850 Third Avenue

New York, NY 10022
Tel: (212) 687-1980
Facsimile: (212) 687-7714
jstrauss@kaplanfox.com

*Attorneys for Plaintiff Cordaro and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2023, a copy of this motion was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

/s/ *Danielle L. Perry*
Danielle L. Perry

# EXHIBIT 1

**to Motion**

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCINE SIMMONS, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-03194 |
| CHRISTOPER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-03207 |

## DECLARATION OF MATTHEW B. GEORGE IN SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL

1.      I am an attorney at the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox").

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for Appointment of Kaplan Fox and Mason LLP as Co-Lead Interim Class Counsel ("Motion"). If called as a witness, I could and would competently testify to all facts stated herein within my personal knowledge.

### Kaplan Fox's Experience Successfully Litigating Complex Class Actions

3.      Kaplan Fox has been in existence for 60 years and currently has over two-dozen attorneys at offices in New York, Oakland, Los Angeles, Chicago, and New Jersey. Kaplan Fox has a long history of success in complex securities, antitrust, and consumer protection class actions, and its attorneys are well-versed in class certification and other procedural steps necessary to bring this case to a successful resolution. A true and correct copy of Kaplan Fox's firm profile that contains biographical information on Kaplan Fox's attorneys is attached as **Exhibit 1**.

4.      Kaplan Fox has been appointed as lead or co-lead counsel in dozens of cases throughout the United States and has obtained over $5 billion on behalf of its clients and plaintiff classes. Kaplan Fox was appointed by Judge Edward Davila in the Northern District of California as co-lead counsel to manage the MDL concerning claims Apple deceived consumers by throttling processor speeds of Apple devices like iPhones and iPads in *In re: Apple Inc. Device Performance Litigation*, Case No. 18-md-02827-EJD. In his order appointing Kaplan Fox, Judge Davila found "that these individuals and their firms have extensive knowledge of and experience in prosecuting complex litigation and class actions" and noted that plaintiffs' leadership "demonstrated an ability to cooperate with a range of difference interests that span across law firms, practice groups, geography, and gender and introduce[d] smaller firms into the litigation experience." *Id*., ECF No. 99 (May 15, 2018). Some of the firm's other notable successes include:

- *In re Bank of America Corp. Sec. Deriv., and ERISA Litig.*, No. 1:09-md-020508-PKC (S.D.N.Y.): As one of three co-lead counsel, Kaplan Fox recovered $2.425 billion for investors just weeks before trial. The result is one of the largest recoveries in the history of securities class actions.

- *In re Air Cargo Shipping Servs., Antitrust Litig.*, No. 06-md-1775 (JG) (VVP) (E.D.N.Y.): As one of four co-lead counsel representing direct purchasers alleging violations of antitrust laws, Kaplan Fox recovered more than $1.25 billion in settlements.

- *In re Merrill Lynch & Co., Inc., Sec. Litig.*, No. 07-CV-9633 (JSR)(DFE) (S.D.N.Y.): As co-lead counsel, Kaplan Fox recovered $475 million on claims that Merrill Lynch committed fraud for failing to disclose to investors its toxic exposure to sub-prime mortgage backed securities.

5.      In obtaining these results, Kaplan Fox has demonstrated a commitment to fight through lengthy, protracted litigation against well-represented and resourceful defendants, including some of the largest banks, technology, and pharmaceutical companies. In these and other cases Kaplan Fox has maneuvered through consolidation and coordination proceedings, overseen and executed e-discovery and deposition strategies, fought through contested class certification and summary judgment proceedings, and obtained successful rulings on appeal. And, Kaplan Fox has taken class action cases to trial.

6.      Kaplan Fox and myself also have substantial experience managing and prosecuting cases involving information privacy and data security pertinent to this matter. We have successfully litigated some of the earliest large scale data breach cases against companies including Target and Home Depot. In *In re: Target Corp. Customer Data Security Breach Litig.*, MDL No.

14-2522 (PAM) (D. Minn.), I was co-chair of the third-party discovery committee that subpoenaed Target's cybersecurity vendors and I deposed key Target personnel. In *In Re: The Home Depot, Inc., Customer Data Security Breach Litig.*, No. 14-md-2583 (N.D. Ga.), Kaplan Fox was on the steering committee that secured a recovery of $25 million on behalf of financial institutions impacted by the breach.

7. Currently, Kaplan Fox is in coordinated litigation against insurer Health Net, in which we filed for preliminary approval of a $10 million cash settlement. *Harbour, et al., v. Health Net of California, Inc., et al.*, No. 5:21-cv-03322-ED (N.D. Cal.), ECF No. 48. Kaplan Fox is also liaison counsel in consolidated litigation arising from a pandemic-related Deloitte data breach that obtained final approval of a $5 million settlement in *Culbertson, et al., v. Deloitte Consulting LLP*, No. 1:20-cv-03962-LJL (S.D.N.Y.), ECF No. 151, and is appointed to the steering committee in *In Re: American Medical Collection Agency, Inc., Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.). I was also appointed to serve on the steering committee in *In re: 21st Century Oncology Customer Data Security Breach Litig.*, No. 8:16-md-02737-MSS-AEP (M.D. Fla.), a multidistrict litigation over a nationwide cancer center's mishandling of medical data that resulted in a $12.5 million settlement, and Kaplan Fox was co-lead counsel in *Winstead v. ComplyRight, Inc.*, No. 1:18-cv-4990 (N.D. Ill.), a data breach case that settled for $3 million. Kaplan Fox also served as co-lead counsel in *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 13-7418 (CCC) (D.N.J.), in which Kaplan Fox won a successful appeal to the Third Circuit, 846 F.3d 625 (3d Cir. 2017). Kaplan Fox was also recently appointed co-lead interim counsel in *In re Illuminate Education Data Security Incident Litigation,* No. 8:22-cv-01164-JVS-ADS (C.D. Cal.), a data breach case alleging the mishandling of student records, personal, and private information.

8.　　As part of our work in these cases, Kaplan Fox's attorneys have developed a broad knowledge of the data security laws implicated in this case and litigated cases from inception through settlement.　Among other things, Kaplan Fox and its attorneys have directed the litigation, class certification, and settlement strategies, researched and briefed the application of consumer protection and information security laws, implemented discovery strategy of defendants and third-parties, taken depositions of corporate information technology personnel and engineers, responded to defendants' discovery, defended named plaintiffs' depositions, and worked closely with cybersecurity and privacy experts to understand the issues implicated in these cases and how to resolve them moving forward.

**Kaplan Fox's Primary Litigation Team for This Case**

9.　　Kaplan Fox has the personnel and financial resources required to litigate this case to a successful conclusion.　As a proposed co-lead interim class counsel, our firm would be willing and able to provide the class and the Court with any resources necessary to prosecute the action swiftly and efficiently.　The firm's primary litigation and trial team that would prosecute this case is composed of myself and partner Laurence King, supported by associates as necessary.　Kaplan Fox also employs a full-time investigator who has worked on the *Home Depot Data Breach MDL*, and the firm has sufficient litigation support personnel with many years of experience working on Kaplan Fox's complex class action cases.

10.　　I, **Matthew George**, have extensive experience representing consumers, investors and employees in consumer protection class actions and multidistrict litigation for over 15 years. I am currently appointed as co-lead interim class counsel in *In re: Robinhood Outage Litig.*, No. 3:20-cv-01626-JD (N.D. Cal.), representing investors on claims that their brokerage failed to prevent damaging outages across its online securities trading platform. In its order of appointment,

the Court noted that the leadership "significantly broadened in multiple ways the diversity of the attorneys designated for the interim roles." *Id*., ECF No. 65 at 1:15-17. I also played a key role in *In re: Apple Inc. Device Performance Litig.*, and assisted obtaining class certification in *In re: Arizona Theranos Incorporated Litig.*, No. 2:16-cv-02138-HRH (D. Ariz. Mar. 5, 2020).

11. I am also a member of the LGBTQ+ community, and I have advanced initiatives for underrepresented communities both in and out of court. I represented classes comprised mostly of low-income, gay men living with HIV and AIDS in cases against CVS/Caremark and Aetna that recovered over $20 million on claims the companies wrongfully exposed their HIV status. *Doe One v. CVS Health Corporation*, No. 2:18-cv-00238-EAS-CMV (S.D. Ohio); *Beckett v. Aetna, Inc., No. 2:17-cv-03864-JS* (E.D. Pa.). In those cases, the class members received base payments of $500 *without* having to file a claim (with many recovering significantly more). I have been a longstanding member of BALIF, the San Francisco Bay Area's (and nation's oldest) LGBTQ+ bar association, where I have volunteered in BALIF's formal mentorship program and worked closely with law students and young attorneys to polish their resumes and advance their careers. I have also been a member of the Consumer Attorneys of California's ("CAOC") Diversity Committee, and I gave a presentation on the issue of implicit bias in the legal profession at CAOC's annual convention in November 2021.

12. Given my experience, I am frequently requested to be a speaker on issues involving class actions, privacy law, and complex discovery issues. I also published an article for The Unfair Competition Section of the State Bar of California on the private enforcement of consumer privacy

rights.[1] I have been selected by my peers as a Northern California "SuperLawyer" each year that I have been eligible.

13.     **Laurence King** is a partner at Kaplan Fox for over two decades and is currently appointed as co-lead counsel to manage *In re: Apple Inc. Device Performance Litigation*. In his order appointing Mr. King, the court noted that plaintiffs' leadership "demonstrated an ability to cooperate with a range of different interests that span across law firms, practice groups, geography, and gender and introduce[d] smaller firms into the litigation experience." *Id.*, ECF No. 99. As part of that litigation, Mr. King successfully obtained a settlement of $310 million. *Id.*, ECF No. 415. Mr. King also has considerable experience in the area of data breach cases, including appointment to leadership positions in the *Illuminate* and *American Medical Collection Agency* matters described above.

14.     Mr. King has also served as co-lead counsel in *Gallagher v. Bayer*, No. 14-cv-04061-WHO (N.D. Cal.), *Schueneman v. Arena Pharmaceuticals, Inc.*, No. 3:10-cv-01959-CAB-BLM (S.D. Cal.) (settled for $24 million), *In re Violin Memory Sec. Litig.*, No. 13-CV-05486-YGR (N.D. Cal.) (settled for $7.5 million), and *In re Rocket Fuel Sec. Litig.*, No. 4:14-CV-03998-PJH (N.D. Cal.) (settled for $3.15 million).  He has also served as co-lead counsel in successful consumer protection cases challenging deceptive sales and marketing practices across the country, including *Berry v. Mega Brands Inc.*, No. 08-CV-1750 (D.N.J.) (class-wide settlement obtained that provides full refunds for defective products), *Wolf v. Red Bull GMBH*, No. 1:13-cv-08008 (S.D.N.Y.) ($13 million settlement obtained for purchasers of Red Bull energy drink pending

---

[1] How Viable Is The Prospect Of Private Enforcement Of Privacy Rights In The Age Of Big Data? An Overview Of Trends And Developments In Privacy Class Actions – Competition, The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Volume 24, No. 1 (Spring 2015)

appeal), and *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, Case No. 4:09-cv-00465-GAF (W.D. Mo.) ($35 million settlement for purchasers of under-filled propane tanks). He has also litigated on successful co-lead counsel teams in *In re 3Com Sec. Litig.*, No. C-97-21083-EAI (N.D. Cal.) (recovered $259 million) and *In re Informix Sec. Litig.*, No. C-97-0129-CRB (N.D. Cal.) (recovered $136.5 million). He was also a member of the Kaplan Fox trial team for two securities class actions tried to verdict.

15. Prior to joining Kaplan Fox, he served as an assistant district attorney under Robert Morgenthau in the Manhattan (New York County) District Attorney's Office, where he tried numerous felony prosecutions to jury verdict. He was selected by my peers as a Northern California *Super Lawyer* from 2012 through 2017, and from 2011-13, he served as a Vice-Chair, and then as Co-Chair, of the American Association for Justice's Class Action Litigation Group.

16. **Blair E. Reed** is a junior associate in Kaplan Fox's Oakland office and she has significant experience with consumer class actions, including those involving data privacy such as *Huynh v. Quora*, No. 5:18-cv-07597 (N.D. Cal. 2018), which included allegations that Quora was negligent when it disclosed users' personal information to unauthorized third parties.

### Kaplan Fox Will Work Efficiently and Cooperatively With Counsel and the Court

17. Kaplan Fox's experience demonstrates that it is well-qualified to present case management suggestions to the Court, to work with plaintiffs' and defense counsel to develop and implement a litigation plan, to initiate and complete discovery, to conduct the principal examination of deponents, to employ experts, to arrange for litigation support services (including document review platforms), and to ensure that all deadlines are timely met. Kaplan Fox and Mason LLP will also manage the litigation effectively and efficiently, avoid duplication of labor,

assign tasks to attorneys and other firms commensurate with their experience and expertise, and employ a timekeeping and reporting protocol.

18.     Kaplan Fox has a proven track record of working cooperatively and collegially with other counsel and courts, and it will do the same here.  Several Kaplan Fox lawyers profiled in the firm's profile previously served as federal law clerks, state and federal prosecutors, and defense counsel, thus giving them an understanding of (and appreciation for) the work that defense counsel, the Court, and its staff will perform in this litigation.

I declare under penalty of perjury under the laws of the United States and the state of California that the foregoing is true and correct.  Executed this 3rd day of January 2023, in San Diego, California.

        /s/  *Matthew B. George*
        Matthew B. George

# EXHIBIT 1

**to the Declaration of Matthew B. George**



# KAPLAN FOX & KILSHEIMER LLP

# FIRM PROFILE

850 Third Avenue, 14th Floor
New York, NY 10022
Tel.: 212.687.1980
Fax: 212.687.7714

681 Prestwick Lane
Wheeling, IL 60090
Tel.: 847.831.1585
Fax.: 847.831.1580

1999 Harrison Street,
Suite 1560
Oakland, CA 94612
Tel.: 415.772.4700
Fax: 415.772.4707

12400 Wilshire Boulevard,
Suite 820
Los Angeles, CA 90025
Tel.: 310.575.8604
Fax: 310.444.1913

6109 32nd Place, NW
Washington, DC 20015
Tel.: 202.669.0658

160 Morris Street
Morristown, NJ 07960
Tel.: 973.656.0222
Fax: 973.401.1114

**History of Kaplan Fox & Kilsheimer LLP**

Leo Kaplan and James Kilsheimer founded "Kaplan & Kilsheimer" in 1954, making the firm one of the most established litigation practices in the country. James Kilsheimer was a celebrated federal prosecutor in the late 1940s and early 1950s in New York who not only successfully tried some of the highest profile cases in the country, but also handled the U.S. Attorney's Office's criminal appeals to the Second Circuit.

Now known as "Kaplan Fox & Kilsheimer LLP," the early commitment to high-stakes litigation continues to define the firm to the present day. In 2009, Portfolio Media's *Law360* ranked Kaplan Fox's securities litigation practice as one of the top 5 in the country (plaintiff side), and again in July 2014, the Legal 500 ranked Kaplan Fox as one of the top eight plaintiff's firms for securities litigation. In March 2013, the *National Law Journal* included Kaplan Fox on its list of the top 10 "hot" litigation boutiques, a list that includes both plaintiff and defense firms. In 2014, 2015 and 2016, more than half of the firm's partners – including attorneys on both coasts – were rated "Super Lawyers."

The firm has three primary litigation practice areas (antitrust, securities, and consumer protection), and the firm is a leader in all three. To date, we have recovered more than **$5 billion** for our clients and classes. In addition, the firm has expanded its consumer protection practice to include data privacy litigation, and few other firms can match Kaplan Fox's recent leadership in this rapidly emerging field. The following describes Kaplan Fox's major practice areas, its most significant recoveries and its attorneys.

## Securities Litigation

Over the past 35 years, Kaplan Fox has been a leader in prosecuting corporate and securities fraud —ranging from cases concerning accounting fraud to those involving complicated and complex financial instruments. Since the passage of the Private Securities Litigation Reform Act in 1995, Kaplan Fox has emerged as one of the foremost securities litigation firms representing institutional investors of all sizes, including many of the world's largest public pension funds.

Kaplan Fox's selection by Portfolio Media's Law360 as one of the five top securities litigation firms (plaintiff side) for 2009 was based, in part, on the representation of public pension funds in high profile and complex securities class actions, including *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*; *In re Bank of America Corp. Securities, ERISA & Derivative Litigation*; *In re Fannie Mae Securities Litigation*; and *In re Ambac Financial Group, Inc. Securities Litigation*.  Some of the firm's most significant securities recoveries include:

**In re Bank of America Corp. Securities, Derivative, and ERISA Litigation**, MDL No. 2058 (S.D.N.Y.) ($2.425 billion recovered)

**In re Merrill Lynch & Co., Inc. Securities Litigation**, Master File No. 07-CV-9633 (JSR) (S.D.N.Y.) ($475 million recovered)

**In re 3Com Securities Litigation**, No. C-97-21083-EAI (N.D. Cal.) ($259 million recovered)

**In re Fannie Mae 2008 Securities Litigation,** No. 08-cv-7831 (PAC) (S.D.N.Y.) ($170 million recovered)

**In re MicroStrategy Securities Litigation**, No. CV-00-473-A (E.D. Va.) ($155 million recovered)

**AOL Time Warner Cases I & II (Opt-out)** Nos. 4322 & 4325 (Cal. Superior Court, LA County) ($140 million recovered)

**In re Informix Securities Litigation**, C-97-129-CRB (N.D. Cal.) ($136.5 million recovered)

**In re Xcel Energy, Inc. Securities Litigation**, Master File No. 02-CV-2677-DSD (D. Minn.) ($80 million recovered)

**In re Elan Corporation Securities Litigation**, No. 02-CV-0865-RMB (S.D.N.Y.) ($75 million recovered)

**In re Sequenom, Inc. Securities Litigation**, No. 09-cv-921 (S.D. Cal.) ($70 million recovered)

**Barry Van Roden, *et al.* v. Genzyme Corp., *et al.*,** No. 03-CV-4014-LLS (S.D.N.Y.) ($64 million recovered)

# Antitrust Litigation

Kaplan Fox has been at the forefront of significant private antitrust actions, and we have been appointed by courts as lead counsel or members of an executive committee for plaintiffs in some of the largest antitrust cases throughout the United States. This commitment to leadership in the antitrust field goes back to at least 1967, when firm co-founder Leo Kaplan was appointed by the Southern District of New York to oversee the distribution of all ASCAP royalties under the 1950 antitrust consent decree in ***United States v. American Society of Composers, Authors and Publishers***, No. 41-CV-1395 (S.D.N.Y.), a role he held for 28 years until his death in 1995. To this day, ASCAP awards the "Leo Kaplan Award" to an outstanding young composer in honor of Leo's 28 years of service to ASCAP.

Members of the firm have also argued before the U.S. Courts of Appeals some of the most significant decisions in the antitrust field in recent years. For example, Robert Kaplan argued the appeal in ***In re Flat Glass Antitrust Litigation***, 385 F.3d 350 (3d Cir. 2004), and Greg Arenson argued the appeal in ***In re High Fructose Corn Syrup Antitrust Litigation***, 295 F.3d 651 (7th Cir. 2002). In a relatively recent survey of defense counsel, in-house attorneys, and individuals involved in the civil justice reform movement, both were named among the 75 best plaintiffs' lawyers in the country based on their expertise and influence.

Over the years, Kaplan Fox has recovered over **$2 billion** for our clients in antitrust cases. Some of the larger antitrust recoveries include:

> **In re Air Cargo Shipping Services Antitrust Litigation**, MDL 1775 (E.D.N.Y.) (settled during trial preparation, for total settlement of more than $1.25 billion)

**In re Neurontin Antitrust Litigation**, MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered)

**In re High Fructose Corn Syrup Antitrust Litigation**, MDL No. 1087, Master File No. 95-1477 (C.D. Ill.) ($531 million recovered)

**In re Brand Name Prescription Drugs Antitrust Litigation**, MDL 997 (N.D. Ill.) ($720 plus million recovered)

**In re Infant Formula Antitrust Litigation**, MDL 878 (N.D. Fla.) ($126 million recovered)

**In re Flat Glass Antitrust Litigation**, MDL 1200 (W.D. Pa.) ($122 plus million recovered)

**In re Hydrogen Peroxide Antitrust Litigation**, MDL 1682 (E.D. Pa.) ($97 million recovered)

**In re Plastics Additives Antitrust Litigation**, 03-CV-1898 (E.D. Pa.) ($46.8 million recovered)

**In re Medical X-Ray Film Antitrust Litigation**, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered)

**In re NBR Antitrust Litigation**, MDL 1684 (E.D. Pa.) ($34.3 million recovered)

**Consumer Protection and Data Privacy Litigation**

The consumer protection practice is headquartered in Kaplan Fox's Bay Area office, which opened in 2000, and is led by Laurence King, an experienced trial lawyer and former prosecutor. Mr. King also recently served as a Vice-Chair, and then Co-Chair, of the American Association for Justice's Class Action Litigation Group.

Mr. King and our other effective and experienced consumer protection litigators regularly champion the interests of consumers under a variety of state and federal consumer protection laws. Most frequently, these cases are brought as class actions, though under certain circumstances an individual action may be appropriate.

Kaplan Fox's consumer protection attorneys have represented victims of a broad array of misconduct in the manufacturing, testing, marketing, and sale of a variety of products and services and have regularly been appointed as lead or co-lead counsel or as a member of a committee of plaintiffs' counsel in consumer protection actions by courts throughout the nation. Among our significant achievements are highly recognized cases including *In re Baycol Products Litigation*, MDL 1431-MJD/JGL (D. Minn.) (victims recovered more than $350 million); *In re Providian Financial Corp. Credit Card Terms Litigation*, MDL No. 1301-WY (E.D. Pa.) ($105 million recovered); *In re Thomas and Friends Wooden Railway Toys Litig.*, No. 07-cv-3514 (N.D. Ill.) ($30 million settlement obtained for purchasers of recalled "Thomas Train" toys painted with lead paint); *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, No. 4:09-md-2086 (W.D. Mo.) (settlements obtained where consumers will receive substantially in excess of actual damages and significant injunctive relief); *Berry v. Mega Brands Inc.*, No. 08-CV-1750 (D.N.J.) (class-wide settlement obtained where consumers will receive full refunds

for defective products), and **_David Wolf, et al. v. Red Bull GmBH, et al._**, No. 1:13-cv-08008 (S.D.N.Y.) ($13 million settlement fund obtained for purchasers of Red Bull energy drink).

Recent notable cases include _In re: Apple Inc. Device Performance Litig._, No. 5:18-MD-2827-EJD (N.D. Cal.) (a global consumer protection and computer intrusion class action in which a $310 million class settlement was achieved) and _Schneider v. Chipotle Mexican Grill, Inc.,_ No.16-cv-02200 (N.D. Cal.) (a Non-GMO class action with a settlement approval of $6.5 million).

Data privacy is a fairly new area of law and broadly encompasses two scenarios. In a data breach case, a defendant has lawful custody of data, but fails to safeguard it or use it in an appropriate manner. In a tracking case, the defendant intercepts or otherwise gathers digital data to which it is not entitled in the first place.

Kaplan Fox is an emerging leader in both types of data privacy litigation. For example, Mr. King filed and successfully prosecuted one of very first online data breach cases, **_Syran v. LexisNexis Group_**, No. 05-cv-0909 (S.D. Cal.), and was court-appointed liaison counsel in a recently successfully concluded data breach case against LinkedIn. _See_ **_In re: LinkedIn User Privacy Litigation_**, No. 12-cv-3088-EJD (N.D. Cal.). The firm also settled a data privacy case against Universal Property & Casualty Insurance Company related to the public exposure of sensitive customer data. _See_ **_Rodriguez v. Universal Property & Cas. Ins. Co._**, No. 16-cv-60442-JK (S.D. Fla.).

In the past five years alone, we have led or otherwise had court-appointed roles in at least 10 national digital privacy class actions, including high-profile cases against defendants Google, Yahoo, and LinkedIn; two insurance companies; and one data

analytics company.  Current cases the firm is handling include ***In re Horizon Healthcare Services, Inc. Data Breach Litigation***, No. 13-cv-07418-CCC-MF (D.N.J.) where Kaplan Fox represents a group of individuals in a class action asserting willful and negligent violations of the Fair Credit Reporting Act, as well as violations of state law, based on Horizon's failure to adequately protect the Plaintiffs' personal information. Kaplan Fox represents a group of seven credit unions and has been appointed by the court as a member of the Steering Committee for the Financial Institution plaintiffs in a data breach class action against The Home Depot, Inc. *See **In re: The Home Depot, Inc., Customer Data Security Breach Litigation***, 1:14-md-02583-TWT (NDGA). N.D. Ga.). Kaplan Fox was also appointed co-lead class counsel for plaintiffs in ***Doe v. Caremark, LLC***, **2:18 - cv-00488 -EAS-CMV (S.D. Oh**.), a class action concerning allegations of the violation of medical privacy of approximately 4,500 class members. The Court approved of a $4.4 million settlement of the action on January 30, 2020.

The firm is also an industry leader in the even newer field of email and internet tracking litigation.  Kaplan Fox was appointed Co-Lead Class Counsel in a digital privacy class action against Yahoo!, Inc., related to Yahoo's alleged practice of scanning emails for content, which was recently settled.  *See **In re: Yahoo Mail Litigation***, 5:13-cv-04980-LHK (N.D. Cal.).  Other cases include ***In re: Google Inc. Cookie Placement Consumer Privacy Litig.***, 12-MD-2358-SLR (D. Del.) (Kaplan Fox appointed to plaintiffs' steering committee).

## ATTORNEY BIOGRAPHIES

**PARTNERS**

**ROBERT N. KAPLAN** is widely recognized as a leading plaintiff's litigator and has led the prosecution of numerous class actions and shareholder derivative actions, recovering billions of dollars for the victims of corporate wrongdoing. He was recently listed by defense and corporate counsel as one of the top 75 plaintiffs' attorneys in the United States for all disciplines, and has also been ranked as one of the top attorneys in the United States for securities litigation by Legal 500 in each of the last three years. Mr. Kaplan was recognized as a Super Lawyer in the New York Metro Area. He was lead counsel for CalPERS in *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.), and was a lead in *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, *In re Escala Securities Litigation* and *In re Bank of America Corp. Securities Litigation*, in which a settlement in the amount of $2.425 billion and corporate governance changes was approved by the Court.

In the antitrust arena, Mr. Kaplan earned a reputation as a leading litigator. He was a lead counsel in *In re Air Cargo Antitrust Litigation* (more than $1.25 billion in settlements) and was recently appointed by Courts as lead counsel in the *DIPF Antitrust Litigation*, *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation*, and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*. Currently, Kaplan Fox is a lead counsel in the Caustic Soda Antitrust Litigation and Mr. Kaplan is on the Direct Purchaser Class Executive Committee in the Generics Drug Antitrust Litigation and is chair of the plaintiffs' Executive Committee in the Delta Dental Antitrust Litigation.

He also represents clients in private antitrust actions, including: *Affiliated Foods, Inc., Associated Grocers of New England, Inc., URM Stores, Inc., Western Family Foods, Inc., and Associated Food Stores, Inc.* in individual cases against *Tri-Union Seafoods, LLC, d/b/a Chicken of the Sea, King Oscar, Inc., Bumble Bee Foods, LLC f/k/a Bumble Bee Seafoods, LLC, and StarKist Co.*, No. 15-cv-4312, No. 15-cv-3815, No. 15-cv-4187, No. 15-cv-4667 (N.D. Cal.).

He previously served, as lead counsel or member of the Executive Committee in numerous plaintiff treble damages actions including *In re Neurontin Antitrust Litigation*,

MDL No. 1479, Master File No. 02-1390 (D.N.J.) ($190 million recovered); *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No.1087, Master File No. 95-1477 (C.D. Ill) ($531 million recovered); *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) ($720 plus million recovered); *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla.)($126 million recovered); *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.) ($122 plus million recovered) (Mr. Kaplan successfully argued an appeal before the U.S. Court of Appeals for the Third Circuit, which issued a ground-breaking and often-cited summary judgment opinion. *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d Cir. 2004); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.)($97 million recovered); *In re Plastics Additives Antitrust Litigation*, 03-CV-1898 (E.D. Pa.) ($46.8 million recovered); *In re Medical X-Ray Film Antitrust Litigation*, CV 93-5904 (E.D.N.Y.) ($39.6 million recovered); and *In re NBR Antitrust Litigation*, MDL 1684 (E.D. Pa.) ($34.3 million recovered).

Mr. Kaplan is currently representing financial institutions across the country in data breach cases against Home Depot and is a member of the Plaintiffs' Steering Committee. He is also representing a group of individuals in a class against Horizon Healthcare Services alleging willful and negligent violations of the Fair Credit Reporting Act, as well as violations of state law, based on Horizon's failure to adequately protect the Plaintiffs' personal information.

Mr. Kaplan honed his litigation skills as a trial attorney with the Antitrust Division of the U.S. Department of Justice. There, he gained significant experience litigating both civil and criminal actions. He also served as law clerk to the Hon. Sylvester J. Ryan, then chief judge of the U.S. District Court for the Southern District of New York and served as an acting judge of the City Court for the City of Rye, N.Y.

In addition to his litigation practice, he has also been active in bar and legal committees. For more than fifteen years, he has been a member of what is now known as the Eastern District of New York's Courts Committee on Civil Litigation.

Mr. Kaplan has also been actively involved in the Federal Bar Council, an organization of judges and attorneys in the Second circuit and is a member of the board of the Federal Bar Foundation.

Recently, Mr. Kaplan was invited by the United States Judicial Center and participated in a multi-day seminar for federal judges about complex litigation.

In addition, Mr. Kaplan has served as a member of the Trade Regulation and Federal Courts Committees of the Association of the Bar of the City of New York.

Mr. Kaplan's published articles include: "Complaint and Discovery in Securities Cases," Trial, April 1987; "Franchise Statutes and Rules," Westchester Bar Topics, Winter 1983; "Roots Under Attack: Alexander v. Haley and Courlander v. Haley," Communications and the Law, July 1979.

Mr. Kaplan sits on the boards of several organizations, including the Columbia Law School Board of Visitors, Board of Directors of the Carver Center in Port Chester, N.Y., Member of the Dana Farber Visiting Committee, Thoracic Oncology in Boston, MA, and Member of Board of Trustees for the Rye Historical Society.

**Education:**

- B.A., Williams College (1961)
- J.D., Columbia University Law School (1964)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1964)
- Bar of the District of Columbia (2013)
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third, Seventh, Ninth, Tenth and Eleventh Circuits
- U.S. District Courts for the Southern, Eastern, Western and Northern Districts of New York, the Central District of Illinois, and the District of Arizona

**Professional Affiliations:**

- Federal Bar Council
- Committee to Support the Antitrust Laws (past President)
- National Association of Securities and Commercial Law Attorneys (past President)
- Advisory Group of the U.S. District Court for the Eastern District of New York
- American Bar Association

- ▪ Association of Trial Lawyers of America (Chairman, Commercial Litigation Section, 1985-86)
- ▪ Association of the Bar of the City of New York (served on the Trade Regulation Committee; Committee on Federal Courts)
- ▪ Member of Board of Trustees for the Rye Historical Society

Mr. Kaplan can be reached by email at: RKaplan@kaplanfox.com

**FREDERIC S. FOX** first associated with Kaplan Fox in 1984 and became a partner in the firm in 1991. For over 30 years, he has concentrated his practice in class action, opt-out and other complex litigation, particularly securities, consumer and antitrust cases.

Mr. Fox has been a lead counsel in many major securities class action cases, including as a senior member of the litigation and trial team in *In re Bank of America Corp. Securities, ERISA, & Derivative Litigation*, No. 09-MDL-2058 (S.D.N.Y.) ("*In re Bank of America*"). In *In re Bank of America*, Mr. Fox served as lead counsel on behalf of major public pension funds. The case arose out of Bank of America's acquisition of Merrill Lynch. *In re Bank of America* settled for $2.425 billion plus significant corporate governance reforms and stands as one of the largest securities class action settlements in history.

Mr. Fox recently settled claims in an individual opt-out action on behalf of a public pension fund arising out of the fraud at Petrobras in Brazil. Other significant cases in which Mr. Fox served as lead counsel include: *In re Merrill Lynch & Co., Inc. Securities, Derivative, & ERISA Litigation*, No. 07-cv-9633 (S.D.N.Y.)(in which he was the primary attorney responsible for negotiating the $475 million settlement); *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.) ("*In re Fannie Mae 2008*") ($170 million settlement); *In re SunPower Securities Litigation*, Case No. 09-cv-5473 (N.D. Cal.); *In re Merrill Lynch Research Reports Securities Litigation* (S.D.N.Y.) (arising from analyst reports issued by Henry Blodget); *In re Salomon Analyst Williams Litigation* (S.D.N.Y.) and *In re Salomon Focal Litigation* (S.D.N.Y.) (both actions stemming from analyst reports issued by Jack Grubman). Among the numerous cases Mr. Fox has prosecuted, Mr. Fox was one of the lead trial lawyers in two securities class actions tried to verdict, one of which was the first case tried under the Private Securities Litigation Reform Act of 1995.

Mr. Fox has also handled derivative cases seeking corporate governance reform and other shareholder litigation on behalf of public pension funds asserting state law and foreign causes of action.  Mr. Fox represents the New York City Pension Funds in derivative litigation relating to a bribery scandal involving Wal-Mart's Mexican subsidiary. *See e.g. New York City Emp. Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 7612 (Del. Ch.), which is consolidated into the matter known as *In re Wal-Mart Stores, Inc., Del. Deriv. Litig.*, C.A. No. 7455-CS (Del. Ch.).  Mr. Fox is a frequent speaker and panelist in both the U.S and abroad on a variety of topics including securities litigation and corporate governance.  Mr. Fox also counsels the firm's many public pension fund clients on seeking redress in foreign jurisdictions or bringing an individual action in the U.S. to adequately protect and recover lost assets in cases involving foreign securities.

In the consumer protection area, Mr. Fox is co-lead counsel in *In re: Apple Inc. Device Performance Litig.*, No. 5:18-MD-2827-EJD (N.D. Cal.) (a global consumer protection and computer intrusion class action in which a $310 million class settlement was achieved in March 2021).  Within the area of consumer protection, Mr. Fox is also active in the firm's growing data privacy and cyberlaw practice.  Other notable consumer cases Mr. Fox has prosecuted include the non-GMO class action of *Schneider v. Chipotle Mexican Grill, Inc.,* No.16-cv-02200 (N.D. Cal.) and *In re: Yahoo! Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.) in which Kaplan Fox served as co-lead counsel for plaintiffs in a digital privacy class action challenging Yahoo's practice of "scanning" incoming and outgoing emails for content, in order to target advertising more effectively.  He also served on the Plaintiffs' Steering Committee in the *Baycol Products Litigation* where there were more than $350 million in settlements.

Mr. Fox is listed in the current editions of New York Super Lawyers and was recognized in Benchmark Litigation as a New York "Litigation Star."

Mr. Fox is the author of "Current Issues and Strategies in Discovery in Securities Litigation," ATLA, 1989 Reference Material; "Securities Litigation: Updates and Strategies," ATLA, 1990 Reference Material; and "Contributory Trademark Infringement: The Legal Standard after Inwood Laboratories, Inc. v. Ives Laboratories," University of Bridgeport Law Review, Vol. 4, No. 2.

During law school, Mr. Fox was the notes and comments editor of the University of Bridgeport Law Review.

**Education:**

- B.A., Queens College (1981)
- J.D., Bridgeport School of Law (1984)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1985)
- Bar of the District of Columbia (2013)
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second, Fourth, Sixth and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York, the District of Colorado and the District of Columbia

**Professional Affiliations:**

- Federal Bar Council
- American Bar Association
- Association of the Bar of the City of New York
- The Council of Institutional Investors - Markets Advisory Council Member (2022)
- Association of Trial Lawyers of America (Chairman, Commercial Law Section, 1991-92)

Mr. Fox can be reached by email at: FFox@kaplanfox.com

**GREGORY K. ARENSON** is principally a plaintiffs' antitrust lawyer with among other things, expertise in economics. He has worked with economic experts in, among others, *In re Air Cargo Shipping Servs. Antitrust Litig.*, Master File No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), *adopted in its entirety*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82 (D. Conn. 2009); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007); *In re Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, MDL No. 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005); *In re*

*Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003); *Bearings Cases*, Case No. 12-00501, and *Wire Harness Cases*, Case No. 12-00101, part of *In re Automotive Parts Antitrust Litig.*, E.D. Mich., Master File No. 12-md-02311; *Affiliated Foods, Inc., et al. v. Tri-Union Seafoods, LLC d/b/a Chicken of the Sea Int'l, et al.*, part of *In re Packaged Seafood Prods. Antitrust Litig.*, S.D. Cal., Case No. 15-MD-2670 JLS (MDD); *In re Domestic Airline Travel Antitrust Litig.*, D.D.C., MDL Docket No. 2656, Misc. No. 15-1404 (CKK); *In re Dental Supplies Antitrust Litig.*, E.D.N.Y., Case No. 16-cv-696 (BMC)(GRB); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, D.N.J., Civ. No. 12-711 (AET)(LHG); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, E.D. Tenn., No. 1:14-md-2508; and *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, E.D. La., MDL No. 2328. He also argued the appeals in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009). He has been ranked as a Super Lawyer for several years. Among other matters, he argued the appeals in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009). He has been ranked as a Super Lawyer for several years.

Mr. Arenson has been a partner in Kaplan Fox & Kilsheimer LLP since 1993. Prior to joining Kaplan Fox, he was a partner with Proskauer Rose LLP. Earlier in his career, he was a partner with Schwartz Klink & Schreiber and an associate with Rudnick & Wolfe (now DLA Piper).

Mr. Arenson is active in the New York State Bar Association. He has been a member of the House of Delegates for most of the last decade and has been a member of the Executive Committee of the New York State Bar Association since June 2022. He has been Vice Chair and a member of the Executive Committee of the Sections Caucus and a member of the New York State Bar Association Continuing Legal Education Committee. He was Chair of the Commercial and Federal Litigation Section from June 2013 through May 2014. He has been Co-Chair of the New York State Bar Association Task Force on the State of Our Courthouses, whose report was adopted by the House of Delegates on June 20, 2009; a member of the New York State Bar Association Special Committee on Standards for Pleadings in Federal Litigation, whose

report was adopted by the House of Delegates on June 19, 2010; and a member of the New York State Bar Association Special Committee on Discovery and Case Management in Federal Litigation, whose report was adopted by the House of Delegates on June 23, 2012.

Mr. Arenson has written frequently on discovery issues and other issues. His published articles include: "Losing the Forest for the Trees: On the Loss of Economic Efficiency and Equity in Federal Price-Fixing Class Actions, 16 *Va L. & Bus. Rev.* 293 (Spring 2022); "Rule 68 Offers of Judgment and Mootness, Especially for Collective or Class Actions," 20 NY LITIGATOR 25 (2015); "Report on Proposed Amendments to Federal Rule of Civil Procedure 45," 17 NY LITIGATOR 21 (2012); "Rule 8 (a)(2) After *Twombly*: Has There Been a Plausible Change?" 14 NY LITIGATOR 23 (2009); "Report on Proposed Federal Rule of Evidence 502," 12 NY LITIGATOR 49 (2007); "Report: Treating the Federal Government Like Any Other Person: Toward a Consistent Application of Rule 45," 12 NY LITIGATOR 35 (2007); "Report of the Commercial and Federal Litigation Section on the Lawsuit Abuse Reduction Act of 2005," 11 NY LITIGATOR 26 (2006); "Report Seeking To Require Party Witnesses Located Out-Of-State Outside 100 Miles To Appear At Trial Is Not A Compelling Request," 11 NY LITIGATOR 41 (2006); "Eliminating a Trap for the Unwary: A Proposed Revision of Federal Rule of Civil Procedure 50," 9 NY LITIGATOR 67 (2004); "Committee Report on Rule 30(b)(6)," 9 NY LITIGATOR 72 (2004); "Who Should Bear the Burden of Producing Electronic Information?" 7 FEDERAL DISCOVERY NEWS, No. 5, at 3 (April 2001); "Work Product vs. Expert Disclosure – No One Wins," 6 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 2000); "Practice Tip: Reviewing Deposition Transcripts," 6 FEDERAL DISCOVERY NEWS, No. 5, at 13 (April 2000); "The Civil Procedure Rules: No More Fishing Expeditions," 5 FEDERAL DISCOVERY NEWS, No. 9, at 3 (August 1999); "The Good, the Bad and the Unnecessary: Comments on the Proposed Changes to the Federal Civil Discovery Rules," 4 NY LITIGATOR 30 (1998); and "The Search for Reliable Expertise: Comments on Proposed Amendments to the Federal Rules of Evidence," 4 NY LITIGATOR 24 (1998). He was co-editor of FEDERAL RULES OF CIVIL PROCEDURE, 1993 AMENDMENTS, A PRACTICAL GUIDE, published by the New York State Bar Association; and a co-author of "Report on the Application of Statutes of Limitation in

Federal Litigation," 53 ALBANY LAW REVIEW 3 (1988).

Mr. Arenson serves as a mediator in the U.S. District Court for the Southern District of New York. In addition, he is an active alumnus of the Massachusetts Institute of Technology, having served as a member of the Corporation, a member of the Corporation Development Committee, vice president of the Association of Alumni/ae, and member of the Annual Fund Board (of which he was a past chair), secretary of his class, and 50th reunion gift committee co-chair.

**Education:**

- S.B., Massachusetts Institute of Technology (1971)
- J.D., University of Chicago (1975)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Illinois (1975)
- Bar of the State of New York (1978)
- U.S. Supreme Court
- U.S. Courts of Appeals for the Second, Third and Seventh Circuits
- U.S. District Courts for the Northern and Central Districts of Illinois, Southern and Eastern Districts of New York, and Eastern District of Michigan
- U.S. Tax Court

Mr. Arenson can be reached by email at: GArenson@kaplanfox.com

**LAURENCE KING** first joined Kaplan Fox as an associate in 1994 and became a partner of the firm in 1998. While Mr. King initially joined the firm in New York, in 2000 he relocated to San Francisco to open the firm's first West Coast office. He is now partner-in-charge of the firm's San Francisco and Los Angeles offices.

Mr. King practices primarily in the areas of securities litigation, with an emphasis on institutional investor representation and consumer protection litigation. He has also practiced in the area of employment litigation. Mr. King has played a substantial role in cases that have resulted in some of the largest recoveries ever obtained by Kaplan Fox, including: *In re Bank of America Corp. Securities, ERISA & Derivative Litig.* (S.D.N.Y.); *In re 3Com Securities Litigation* (N.D. Cal.), *In re Informix Securities Litigation* (N.D. Cal.), *AOL Time Warner Cases I & II* (Ca. Sup. Ct., L.A. Cty.) and *Providian Credit Card Cases*

(Ca. Sup. Ct., S.F. Cty.).

An experienced trial lawyer, prior to joining Kaplan Fox Mr. King served as an assistant district attorney under the legendary Robert Morgenthau in the Manhattan (New York County) District Attorney's Office, where he tried numerous felony prosecutions to jury verdict. At Kaplan Fox, he was a member of the trial team for two securities class actions tried to verdict, *In re Biogen Securities Litigation* (D. Mass.) and *In re Health Management Securities Litigation* (E.D.N.Y.). Mr. King has also participated in trial preparation for numerous other cases in which favorable settlements were achieved for our clients on or near the eve of trial.

Mr. King has been selected for inclusion in the Northern California *SuperLawyers* each year since 2012, and has previously served as Vice-Chair, and then as Co-Chair, of the American Association for Justice's Class Action Litigation Group of the American Association for Justice. He was also selected for inclusion to the San Francisco Super Lawyers list (Securities Litigation) for 2012, 2013, 2014 and 2015.

**Education:**

- B.S., Wharton School of the University of Pennsylvania (1985)
- J.D., Fordham University School of Law (1988)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1989)
- Bar of the State of California (2000)
- U.S. Court of Appeals for the Second and Ninth Circuits
- U.S. District Courts for the District of New Jersey, the Eastern District of Pennsylvania, the Southern and Eastern Districts of New York, and the Northern, Central and Southern Districts of California

**Professional Affiliations:**

- Bar Association of San Francisco
- American Bar Association
- American Association for Justice
- San Francisco Trial Lawyers' Association
- American Business Trial Lawyers

Mr. King can be reached by email at: LKing@kaplanfox.com

**JOEL B. STRAUSS** first associated with Kaplan Fox in 1992 and became a partner in the firm in 1999. He practices in the area of securities and consumer fraud class action litigation. He has been repeatedly selected for inclusion to the New York Super Lawyers list (Securities Litigation) (2007-2010, 2014-2022) and was named to Lawdragon's 500 Leading Plaintiff Financial Lawyers in the U.S. (2019 - 2022).

Prior to law school, Mr. Strauss was a senior auditor at the accounting firm Coopers & Lybrand (n/k/a PricewaterhouseCoopers). Combining his accounting background and legal skills, he has played a critical role in successfully prosecuting numerous securities class actions across the country on behalf of shareholders. Mr. Strauss was one of the lead trial lawyers for the plaintiffs in the first case to go to trial and verdict under the Private Securities Litigation Reform Act of 1995.

More recently, Mr. Strauss has been involved in representing the firm's institutional clients in the following securities class actions, among others: *In re Bank of America Corp. Securities, ERISA & Derivative Litig.* (S.D.N.Y.) ($2.425 billion settlement); *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.* (S.D.N.Y.) ($475 million settlement); *In re Prestige Brands Holdings Inc. Securities Litig.* (S.D.N.Y.) ($11 million settlement); *In re Gentiva Securities Litig.* (E.D.N.Y.) ($6.5 million settlement); and *In Re SunPower Securities Litig.* (N.D.Cal) ($19.7 million settlement). He has also served as lead counsel for lead plaintiffs in *In re OCA, Inc. Securities Litig.* (E.D. La.) ($6.5 million settlement); *In re Proquest Company Securities Litig.* (E.D. Mich.) ($20 million settlement) and *In re Rocket Fuel, Inc. Securities Litig.* (N.D.Cal.) ($3.15 million settlement). Mr. Strauss also played an active role for plaintiff investors in *In Re Countrywide Financial Corporation Securities Litig.* (C.D.Cal), which settled for more than $600 million..

In the consumer protection area, Mr. Strauss served as Chair of Plaintiffs' Non-Party Discovery Committee in the *Baycol Products Litig.*, where there were more than $350 million in settlements.

Mr. Strauss is also active in the firm's growing data privacy practice. In July 2017 he moderated a panel on U.S. Data Privacy Laws at a conference in Tel Aviv. And, among other data privacy cases in which he has played an active role, Mr. Strauss served as

one of plaintiffs' co-lead counsel in *Doe vs. CVS Healthcare Corp., et. al.,* (S.D. Ohio), a class action concerning allegations of the violation of medical privacy of approximately 4,500 class members. The Court approved of a $4.4 million settlement of the action on January 30, 2020.

Although currently practicing exclusively in the area of law, Mr. Strauss is a licensed Certified Public Accountant in the State of New York.

Mr. Strauss has also been a guest lecturer on the topics of securities litigation, auditors' liability and class actions for seminars sponsored by the Practicing Law Institute, the National Consumer Law Center and the Association of the Bar of the City of New York and is an adjunct instructor in the Political Science department at Yeshiva University.

Since June 2014, Mr. Strauss has served as a member of the New York State Bar Association's Committee on Legal Education and Admission to the Bar.

Among his various communal activities, Mr. Strauss currently serves as Co-President of Friends of Jerusalem College of Technology (Machon Lev), is a member of Yeshiva University's General Counsel's Council, a member of the Alumni Advisory Group at the Benjamin N. Cardozo School of Law, serves as Chair of the Career Guidance and Placement Committee of Yeshiva University's Undergraduate Alumni Council, is on the Board of Directors of Yavneh Academy in Paramus, NJ (and is a former Vice -President and Finance Committee Chair of the school) and is an Advisory Board Member and Mentor in the Orthodox Union's Impact Accelerator program.

In March 2001 the New Jersey State Assembly issued a resolution recognizing and commending Mr. Strauss for his extensive community service and leadership. In 2012 Mr. Strauss received The Alumni Partner of the Year Award from Yeshiva University's Career Development Office.

**Education:**

- B.A., Yeshiva University (1986)
- J.D., Benjamin N. Cardozo School of Law (1992)
- HBX|Harvard Business School, Certificate in Entrepreneurship Essentials (2017)
- AICPA - Cybersecurity Fundamentals for Finance and Accounting Professionals Certificate (2018)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New Jersey (1992)
- Bar of the State of New York (1993)
- U.S. Court of Appeals for the First, Second and Third Circuits
- U.S. District Courts for the Southern, Eastern and Western Districts of New York and the District of New Jersey

**Professional Affiliations:**

- Association of the Bar of the City of New York
- New York State Bar Association
- American Institute of Certified Public Accountants

Mr. Strauss can be reached by email at: JStrauss@kaplanfox.com

**HAE SUNG NAM** joined Kaplan Fox in 1999 and became a partner of the firm in 2005. Since joining the firm, Ms. Nam has been representing consumers, employees, and investors in complex class actions and multi-district litigation in districts throughout the country for over 20 years. More recently, Ms. Nam was appointed as co-lead counsel for lead plaintiff's in *In re Google Play Consumer Antitrust Litigation*.

Ms. Nam has played integral roles in a number of the firm's notable cases, including *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.), *In re Fannie Mae Securities Litigation*, No. 08-cv-7831-PAC (S.D.N.Y.), and *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-411-NRB (S.D.N.Y.).

Ms. Nam also has substantial experience prosecuting antitrust matters on behalf of various classes and opt-outs, including *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 1:14-md-02542 (S.D.N.Y), *In re Payment Card Interchange Fee and Merchant Discount , Antitrust Litigation*, 1:05-md-01720 (E.D.N.Y), and *In re Flat Glass Antitrust Litigation*, No. 03-cv-2920 (W.D. Pa.). Recently, Ms. Nam was appointed interim co-lead counsel by U.S. District Court Judge James Donato in the important Google Play Store antitrust litigation concerning Google's alleged anticompetitive use of contractual and technological barriers to foreclose Android users' ability to utilize app

distribution platforms other than Google Play Store. See *In re Google Play Consumer Antitrust Litigation,* 20-cv-05761 (N.D. Cal).

Ms. Nam also has a focus on prosecuting opt-out securities actions on behalf of the firm's public pension fund clients. Ms. Nam was one of the core team members that recently prosecuted and settled an opt-out action on behalf of Ohio PERS arising out of the fraud at Petrobras in Brazil. She also played a significant role in *AOL Time Warner Cases I & II* and *State Treasurer of the State of Michigan v. Tyco International, Ltd.*, No. 08-cv-1340 (D.N.H.).

Prior to joining the firm, Ms. Nam was an associate with Kronish Lieb Weiner & Hellman LLP, where she trained as a transactional attorney in general corporate securities law and mergers and acquisitions.

Ms. Nam graduated magna cum laude, with a dual degree in political science and public relations from Syracuse University's Maxwell School and S.I. Newhouse School of Public Communications. Ms. Nam obtained her law degree, with honors, from George Washington University Law School. During law school, Ms. Nam was a member of the George Washington University Law Review. She is the author of a case note, "Radio— Inconsistent Application Rule," 64 Geo. Wash. L. Rev. (1996). In addition, she also served as an intern for the U.S. Department of Justice, Antitrust Division.

**Education:**

- B.A., magna cum laude, Syracuse University (1994)
- J.D., with honors, George Washington University Law School (1997)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (1998)
- U.S. District Courts for the Southern and Eastern Districts of New York.

Ms. Nam can be reached by email at: HNam@kaplanfox.com

**DONALD R.** has been associated with Kaplan Fox since 1998 and became a partner of the firm in 2005. He practices in the areas of securities, antitrust and consumer protection litigation. Mr. Hall is actively involved in maintaining and establishing the firm's relationship with institutional investors and oversees the Portfolio Monitoring and Case Evaluation Program for the firm's numerous institutional investors.

Mr. Hall was a member of the trial team prosecuting *In re Bank of America*, which settled for $2.425 billion, the single largest securities class action recovery for violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and one of the top securities litigation settlements obtained in history. Mr. Hall also recently represented public pension fund clients in *In re Eletrobras Secs. Litig.,* No. 15-cv-5754, as co-lead counsel representing the Employee Retirement System of the City of Providence ("City of Providence") in a class action against a Brazilian company, and in *Kasper v. AAC Holdings, Inc.*, No. 15-cv-923 (M.D. Tenn.), as co-lead counsel representing Arkansas Teacher Retirement System ("ATRS"). Mr. Hall successfully represented institutional clients in *In re Merrill Lynch*, which settled for $475 million; *In re Fannie Mae* 2008, which settled for $170 million; *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411 (S.D.N.Y.); *In re Majesco Securities Litigation*, No. 05-cv-3557 (D.N.J.); and *In re Escala Group, Inc. Securities Litigation,* No. 05-cv-3518 (S.D.N.Y.). Additionally, he was a member of the litigation team in *AOL Time Warner Cases I & II*, an opt-out action brought by institutional investors that settled just weeks before trial.

Mr. Hall currently represents the Colleges of Applied Arts and Technology Pension Plan in *In re Vale, S.A. Securities Litigation,* 19-cv-00526 (E.D.N.Y.); the City of Warwick Retirement Fund in *Lewis v. YRC Worldwide, Inc., et al.*, 19cv00001 (N.D.N.Y.); and IWA Forest Industry Pension Plan in *In re Textron, Inc. Securities Litigation,* 19-cv-7881 (S.D.N.Y.).

Mr. Hall has played a key role in some of the Firm's antitrust actions, including *In re Flat Glass Antitrust Litigation*; *In re Compact Disc Antitrust Litigation*; and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*. He is currently part of the litigation team representing consumers in *In re Google Play Consumer Antitrust Litigation,* 20-cv-05761 (N.D. Cal.) concerning Google's alleged anticompetitive use of contractual and technological barriers to foreclose Android users' ability to utilize app distribution platforms other than Google Play Store.

In the consumer protection area, Mr. Hall is co-lead counsel in *In re: Apple Inc. Device Performance Litig.*, No. 5:18-MD-2827-EJD (N.D. Cal.) (a global consumer protection and computer intrusion class action in which a $310 million class settlement was achieved in March 2021). Mr. Hall is also active in the firm's growing data privacy

and cyberlaw practice. Other notable cases in the area of consumer protection Mr. Hall has prosecuted include the non-GMO class action of *Schneider v. Chipotle Mexican Grill, Inc.,* No.16-cv-02200 (N.D. Cal.) and *In re: Yahoo! Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.) in which Kaplan Fox served as co-lead counsel for plaintiffs in a digital privacy class action challenging Yahoo's practice of "scanning" incoming and outgoing emails for content, in order to target advertising more effectively.

Mr. Hall graduated from the College of William and Mary in 1995 with a B.A. in Philosophy and obtained his law degree from Fordham University School of Law in 1998. During law school, Mr. Hall was a member of the Fordham Urban Law Journal and a member of the Fordham Moot Court Board. He also participated in the Criminal Defense Clinic, representing criminal defendants in federal and New York State courts on a pro-bono basis.

**Education:**
- B.A., College of William and Mary (1995)
- J.D., Fordham University School of Law (1998)

**Bar Affiliations and Court Admissions:**
- Bar of the State of Connecticut
- Bar of the State of New York
- U.S. Supreme Court
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**
- American Bar Association
- Association of Trial Lawyers of America
- New York State Bar Association

Mr. Hall can be reached by email at: DHall@kaplanfox.com


**JEFFREY P. CAMPISI** is involved in representing the firm's institutional and individual clients in securities and shareholder actions, and other complex litigation.

Mr. Campisi currently represents the Colleges of Applied Arts and Technology Pension Plan in *In re Vale, S.A. Securities Litigation,* 19-cv-00526 (E.D.N.Y.); the City of

Warwick Retirement Fund in *Lewis v. YRC Worldwide, Inc., et al.*, 19cv00001 (N.D.N.Y.); IWA Forest Industry Pension Plan in *In re Textron, Inc. Securities Litigation,* 19-cv-7881 (S.D.N.Y.); and individuals clients represents individual investors in *Julia Junge and Richard Junge v. Geron Corp. et al.*, 20-cv-547 WHA (N.D. Cal.); *Gluck v. Hecla Mining Company*, 19-cv-4883 (ALC) (S.D.N.Y.); and *Rotunno v. David M. Wood, et al.*, 1:20-cv-2357 (ER) (S.D.N.Y.).

In the past, Mr. Campisi represented Oklahoma Police Pension and Retirement Fund (as liaison counsel) in *Milbeck v. Truecar, Inc. et al.,* 18-cv-2612 (C.D. Cal.) ($28.25 million recovered); the Tennessee Consolidated Retirement System in *In re Fannie Mae 2008 Securities Litigation*, 08cv7831 (S.D.N.Y.) ($170 million recovered); State Teachers' Retirement System of Ohio in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, 07cv9633 (S.D.N.Y.) ($475 million recovered), one of the largest recoveries in a securities class action; the Virginia Retirement System in *In re Escala Group, Inc. Securities Litigation*, 06cv3518 (S.D.N.Y.) ($18 million in cash and stock recovered); the Los Angeles City Employees' Retirement System in *In re Sequenom, Inc. Securities Litigation*, 09cv921 (S.D. Cal.) ($70 million in cash and stock recovered by the time of distribution), and significant corporate governance reforms) and in *In re Gentiva Securities Litigation*, 10cv5064 (E.D.N.Y.) ($6.5 million recovered).

Other cases include *Schueneman v. Arena Pharms., et al.*, 10cv1959 (S.D. Cal.) ($24 million recovered); K*asper v. AAC Holdings, Inc., et al.*, 15cv923 (M.D. Tenn.) ($25 million recovered); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) ($38.5 million recovered); *In re Violin Memory, Inc. Securities Litigation,* 13cv5486 (N.D. Cal.) ($7.5 million recovered); *In re Nevsun Resources Ltd.*, 12cv1845 (S.D.N.Y.) (approximately $6 million settlement); *In re Countrywide Financial Corporation Securities Litigation*, 07cv5295 (C.D. Cal.) ($624 million recovered), *In re Proquest Company Securities Litigation*, 06cv10619 (E.D. Mich.) ($20 million recovered), and *Friedman v. Penson Worldwide, Inc.*, 11cv2098 (N.D. Tex.) ($6.5 million recovered).

Mr. Campisi is a graduate of Villanova University School of Law (*summa cum laude*), where he was a member of the Villanova Law Review and the *Order of the Coif*. Mr. Campisi earned a B.A. from Georgetown University (*cum laude*). Mr. Campisi served

as a law clerk to the Late Honorable Herbert J. Hutton, United States District Judge for the United States District Court for the Eastern District of Pennsylvania.

**Education:**

- B.A., cum laude, Georgetown University (1996)
- J.D., summa cum laude, Villanova University School of Law (2000)
  Member of Law Review and Order of the Coif

**Bar affiliations and court admissions:**

- Bar of the State of New York
- U.S. Courts of Appeals for the Ninth and Tenth Circuits
- U.S. District Courts for the Southern, Eastern, Northern and Western Districts of New York, and Western District of Tennessee

**Professional affiliations:**

- Federal Bar Council
- American Association for Justice

Mr. Campisi can be reached by email at: jcampisi@kaplanfox.com

**MELINDA CAMPBELL** has been associated with Kaplan Fox since September 2004 and became a partner of the firm in 2012. She represents investors and institutions in securities fraud class action litigation.

Mrs. Campbell's noteworthy cases include: *In re Bank of America Corp. Securities Litigation*, MDL No. 2058 (S.D.N.Y.); *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411(NRB) (S.D.N.Y.); *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831(PAC) (S.D.N.Y.), *In re Eletrobras Securities Litigation*, No. 15-cv-5754 (S.D.N.Y.) ($14.75 million settlement), and *Ollila v. Babcock & Wilcox Enterprises Inc.*, No. 3:17-cv-109 (W.D.N.C.) ($19.5 million settlement). Mrs. Campbell currently represents the Colleges of Applied Arts and Technology Pension Plan in *In re Vale S.A. Securities Litigation*, No. 19-cv-526 (E.D.N.Y.).

Mrs. Campbell obtained her J.D. from the University of Pennsylvania Law School. While attending law school, she successfully represented clients of the Civil Practice Clinic of the University of Pennsylvania Law School and provided pro bono legal services through organizations including the Southern Poverty Law Center.

Mrs. Campbell obtained her undergraduate degree from the University of Missouri (*cum laude*).

Mrs. Campbell is a member of the Federal Courts Committee of the New York County Lawyers Association and served as a panelist in a continuing legal education course offered by the Committee concerning waiver of attorney-client privilege under Federal Rule of Evidence 501. Additionally, Mrs. Campbell is a member of the New York State Bar Association, the National Association of Women Lawyers, and the New York Women's Bar Association.

**Education:**

- B.A., University of Missouri (2000)
- J.D., University of Pennsylvania Law School (2004)

**Bar affiliations and court admissions:**

- Bar of the State of New York (2005)
- U.S. Courts of Appeals for the First, Second and Eleventh Circuits
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional affiliations:**

- American Bar Association
- New York State Bar Association
- New York County Lawyers Association
- New York Women's Bar Association
- National Association of Women Lawyers

Mrs. Campbell can be reached by email at: MCampbell@kaplanfox.com

**ELANA KATCHER** has extensive complex antitrust litigation experience drawn from her work on both the plaintiff and defense sides. Ms. Katcher began her career in antitrust litigation as an associate at Sullivan & Cromwell LLP where she was a member of the trial team defending Microsoft Corporation against a series of private class actions brought in courts around the country, as well as representing other major defendants in bet-the-company litigation.

Since 2007, Ms. Katcher has been instrumental in some of Kaplan Fox's largest cases, including *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.),

and a successful bellwether trial in *Neurontin Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1629 (D. Mass.). In addition, Ms. Katcher co-drafted a successful opposition to the first Rule 12(b)(6) motion to dismiss in the sprawling Generic Pharmaceutical antitrust actions, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017) (Rakoff, J.), and continues to work on behalf of the Direct Purchaser Plaintiffs in the *Generic Pharmaceutical* antitrust actions now pending before District Judge Cynthia M. Rufe in the Eastern District of Pennsylvania, including as part of the briefing team that recently prevailed against the first tranche of motions to dismiss brought in that litigation. *See In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-CB-27243, 2018 WL 5003450 (E.D. Pa. Oct. 16, 2018).

In addition, Ms. Katcher represents significant corporate clients, including clients listed on Nasdaq, in individual antitrust actions in Packaged Seafood in which she has recently co-argued a key motion to dismiss before District Judge Janis L. Sammartino, obtaining a significant victory where the court upheld jurisdiction over two foreign defendants. *See In re Packaged Seafood Prod. Antitrust Litig.,* No. 15-MD-2670 JLS (MDD), 2018 WL 4222506 (S.D. Cal. Sept. 5, 2018). She is currently part of the co-lead team for the direct purchaser class plaintiffs in *In re Caustic Soda Antitrust Litigation*, 19-cv-00385 (W.D.N.Y.), and is a member of the steering committee representing the indirect reseller plaintiff class in In re Juul Labs, Inc. Antitrust Litigation, 20-cv-02345 (N.D. Cal.).

Prior to Kaplan Fox, she was an associate at Sullivan & Cromwell LLP and King & Spalding LLP, where she participated in the defense of major companies, including at trial and in arbitration.

**Education:**
- B.A. Oberlin College
- J.D., New York University

**Bar Affiliations and Court Admissions:**
- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**
- New York State Bar Association
- New York City Bar Association

Ms. Katcher can be reached by email at: ekatcher@kaplanfox.com

**MATTHEW P. McCAHILL** was associated with Kaplan Fox from 2003 to 2005, re-joined the firm in May 2013 and became a partner in 2016. He practices in the areas of antitrust and securities litigation, as well as commercial litigation. From 2006 to early 2013, Mr. McCahill was an associate at Berger & Montague, P.C. in Philadelphia. While focusing on insurance and antitrust class action cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) and *Ormond et al. v. Anthem, Inc. et al.*, Case No. 1:05-cv-01908-TWP-TAB (N.D. Ind.) (related to the demutualization of Anthem Insurance, which settled for $90 million in 2012), he also represented corporations and bankruptcy trustees in commercial litigation involving claims for breach of contract, breach of fiduciary duty and fraudulent conveyance.

Mr. McCahill's practice includes representation of plaintiffs opting out of class actions. He represented large retailers who opted out of the *Payment Card* class to pursue their own antitrust actions against Visa and MasterCard challenging the networks' merchant rules and their interchange (or "swipe") fees. Among the merchants he and the firm represented in that case were E-Z Mart Stores, Inc., Sunoco, LP (formerly known as Susser Holdings Corp., operator of the Stripes® convenience store chain), Jacksons Food Stores, Sheetz, Inc., Kum & Go, L.C., Einstein Noah Restaurant Group, Furniture Row, Inc. and NPC International, Inc. (the world's largest franchisee of Pizza Hut restaurants).

Mr. McCahill is part of the Kaplan Fox team representing large grocery chains and food distributors (including Giant Eagle, Inc., Associated Food Stores, Inc., Affiliated Foods, Inc., Western Family Foods, Inc. and the McLane Company, Inc., among others) in individual actions in *In re Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. Cal.), alleging price-fixing and other antitrust violations against Tri-Union Seafoods, LLC (d/b/a Chicken of the Sea), Bumble Bee Foods, LLC, and others. Mr. McCahill currently represents some of the same clients in opt-out antitrust litigation against the nation's largest producers of broiler chickens, in *In re Broiler Chicken Antitrust Litigation*, pending in federal court in Chicago. He and other Kaplan Fox lawyers also

represented the Ohio Public Employees Retirement System in an individual securities fraud action against Brazilian energy conglomerate Petrobras in *In re Petrobras Securities Litigation*, Civ. Action No. 14-cv-9662 (JSR) (S.D.N.Y.).

Mr. McCahill's current and past involvement in class action litigation at Kaplan Fox includes: *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.), where he represented a proposed class of direct purchasers of cast iron soil pipes and fittings in an antitrust case against the Cast Iron Soil Pipe Institute, Charlotte Pipe & Foundry Co. and McWane, Inc. and its subsidiaries; *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial settlement of $38 million); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.) (delayed-generic entry action brought by direct purchasers of Pfizer's drug Neurontin, which settled for $190 million following nearly 12 years of litigation).

In 2014, 2015 and 2016, Mr. McCahill was named a "New York Metro Super Lawyer – Rising Star" in antitrust litigation, and was selected as a "Pennsylvania Super Lawyer – Rising Star" (also in antitrust litigation) in 2012 and 2013, and has each year since 2017 been named a "New York Metro Super Lawyer" in antitrust litigation. He is a member of the American, Pennsylvania State, New York State and New York City bar associations. Mr. McCahill's *pro bono* efforts focus primarily on representing Marine Corps veterans in benefits proceedings before the Veterans Administration.

Mr. McCahill is a 2000 graduate of Rutgers College where he received a B.A., *summa cum laude*, in history and was elected to Phi Beta Kappa. He graduated from Fordham Law School in 2003, where he was a member of the *Fordham Urban Law Journal*. He is fluent in French and proficient in Spanish.

**Education:**

- B.A., History, *summa cum laude*, Rutgers College (2000)
- J.D., Fordham Law School (2003)

**Bar Affiliations and Court Admissions:**

- Bars of the State of New York and the Commonwealth of Pennsylvania
- U.S. Court of Appeals for the Second Circuit
- U.S. District Courts for the Southern and Eastern Districts of New York and the Eastern District of Pennsylvania

**Professional Affiliations:**

- American Bar Association
- New York State Bar Association
- Pennsylvania Bar Association
- Association of the Bar of the City of New York

Mr. McCahill can be reached by email at: mmccahill@kaplanfox.com

## **ASSOCIATES**

**PAMELA MAYER** is focused on the investigation, analysis and initiation of securities claims on behalf of the firm's institutional and individual clients utilizing her combined legal and finance background.

Prior to joining Kaplan Fox, Ms. Mayer was a securities investigation and litigation attorney for a multinational investment bank. Utilizing her combined legal and business background, including her M.B.A., Ms. Mayer focuses on the research and analysis of securities claims on behalf of our firm's individual and institutional clients and is dedicated full-time to the firm's Portfolio Monitoring and Case Evaluation Program. Ms. Mayer also has substantial litigation experience in the area of intellectual property.

**Education:**

- B.S., The University of Rochester
- J.D., The George Washington University
- M.B.A., Finance, The University of Michigan

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Ms. Mayer can be reached by email at: pmayer@kaplanfox.com

**AARON L. SCHWARTZ** has been associated with Kaplan Fox since July 2017. He practices civil litigation with an emphasis on complex business disputes, securities, antitrust, and consumer protection.

Aaron has extensive experience advocating for consumer and shareholder rights, having served on court-appointed lead counsel teams in notable antitrust, consumer protection, and securities matters, including *In re Google Play Consumer Antitrust Litigation* (monopolization of the Google Play Store), *In re Apple Inc. Device Performance Litigation* (iPhone throttling), and *In re Vale S.A. Securities Litigation* (misstatements and omissions to investors related to dam safety).

Aaron also currently serves as counsel to certain public pension funds and institutional investor clients in matters concerning corporate mismanagement and breach of fiduciary duties, including *In re Allianz Global Investor U.S. LLC Litigation*.

Prior to joining the firm, Mr. Schwartz was a Deputy Attorney General in the Pennsylvania Office of Attorney General, Antitrust Section. As a Deputy Attorney General, Mr. Schwartz conducted investigations, brought suit to enjoin anticompetitive corporate mergers, and prosecuted pharmaceutical product-hopping schemes, market allocation schemes, and unfair trade practices. Notable matters included *FTC v. Penn State Hershey Medical Center* and *U.S. v. Aetna Inc.*

**Education:**

- B.A., University of Wisconsin—Madison (2009)
- J.D., The Pennsylvania State University—The Dickinson School of Law (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the Commonwealth of Pennsylvania
- Bar of the State of New York
- U.S. Court of Appeals for the Third Circuit
- U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania; and U.S. District Courts for the Eastern and Southern Districts of New York

**Professional Affiliations:**

- Pennsylvania Bar Association
- American Bar Association

**Publications:**

- *Effective Merger Enforcement: Is it Time for a Retrospective Study on Cross-Market Provider Transactions*, A.B.A., Section of Antitrust Law, 8 State Enforcement Committee Newsletter 4, 10 (Spring 2017).

Mr. Schwartz can be reached by email at: aschwartz@kaplanfox.com

**JASON A. URIS** has been associated with Kaplan Fox since May 2013. He practices in the areas of securities, antitrust, and consumer litigation.

Mr. Uris is currently involved in several litigations, including *Julia Junge and Richard Junge, v. Geron Corp. and John Scarlett* (N.D. Cal.); *Gluck v. Hecla Mining Company* (S.D.N.Y.); and *In re Juul Labs, Inc. Antitrust Litigation* (N.D. Cal.).

Mr. Uris was also a member of the teams that litigated the following cases: *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (S.D.N.Y.) ($31 million settlement); *Milbeck v. TrueCar, Inc., et al.* ($28.25 million settlement); *Kasper v. AAC Holdings, Inc., et al.* (M.D. Tenn.) ($25 million settlement); *In re SandRidge Energy, Inc. Shareholder Derivative Litigation*, No. CIV-13-102-W (W.D. Okla.) (partial settlement of $38 million); *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.) ($30 million settlement); *In re: CSO Hedge Fund Litigation* ($13.5 million settlement).

**Education:**

- B.A., *cum laude*, Boston University (2011)
- J.D., Fordham University School of Law (2014)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New York (2015)
- U.S. District Courts for the Southern and Eastern Districts of New York

**Professional Affiliations:**

- New York State Bar Association

Mr. Uris can be reached by email at: juris@kaplanfox.com

**BLAIR REED** joined Kaplan Fox as an associate in January 2022. Blair's practice focuses on consumer class actions, employment cases, data privacy claims, and business litigation. She has experience handling coordinated proceedings and complex discovery issues in both federal and state court. Blair has represented consumers in

cases involving unfair business practices and consumer fraud, breaches of warranty, invasions of privacy, data breaches, and wiretapping. Prior to joining Kaplan Fox, she was involved in numerous successful recoveries for consumers, including Moore v. Kimberly-Clark Worldwide, Inc., which resulted in a nationwide settlement valued at over $11 million for purchasers of allegedly defective tampons. Additionally, in 2019, Blair participated on the trial team in Perez v. Rash Curtis & Associates, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act. Blair received her Juris Doctor from University of San Francisco School of Law in 2017, where she was a Dean's Scholar and member of the University of San Francisco Law Review. Blair also attended University of San Francisco for her undergraduate degree where she played on the NCAA Division I Women's Tennis Team.

**Education:**

- Bar of the State of California (2017)
- J.D., University of San Francisco School of Law (2017)
  - Dean's Scholar
  - USF Law Review
- B.A. in Advertising and Communications, University of San Francisco (2013)

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2017)
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California
- Ninth Circuit Court of Appeals

Ms. Reed can be reached by email at: breed@kaplanfox.com

**OF COUNSEL**

**GARY L. SPECKS** practices primarily in the area of complex antitrust litigation. He has represented plaintiffs and class representatives at all levels of litigation, including appeals to the U.S. Courts of Appeals and the U.S. Supreme Court. In addition, Mr. Specks has represented clients in complex federal securities litigation, fraud litigation, civil RICO litigation, and a variety of commercial litigation matters. Mr. Specks is resident in the firm's Chicago office.

During 1983, Mr. Specks served as special assistant attorney general on antitrust matters to Hon. Neil F. Hartigan, then Attorney General of the State of Illinois.

**Education:**

- B.A., Northwestern University (1972)
- J.D., DePaul University College of Law (1975)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Illinois (1975)
- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits
- U.S. District Court for the Northern District of Illinois, including Trial Bar

**Professional Affiliations:**

- American Bar Association
- Illinois Bar Association
- Chicago Bar Association

Mr. Specks can be reached by email at: GSpecks@kaplanfox.com

**W. MARK MCNAIR** has been associated with Kaplan Fox since 2003. He practices in the area of securities litigation. Mr. McNair is actively involved in maintaining and establishing the Firm's relationship with institutional investors and is active in the Firm's Portfolio Monitoring and Case Evaluation Program for the Firm's numerous institutional investors. Mr. McNair is a frequent attendee and speaker at various events for institutional investors.

Mr. McNair is a frequent speaker at various institutional events, including the National Conference of Public Employee Retirement Systems and the Government Finance Office Association.

Prior to entering private practice, Mr. McNair was an Assistant General Counsel at the Municipal Securities Rulemaking Board where he dealt in a wide range of issues related to the trading and regulation of municipal securities. Previously, he was an attorney in the Division of Market Regulation at the Securities and Exchange Commission. At the Commission his work focused on the regulation of the options markets and derivative products.

**Education:**

- B.A. with honors, University of Texas at Austin (1972)
- J.D. University of Texas at Austin (1975)
- L.L.M. (Securities) Georgetown University (1989)

**Bar Affiliations and Court Admissions:**

- Bar of the State of Texas (1975)
- Bar of the State of Maryland (1995)
- Bar of the State of Pennsylvania (1995)
- Bar of the District of Columbia (2008)
- U.S. Courts of Appeals for the Third, Fifth, Seventh, Ninth and Tenth Circuits
- U.S. District Court for the Northern District of Illinois, including Trial Bar

Mr. McNair can be reached at MMcnair@kaplanfox.com

**WILLIAM J. PINILIS** practices in the areas of commercial, consumer and securities class action litigation.

He has been associated with Kaplan Fox since 1999 and is resident in the firm's New Jersey office.

In addition to his work at the firm, Mr. Pinilis has served as an adjunct professor at Seton Hall School of Law since 1995 and is a lecturer for the New Jersey Institute for Continuing Legal Education. He has lectured on consumer fraud litigation and regularly teaches the mandatory continuing legal education course Civil Trial Preparation.

In 2021, Mr. Pinilis was appointed as Municipal Court Judge for Morristown, New Jersey.

Mr. Pinilis is the author of "Work-Product Privilege Doctrine Clarified," *New Jersey Lawyer*, Aug. 2, 1999; "Consumer Fraud Act Permits Private Enforcement," *New Jersey Law Journal*, Aug. 23, 1993; "Lawyer-Politicians Should Be Sanctioned for Jeering Judges," *New Jersey Law Journal*, July 1, 1996; "No Complaint, No Memo – No Whistle-Blower Suit," *New Jersey Law Journal*, Sept. 16, 1996; and "The *Lampf* Decision: An appropriate Period of Limitations?" *New Jersey Trial Lawyer*, May 1992.

**Education:**

- B.A., Hobart College (1989)
- J.D., Benjamin Cardozo School of Law (1992)

**Bar Affiliations and Court Admissions:**

- Bar of the State of New Jersey (1992)
- Bar of the State of New York (1993)
- U.S. District Courts for the District of New Jersey, and the Southern and Eastern Districts of New York

**Professional Affiliations:**

- Morris County Bar Association
- New Jersey Bar Association
- Graduate, Brennan Inn of Court

Mr. Pinilis can be reached by email at: WPinilis@kaplanfox.com

**JUSTIN B. FARAR** joined Kaplan Fox in March 2008.   practices in the area of securities litigation and antitrust litigation with a special emphasis on institutional investor involvement. He is located in the Los Angeles office. Prior to working at Kaplan Fox, Mr. Farar was a litigation associate at O'Melveny & Myers, LLP and clerked for the Honorable Kim McLane Wardlaw on the Ninth Circuit Court of Appeals. Mr. Farar also currently serves as a Commissioner to the Los Angeles Convention and Exhibition Authority.

Mr. Farar is also an adjunct professor at the University of Southern California Gould Law School teaching a course on class actions.

**Education:**

- J.D., order of the coif, University of Southern California Law School (2000)
- B.A., with honors, University of California, San Diego

**Bar Affiliations and Court Admissions:**

- Bar of the State of California (2000)
- U.S. Court of Appeals for the Ninth Circuit (2000)
- U.S. District Court for the Central of California (2000)

**Awards:**

- The American Society of Composers, Authors and Publishers' Nathan Burkan Award Winner, 2000 for article titled "Is the Fair Use Defense Outdated?"

Mr. Farar can be reached by email at: JFarar@kaplanfox.com

**MATTHEW GEORGE** is a complex litigation attorney at Kaplan Fox & Kilsheimer LLP with a practice focused on data privacy, consumer protection, and employment/labor cases. He has significant experience and expertise handling multidistrict litigation and other coordinated proceedings in state and federal courts involving multiple parties and complex discovery issues.

Matthew has a strong track record opposing Silicon Valley's largest companies in lawsuits involving emerging technology and novel legal issues. He was on Kaplan Fox's lead counsel team in *In re: Apple Device Performance Litigation*, that recovered a settlement of up to $500 million on claims that Apple violated the Computer Fraud and Abuse Act. In that case he managed third-party discovery of two dozen companies in the U.S. and Asia and first chaired a series of depositions. He is currently court appointed co-lead counsel in *In re: Robinhood Outage Litigation*, representing investors alleging losses attributable to a series of unprecedented outages of Robinhood's trading app in March of 2020. He also represents a certified class of patients alleging that failed blood testing startup Theranos and Walgreens unlawfully experimented on them in *In re: Arizona Theranos Incorporated Litigation*. Matthew has also obtained innovative rulings at the trial and appellate levels on claims against Facebook, Adobe, and Yahoo over mishandling of consumers' personal information and data.

Matthew has also advanced initiatives for underrepresented communities both in and out of court. He was recently co-lead counsel in cases against health care conglomerates CVS/Caremark and Aetna that collectively recovered over $20 million on behalf of Americans living with HIV when their healthcare information was wrongfully exposed. Matthew has been a longstanding member of BALIF, the Bay Area's (and nation's oldest) LGBTQI+ bar association, where he has volunteered in BALIF's formal mentorship program helping new attorneys enter the profession. He has also been a member of the Consumer Attorneys of California's Diversity Committee, where he co-sponsored an event inclusive of the Bay Area's minority bar associations.

Matthew has been selected by his peers as a "Rising Star" by Northern California Super Lawyers each year from 2011-2014 and was chosen as a "Super Lawyer" in 2016, the first year he was eligible for the distinction and every year since. He has been a regular

speaker at industry conventions and seminars on topics ranging from arbitration, expert depositions, and class action settlement strategies.

**Education:**

- B.A., Political Science and Criminal Justice, *magna cum laude*, Chapman University (2002)
- J.D., The University of Michigan Law School (2005)

**Publications and Speaking Engagements:**

- Expert Depositions: Promoting Expertise and Limiting Exposure –Bridgeport Continuing Legal Education "Mastering the Deposition" Seminar (January 2017)
- "How Viable Is the Prospect of Private Enforcement of Privacy Rights In The Age of Big Data? An Overview of Trends and developments In Privacy Class Actions" – Competition, The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Volume 24, No. 1 (Spring 2015)
- Panel Discussion of Sony Pictures Data Breach Cases – CNBC's "Squawk On the Street" (December 2014)
- New and Developing Practice Areas – CAOC 53rd Annual Convention (November 2014)
- Privacy Law Symposium – University of California, Hastings College of the La (April 2014)
- Update On the Target Data Breach Litigation – HarrisMartin Target Data Breach MDL Conference (March 2014)
- Consumer Privacy Law – 8th Annual CAOC Class Action Seminar (February 2014)
- Privacy Litigation and Management: Strategies For Protection and Litigation – Bridgeport Continuing Legal Education Seminar (December 2012)
- Class Action Settlement Strategies and Mechanics – 12th Annual Bridgeport Class Action Litigation & Management Conference (April 2012)
- Developments In the Arbitration of Wage and Hour Disputes – Bridgeport 2010 Wage and Hour Conference (October 2010)

**Bar Affiliations and Court Admissions:**

39

- Bar of the State of California
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California, and the District of Colorado
- Ninth Circuit Court of Appeals

**Professional Affiliations:**
- Bay Area Lawyers for Individual Freedom
- Consumer Attorneys of California (Diversity Committee)
- American Bar Association (Labor and Employment Section)

Mr. George can be reached by email at: mgeorge@kaplanfox.com

**KATHLEEN HERKENHOFF** is a complex litigation attorney, with a practice principally focused on securities and consumer class actions, as well as shareholder derivative actions. Kathleen's experience includes employment litigation and data privacy matters. Over the course of her career, she has played a key role in obtaining more than $1 billion in settlement recoveries for victims of corporate fraud and misconduct. She joined Kaplan Fox & Kilsheimer LLP in 2021.

Kathleen's law career started at the United States Securities and Exchange Commission, where she investigated and litigated securities fraud and insider trading actions. Her SEC victories include securing a $22 million judgment in a complex offering fraud.

Following her SEC career, she joined a national class action litigation firm. During her 12 years at the firm (at which she was a partner from 2002 to 2009), she practiced in all areas of securities class and derivative litigation on behalf of both institutional and individual shareholders. Kathleen's work contributed to securing monetary recoveries exceeding $1 billion on litigation involving HealthSouth Corp. ($671 million in class action), AOL Time Warner, Inc. ($618 million in opt out litigation), Mattel, Inc. ($122 million in class action), Honeywell International, Inc. ($100 million in class action), Vesta Insurance Group, Inc. ($78 million combined settlement, with $17 million from auditor in class action), St. John Knits ($60 million settlement value in challenge to insider deal seeking to take company private), SmarTalk Teleservices, Inc. ($27.1 million, plus a separate $15 million auditor settlement in class action) and scores of other corporate

entities, including large value recoveries exceeding $30 million in shareholder derivative actions. In addition to litigating these matters, Kathleen drafted and negotiated sweeping corporate governance improvements in connection with settlements for several of these actions.

In addition to the substantial class action practice Kathleen enjoyed at the national law firm, she also dedicated significant work toward achieving excellent results in numerous shareholder derivative cases:

*In re KB Home Shareholder Derivative Litig.*, No. 06-CV-05148 (C.D. Cal.) (served on co-lead counsel team recovering more than $31 million in financial benefits, including $21.5 million in cash, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections, and executive compensation practices).

*In re Coherent, Inc. Shareholder Derivative Litig.*, No. 507CV00955 (N.D. Cal.) (settlement including recovery to company of over $6 million in cash and cancelled stock options, and substantial governance reforms).

I*n re Corinthian Colleges, Inc. Shareholder Derivative Litig.*, No. SACV-06-0777-AHS (ANx) (C.D. Cal.) (settlement including repricing of $2 million worth of misdated options, and enactment of corporate governance reforms).

*In re First American Corp. Shareholder Derivative Litig.*, No. SACV-06-1230-JVS (RNBx) (C.D. Cal.) (settlement including repayment by certain officers and directors of more than $700,000 to company, and corporate governance enhancements).

*In re Eclipsys Corp. Derivative Litigation,* No. 07-80611-CIV-MIDDLEBROOKS (S.D. Fla.) (settlement of shareholder derivative action involving governance improvements).

*In re Rambus, Inc. Derivative Litig.* No. 506CV03513 (N.D. Cal.) (settlement of shareholder derivative action for substantial governance reforms).

In 2010, Kathleen spearheaded the opening of a California office of a boutique firm with merger & acquisition and shareholder derivative practice groups. In her role, Kathleen continued to obtain significant victories, including obtaining cutting edge corporate governance reforms to be enacted by various corporate entities. A sampling of this work includes Kathleen's role as co-lead counsel in successful shareholder

derivative litigation on behalf of Nominal Defendant Diamond Foods, Inc., resulting in more than $10 million in financial consideration for the company, in addition to corporate governance enhancements. *In re Diamond Foods, Inc. S'holder Derivative Litig.*, Lead Case No. CGC-11-515895 (Cal. Super. Ct. San Francisco Cnty).

Kathleen also helped to secure the boutique firm's leadership position in a federal shareholder derivative litigation on behalf of Nominal Defendant Intuitive Surgical, Inc. ("Intuitive"). *Berg v. Guthart, et al.*, Case Nos. 5:14-cv-00515-EJD (N.D. Cal.). The Intuitive shareholder derivative action was thereafter litigated in a combined effort with the state court lead counsel before the Honorable Gerald J. Buchwald of the Superior Court for the State of California, San Mateo County, reaching a pre-trial settlement including $15 million in value recovered for the Company. *Public School Teachers' Pension and Retirement Fund of Chicago v. Guthart, et al.*, Case No. CIV-526930 (Cal. Super. Ct San Mateo Cnty.).

Additional representative shareholder derivative actions include:

*In re Galena Biopharma, Inc. Derivative Litigation*, Case No. 3:14-cv-00382-SI (Lead) (D. Or.) (settlement including $15 million payment, cancellation of $1.2 million worth of stock options allegedly granted improperly to certain of Galena's directors, and the adoption of corporate governance reforms).

*Barovic v. Ballmer, et al.*, Lead Case No: 2:14-cv-00540-JCC (W.D. Wa.) (derivative action on behalf of Microsoft, with settlement involving significant corporate governance measures concerning the Company's compliance with antitrust laws and regulations.).

*In re Art Tech. Group, Inc. Shareholders Litig.*, C.A. No. 5955-CC (Del. Ch.) (member of deposition team involved in obtaining factual record to support preliminary injunction against proposed $1 billion merger transaction for which partial fee was later awarded).

*In re Rentech, Inc. Derivative Litig.,* Lead Case No. BC 430553 (Cal. Super. Ct. Los Angeles Cnty.) (settlement approved with extensive governance reforms, including limits on employee directors serving on more than two public company boards).

*In re Cadence Design Systems, Inc. Securities and Derivative Litig.,* No. C-08-4966-SC (N.D. Cal.) (settlement resulting in corporate governance enhancements).

*Denham v. Yoseloff, et al.,* A-09-603275-C (Eighth Judicial District for Clark County, Nevada) (action on behalf of Shuffle Master, Inc., with governance improvements in settlement including separation of Chairman and CEO positions).

As indicated, each of the representative actions included governance improvements. In particular, the governance enhancements that Kathleen has pushed for in various actions have received praise from courts, such as the Honorable Marie S. Weiner of the San Mateo County Superior Court, who commented that the governance improvements in one settlement were "the most detailed and extensive corporate governance changes I've seen in a derivative settlement." *In re SciClone Pharms., Inc. S'holder Derivative Litig.,* No. CIV 499030 (Cal. Super. Ct., San Mateo Cnty.) (settlement included the adoption of cutting-edge corporate governance reforms including establishment of a Foreign Corrupt Practices Act ("FCPA") compliance coordinator; the adoption of an FCPA compliance program; and the adoption of additional internal controls and compliance functions).

Kathleen's work has also included protecting shareholders in appellate court matters. *See e.g. Dennis v. Hart, et al., 724 F.3d 1249 (9th Cir. 2013)* (rejecting defendants' arguments in shareholder derivative action that, among other things, the doctrine of complete preemption conferred federal jurisdiction in the action in view of the inclusion of allegations that defendants' conduct violated the Dodd-Frank Wall Street Reform and Consumer Protection Act). At the time of its issuance, *Dennis* was considered a significant victory for shareholders seeking more than one forum in which to pursue claims for conduct stemming from Dodd-Frank.

Other key victories include *Rosenbloom v. Pyott,* 765 F.3d 1137 (9th Cir. 2014). Kathleen was involved in the litigation of this shareholder derivative litigation against various Allergan, Inc. insiders for the alleged illegal marketing of "Botox". In the district court, plaintiffs were initially dismissed following defendants' motions to dismiss, but on September 2, 2014, the Ninth Circuit issued a significant reversal in plaintiffs' favor. A three-judge Ninth Circuit panel unanimously concluded that the district court abused its discretion in dismissing the action for purported failure to show that a pre-lawsuit "demand" should be excused. Kathleen worked extensively as part of the team of co-lead counsel in the action on the pleadings and briefs before the district court and

development of the factual record.  In assessing the record from the district court, Judge Stephen Reinhardt wrote that plaintiffs presented "a battery of particularized factual allegations that strongly support an inference at this stage of the litigation that the Board knew of and did nothing about illegal activity."

Immediately prior to joining Kaplan Fox, Kathleen served as a partner in a law firm specializing in employment litigation, as well as in class and shareholder derivative matters.  This experience expanded her practice to include pursuing relief for employees victimized by illegal conduct in the workplace, whether for wage and hour claims, discrimination, harassment or a host of other improper practices.

Notably, since 2018, Kathleen has served on the Plaintiffs' Executive Committee in *In re: Apple Inc. Device Performance Litigation (N.D. Cal.),* which is profiled above in other sections of the firm's resume and on the firm's webpage.

**Education:**
- Bar of the State of California (1993)
- J.D., Pepperdine University School of Law (1993)
  - Dean's Honor List
  - American Jurisprudence Award, Constitutional Law and Agency-Partnership
- B.A. in English Literature, University of California at Berkeley (1989)

**Bar Affiliations and Court Admissions:**
- Bar of the State of California (1993)
- U.S. District Courts for the Northern, Central, Southern and Eastern Districts of California
- Ninth Circuit Court of Appeals

Ms. Herkenhoff can be reached by email at: kherkenhoff@kaplanfox.com

**PETER S. LINDEN** joined Kaplan Fox in August 2021. Mr. Linden's practice concentrates on securities, commercial, and healthcare fraud litigation. His clients include public pension funds and other institutional investors, individuals, businesses, and governmental entities. Prior to joining Kaplan Fox, Mr. Linden was a partner at another national securities law firm, where he spent over 30 years, including almost ten years as

one of that firm's managing partners. During his career, Mr. Linden has obtained numerous outstanding recoveries, totaling in excess of a billion dollars.

In the area of securities litigation, Mr. Linden has played a leading role in numerous successful class actions, including the following examples. He represented plaintiffs, as lead counsel, in *In re Citigroup Inc Securities Litig.*, 07 Civ. 9901 (S.D.N.Y.), a class action arising out of Citigroup's alleged misrepresentations regarding their exposure to losses associated with numerous collateralized debt obligations. This case settled for $590 million -- at the time, the largest CDO-related settlement ever, as well as the largest settlement of a fraud-only action. In *In re BISYS Securities Litig.*, 04 Civ. 3840 (S.D.N.Y.), Mr. Linden's representation of a municipal pension fund as co-lead counsel in a securities class action alleging accounting improprieties resulted in a $65 million recovery. In *In re Laidlaw Bondholder Litig.*, No. 3-00-2518-17 (D.S.C.), Mr. Linden represented, as lead counsel, two major insurance companies and a bondholder class in a securities class action resulting in a $42.875 million recovery. Finally, he represented several large municipal bond issuers in confidential FINRA arbitrations against large, institutional banks. The claims alleged various misrepresentations and breaches of statutory and fiduciary duties by the underwriters of auction rate securities.

Mr. Linden has handled many notable actions in the consumer protection area as well. He served as Chairman of the Plaintiffs' Steering Committee in *In re MCI Non-Subscriber Litig.*, MDL No. 1275 (S.D. Ill.), a consumer class action resulting in an approximately $90 million recovery for the class. In *Carnegie v. Household International, Inc., et al.*, No. 98 C 2178 (N.D. Ill.) he and his firm served as co-lead counsel in a class action against H&R Block and Household Bank (as successor to Beneficial National Bank) for the benefit of taxpayers who had obtained Refund Anticipation Loans ("RALs"). The case alleged that H&R Block and Beneficial National Bank made misrepresentations and charged people undisclosed fees on RALs. After years of litigation and appeals, the case resulted in a settlement of $39 million in cash. In *In re IDT Corp. Calling Card Terms Litig.*, No. 207 CV 01076 (D.N.J.), Mr. Linden served as lead counsel in a class action litigation against certain related prepaid calling card providers, alleging that they failed to inform consumers sufficiently about the applicable rates and charges for such calling cards, and thereby violated various state consumer protection acts and other laws. The

case resulted in a settlement of up to $20 million in Refund PINs (representing free domestic telephone minutes), $2 million in charitable donations, and additional relief consisting of enhanced disclosures of calling card charges.

In the healthcare arena, Mr. Linden represented the State of Michigan in *Bill Schuette, Attorney General of The State Of Michigan, ex rel The State of Michigan v. McKesson Corporation, et al.*, No. 11-629-CZ (Ingham Cty. Cir. Ct.), a lawsuit arising out of a scheme to increase the Average Wholesale Prices of hundreds of brand name drugs causing the submission of false claims to the Michigan Medicaid program, and the overpayment of Medicaid pharmacy claims. The court determined that the State had successfully pled a cause for money damages under its Medicaid False Claims Act.

Mr. Linden's advocacy also has resulted in many notable decisions, including: *Epstein v. MCA, Inc.*, finding a private right of action, and granting partial summary judgment, under Section 14(d)(7) of the Securities Exchange Act; and *In re eBay, Inc. Shareholders Litig.*, finding that investment banking advisors could be held liable for aiding and abetting insiders' acceptance of IPO allocations through "spinning."

Mr. Linden has been selected by Super Lawyers for securities litigation. His work has also resulted in recognition in Law360 and the National Law Journal's "Plaintiffs' Hot List."

Prior to going into private practice, Mr. Linden worked as an Assistant District Attorney in the Kings County District Attorney's Office for over six years and gained significant trial and appellate experience. He ultimately served as a supervising attorney of that Office's Economic Crimes Bureau.

**Education:**

- B.A., State University of New York at Stony Brook (1980), Pi Sigma Alpha Honor Society
- J.D., Boston University School of Law (1984)

**Court Admissions and Bar Affiliations:**

- New York State Bar
- United States District Court for the Southern District of New York
- United States District Court for the Eastern District of New York
- United States District Court for the Eastern District of Michigan

- United States District Court for the Eastern District of Wisconsin
- United States District Court for the Southern District of California
- United States Courts of Appeals for the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth and the District of Columbia Circuits

**Professional affiliations:**

- New York State Bar Association
- Association of the Bar of the City of New York
- National Association of Public Pension Plan Attorneys
- Dean's Advisory Board, Boston University School of Law
- Advisory Board, Boston University School of Law Small & Mid-Size Firm Apprenticeship Program (SMAP)

Mr. Linden can be reached by email at: plinden@kaplanfox.com

# EXHIBIT 2
## to Motion

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCINE SIMMONS, Individually, and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-03194 |
| CHRISTOPER CORDARO, Individually, and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, <br><br> Defendant. | Case No. 4:22-cv-03207 |

## DECLARATION OF DANIELLE L. PERRY IN SUPPORT OF
## PLAINTIFFS' MOTION TO APPOINT CO-LEAD INTERIM CLASS COUNSEL

I, Danielle L. Perry, being competent to testify, make the following declaration:

1.      I am currently a partner of the law firm Mason LLP, which was founded in March 2020 (formerly known as Mason Lietz & Klinger LLP). I am one of the lead attorneys for Plaintiffs and seek appointment as Class Counsel for the proposed Settlement Class. I submit this declaration in support of Plaintiffs' Motion to Appoint Co-Lead Interim Class Counsel. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      I have been licensed to practice law in California since 2013 and in the District of Columbia since 2016. I am also a member of the bars of numerous federal district courts and the U.S. Circuit Court for the Fifth Circuit, and have nearly a decade of litigation and class action experience. I have been admitted to practice *pro hac vice* in this matter.

3.      Mason LLP Attorneys have served as Lead Counsel, Co-Counsel or Class Counsel on dozens of class actions ranging from defective construction materials, (i.e. defective radiant heating systems, siding, shingles, and windows), to misrepresented and recalled products (e.g., dog food, prenatal vitamins), and environmental incidents (the Exxon Valdez, BP Oil Spill).

4.      These cases include: *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litg.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan.) (final approval granted Oct. 2021), where Mason LLP served as court-appointed Co-Lead Counsel; *In re DevaCurl Litigation,* Master File No. 1:20-cv-01234-GHW (S.D.N.Y.) (final approval granted January 3, 2022), where Mason LLP served as court-appointed Co-Lead Counsel; *Cox v. Shell Oil Co*., No. 18844, 1995 WL 775363 (Ch. Ct. Tenn., July 31, 1995) (defective polybutylene pipe; $950 million settlement); *Hobbie v. RCR Holdings*, *II, LLC*, No. 10-113, MDL No. 2047 (E.D. La. filed April 20, 2010) (354 unit condominium built with Chinese Drywall; settlement for complete remediation at cost of $300 million); *Adams v. Fed. Materials*, No. 5:05-CV-90-R, 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006) (350 owners of commercial and residential property whose structures were built with defective concrete; $10.1 million settlement); *In re MI Windows & Doors Inc. Prod. Liab. Litig*., No. 2:12-MN-00001-DCN, MDL No. 2333, 2015 WL 4487734 (D.S.C. July 23, 2015) (defective windows; claims made settlement for over 1 million homes); *In re Synthetic Stucco Litig*., No. 5:96-CV-287-BR(2), 2004 WL 2881131 (E.D.N.C. May 11, 2004) (settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million); *Posey v. Dryvit*

*Sys., Inc.*, No. 17,715-IV, 2002 WL 34249530 (Tenn. Cir. Ct. Oct. 1, 2002) (Co-Lead Counsel;

national class action settlement provided cash and repairs to more than 7,000 claimants); *Galanti*

*v. Goodyear Tire & Rubber Co.*, No. 03CV00209, 2004 WL 6033527 (D.N.J. Nov. 17, 2004)

(Class counsel; defective radiant heating systems; $330 million settlement); and *In re Zurn Pex*

*Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) (Plaintiffs'

Executive Committee; +$20 million claims made settlement).

5.  With respect to privacy cases, Mason LLP is presently litigating over a dozen cases

across the country involving privacy violations, data breaches, and ransomware attacks.

6.  Mason LLP also serves as Court-appointed Liaison Counsel in *In re U.S. Off. of*

*Pers. Mgmt. Data Security Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017).

7.  Attorneys at Mason LLP were also Co-Lead Counsel in *In re Dep't of Veterans Aff.*

*(VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful

disclosure of PPI of 28.5 million military veterans and active duty personnel) ($20 million

settlement fund) and court-appointed Lead Counsel in *In re Google Buzz Privacy Litig.*, No. C 10-

00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising

for unauthorized disclosure or personal information).

8.  It is noteworthy that in just the last couple of years, I (either individually or as a

member of my firm) have served as class counsel and/or worked successfully to obtain Final

Approval in numerous data breaches class actions including:

    a.  *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-
       00217-14 (Grays Harbor County Superior Court, State of Washington) (hospital
       data breach class action; final approval granted Sept. 2020);

    b.  *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC
       (E.D. Mo.) (hospital data breach class action; final approval granted Dec. 2020);

c. *Baksh v. Ivy Rehab Network, Inc*., Case No. 7:20-cv-01845-CS (S.D.N.Y.) (data breach class action settlement; final approval granted Feb. 2021);

d. *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (data breach class action settlement valued at over $7 million; final approval granted Feb. 2021);

e. *Kenney et al. v. Centerstone of America, Inc.*, Case No. 3:20-cv-01007 (M.D. Tenn.) (data breach class action settlement involving over 63,000 class members; final approval granted August 2021);

f. *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (data breach case involving 360,000 patients; final approval granted Aug. 2021);

g. *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb) (data breach settlement, final approval granted Sept. 2021);

h. *Richardson v. Overlake Hospital Medical Center et al*., Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach class action involving approximately 109,000 individuals, final approval granted Sept. 2021);

i. *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (data breach class action settlement, final approval granted Oct. 2021);

j. *Carr et al. v. Beaumont Health et al*., Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (data breach class action involving 112,000 people; final approval granted Oct. 2021);

k. *Klemm et al. v. Maryland Health Enterprises Inc*., Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel, final approval granted Nov. 2021);

l. *Cece et al. v. St. Mary's Health Care System, Inc. et al*., Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed class counsel in data breach case involving 55,652 people; final approval granted April 2022);

m. *Dekenipp v. Gastroenterology Consultants, P.A.*, No. 202161470 (295th Judicial Dist. for Harris County, Texas) (appointed class counsel in data breach case involving 163,000 people; final approval granted October 2022).

9. My experience, and that of my partner and firm, is described in Mason LLP's Firm Resume, attached hereto as **Exhibit 1**.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on this 3rd day of January 2023.

*/s/ Danielle L. Perry*
Danielle L. Perry

# EXHIBIT 1

## to the Declaration of Danielle L. Perry



Mason LLP is dedicated to representing plaintiffs in class actions, mass torts and individual cases in courts throughout the United States

Our attorneys have a long history of obtaining major verdicts and settlements. We frequently lead, co-lead, or perform other leadership roles in class actions of national significance. Examples include the Office of Personal Management (OPM) data breach litigation (in which one of our attorneys is appointed Liaison Counsel) and the Entran II product liability litigation (in which one of our attorneys served as Co-Lead Counsel and successfully resolved the case for $330 million).

## THE FIRM'S PRINCIPAL LAWYERS

**Gary E. Mason**
*Founding Partner*



Gary graduated magna cum laude, Phi Beta Kappa, from Brown University and Duke University Law School, where he was an editor of *Law and Contemporary Problems*. He then served as a law clerk for the Honorable Andrew J. Kleinfeld of the U.S. District Court for the District of Alaska. Gary was previously an Associate at Skadden Arps and a Partner at Cohen Milstein where he was the first Co-Chair of its Consumer Protection Practice Group.

Gary is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Gary has recovered more than $1.5 billion in the 29 years he has represented plaintiffs. With his broad experience, Gary is nationally known for representing consumers in class actions involving a wide range of defective products, including Chinese drywall, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, pharmaceutical products, consumer electronics and automobiles. He also is recognized for his successful representation of persons injured by negligently discharged pollutants (e.g., *In re the Exxon Valdez*) and victims of wage theft. He currently represents more than 2,000 Customs and Border Patrol Agents in FLSA litigation against the federal government, more than 1,500 women injured by use of a defective tampon product, thousands of owners of animals injured by contaminated dog food, and over 23 million individuals whose personal data was compromised by the U.S. Office of Personal Management data breach.

Gary was an early advocate for victims of security breaches and privacy violations, starting with the first settlement arising from a Google data breach (*In re Google Buzz*), the Department of

Veterans Affairs stolen laptop case, and continuing on more recently to his position as Liaison Counsel in *In re OPM Data Breach Litigation*.

Gary has served in leadership positions in many consumer class actions in State and Federal courts nationwide as well as in MDLs. Gary writes and speaks frequently on topics related to class action litigation. He was the 2012-2013 Co-Chair of the Class Action Litigation group for the American Association for Justice and presently serves as the Chairman of its Rule 23 Task Group. He has repeatedly been named a Washington, DC Super Lawyer for Class Actions.

Gary lives in Bethesda, Maryland.

### Danielle Perry
***Partner***



Danielle L. Perry is a partner at Mason LLP, and offers nearly a decade of class action litigation experience to the benefit of her clients. Graduating from the University of California, Berkeley in 2010 and from Loyola Law School, Los Angeles in 2013, Ms. Perry is licensed to practice in the State of California, District of Columbia, and in numerous federal district courts across the country as well as the U.S. Court of Federal Claims, and the Fifth, Seventh, and Federal Circuit Courts of Appeals. While Ms. Perry originally focused her career on employment law class actions, after her first few years of practice she expanded her experience and resume to cover numerous data breach and consumer class actions as well. Ms. Perry, either as an individual or as a member of her firm, has been named class counsel in numerous cases including: *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach class action involving approximately 109,000 individuals; final approval granted Sept. 2021); *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed class counsel in data breach case involving 55,652 people; final approval granted April 2022).

Ms. Perry also has extensive experience providing support to appointed committees in MDL cases across the country. *See, e.g. In re DevaCurl Litigation,* Master File No. 1:20-cv-01234-GHW (S.D.N.Y.) (final approval granted January 3, 2022) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry undertook significant work for clients and class members with extensive hair loss, leading client interviews, drafting pleadings, and preparing settlement and settlement approval papers); *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litg.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan.) (final approval granted Oct. 2021) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry played a significant roll for clients and class members who purchased dog food with sometimes lethal amounts of vitamin D, participating in client intake, discovery, and preparing settlement and settlement approval papers); *In re: Marriott International Customer Data Security Breach Litigation*, MDL No. 19-md-2879 (Dist. Md.) (Ms. Perry contributed to plaintiff interview process and drafting of the consolidated amended complaint in data breach case); *In re U.S. Off. of Pers. Mgmt. Data Security Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017) (Mason LLP serves as Liaison Counsel, and Ms.

2

Perry has completed research assignments in support of and at the request of Lead Counsel in data breach case). Most recently, Ms. Perry has also been appointed to the Leadership Development Committee in *In re: SoClean Inc. Litigation*, MDL No. 3021 (Dist. PA), where she works closely with Lead Counsel in all areas of litigation and fights for consumers rights pertaining to the purchase of defective and/or unsafe products.

**Lisa White**
*Senior Attorney*



Lisa A. White is a writer and researcher at heart, known for her attention to detail, optimism, and creative approach to legal problem-solving. Most of Lisa's work is in the federal court system, both in the District Courts and Circuit Courts of Appeals. She is licensed to practice in the State of Tennessee, and in numerous federal district courts across the country as well as the Seventh and Ninth Circuit Courts of Appeals.

Lisa's primary areas of practice are product defect, product misrepresentation, data breach litigation, and wage and hour class actions. Her role at Mason LLP frequently involves investigating and researching potential cases and claims prior to a complaint being filed, as well as drafting pleadings and detailed research required for and during litigation. Prior to joining Mason LLP, Lisa practiced at another plaintiffs' class action firm, where she advocated for employees who were improperly paid, especially in the airline industry. She also worked on lawsuits related to defective products and deceptive advertising. She was frequently called on to research and draft appellate briefs.

Lisa returned to law school after completing her Bachelor's and Master's in Sociology from The University of Tennessee, then teaching for a number of years at universities. She completed the coursework for her Ph.D. in American Studies at The College of William and Mary, then opted to go to law school—a childhood goal. Lisa is a graduate of The University of Tennessee College of Law. While at The University of Tennessee College of Law, Lisa was a Co-Coordinator of the Tennessee Innocence Project, the Research Editor for Tennessee Journal of Law and Policy. While a law student, she practiced in both the Domestic Violence Clinic and the Advocacy Clinic. Lisa has published peer-reviewed papers in three academic fields: law, sociology, and history.

Lisa and her family are avid travelers, and she has visited all seven continents. In addition, for three years, she worked remotely practicing class action law while living in Greymouth, New Zealand.

**<u>NOTABLE CLASS ACTION CASES</u>**

## Antitrust

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

## Products

*In re: SoClean Marketing, Sales Practices and Product Liability Litigation*, No. 2022-mc-00152 (W.D. Pa) (court-appointed Co-Lead Counsel).

*In re: Deva Concepts Products Liability Litigation*, No. 1:2020-cv-01234 (S.D.N.Y.) (court appointed Co-Lead Counsel; $5.2 million settlement).

*In re Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig., MDL No. 2887, No. 19-md-2887-JAR-TJJ (D. Kan.) (court-appointed Co-Lead Counsel; $12.5 million settlement).*

*Smid et al. v. Nutranext, LLC*, No. 20L0190 (St. Clair Ctuy., Ill., 2020) ($6.7 million settlement)

*Ersler, et. al v Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).

## Automobiles

*Falk v. Nissan N. Am., Inc.,* No. 4:17-cv-04871 (N.D. Cal.) (Co-Lead Counsel in litigation alleging damages from defective transmissions; national settlement extending warranty for 1.5 million vehicles).

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018).

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier) (2017).

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.) (class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113, MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individual homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v. Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al,* No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) (Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

6

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings)

*Bridget Smith v. Floor and Decor Outlets of America, Inc.*, No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## Environmental

*Bell v. WestRock, CP, LLC*, No. 3:17-cv-829-JAG (E.D. Va.) (Co-Lead Counsel in litigation alleging nuisance from wood dust from paper mill; class certification motion pending; class certified; $700,000 settlement).

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland) (2001).

## Fair Labor Standards Act/Wage and Hour

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

7

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa. 2003) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.").

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act),

## Insurance

*Young, et al. v. Nationwide Mut. Ins. Co, et al.*, No. 11-5015 (E.D. Ky. 2014) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected).

*Nichols v. Progressive Direct Insurance Co., et al.*, No. 2:06cv146 (E.D. Ky. 2012) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million).

## Privacy/Data Breach

*Farley v. Eye Care Leaders*, 22-cv-468 (M.D.N.C.) (Court-appointed Co-Lead Counsel).

*Nierman, et al. v. Schneck Medical Center*, No. 36D01-2206-CT-000013 (Jackson Cty., Ind.) (Court-appointed Co-Lead Counsel).

*Dekenipp v. Gastroenterology Consultants, P.A.*, Case No. 202161470 (Harris Cty., Tx.) (Lead Counsel; claims made settlement and 18 months credit monitoring for class of 162,000 patients).

*Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (Mr. Mason appointed class counsel in hospital data breach class action; final approval granted Sept. 2020).

*Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (Mr. Mason appointed class counsel; final approval granted Dec. 2020).

*Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (data breach class action settlement valued at over $7 million; final approval granted Feb. 2021).

*Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (data breach case involving 360,000 patients; final approval granted Aug. 2021).

*Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb) (data breach settlement, final approval granted September 2021).

*Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (data breach class action involving approximately 109,000 individuals, final approval granted Sept. 2021).

*Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (data breach class action settlement, final approval granted Oct. 2021).

*Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (data breach class action involving 112,000 people; final approval granted Oct. 2021).

*Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel, final approval granted November 2021).

*In re: Ambry Genetics Data Breach Litigation,* No. 8:20-cv-00791 (C.D. Cal.)  (court-appointed member Executive Committee; $12 million settlement).

*Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y.) (Court-appointed class counsel; final approval granted Feb. 2021*).*

*Kenney et al. v. Centerstone of America, Inc.,* No. 3:20-cv-01007 (M.D. Tenn.) (settlement involving over 63,000 class members; final approval granted August 2021*);*

*North et al. v. Hunt Memorial Hospital District*, Case No. 89642 (Hunt Cty, Tex.) (settlement; final approval granted Dec. 2021*).*

*Cece v. St. Mary's Health Care System, Inc.,* No. SU20CV0500 (Athens-Clarke Cnty., Ga.) (data breach case involving 55,652 people; final approval granted April 2022).

*In Re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1393 (ABJ), MDL No. 2664 (D.D.C.) (court appointed interim Liaison Counsel; $60 million settlement).

*In re Google Buzz Privacy Litigation,* No. 5:10-cv-00672 (N.D. Cal. 2010) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement).

*In re: Dept. of Veterans Affairs (VA) Data Theft Litig.,* No. 1:2006-cv-00506, MDL 1796

(D.D.C. 2009) (Co-Lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations).

*In re: Adobe Systems Inc. Privacy Litigation,* No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits).

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCINE SIMMONS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-03194 |
| CHRISTOPER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-03207 |

**PLAINTIFFS' RESPONSE IN SUPPORT OF MOTION TO APPOINT**
**DANIELLE L. PERRY AND MATTHEW B. GEORGE**
**AS CO-LEAD INTERIM CLASS COUNSEL,**
**OR IN THE ALTERNATIVE, AS MEMBERS OF THE EXECUTIVE COMMITTEE**

Pursuant to Federal Rule of Civil Procedure 23(g) and this Court's Order (ECF No. 21), Plaintiffs Christopher Cordaro and Francine Simmons ("Plaintiffs") respectfully request that the Court appoint Danielle L. Perry of Mason LLP and Matthew B. George of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Co-Lead Interim Counsel for this consolidated litigation, or in the alternative, to a position on the Plaintiffs' Executive Committee. As set forth in their moving papers, Ms. Perry and Mr. George have extensive experience litigating and resolving data privacy class action cases in courts throughout the nation, and have obtained successful trial and appellate court rulings in this practice area. Importantly, appointment of Ms. Perry and Mr. George would add diversity of representation to the leadership slates proposed by other plaintiffs and further initiatives of courts across the country.

The leadership teams proposed by all Plaintiffs in this matter are indisputably well-qualified, and capable of driving the present matter to successful resolution on behalf of Plaintiffs and the class. What they lack however, is clear diversity.

It appears three separate slates have been proposed. First, Milberg Coleman Bryson Philips Grossman ("Milberg"), Morgan & Morgan ("M&M"), and Stueve Siegel Hanson LLP ("SSH") move for appointment of their firms, with no clear delineation of roles amongst their firms' collective 15 highlighted attorneys, and no transparency as to the actual proposed leadership roles of the three female attorneys whose biographical information was provided. The second slate, consisting of Lowey Danenberg, P.C. and Silver Golub Teitell LLP seeks appointment of three male partners, who are undoubtedly qualified but just as surely lack diversity. In contrast, both attorneys proposed for leadership by Plaintiffs Simmons and Cordaro—Ms. Perry and Mr. George—provide extensive experience and clear diversity in representation.

In addition to gaining the benefit of her legal qualifications, Ms. Perry's appointment as either Co-Lead Counsel or as a member of an Executive Committee would help this Court reflect

the diversity of the bar and the Class Members—from the standpoint of age, gender, experience, and geographic location. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45–46 (2d ed. 2018), *available at* https://scholar ship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds."). Ms. Perry has extensive experience in data breach class actions, multi-district litigation, and was recently appointed by Hon. Joy Flowers Conti of the United States District Court for the Western District of Pennsylvania to the Leadership Development Committee in *In re SoClean, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:22-mc-00152-JFC, MDL No. 3021 (W.D. Pa. Apr. 27, 2022), ECF No. 51. *See* Decl. of Danielle L. Perry, ECF No. 23-2. Designed to train young lawyers in complex litigation practices and give experienced attorneys the opportunity to lead and assist in the leadership of multidistrict litigation, the Leadership Development Committee has given Ms. Perry the opportunity to work closely with court-appointed Lead Counsel in all areas of litigation. Ms. Perry's appointment here would further the efforts of Judge Conti and numerous judges across the country in their effort to bring the next generation of complex litigators into leadership positions, and ensure the continuous transfer of experience that allows for diversity of representation and the efficient litigation of future complex cases.

The appointment of Mr. George as Co-Lead Counsel or as a member of an Executive Committee would also help this Court reflect the diversity of the bar and the Class Members in this case. Not only has he been representing consumers, employees, and investors in complex class actions and multi-district litigation for 15 years, he is also a member of the LGBTQ+ community, and has advanced initiatives for underrepresented communities both in and out of court. Mr. George

represented classes comprised mostly of low-income, gay men living with HIV and AIDS in cases against CVS/Caremark and Aetna that recovered over $20 million on claims that the companies wrongfully exposed their HIV status. *Doe One v. CVS Health Corp.*, No. 2:18-cv-00238-EAS-CMV (S.D. Ohio); *Beckett v. Aetna, Inc.*, No. 2:17-cv-03864-JS (E.D. Pa.). Mr. George has been a longstanding member of BALIF, the San Francisco Bay Area's (and nation's oldest) LGBTQ+ bar association, where he has volunteered in BALIF's formal mentorship program and worked closely with law students and young attorneys to polish their resumes and advance their careers. He has also been a member of the Consumer Attorneys of California's ("CAOC") Diversity Committee, and he gave a presentation on the issue of implicit bias in the legal profession at CAOC's annual convention in November 2021.

Based on the foregoing, Plaintiffs Cordaro and Simmons respectfully request that the Court appoint Mr. George of Kaplan Fox and Ms. Perry of Mason LLP as Co-Lead Interim Class Counsel. In the alternative, Plaintiffs request that Mr. George and Ms. Perry be appointed to an Executive Committee or in any role the Court deems most appropriate for this litigation.

Dated: January 17, 2023        Respectfully submitted,

By: */s/ Danielle L. Perry*
**MASON LLP**
Danielle L. Perry
Gary E. Mason
Lisa A. White
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: dperry@masonllp.com
      gmason@masonllp.com
      lwhite@masonllp.com

*Attorneys for Plaintiff Simmons and the Proposed Class*

By: /s/ Matthew B. George

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George *(pro hac vice)*
Laurence D. King *(pro hac vice)*
Kathleen A. Herkenhoff *(pro hac vice)*
1999 Harrison Street, Suite 1500
Oakland, CA 94612
Tel: (415) 772-4700
Facsimile: (415) 772-4707
Email: mgeorge@kaplanfox.com
        lking@kaplanfox.com
        kherkenhoff@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
850 Third Avenue
New York, NY 10022
Tel: (212) 687-1980
Facsimile: (212) 687-7714
Email: jstrauss@kaplanfox.com

*Attorneys for Plaintiff Cordaro and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2023, a copy of the foregoing was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the Court's CM/ECF system.

/s/ *Danielle L. Perry*
Danielle L. Perry

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

HUNTER FREELAND, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

NELNET SERVICING, LLC,

      Defendant.

Civil Action No. 4:22-cv-03211

**MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF NORMAN E. SIEGEL AND STUEVE SIEGEL HANSON LLP AS LEAD COUNSEL**

## MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF NORMAN E. SIEGEL AND STUEVE SIEGEL HANSON LLP AS LEAD COUNSEL

Pursuant to Fed. R. Civ. P. 23(g), Norman E. Siegel and the firm of Stueve Siegel Hanson LLP move for appointment as interim class counsel. As detailed below, the appointment of Mr. Siegel and Stueve Siegel Hanson, together with Morgan & Morgan and Milberg, will provide the counsel "best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2).

## I.    INTRODUCTION

Mr. Siegel is the founder of Stueve Siegel Hanson and is a national leader in data breach and privacy cases. He has served as lead counsel prosecuting the largest data breach cases in history and has secured the three largest settlements achieved in data breach class actions in cases against Equifax ($1.5 billion), T-Mobile ($500 million), and Capital One ($190 million). He is recognized as a pragmatic lawyer who vigorously advocates on behalf of his clients while also maintaining collegial relationships with his colleagues and opposing counsel—including opposing

counsel in this case. Mr. Siegel has also worked successfully with many of the attorneys seeking leadership positions in this case—including those from the firms of Morgan & Morgan and Milberg—and would welcome the opportunity to do so again here. Mr. Siegel and Stueve Siegel Hanson's team of lawyers are located a modest drive away from this district in Kansas City, Missouri, and are thus available to personally appear as needed, on relatively short notice.[1]

## II.    BACKGROUND AND PROCEDURAL HISTORY

On September 19, 2022, Stueve Siegel Hanson filed a class action complaint on behalf of Plaintiff Hunter Freeland arising out of the data breach announced by Defendant Nelnet Servicing, LLC, ("Nelnet") on or about August 26, 2022 (the "Data Breach"). Like the 2.5 million other Data Breach victims, Mr. Freeland's personally identifiable information ("PII") was compromised in the Data Breach, causing him to suffer injury and face an imminent and substantial risk of further injury—including identity theft and related cybercrimes—now and into the indefinite future.

The complaint includes extensive, well-researched factual allegations and asserts five causes of action against Nelnet arising from the Data Breach: 1) negligence, 2) breach of express contract, 3) breach of implied contract, 4) unjust enrichment, and 5) invasion of privacy. *See* Doc. 1. Before filing the complaint, Stueve Siegel Hanson conducted a thorough investigation of the case and Mr. Freeland's facts and has researched the applicable law and claims available to Mr. Freeland and putative class members. The firm also coordinated with local counsel Christopher P. Welsh of Welsh & Welsh PC, LLO regarding *pro hac vice* admissions and other matters and monitored all filings in the related cases, including the transfer proceedings before the Judicial

---

[1] In the event the Court wishes to appoint a local or liaison counsel, Christopher P. Welsh of Welsh & Welsh PC, LLO is a highly qualified and experienced Nebraska attorney who is also counsel for Plaintiff Freeland.

Panel on Multidistrict Litigation ("JPML"). *See* Declaration of Norman E. Siegel, attached hereto as Exhibit 1, ¶ 2.

In the months since the filing of Mr. Freeland's complaint, Mr. Siegel has engaged with Plaintiffs' counsel in the other pending cases in this district to coordinate the procedural aspects of the litigation and has engaged Nelnet's counsel on procedural and substantive issues. On December 1, 2022, Mr. Siegel personally attended the hearing session before the JPML in New York, New York. *Id.*, ¶ 3. On December 19, 2022, the Court entered an order directing that counsel for plaintiffs in related actions against Nelnet file motions to consolidate and motions for appointment as interim class counsel. *See* Doc. 30. This motion follows.

## III.   ARGUMENT

Federal Rule of Civil Procedure 23(g) sets out the criteria for appointment of class counsel. "In every case, the judge must inquire into the work counsel has done in investigating and identifying the particular case; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; the resources counsel will commit to representing the class; and any other factors that bear on the attorney's ability to represent the class fairly and adequately." Manual for Complex Litigation, Fourth § 21.271 (summarizing Fed .R. Civ. P. 23(g)). "If there are multiple applicants"—as will be the case here— "the court's task is to select the applicant best able to represent the interests of the class." *Id.*

### A.   STUEVE SIEGEL HANSON'S DATA BREACH EXPERIENCE IS UNMATCHED

Mr. Siegel and Stueve Siegel Hanson respectfully submit that consideration of objective criteria supports their claim they are the lawyers "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Over the last decade, Mr. Siegel has led or substantively participated in nearly every major consumer data breach case on record, including serving as court-appointed co-

3

lead counsel in litigation involving mega-breach cases such as *Target* (110 million class members), *Home Depot* (56 million class members), *Equifax* (149 million class members), *Quest Diagnostics* (11.5 million class members), *Capital One* (100 million class members) and *T-Mobile* (75 million class members).

In addition, Mr. Siegel has worked alongside leadership in several other large data breach MDLs, including serving as a member of the plaintiffs' steering committee (PSC) leading the briefing committee in *Marriott* (383 million class members), in *Anthem* (80 million class members), and in *Office of Personnel Management* (21 million class members) where Stueve Siegel Hanson represented a significant percentage of the named plaintiffs and guided the case to a successful resolution. Perhaps equally as important, Mr. Siegel and his firm have successfully served as lead counsel in many other smaller data breach class actions throughout the country, as summarized in the firm resume attached to Mr. Siegel's declaration as Exhibit A. Siegel Dec., ¶ 4.

This experience will serve the class and the Court here in several respects. First, Mr. Siegel is intimately familiar with the legal issues that are likely to be at the forefront of this litigation. Stueve Siegel Hanson's legal work in this field includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area. By way of example, Mr. Siegel's firm helped secure one of the first favorable motion to dismiss orders in the *Target* data breach litigation, which sustained consumer protection claims under the laws of multiple states and largely rejected Target's bid to dismiss the case. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014). *Equifax* presented a different challenge as the vast majority of victims had no direct relationship with the company. Again, Mr. Siegel's team led briefing efforts that resulted in a favorable opinion recognizing a duty of care owed to

data breach victims even where there is no privity between the parties. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, <u>362 F. Supp. 3d 1295</u> (N.D. Ga. 2019); Siegel Dec., ¶ 5.

In the *Marriott* litigation, Stueve Siegel Hanson was responsible for drafting the 355-page complaint and leading efforts to oppose Marriott's motion to dismiss, which again resulted in a favorable order whereby the court recognized several new damages theories that had previously been rejected by other courts. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, <u>440 F. Supp. 3d 447, 494</u> (D. Md. 2020) (endorsing damages theories including "loss of the benefit-of-the bargain, loss of time and money spent mitigating harms, and loss of value of personal information"). The firm also played a key role in drafting the successful motion for class certification and is defending certification on Marriott's appeal. In the recently settled *Capital One* case, Mr. Siegel argued in favor of class certification premised on unique damages theories supported with expert opinions that had never been presented in a prior data breach case. On the appellate level, Mr. Siegel argued the key data breach standing case opposite Nelnet's current counsel in the Fourth Circuit, *Hutton v. National Board of Examiners in Optometry*, <u>892 F.3d 613</u> (4th Cir. 2018), which resulted in an opinion reversing the district court's dismissal of the case for lack of Article III standing. And recently, Stueve Siegel Hanson prevailed in another precedent-setting appeal in the Third Circuit. *See Clemens v. ExecuPharm Inc.*, <u>48 F.4th 146</u> (3d Cir. 2022) (reversing dismissal of data breach class action for lack of Article III standing to sue and clarifying the contours of "injury" based on the threat of future harm).[2] Siegel Dec., ¶ 6.

---

[2] Stueve Siegel Hanson was also part of plaintiffs' briefing team in the seminal D.C. Circuit data breach opinion reversing the district court's dismissal of the case on standing grounds, *see In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, <u>928 F.3d 42</u> (D.C. Cir. 2019), and has achieved favorable appellate decisions on issues relating to class action data breach settlements. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, <u>892 F.3d 968</u> (8th Cir. 2018) (affirming approval of class settlement in the face of challenges to Article III standing and other issues); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, <u>999 F.3d 1247</u> (11th Cir. 2021) (same).

This unparalleled substantive experience in the data breach field will benefit the class in this case as it will help narrow the issues before the Court and promote arguments that have the best opportunities for success. Additionally, Stueve Siegel Hanson's experience has permitted the firm to work with many of the leading experts in this field, including developing new experts and damages theories that have expanded potential avenues of recovery for data breach victims. This base of knowledge will be critical in determining which experts are best suited to represent the interests of *this class* after additional discovery is conducted into the cause, source, and scope of the breach. *Id.*, ¶ 7.

Finally, Mr. Siegel's experience litigating (and resolving) the largest data breach cases on record will have direct benefits here, as this case is also large in scope, impacting nearly 2.5 million current and former student loan borrowers. For example, through designing, negotiating, and administering other large-scale data breach settlements, and interviewing thousands of data breach victims across the U.S., Stueve Siegel Hanson has developed an intimate understanding of (1) litigation goals of data breach victims, including recovery of cash relief for time and effort spent responding to a breach; (2) the most impactful products available to help reduce the risk of future harm, such as credit monitoring and identity restoration services, and the costs of procuring such services from different vendors; (3) working with experts to develop *meaningful* injunctive relief that is narrowly tailored to the facts of each case to prevent reoccurrence of a breach; and (4) access to important data such as settlement claims rates for different forms of relief that provides meaningful insight on how to approach negotiations. *Id.*, ¶ 8.

## B. STUEVE SIEGEL HANSON HAS ACHIEVED OUTSTANDING RESULTS

Mr. Siegel and Stueve Siegel Hanson have achieved significant settlements and trial victories in a wide range of cases, including in the largest data breach cases litigated to date. In *Equifax*, more than 300 class action lawsuits were filed around the country. In a competitive

application process, the Hon. Thomas W. Thrash in the Northern District of Georgia appointed Mr. Siegel as one of three co-lead counsel on behalf of the consumer victims. While charged with aggressively litigating the case, Mr. Siegel also chaired the settlement committee and served as the principal negotiator on behalf of the consumer class. Mr. Siegel led negotiations for more than nine months which spanned across seven mediation sessions. Ultimately, Mr. Siegel was able to help architect a settlement that provided for a non-reversionary $380.5 million fund, which had the ability to increase to $505.5 million in cash benefits, along with state-of-the-art injunctive relief requiring Equifax to spend at least $1 billion for systems to better secure its data. The settlement drew the endorsement of the Federal Trade Commission, the Consumer Financial Protection Bureau, and 48 state Attorneys General. *Id.*, ¶ 9. In approving the settlement, Judge Thrash noted: "This is the largest data breach settlement in history. The $380.5 million fund alone is more than the total recovered in all consumer data breach settlements in the last ten years. Further, class members are eligible for an unprecedented package of benefits" as well as injunctive relief that "provides a substantial benefit to all class members, and exceeds what has been achieved in other data breach settlements." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at \*34 (N.D. Ga. Mar. 17, 2020) (footnote omitted). Judge Thrash concluded that "the settlement is the direct result of all counsel's experience, reputation, and ability in complex class actions including the evolving field of privacy and data breach class actions." *Id.* at \*33 (internal citation and quotation marks omitted).

More recently, Mr. Siegel has secured settlements with Capital One and T-Mobile that rank only behind *Equifax* in size and scope. In *Capital One* (in which Mr. Siegel served as co-lead counsel with John Yanchunis of Morgan & Morgan), the case settled only after Plaintiffs completed fact and expert discovery, briefed and argued motions for class certification and

summary judgment, and fended off numerous other collateral attacks on Plaintiffs' claims. In approving the settlement late last year, Judge Anthony Trenga remarked:

> This Court previously commended Class and Defense Counsel at the September 8, 2022 Final Approval Hearing for the exceptional outcome for all the parties given the difficult legal issues, calling it an outstanding result attributed in no small measure, to counsel, counsel's efforts, and the level of competence and professionalism that they've brought to every aspect of this case. The Court stands by that statement. Class Counsel effectively and efficiently pursued the case, resulting in purportedly the second largest data breach settlement to date, in addition to the injunctive relief.

*See In re: Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19-md-2915, 2022 WL 17176495, at *2 (E.D. Va., November 17, 2022) (cleaned up).[3] Even more recently, Mr. Siegel and Stueve Siegel Hanson served as lead counsel in the *T-Mobile* case, securing $500 million for the class including a non-reversionary cash fund of $350 million. The settlement, which is pending final approval, is second only to *Equifax* in monetary value (for a class half the size) and presents a new high-water mark in data breach litigation. *In re: T-Mobile Customer Data Sec. Breach Litig.*, Case No. 4:21-MD-03019-BCW (W.D. Mo.); Siegel Dec., ¶ 10.

In addition to these recent achievements, Mr. Siegel and his firm have secured several other substantial recoveries in the data breach and privacy context. Prior to *Equifax*, Mr. Siegel was appointed as a member of the 3-lawyer PSC in the *Target* MDL before the Hon. Paul Magnuson in the District of Minnesota and helped achieve a $23 million settlement that included $10 million in cash payments to class members and required Target to significantly upgrade its data security practices, which was upheld on appeal. *See In re Target Corp. Customer Data Sec. Breach Litig.*,

---

[3] In approving the Settlement, Judge Trenga also reflected on his choice of Lead Counsel: "Class Counsel were carefully selected for their skill and experience in a process that featured more than three dozen applications for class leadership. The performance of counsel and the strong result for class members demonstrates Class Counsel's skill and efficiency and validates the Court's selection." *In re: Capital One*, 2022 WL 17176495, at *2 (cleaned up).

892 F.3d 968 (8th Cir. 2018). In the *Home Depot* data breach litigation, Mr. Siegel served as the principal negotiator on behalf of the consumer class which resulted in a settlement valued at more than $29 million, which the presiding judge referred to as an "exceptional result" and was at the time "the most comprehensive settlement achieved in large-scale data breach litigation." *In re Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 11299474, at *1 (N.D. Ga. Aug. 23, 2016); Siegel Dec., ¶ 11.

And in another recent case, Mr. Siegel was appointed as class counsel on behalf of a class of optometrists who were subject to a data breach by the national optometry board. Following a successful appeal to the Fourth Circuit, the court approved an "outstanding" $3.25 million settlement on behalf of more than 61,000 eye doctors. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., No. CV JKB-16-3025, 2019 WL 3183651, at *4-5 (D. Md. July 15, 2019) (noting Mr. Siegel and his firm "have substantial experience in consumer class action litigation, and in particular data breach and privacy litigation, and were able to negotiate a well-informed Settlement that provides meaningful relief to Plaintiffs and the Class."). Siegel Dec., ¶ 12. For these accomplishments, Mr. Siegel was recently named among Law360's "MVPs" in the field of Cybersecurity and Privacy Law and one of ten lawyers named as a "Titan of the Plaintiffs Bar." Mr. Siegel was also recently named *Best Lawyer's* "Lawyer of the Year" for Class Action Litigation and honored as an "Influential Lawyer of the Year" by *Missouri Lawyers Weekly*. And, in 2019, Stueve Siegel Hanson was selected by Law360 as its Cybersecurity & Privacy Group of the Year, recognizing practice groups that "worked on the biggest deals or achieved the biggest wins in the most important cases." *Id*., ¶ 13.

Finally, a note regarding cases that fail to resolve through settlement. Stueve Siegel Hanson is one of the few firms in the country that has taken multiple class action cases to trial, having

secured four favorable jury verdicts for class plaintiffs over the last several years. *See, e.g.*, *Garcia v. Tyson Foods, Inc*., No. 06-cv-2198 (D. Kan.) (class verdict for insufficient compensation for pre-and post-shift activities under Fair Labor Standard Act), *aff'd* 770 F.3d 1300 (10th Cir. 2014); *In re: Syngenta AG MIR 162 Corn Litig*., No. 14-md-2591 (D. Kan. 2017) ($217.7 million jury verdict on behalf of a class of farmers, leading to $1.5 billion nationwide settlement); *Vogt v. State Farm Life Ins. Co*., No. 2:16-cv-04170-NKL (W.D. Mo.) (Mr. Siegel served as lead trial counsel in class action against State Farm for insurance overcharges, securing $34.3 million jury verdict for Missouri policyholders), *aff'd* 963 F.3d 753 (8th Cir. 2020); and *Karr v. Kansas City Life Ins. Co.*, No. 1916-CV26645 (16th Mo. Cir. Ct. 2022) ($28.4 million class verdict related to insurance overcharges); Siegel Dec., ¶ 14.

In short, Mr. Siegel and Stueve Siegel Hanson have achieved outstanding results in class action litigation, and in particular data breach litigation. The firm has a culture of professionalism and a reputation for excellence with both opposing counsel and presiding judges. In this respect, Mr. Siegel invites this Court to contact the federal judges before whom Mr. Siegel has appeared as lead counsel for a judicial perspective on how the firm has performed its obligations when appointed class counsel in complex class litigation. *See* Ex. A to Siegel Dec.

## C. STUEVE SIEGEL HANSON'S COMMITMENT TO DIVERSITY, EQUITY, AND INCLUSION

As detailed in the firm resume, Mr. Siegel is supported by a diverse bench of experienced attorneys, many of whom are recognized as national leaders in data breach and privacy litigation in their own right. For example, two of Mr. Siegel's partners, Austin Moore and Lindsay Todd Perkins, have been recognized by Law360 as "Rising Stars" in the field of Cybersecurity and Privacy Law, which recognizes attorneys under the age of 40 "whose legal accomplishments transcend their age." Partner Barrett Vahle has been appointed lead counsel in several data breach

and privacy cases, including recently resolved cases against Dominion Dental Services and LifeBridge Health. Stueve Siegel Hanson employs 26 well-credentialed trial attorneys, many of whom are former state or federal law clerks, as well as a full-time e-discovery attorney and information-technology specialist. The firm regularly advances significant litigation costs in the prosecution of large class or multi-party cases, on a pure contingency basis. The firm has never sought third-party case financing and will not do so here. Siegel Dec., ¶ 15.

As a final consideration, Stueve Siegel Hanson's commitment to diversity, equity, and inclusion weighs in favor of my appointment. First, if appointed, I will call upon a diverse group of lawyers at Stueve Siegel to actively work on this case, including providing opportunities for young and diverse lawyers to handle substantive portions of the litigation. Second, Stueve Siegel Hanson has been active in working to advance a diverse bar—both through sponsoring and supporting the Kansas City Metropolitan Bar Association's Diversity, Equity, and Inclusion Campaign, and by funding $2 million in scholarships for Black law students at regional law schools. Siegel Dec., ¶ 16.

## IV. CONCLUSION

Mr. Siegel and Stueve Siegel Hanson appreciate the Court's consideration and respectfully request appointment as lead or co-lead counsel.

Dated: January 3, 2023

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Norman E. Siegel*
Norman E. Siegel,* Missouri Bar No. 44378
460 Nichols Rd. Suite 200
Kansas City, MO 64112
Tel: 816-714-7100
siegel@stuevesiegel.com

*Pro Hac Vice*
*Counsel for Plaintiff*

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

HUNTER FREELAND, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

NELNET SERVICING, LLC,

      Defendant.

Civil Action No. 4:22-cv-03211

**DECLARATION OF
NORMAN E. SIEGEL**

## DECLARATION OF NORMAN E. SIEGEL IN SUPPORT OF
## MOTION FOR APPOINTMENT OF NORMAN E. SIEGEL
## AND STUEVE SIEGEL HANSON LLP AS LEAD COUNSEL

I, Norman E. Siegel, declare as follows:

1.      I am an attorney in good standing of the State Bar of Missouri and a partner in the law firm Stueve Siegel Hanson LLP. I am counsel for Plaintiff Hunter Freeland and submit this declaration in support of my motion for appointment as lead counsel in this litigation. I have personal knowledge of the facts set forth in this Declaration and I am competent to testify thereon.

2.      On September 19, 2022, Stueve Siegel Hanson filed a class action complaint on behalf of Plaintiff Hunter Freeland arising out of the data breach announced by Defendant Nelnet Servicing, LLC, ("Nelnet") on or about August 26, 2022 (the "Data Breach"). Like the 2.5 million other Data Breach victims, Mr. Freeland's personally identifiable information ("PII") was compromised in the Data Breach, causing him to suffer injury and face an imminent and substantial risk of further injury—including identity theft and related cybercrimes—now and into the indefinite future. The complaint includes extensive, well-researched factual allegations and

asserts five causes of action against Nelnet arising from the Data Breach: 1) negligence, 2) breach of express contract, 3) breach of implied contract, 4) unjust enrichment, and 5) invasion of privacy. *See* Doc. 1. Before filing the complaint, Stueve Siegel Hanson conducted a thorough investigation of the case and Mr. Freeland's facts and has researched the applicable law and claims available to Mr. Freeland and putative class members. The firm also coordinated with local counsel Christopher P. Welsh of Welsh & Welsh PC, LLO regarding *pro hac vice* admissions and other matters and monitored all filings in the related cases, including the transfer proceedings before the Judicial Panel on Multidistrict Litigation ("JPML").

3. In the months since the filing of Mr. Freeland's complaint, I have engaged with Plaintiffs' counsel in the other pending cases in this district to coordinate the procedural aspects of the litigation and with Nelnet's counsel on procedural and substantive issues. On December 1, 2022, I personally attended the hearing session before the JPML in New York, New York.

4. Over the last decade, I have led or substantively participated in nearly every major consumer data breach case on record, including serving as court-appointed co-lead counsel in litigation involving mega-breach cases such as *Target* (110 million class members), *Home Depot* (56 million class members), *Equifax* (149 million class members), *Quest Diagnostics* (11.5 million class members), *Capital One* (100 million class members) and *T-Mobile* (75 million class members). In addition, I have worked alongside leadership in several other large data breach MDLs, including serving as a member of the plaintiffs' steering committee (PSC) leading the briefing committee in *Marriott* (383 million class members), in *Anthem* (80 million class members), and in *Office of Personnel Management* (21 million class members) where Stueve Siegel Hanson represented a significant percentage of the named plaintiffs and guided the case to a successful resolution. I and other lawyers at my firm have successfully served as lead counsel

in many other smaller data breach class actions throughout the country, as summarized in my firm's resume attached hereto as Exhibit A.

5.     My firm's legal work in this field includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area. By way of example, Stueve Siegel Hanson helped secure one of the first favorable motion to dismiss orders in the *Target* data breach litigation, which sustained consumer protection claims under the laws of multiple states and largely rejected Target's bid to dismiss the case. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014). *Equifax* presented a different challenge as the vast majority of victims had no direct relationship with the company. Again, my team led briefing efforts that resulted in a favorable opinion recognizing a duty of care owed to data breach victims even where there is no privity between the parties. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019).

6.     In the *Marriott* litigation, Stueve Siegel Hanson was responsible for drafting the 355-page complaint and leading efforts to oppose Marriott's motion to dismiss, which again resulted in a favorable order whereby the court recognized several new damages theories that had previously been rejected by other courts. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 494 (D. Md. 2020) (endorsing damages theories including "loss of the benefit-of-the bargain, loss of time and money spent mitigating harms, and loss of value of personal information."). The firm also played a key role in drafting the successful motion for class certification and is defending certification on Marriott's appeal. In the recently settled *Capital One* case, I argued in favor of class certification premised on unique damages theories supported with expert opinions that had never been presented in a prior data breach case. On the appellate level, I argued the key data breach standing case opposite Nelnet's current counsel in the Fourth

Circuit, *Hutton v. National Board of Examiners in Optometry*, 892 F.3d 613 (4th Cir. 2018), which resulted in an opinion reversing the district court's dismissal of the case for lack of Article III standing. And recently, my firm prevailed in another precedent-setting appeal in the Third Circuit. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) (reversing dismissal of data breach class action for lack of Article III standing to sue and clarifying the contours of "injury" based on the threat of future harm).

7.     My firm's experience in this field has permitted us to work with many of the leading experts in this field, including developing new experts and damages theories that have expanded potential avenues of recovery for data breach victims. This base of knowledge will be critical in determining which experts are best suited to represent the interests of *this class* after discovery is conducted into the cause, source, and scope of the breach.

8.     My experience litigating (and resolving) the largest data breach cases on record will also have direct benefits in this case. For example, through designing, negotiating, and administering other large-scale data breach settlements, and interviewing thousands of data breach victims across the U.S., my firm and I have developed an intimate understanding of (1) litigation goals of data breach victims, including recovery of cash relief for time and effort spent responding to a breach; (2) the most impactful products available to help reduce the risk of future harm, such as credit monitoring and identity restoration services, and the costs of procuring such services from different vendors; (3) working with experts to develop *meaningful* injunctive relief that is narrowly tailored to the facts of each case to prevent reoccurrence of a breach; and (4) access to important data such as settlement claims rates for different forms of relief that provides meaningful insight on how to approach negotiations.

9.    In the *Equifax* case, I was appointed as one of three co-lead counsel on behalf of the consumer victims by the Hon. Thomas W. Thrash in the Northern District of Georgia. While charged with aggressively litigating the case, I also chaired the settlement committee and served as the principal negotiator on behalf of the consumer class. I led negotiations for more than nine months which spanned across seven mediation sessions. Ultimately, I was able to help architect a settlement that provided for a non-reversionary $380.5 million fund, which had the ability to increase to $505.5 million in cash benefits, along with state-of-the-art injunctive relief requiring Equifax to spend at least $1 billion for systems to better secure its data. The settlement drew the endorsement of the Federal Trade Commission, the Consumer Financial Protection Bureau, and 48 state Attorneys General.

10.    More recently, I led the efforts that secured settlements with Capital One and T-Mobile that rank only behind *Equifax* in size and scope. In *Capital One* (in which I served as co-lead counsel with John Yanchunis of Morgan & Morgan), the case settled only after Plaintiffs completed fact and expert discovery, briefed and argued motions for class certification and summary judgment, and fended off numerous other collateral attacks on Plaintiffs' claims. I also serve as lead counsel in the *T-Mobile* MDL, and there negotiated a settlement securing $500 million for the class including a non-reversionary cash fund of $350 million. The settlement, which is pending final approval, is second only to *Equifax* in monetary value (for a class half the size) and presents a new high-water mark in data breach litigation.

11.    My firm has achieved a number of other impressive recoveries in the data breach and privacy context. Prior to *Equifax*, I was appointed as a member of the 3-lawyer PSC in the *Target* MDL before the Hon. Paul Magnuson in the District of Minnesota and helped achieve a $23 million settlement that included $10 million in cash payments to class members and required

Target to significantly upgrade its data security practices, which was upheld on appeal. *See In re Target Corp. Customer Data Sec. Breach Litig*., 892 F.3d 968 (8th Cir. 2018). In the *Home Depot* data breach litigation, I served as the principal negotiator on behalf of the consumer class which resulted in a settlement valued at more than $29 million, which the presiding judge referred to as an "exceptional result" and was at the time "the most comprehensive settlement achieved in large-scale data breach litigation." *In re Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 11299474, at *1 (N.D. Ga. Aug. 23, 2016).

12.     I was appointed as class counsel on behalf of a class of optometrists who were subject to a data breach by the national optometry board. Following a successful appeal to the Fourth Circuit, the court approved an "outstanding" $3.25 million settlement on behalf of more than 61,000 eye doctors. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., No. CV JKB-16-3025, 2019 WL 3183651, at *4-5 (D. Md. July 15, 2019) (noting my firm and I "have substantial experience in consumer class action litigation, and in particular data breach and privacy litigation, and were able to negotiate a well-informed Settlement that provides meaningful relief to Plaintiffs and the Class.").

13.     For these accomplishments, I have been named among Law360's "MVPs" in the field of Cybersecurity and Privacy Law and one of ten lawyers named as a "Titan of the Plaintiffs Bar." I was also recently named *Best Lawyer's* 2019 "Lawyer of the Year" for Class Action Litigation and honored as an "Influential Lawyer of the Year" by *Missouri Lawyers Weekly*. And, in 2019, Stueve Siegel Hanson was selected by Law360 as its Cybersecurity & Privacy Group of the Year, recognizing practice groups that "worked on the biggest deals or achieved the biggest wins in the most important cases." Judicial references are included in the firm resume attached hereto as Exhibit A.

14.     My firm commits to this level of work because we are ready and willing to try class actions cases when necessary. Stueve Siegel Hanson is one of the few firms that has taken multiple class action cases to trial, having secured four favorable jury verdicts for class plaintiffs over the last several years. *See Garcia v. Tyson Foods, Inc*., No. 06-cv-2198 (D. Kan.) (class verdict for insufficient compensation for pre-and post-shift activities under Fair Labor Standard Act), *aff'd* 770 F.3d 1300 (10th Cir. 2014); *In re: Syngenta AG MIR 1 2 Corn Litig*., No. 14-md-2591 (D. Kan. 2017) ($217.7 million jury verdict on behalf of a class of farmers, leading to $1.5 billion nationwide settlement); *Vogt v. State Farm Life Ins. Co*., *aff d* 963 F.3d 753, 761 (8th Cir. 2020) (I served as lead trial counsel in class action against State Farm for insurance overcharges, securing $34.3 million jury verdict that was affirmed on appeal); and *Karr v. Kansas City Life Ins. Co.*, No. 1916-CV26645 (16th Mo. Cir. Ct. 2022) ($28.4 million class verdict related to insurance overcharges).

15.     Stueve Siegel Hanson has a diverse bench of experienced attorneys, many of whom are recognized as national leaders in data breach and privacy litigation in their own right. For example, two of my partners, Austin Moore and Lindsay Todd Perkins, have been recognized by Law360 as "Rising Stars" in the field of Cybersecurity and Privacy Law, which recognizes attorneys under the age of 40 "whose legal accomplishments transcend their age." Partner Barrett Vahle has been appointed lead counsel in several data breach and privacy cases, including recently resolved cases against Dominion Dental Services and LifeBridge Health. My firm employs 26 well-credentialed trial attorneys, many of whom are former state or federal law clerks, as well as a full-time e-discovery attorney and information-technology specialist. The firm regularly advances significant litigation costs in the prosecution of large class or multi-party

cases, on a pure contingency basis. The firm has never sought third-party case financing and will not do so here.

16.    If appointed, I will call upon a diverse group of lawyers at Stueve Siegel to actively work on this case, including providing opportunities for young and diverse lawyers to handle substantive portions of the litigation. Stueve Siegel Hanson has been active in working to advance a diverse bar—both through sponsoring and supporting the Kansas City Metropolitan Bar Association's Diversity, Equity, and Inclusion Campaign, and by funding $2 million in scholarships for Black law students at regional law schools.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 3, 2023, in Tyler, Texas.

Norman E. Siegel

# EXHIBIT A

# ◢◢◢ STUEVE SIEGEL HANSON

Stueve Siegel Hanson is an AV rated law firm with 26 lawyers located in Kansas City, Missouri. All of the firm's lawyers are dedicated to the practice of litigation full time, making the firm one of the largest litigation-only firms based in the Midwest. The firm calls upon a deep bench of experienced partners and associates, many of whom are former state or federal law clerks including five former United States Circuit Court of Appeals clerks and five former United States District Court clerks. The result of cultivating attorneys with diverse experience is a consistently top-notch work product, respect from our opponents, and accolades from our peers. The firm has a two-decade record of success in the courtroom, securing hundreds of millions of dollars in jury verdicts, and billions of dollars in settlements across a wide variety of class and complex litigation.

The firm's Data Breach and Privacy Group has led over a dozen recent cases including many involving the largest data breaches on record. The firm's recent appointments include serving as co-lead counsel in multi-district litigation against *Equifax*, *T-Mobile*, *Capital One*, and *Quest Diagnostics* for breaches of their data security. The firm has been at the forefront of this developing area of law, including handling significant matters on appeal, and has secured significant relief for data privacy victims in a wide range of cases. Stueve Siegel Hanson was recently selected by Law360 as its Cybersecurity & Privacy Group of the Year, recognizing practice groups that "worked on the biggest deals or achieved the biggest wins in the most important cases."

*   *   *



**Norman E. Siegel** has led many of the most significant data breach cases litigated to date. He is a founding member of the firm and over the last 30 years has gained a national reputation as a stand-out trial lawyer. He has successfully tried to verdict a wide range of cases including obtaining multi-million dollar jury verdicts in both class actions and individual disputes. Norm has also been recognized for obtaining some of the largest and most creative settlements in the country, successfully securing relief for tens of millions of class members in a wide variety of cases over the course of his career. Norm was named *Best Lawyer's* 2019 "Lawyer of the Year" for Class Action Litigation for his lead role in securing the largest data breach settlement in history in *Equifax*, and for his role as lead trial lawyer in a class action tried to a jury resulting in a $34 million verdict against State Farm. Other recent accolades include: *Law360 MVP* in Cybersecurity Litigation; *Super Lawyers* (2006-2021) Top 50 Attorneys in Kansas City; *US News* Tier 1 rankings in 3 categories including Class Action Litigation; *Lawdragon* Magazine's 500 Leading Plaintiffs' Lawyers in America; *Benchmark Plaintiffs* Litigation Star; and an AV rating from Martindale Hubbell. In November 2019, Norm was named as just one of three Law360 2020 "MVPs" in the field.

Norm was born in Baltimore, Maryland. He received a degree in political science from Tufts University, and his J.D. from Washington University in St. Louis. Prior to starting Stueve Siegel in 2001, Norm served as a Missouri Assistant Attorney General and as a partner at what is now Dentons. Norm has recently served on the Boards of the Healthcare Foundation of Greater Kansas City, the Kansas City Bar Foundation, and the Negro Leagues Baseball Museum. He was the founding co-chair of the American Association for Justice's Consumer Privacy and Data Breach litigation group.

\* \* \*



**Barrett Vahle** began his practice at a national defense firm and has committed the last decade of his practice to representing plaintiffs of all types and sizes in contingency litigation. He has successfully represented large corporations in antitrust litigation against suppliers, dozens of jet purchasers in suits against an aerospace manufacturer, and worked on behalf of consumers and employees in scores of class and collective actions. Since the revelation of the Target data breach in late 2013, much of Barrett's practice has been dedicated to representing victims of data breaches.

Barrett was appointed as co-lead counsel in *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, where he participated in all aspects of that case on behalf of consumers, argued the motion to dismiss in the Northern District of Georgia, and shepherded the class settlement through approval and administration. He served as lead counsel and settlement class counsel in a data breach action involving phishing of employee W-2 information. After defeating a motion to dismiss raising important issues of Article III standing and negligence duty, *Hapka v. CareCentrix, Inc.*, No. 16-2372-CM, 2016 WL 7336407 (D. Kan. Dec. 19, 2016), Barrett negotiated a class settlement that included automatic cash payments for instances of tax fraud, along with credit monitoring and other relief. In *In re: Equifax Customer Data Security Breach Litigation*, Barrett was the lead drafter of the consolidated complaint and the successful opposition to Equifax's motion to dismiss. Barrett was most recently appointed settlement class counsel in *Abubaker v. Dominion Dental USA, Inc.*, No. 19-01050-LMB-MSN (E.D. Va.) (final approval in November 2021) and *Johnson v. LifeBridge Health, Inc.*, No. 24-C-18-006801 (Cir. Ct. Baltimore City, Md.) (final approval in October 2022).

In 2004, Barrett obtained his J.D., with highest honors (graduating first in his class) from the University of Missouri Columbia. During law school, he was Editor-in-Chief of the *Missouri Law Review*, and received the Judge Shepard Barclay Prize for the graduating law student "who has attained the highest standing in scholarship and moral leadership." After law school, Barrett was a law clerk for the Honorable Duane Benton of the United States Court of Appeals for the Eighth Circuit, and then for Judge Dean Whipple of the United States District Court for the Western District of Missouri. Barrett has been selected as a *Super Lawyer* every year since 2013.

\* \* \*



**Austin Moore** is a partner at Stueve Siegel Hanson who has dedicated a significant portion of his practice to prosecuting consumer class actions on behalf of victims of privacy violations and data breaches. Austin has represented consumers in many of the nation's largest data breach class actions, including multi-district litigation against *Target*, *Home Depot*, *Anthem Insurance*, *Equifax*, *Marriott*, and *Quest Diagnostics*. Austin has played key roles in these cases including leading plaintiff vetting efforts, chairing law and briefing committees, and negotiating classwide settlements.

Austin's recent successes include working with the leadership teams in the *Equifax* and *T-Mobile* data breach litigations to achieve historic classwide settlements and serving as co-lead counsel in the *Citrix*

data breach litigation, which resulted in a $2.3 million settlement on behalf of current and former employees of the technology company. Austin has also served as appellate counsel in multiple precedent-setting data breach cases, including arguing the preeminent data breach Article III standing opinion in the Third Circuit. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) (reversing dismissal of data breach class action for lack of Article III standing to sue and clarifying contours of "injury" based on threat of future harm).

Austin has been recognized as one of the "Top Attorneys Under 40" in the country by *Law360*, named a "Rising Star" in class action law by *Super Lawyers*, and honored as an "Up and Coming Lawyer" by *Missouri Lawyers Weekly*.

Austin is a 2011 graduate of the Washington University School of Law in St. Louis where he was an editor of the Washington University Journal of Law & Policy and recipient of the Mary Collier Hitchcock Prize, awarded to one student annually for outstanding legal writing. Austin received his B.A. in Political Science from the University of Mississippi, where he graduated *summa cum laude* and was selected as a member of Phi Beta Kappa. Austin is the current president of the American Association for Justice's Consumer Privacy and Data Breach Litigation Group.



\* \* \*



**Lindsay Todd Perkins** is a partner at Stueve Siegel Hanson who practices consumer and commercial litigation. Lindsay focuses a significant portion of her practice on data and privacy litigation, taking a lead role in preparing the pleadings and briefing in cases against *Capital One*, *Marriott*, and the *National Board of Examiners in Optometry*, among others.

In the firm's case against the National Board of Examiners in Optometry, Lindsay interviewed and vetted hundreds of optometrist victims, drafted the consolidated complaint, and played a lead role drafting the oppositions to defendant's motions to dismiss, as well as the appellate briefs to the Fourth Circuit Court of Appeals, resulting in a published opinion vacating the district court's order dismissing the case on Article III standing grounds. *See Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018).

Lindsay was an important member of the trial team that secured a $34.3 million jury verdict for a class of Missouri life insurance policyholders against State Farm Life Insurance Company alleging State Farm breached the cost of insurance provisions of their policies, and subsequently was on the briefing team that successfully defended that verdict on appeal to the Eighth Circuit and in opposing certiorari to the United States Supreme Court. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021). The case was recently settled on a nationwide basis for $325 million. *See Rogowski, et al., v. State Farm Life Ins. Co.*, Case No. 4:22-cv-00203-RK, Dkt. 54 (W.D. Mo. Dec. 16, 2022) (granting preliminarily approval).

Lindsay has been named by *Super Lawyers* as a "Rising Star" from 2012-2021. In 2020, she received Missouri Lawyers Weekly's Up & Coming Award and was recognized by Law360 as a "Rising Star" in the field of Cybersecurity and Privacy Law. She is admitted to practice in the states of Missouri and Kansas. Lindsay is active in her legal community, serving as a board member and most recently as President of the board of the Lawyers Association of Kansas City.

Prior to joining Stueve Siegel Hanson, Lindsay practiced commercial and employment litigation at the law firm of Spencer Fane Britt & Browne LLP.

Lindsay graduated first in her law school class in 2007 at the University of Missouri in Kansas City. She was the Editor-in-Chief of the *UMKC Law Review*, and was a member of the National Moot Court team. After law school, Lindsay served as a law clerk to the Honorable Ortrie D. Smith, U.S. District Judge for the Western District of Missouri, and then for the Honorable Duane Benton of the United States Court of Appeals for the Eighth Circuit.

* * *



**Stephanie Walters** serves as e-Discovery Counsel at Stueve Siegel Hanson. She has been practicing in the area of electronic discovery for ten years and is viewed as an expert in the field. As e-Discovery Counsel, Stephanie oversees and coordinates Stueve Siegel Hanson's document collection, review, and production in all of the firm's large-scale, complex matters.

Stephanie has substantial experience managing and analyzing documents produced by defendants in antitrust cases, consumer class actions, mass torts cases and personal injury cases. She also has experience managing forensic collection, review and production of documents for corporate and individual plaintiffs.

Stephanie recently oversaw class plaintiffs' discovery efforts in highly-complex multi-district litigation involving a biotech defendant in the U.S. District Court for the District of Kansas, *In re: Syngenta Ag Mir162 Corn Litigation*, MDL No. 2591. There, Stephanie led efforts including the identification, collection, review and production of documents for thousands of farmer plaintiffs and managed the review of all documents produced by the defendants, the non-producer parties, and numerous third parties.

Stephanie recently served in a similar capacity in the *In re: Taxotere (Docetaxel) Products Liability Litigation* (E.D. La.), where she was appointed by MDL leadership to participate in ESI protocol and search term negotiations and to manage attorney document review teams.

Stephanie attends the Sedona Conference Working Group 1 meetings multiple times each year and has participated in drafting group teams to author Sedona Conference commentaries. She also authored and regularly updates a section regarding e-Discovery for the Missouri Bar Discovery Deskbook. Stephanie regularly attends the New York LegalTech conference, Relativity Fest, the National eDiscovery Leadership Institute, the Complex Litigation E-Discovery Forum and has participated in the Georgetown e-Discovery Training Academy.

In addition to her case work, Stephanie counsels attorneys on electronic discovery issues including preservation, collection, search term negotiation, document review, ESI production, e-discovery software, and forms of production. She routinely works with e-discovery vendors in her practice and works in a variety of document review platforms including Summation, iConect Xera, Relativity, Kaleidoscope, Cicayda and CasePoint. Prior to serving as e-Discovery Counsel at Stueve Siegel Hanson, Stephanie worked to develop a vendor's document review department and led document review teams of 40  attorneys in various cases from initial intake through review and document production.

* * *



**Jillian R. Dent** represents individuals in privacy and consumer class-action litigation. Since joining Stueve Siegel Hanson in April 2019, Jillian has been an integral member of the firm's Data Breach and Privacy Group, serving as the case manager in several of the firm's largest data breach cases, including *In re Capital One Consumer Data Security Breach Litig.* (E.D. Va.) (final approval granted in September 2022) and *In re T-Mobile Customer Data Security Breach Litig.* (W.D. Mo.) (preliminary approval granted in July 2022).

In *Capital One*, Jillian's case management position included leading discovery negotiations, arguing discovery and *Daubert* motions, taking depositions, and leading substantive briefing on class certification, summary judgment, and *Daubert* motions. In *T-Mobile*, Jillian was one of the primary drafters of the over 300-page consolidated complaint and had been leading negotiations for e-discovery when the case settled. Jillian has also been the lead case manager in the firm's dairy farmer robotic milker cases, *Bishop et al. v. DeLaval, Inc.* (W.D. Mo.) (final approval granted in July 2022) and *Kruger et al. v. Lely North America, Inc.* (preliminary approval pending), for which she led discovery, took key depositions, and successfully briefed discovery and dispositive motions. Jillian was named a 2021 Up and Coming Lawyer by *Missouri Lawyers Weekly* and to *The Best Layers in America: Ones to Watch for Commercial Litigation* in 2023.

Prior to joining the firm, Jillian served as a judicial law clerk to Judge Duane Benton of the United States Court of Appeals for the Eighth Circuit. Jillian then spent several years as an associate at Sidley Austin in Chicago, where she represented sophisticated clients in complex litigation, including matters involving breach of contract, business torts, breach of fiduciary duty and securities class actions.

Jillian graduated *magna cum laude* and Order of the Coif from the University of Missouri School of Law in 2015, where she served as the Editor-in-Chief of the *Missouri Law Review* and received the Judge Shepard Barclay Prize for the graduating law student with "the highest standing in scholarship and moral leadership." She graduated *summa cum laude* and Phi Beta Kappa from the University of Pennsylvania with her B.A. in English in 2010, after which she taught high school English for two years with Teach for America.

\* \* \*



**Benjamin J. Stueve** represents individuals and companies in a variety of business matters, consumer cases, and class action litigation. He has played key roles in litigation involving data breaches as part of the firm's Data Breach and Privacy Group, including drafting complaints, briefing dispositive motions, and steering cases through the settlement approval process.

After graduating from Saint Louis University with a B.A. in English, Ben worked as a high school English teacher for several years. In 2018, Ben graduated Order of the Coif from the University of Kansas School of Law, where he served as staff editor and publication editor of the *Kansas Journal of Law and Public Policy*.

After law school but before joining the firm, Ben served as law clerk to District Judge Stephen R. Bough of the United States District Court for the Western District of Missouri. During this time, he gained intimate exposure to an array of civil litigation matters and the inner workings of courts. Following his clerkship, Ben practiced for two years as a litigation associate at the AmLaw 200 firm Stinson LLP in Kansas City, Missouri. At Stinson, Ben represented business and corporate clients in a variety of complex commercial litigation matters and developed an understanding of how defense lawyers assess cases and form strategies.

\* \* \*

### SELECTED CONSUMER CLASS ACTION, DATA BREACH AND PRIVACY LITIGATION EXPERIENCE

*In re: Equifax, Inc., Customer Data Security Breach Litig*. **(N.D. Ga.) –** Norman Siegel was appointed as co-lead counsel in multi-district litigation against Equifax following its massive data breach impacting 147 million Americans. In December 2019, the Court granted final approval to a historic settlement that includes up to $505.5 million in cash benefits and requires Equifax to spend at least $1 billion upgrading its data security.

*In re: Capital One Consumer Data Security Breach Litig*. **(E.D. Va.)** - Norman Siegel was appointed as co-lead counsel in multi-district litigation against Capital One following a data breach involving 98 million U.S. residents who applied for credit card products. On September 13, 2022, the Hon. Anthony J. Trenga granted final approval to an "outstanding" settlement that includes a non-reversionary $190 million cash settlement fund "in a case with a significant level of risk."

*In re: T-Mobile Customer Data Security Breach Litig*. **(W.D. Mo.)** - Norman Siegel was appointed as co-lead counsel in multi-district litigation against T-Mobile following a data breach involving nearly 77 million current, former, and prospective customers. On July 26, 2022, the Hon. Brian C. Wimes preliminarily approved a record-breaking settlement that includes the creation of a non-reversionary $350 million cash settlement fund and requires T-Mobile to spend an additional $150 million to improve its network and data security.

***In re: Marriott Int'l Inc., Customer Data Security Breach Litig.*** **(D. Md.)** – Norman Siegel was appointed to the consumer plaintiffs' executive committee representing consumers multi-district litigation against Marriott and Starwood Hotels following a data breach compromising 383 million guest records. Following extensive discovery, Mr. Siegel and Mr. Moore worked with the law and briefing team to win class certification of eight litigation classes, a first in data breach litigation, which is currently being defended on appeal to the Fourth Circuit.

***In re: Home Depot Customer Data Security Breach Litig.*** **(N.D. Ga.)** – Norman Siegel was appointed as co-lead counsel to represent consumers in multi-district litigation against the Home Depot following a massive data breach affecting more than 60 million consumers. In August 2016, the court approved a final settlement valued at over $29 million that the presiding judge called an "exceptional result" and observed that it "appears to be the most comprehensive settlement achieved in large-scale data breach litigation."

***In re: U.S. Office of Personnel Management Data Security Breach Litig.*** **(D.D.C.)** – Stueve Siegel Hanson represented numerous named plaintiffs in multi-district litigation against the U.S. Office of Personnel Management and its contractor for failing to secure the highly-sensitive background checks of up to 21.5 million individuals. Following a successful appeal, the Hon. Amy Berman Jackson approved a $63 million settlement for government workers on October 26, 2022.

***In re: Anthem Data Breach Litig.*** **(N.D. Cal.)** – Stueve Siegel Hanson represented a dozen named plaintiffs in this nationwide class action stemming from the largest healthcare data breach in history that resulted in a $115 million settlement. The firm led the plaintiff vetting process that resulted in the selection of over 100 class representatives and subsequent plaintiff discovery efforts in the litigation.

***In re: Target Corp. Customer Data Security Breach Litig.*** **(D. Minn.)** – Norman Siegel was appointed to the plaintiff's steering committee representing consumers in multi-district litigation against Target over its massive 2013 data breach affecting more than 110 million consumers. In June 2018, the Eighth Circuit affirmed approval of a settlement valued at $23 million that provided for $10 million in cash payments to class members and required Target to upgrade its data security practices.

***Hutton v. National Board of Examiners in Optometry*** **(D. Md.)** – Norman Siegel and Austin Moore were appointed as class counsel on behalf of more than 61,000 optometrists who had their personal information compromised by the national optometry board. Following nearly three years of litigation that included a successful appeal, the court approved an "outstanding" $3.25 million non-reversionary cash settlement the funded multiple forms of relief.

***AMCA Customer Data Security Breach Litig. – Quest Track*** **(D. N.J.)** – Norman Siegel was appointed lead counsel to lead the largest track in this litigation involving the compromise of over 11 million customers of Quest Labs. Mr. Siegel has played a central role in the drafting of the consolidated amended complaint and charting strategy for the prosecution of the case.

***In re: Citrix Data Breach Litig.*** **(S.D. Fla.)** – In November 2019, Austin Moore was appointed as co-lead counsel in consolidated litigation against technology company Citrix, Inc. after the company suffered a 5-month data breach affecting nearly 24,000 current and former employees.

In June 2021, the court approved a $2.3 million settlement that offers an array of benefits to class members.

***Abubaker v. Dominion Dental USA, Inc.* (E.D. Va.)** – Barrett Vahle served as settlement class counsel in a case arising from a nearly decade-long data breach announced by Dominion Dental Services in June 2019 impacting insurance subscribers. In November 2021, the Hon. Leonie M. Brinkema granted final approval to a class settlement that included up to $2 million in cash reimbursement and numerous other benefits.

***Toretto v. Mediant Communications Inc.* (S.D.N.Y.)** – Austin Moore was appointed as class counsel in a case against communications firm Mediant after hackers exploited a vulnerability in Mediant's e-mail software to obtain the financial information of more than 200,000 investors. On June 24, 2022, the Hon. Gregory H. Woods granted preliminary approval to a class settlement that provides for extensive relief including credit monitoring and uncapped reimbursement of out-of-pocket losses and lost time.

***Johnson v. LifeBridge Health, Inc.* (Cir. Ct. Balt. Cnty., Md.)** - Barrett Vahle serves as class counsel representing victims in a case against LifeBridge Health after the health system suffered multiple data breaches dating back to 2018. After several years of litigation, the court granted final approval to a classwide settlement in October 2022 that provides for monetary compensation and injunctive relief benefiting affected class members.

***Clemens v. ExecuPharm Inc.* (E.D. Pa.)** – Stueve Siegel Hanson is representing a class of current and former employees of pharmaceutical company ExecuPharm following a data breach that resulted in hackers posting employees' financial information on the dark web. After the case was initially dismissed for lack of Article III injury, the firm prosecuted a successful appeal resulting in a precedential opinion clarifying the contours of "injury" based on the threat of future harm.

1.

***Tsvetanova v. Regents of the Univ. of Calif.* (Sup. Ct. San Diego, Ca.)** – Norman Siegel was appointed as co-lead counsel in a data breach case involving a breach that compromised the medical information more than 500,000 patients of the University of San Diego Health system. The case is currently being litigated in the Superior Court of California, San Diego.

***Hale v. North Broward Hospital District d/b/a Broward Health* (S.D. Fla.)** – Stueve Siegel Hanson is currently representing more than 1.3 million employees and healthcare patients of the Broward Health healthcare system after it announced a data breach resulting in the exfiltration of patients' medical records and other highly sensitive information.

***Reyes v. Experian* (C.D. Cal.) –** Norman Siegel and Austin Moore were appointed as class counsel in a privacy lawsuit arising out of Experian's reporting of delinquent loan accounts. After nearly four years of litigation, the court approved a $24 million cash settlement that included automatic cash payments to all class members.

***Lundy v. Meta Platforms, Inc.* (N.D. Cal.)** – Barrett Vahle serves as lead counsel in a privacy class action against Meta relating to alleged insufficient disclosures of location-tracking practices in the Facebook application.

\* \* \*

Stueve Siegel Hanson is proud of our long history of delivering results to our clients and our focus on results. Our mission is the same whether our clients are a class of employees or consumers, or Fortune 100 companies. More detailed biographies and information about our commitment to results can be found on our website: www.stuevesiegel.com.

\* \* \*

### JUDICIAL AND SPECIAL MASTER REFERENCES FOR NORMAN E. SIEGEL

**Hon. Nanette Laughrey**
Christopher S. Bond
U.S. Courthouse
80 Lafayette Street
Jefferson City, MO 65101
Tel. 573-632-6623

**Hon. Layn Phillips (Ret.)**
Phillips ADR
2101 East Coast Highway, 250
Corona Del Mar, CA 92625
Tel. 949-760-5280

**Hon. Brian Wimes**
Charles Evans Whittaker
U.S. Courthouse
400 E. 9th Street
Kansas City, MO 64106
Tel. 816-512-5000

**Hon. Thomas Thrash**
2188 Richard B. Russell
U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309
Tel. 404-215-1550

**Hon. Fernando Gaitan**
Charles Evans Whittaker
U.S. Courthouse
400 E. 9th Street
Kansas City, MO 64106
Tel. 816-512-5630

**Hon. Anthony Trenga**
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314
Tel. 703-299-2100



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

HUNTER FREELAND, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

NELNET SERVICING, LLC,

     Defendant.

Civil Action No. 4:22-cv-03211

**MOTION TO CONSOLIDATE ACTIONS**

Plaintiff Hunter Freeland ("Plaintiff") hereby moves this Court to consolidate the 23 class actions ("Related Actions") currently pending before this Court against Nelnet Servicing, LLC, ("Nelnet") and/or EdFinancial Services, LLC ("EdFinancial") arising from the data breach Nelnet began announcing on or about August 26, 2022 (the "Data Breach"), along with any action subsequently filed, transferred, or removed before this Court involving similar facts or claims. In support of his Motion, Plaintiff states as follows[1]:

1.     Under Federal Rule of Civil Procedure 42(a), "[i]f actions before the court involve a common question of law or fact, the court may" 1) "join for hearing or trial any or all matters at issue in the actions," 2) "consolidate the actions," or 3) "issue any other orders to avoid unnecessary cost or delay." "Consolidation of separate actions presenting a common issue of law or fact is permitted under Rule 42 as a matter of convenience and economy in judicial administration. The district court is given broad discretion to decide whether consolidation would be desirable and the decision inevitably is contextual." *Coventry Health Care of Nebraska, Inc. v.*

---

[1] Because this Motion "raises no substantial issue of law" and "relief is within the court's discretion," a supporting "brief is not required." Local Rule 7.1(a)(1)(B).

*Nebraska Dep't of Admin. Servs.*, No. 4:16CV3094, 2016 WL 7971574, at *1 (D. Neb. July 26, 2016) (internal quotation marks omitted) (quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2383 (2d ed. 1994)) (granting defendants' joint motion to consolidate). "Whether to grant a Rule 42(a) motion to consolidate is within the sound discretion of the court." *Id.* (citing *United States Envtl. Prot. Agency v. Green Forest*, 921 F.2d 1394, 1402–03 (8th Cir. 1990)).

2.      "When ruling on a motion to consolidate, the court must weigh the saving of time and effort that would result from consolidation against any inconvenience, expense, or delay that it might cause." *Martinez v. Cargill Meat Sols.*, No. 4:09CV3079, 2009 WL 5217040, at *1 (D. Neb. Dec. 30, 2009) (citing Wright & Miller at § 2383) (granting defendant's motion to consolidate). "[D]istrict courts generally take a favorable view of consolidation," and "[a]ctions involving the same parties are apt candidates for consolidation. *Id.* (citing Wright & Miller at §§ 2383–84). Under Fed. R. Civ. P. 42(b), "consolidation is considered inappropriate [only] 'if it leads to inefficiency, inconvenience, or unfair prejudice to a party.'" *Coventry Health Care of Nebraska*, 2016 WL 7971574, at *1 (quoting *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).

3.      Here, the Related Actions should be consolidated. First, the Related Actions involve common questions of law and fact. The Related Actions all allege that Nelnet failed to properly secure and safeguard the personally identifiable information ("PII") of approximately 2.5 million impacted current and former student loan borrowers. All complaints in the Related Actions, including Plaintiff's, make similar factual allegations regarding the Data Breach, all include Nelnet as a defendant, all assert claims for negligence, and all seek to certify materially similar plaintiff classes.

4.      Second, consolidation would save time and effort and promote judicial economy. For instance, the similarity of the allegations and claims at issue in the Related Actions means that they will involve substantially the same discovery. Moreover, the Related Actions are all at an early stage of litigation, weighing further in favor of consolidation. *See UNeMed Corp. v. ProMera Health, LLC*, No. 8:15CV135, 2016 WL 1259387, at *3 (D. Neb. Mar. 30, 2016) ("[D]ue to the similarity in the cases, the parties will likely present similar motions and arguments during discovery. Consolidation during the discovery phase will avoid duplicative parallel activities. Both cases are at an early stage of litigation. Consolidation for discovery will promote the goals of efficient use of judicial resources without leading to inconvenience, delay, unfair prejudice, or additional expense").

5.      Third, consolidation would not cause any inconvenience, expense, or delay. On the contrary, consolidation would be more convenient, result in less expense for the parties, and would make this litigation more expedient. *See Coventry Health Care of Nebraska*, 2016 WL 7971574, at *1 ("Consolidation for discovery will promote the goals of efficient use of judicial resources without leading to inconvenience, delay, unfair prejudice, or additional expense."). *See also* Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

6.      For these reasons, consolidation would not cause unfair prejudice to any party.

WHEREFORE, Plaintiff Hunter Freeland respectfully moves the Court to consolidate the Related Actions, along with any action subsequently filed, transferred, or removed before this Court involving similar facts or claims.

Respectfully submitted,

Dated: January 3, 2023

/s/ *Norman E. Siegel*
Norman E. Siegel,* Missouri Bar No. #44378
Barrett J. Vahle,* Missouri Bar No. #56674
Benjamin J. Stueve, Missouri Bar No #71197
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com
vahle@stuevesiegel.com
ben.stueve@stuevesiegel.com

Cornelius P. Dukelow,*
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
(918) 588-3400 (*telephone & facsimile*)
cdukelow@abingtonlaw.com

Christopher P. Welsh, Nebraska Bar No. #22279
**WELSH & WELSH PC, LLO**
9290 West Dodge Road, Suite 204
Omaha, Nebraska 68114
Telephone: (402) 384-8160
cwelsh@welsh-law.com

*Pro Hac Vice*
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Garner J. Kohrell, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Nelnet Servicing, LLC, and Edfinancial Services, LLC,<br><br>Defendant. | Civil Action No. 4:22-cv-03267-JMG-CRZ<br><br>**CLASS ACTION** |

## STATEMENT OF PLAINTIFF GARNER J. KORHELL IN SUPPORT OF MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC, MORGAN & MORGAN COMPLEX LITIGATION GROUP AND STUEVE SIEGEL HANSON LLP'S MOTION FOR APPOINTMENT AS INTERIM CO-LEAD COUNSEL

Plaintiff Garner J. Kohrell, by and through undersigned counsel, hereby submits this response to the motions to consolidate cases and for appointment of leadership counsel filed January 3, 2023, pursuant to this Court's Order of December 22, 2022. *See In re: Data Security Cases against Nelnet Servicing, LLC*, 4:22-cv-03267-JMG-CRZ, ECF No. 45 (D. Neb. Dec. 22, 2022).

Multiple motions to consolidate cases pursuant to Fed. R. Civ. P. 42 and to appoint interim co-lead counsel pursuant to Fed. R. Civ. P. 23(g)(3) were filed on January 3, 2023. Plaintiff Kohrell supports consolidation and also supports appointment of Milberg Coleman Bryson Phillips Grossman LLC ("Milberg"), Morgan & Morgan Complex Litigation Group ("Morgan & Morgan") and Stueve Siegel Hanson LLP's ("Stueve Siegel

Hanson") as interim co-lead counsel. Plaintiff Kohrell respectfully submits that Milberg, Morgan & Morgan, and Stueve Siegel Hanson will act as strong defenders of the classes, have ample and superior knowledge of the claims and relevant area of law, have worked diligently to gain consensus and work amicably with all parties in all cases, and will best secure the just and speedy prosecution of the action.

Dated January 17, 2023       Respectfully submitted,

/s/ Kate M. Baxter-Kauf
Kate M. Baxter-Kauf, *admitted pro hac vice*
Karen Hanson Riebel, *admitted pro hac vice*
Maureen Kane Berg, *admitted pro hac vice*
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
*Attorneys for Plaintiff Kohrell and the Class*

2

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY QUINN, individually, and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC, <br><br>     Defendants. | Case No. 8:22-cv-00413-JMG-CRZ |
| GARNER J. KOHRELL, individually, and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> NELNET SERVICING, LLC, and EDFINANCIAL SERVICES, LLC, <br><br>     Defendants. | Case No. 4:22-cv-03267-JMG-CRZ |

### DEFENDANT EDFINANCIAL SERVICES, LLC'S POSITION REGARDING CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD COUNSEL

Defendant Edfinancial Services, LLC ("Edfinancial") submits this Position Brief Regarding Consolidation and Appointment of Interim Lead Counsel in response to the motions filed by Plaintiffs Anthony Quinn and Garner Kohrell in the above-captioned actions (the "*Quinn* Action" and the "*Kohrell* Action," respectively) in support of appointment of Milberg Coleman Bryson Phillips Grossman LLC, Morgan & Morgan Complex Litigation Group, and Stueve Siegel Hanson LLP as interim co-lead counsel and in support of consolidation of the 23 related actions involving Defendant Nelnet Servicing, LLC ("Nelnet"), captioned *In re: Data Security Cases*

*against Nelnet Servicing, LLC*, Case No. 8:22-cv-00413-JMG-CRZ, et al. (the "*Nelnet* Actions").
[*See Quinn* Action, Case No. 8:22-cv-00413-JMG-CRZ, Dkt. No. 46; *Kohrell* Action, Case No.
4:22-cv-03267-JMG-CRZ, Dkt. No. 67.]

Specifically, Edfinancial opposes consolidation of just the *Quinn* Action and *Kohrell*
Action where it is named as a defendant and requests that those two cases be stayed pending
resolution of the other 21 *Nelnet* Actions naming only Nelnet as a defendant. Alternatively, if the
Court is inclined to consolidate all 23 *Nelnet* Actions, including the *Quinn* and *Kohrell* Actions
naming Edfinancial as a defendant, and if Edfinancial is ultimately named as a defendant in any
amended consolidated complaint, Edfinancial requests that the Court allow briefing on
Edfinancial's request to stay the claims against it until resolution of the claims against Nelnet.
Edfinancial takes no position on leadership.

## I.    <u>BACKGROUND</u>

Edfinancial is a student loan service provider that provides student loan services for fifteen
of the top one hundred lenders in the United States, including regional and national banks,
secondary markets, state agencies, and other student loan providers. As alleged in the *Quinn* and
*Kohrell* Complaints (collectively, the "Complaints,"), co-Defendant Nelnet, also a student loan
service provider, contracted with Edfinancial to provide Edfinancial's servicing system and
customer website portal. [*See, e.g.*, *Quinn* Compl., Dkt. No .1, ¶ 2 ("Nelnet, a student loan servicer,
provided services to [Edfinancial], to assist [Edfinancial] in servicing student loans."); *Kohrell*
Compl., Dkt. No. 1, ¶¶ 5, 7, 21 ("Edfinancial is a student loan servicing company that uses Nelnet,
a different student loan servicing company, as its servicing system and customer website portal
provider.").] Specifically, Nelnet is alleged to host public-facing registration web portals for
Edfinancial, which grants users access to student loan accounts of Edfinancial borrowers. [*Quinn*
Compl., ¶ 3; *Kohrell* Compl., ¶ 7.]

As alleged in the Complaints, in August 2022, Nelnet suffered a data incident during which an unauthorized third-party infiltrated a portion of Nelnet's system and allegedly accessed personal and private information of hundreds of thousands of individuals, including student loan borrowers affiliated with certain Nelnet clients like Edfinancial (the "Nelnet Data Incident").  [*Quinn* Compl., ¶¶ 1-3; *Kohrell* Compl., ¶¶ 1-4.]  Nelnet reported the Nelnet Data Incident to Edfinancial and Oklahoma Student Loan Authority, another student loan servicer, and informed them both that they had been victimized *vis à vis* the Nelnet Data Incident perpetrated on Nelnet.  [*Quinn* Compl., ¶¶ 3, 28.]  Thereafter, Edfinancial was required to send notification letters to certain of its student loan borrowers, including, allegedly, Plaintiff Quinn,[1] informing them that their information may have been impacted in the Nelnet Data Incident.  [*Quinn* Compl., ¶¶ 3, 28.]  In short, Edfinancial's customers' data was impacted in the Nelnet Data Incident.

Importantly, none of the Complaints make one allegation that Edfinancial's systems were impacted in the Nelnet Data Incident or that Edfinancial did anything at all to cause the Nelnet Data Incident or allow the Nelnet Data Incident to occur.  [*Quinn* Compl., ¶ 3 ("Defendants became aware that *a group of cybercriminals had accessed Defendant Nelnet's accounts on its computer systems,* compromising information held by [Edfinancial] as well as another student loan service, Oklahoma Student Loan Authority.") (emphasis added); *Kohrell* Compl., ¶ 3 ("Nelnet notified state Attorney Generals about [the Nelnet Data Incident] . . . [and] explained in the required notice letter that it discovered *an unauthorized third-party gained access to a portion of Nelnet's system*.") (emphasis added).]  Nevertheless, Edfinancial has been named in two lawsuits against

---

[1] Plaintiff Kohrell specifically states that he received a "Notice of Security Incident" from Edfinancial dated August 26, 2022.  [*Kohrell* Compl., ¶ 13.]  Plaintiff Quinn does not allege that he received a letter from Edfinancial or Nelnet notifying him of the Nelnet Data Incident.  [*See generally Quinn* Compl.]  Rather, he alleges that his information was impacted in the Nelnet Data Incident and that "[o]n information and belief, even though millions of consumers have had their personal data breached due to Defendants' actions and inactions, Defendants have not specifically provided notice to all of these consumers."  [*See id.* at ¶¶ 1, 5, 6, 29.]

Nelnet: (1) the *Quinn* Action, originally filed in Illinois state court, and (2) the *Kohrell* Action, commenced in federal court in Tennessee.

The *Quinn* and *Kohrell* Actions have now been transferred to this District and designated as related actions to the *Nelnet* Actions, along with 21 other cases naming only Nelnet. This Court has ordered any party opposing motions for consolidation file responses by no later than January 17. [*See In re: Data Sec. Cases against Nelnet Serv., LLC*, Case No. 4:22-cv-03267-JMG-CRZ, Dkt. No. 45.] This has placed Edfinancial in a challenging spot and in the unenviable position of having to brief issues to this Court that could be entirely speculative at this time. For example, neither counsel for the *Quinn* or *Kohrell* Actions have sought appointment of interim class counsel; thus, it is entirely possible that whoever is appointed interim lead counsel will decide not to even name Edfinancial in any amended consolidated complaint because none of the candidates for interim lead counsel originally sued Edfinancial. Indeed, Edfinancial tried to meet and confer with all three proposed interim leadership on these issues prior to filing this brief; one did not respond and the other two believed it was premature for them to make binding decisions on this issue. Thus, depending on which counsel the Court appoints as interim lead counsel, it is entirely possible that Edfinancial will not be named a defendant at all or the parties could agree to stipulate to stay the claims against Edfinancial until the claims against Nelnet are resolved.

Ultimately, although Edfinancial would like to promote and facilitate the efficient resolution of claims related to the Nelnet Data Incident against Nelnet, Edfinancial opposes consolidation of the *Quinn* and *Kohrell* Actions. Edfinancial respectfully requests that the Court deny consolidation of the *Kohrell* and *Quinn* Actions and stay those cases pending resolution of the soon-to-be consolidated remaining 21 *Nelnet* Actions. Alternatively, if the Court is inclined to consolidate the *Quinn* and *Kohrell* Actions, and if Edfinancial is named a defendant in any

amended consolidated complaint, Edfinancial requests permission to meet and confer with appointed interim lead counsel, and if meet and confers are unsuccessful, permission to file a motion to stay the claims against it within thirty (30) days after any amended consolidated complaint is filed naming Edfinancial.

## II.    EDFINANCIAL OPPOSES CONSOLIDATION OF THE *QUINN* AND *KOHRELL* ACTIONS AND REQUESTS THAT THOSE ACTIONS BE STAYED

The Court has "broad discretion" to decide whether actions involving common questions of law or fact should be consolidated under Federal Rule of Civil Procedure 42. *Cisler v. Paul A. Willsie Co.*, Nos. 8:09CV364, 8:09CV365, 8:09CV366, 2010 WL 3237222, at *2 (D. Neb. Aug. 13, 2010). The decision whether to consolidate "inevitably is contextual" and involves weighing "the saving of time and effort that would result from consolidation and inconvenience, expense, or delay that it might cause." *Id.* (citation omitted). "Consolidation of cases is inappropriate if it leads to inefficiency, inconvenience, or unfair prejudice to a party.'" *Fornari v. Guillen*, 4:19-CV-3030, 8:19-CV-565, 2021 WL 5639261, at *2 (D. Neb. Dec. 1, 2021) (citing *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). Consolidation may also be inappropriate where a duplicative action is filed for a "tactical purpose," and where the prior litigation adequately protects the rights of the litigants in the second case. *See, e.g.*, *Leftwich v. Cty. of South Dakota*, Civ. No. 18-1144 (JNE/BRT), Civ. No. 19-393 (JNE/BRT), 2019 WL 13241669, at *3–4 (D. Minn. May 29, 2019) (denying plaintiff's motion to consolidate second, duplicative action with first because even though there "c[ould] be little doubt that both cases ar[o]se from a common nucleus of operative fact," plaintiff's filing of the second suit was a clear "tactical" move to expand his procedural rights by adding different legal theories, additional allegations, and a handful of new defendants in the second action after the court had denied his request to amend his complaint in the first action).

5

Courts likewise have "broad discretion" to stay actions on their docket. *Cybertek, Inc. v. Bentley Sys., Inc.*, 182 F. Supp. 2d 864, 872 (D. Neb. 2002) ("[I]t is within the court's inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the pending cases pending before it.") (citing *Cont. N.W., Inc.*, *v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983)). Courts also have "an ample degree of discretion in the decision to stay . . . a proceeding based on duplicative federal litigation," including in cases in the same court and before the same judge. *See, e.g.*, *Golden v. Stein*, Case No. 4:18-cv-00331-JAJ-CFB, Case No. 4:19-cv-83-JAJ-CFB, 2019 WL 11005236, at *5 (S.D. Iowa June 3, 2019). Like requests for consolidation, requests for stays involve weighing several factors, including, as relevant here, "(1) the plaintiffs' interest in proceeding expeditiously with litigation and the potential prejudice to the plaintiffs of a delay; (2) the burden that the proceeding will cause the defendants; [and] (3) the convenience of the court in the management of its cases and the efficient use of judicial resources." *Kozlov v. Assoc. Wholesale Grocers, Inc.*, Nos. 4:10–CV–03211, 4:10–CV–03212, 8:10–CV–03191, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011) (citation omitted). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.* (quoting *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

Edfinancial cannot and does not dispute that consolidation of the 21 *Nelnet* Actions *naming only Nelnet* is desirable and will save time and effort and avoid duplicative motion practice and discovery. And Edfinancial does not wish to undermine mutual and collective, cooperative consolidation of the *Nelnet* Actions. However, consolidation of the *Quinn* and *Kohrell* Actions naming Edfinancial should be denied and those cases should be stayed based primarily on two considerations: (1) prejudice and (2) efficiency.

6

First, neither Plaintiff Quinn nor Plaintiff Kohrell will be prejudiced by denial of consolidation and the grant of a stay because they are putative class members in each of the 21 *Nelnet* Actions naming only Nelnet.[2]  There is also complete overlap in the claims made by Plaintiffs Quinn and Kohrell and plaintiffs in the other 21 *Nelnet* Actions, including Plaintiff Quinn's state statutory claim.  [*See, e.g.*, *Quinn* & *Kohrell* Compls. (stating claims for negligence, unjust enrichment, breach of express and implied contract, invasion of privacy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA"), 815 Ill. Comp. Stat. §§ 510/2, *et seq.*) *with Bump, et al.* Compl. (stating claims for negligence, unjust enrichment, invasion of privacy, breach of implied contract, and violation of the Illinois CFDBPA, 815 Ill. Comp. Stat. §§ 510/2, *et seq.*) & *Sayers & Williams* Compl., Case No. 4:22-cv-03203-JMG-CRZ, Dkt. No. 1 (stating claims for negligence, unjust enrichment, breach of express and implied contract, and invasion of privacy).]   Thus, Plaintiff Quinn's and Plaintiff Kohrell's positions will be adequately represented in the other 21 related *Nelnet* Actions whose resolution will resolve their duplicative class claims.  *See, e.g.*, *Moser v. Benefytt, Inc.*, 8 F.4th 872, 878 (9th

---

[2] Although consolidation and the filing of an amended consolidated complaint has not yet occurred, it is clear that a review of even only a handful of the complaints in the other 21 related *Nelnet* Actions seek to represent the same putative class that Plaintiff Quinn and Plaintiff Kohrell seek to represent.  [*Compare, e.g.*, *Quinn* Compl., ¶ 42 (seeking to represent "[a]ll individuals whose PII was exposed while in the possession of Defendants, or any of their subsidiaries and/or agents, during the [Nelnet] Data [Incident]" and an Illinois subclass) & *Kohrell* Compl., ¶ 99 (seeking to represent a class of "[a]ll persons residing in the United States whose PII was compromised in the 2022 data breach announced by Nelnet Servicing, LLC in August 2022"), *with Bump, et al.* Compl., Case No. 4:22-cv-03204-JMG-CRZ, Dkt. No. 1, ¶¶ 98, 102 (seeking to represent a nationwide class of "[a]ll persons in the United States whose personal information was compromised in the [Nelnet] Data [Incident] made public by Nelnet in August 2022" and various state-subclasses, including an Illinois subclass); *Spearman, et al.* Compl., Case No. 4:22-cv-03191-JMG-CRZ, Dkt. No. 1, ¶ 93 (seeking to represent a nationwide class of "[a]ll persons in the United States whose personal information was compromised in the Data Breach made public by Nelnet in August 2022" and various state sub-classes); *Miller* Compl., Case No. 4:22-cv-03193-JMG-CRZ, Dkt. No. 1, ¶ 61 (class defined as "[a]ll persons residing in the United States whose PII was compromised in the [Nelnet] Data [Incident] disclosed by Nelnet in August 2022"); *Simmons* Compl., Case No. 4:22-cv-03194-JMG-CRZ, Dk. No 1, ¶ 110 (defining class as "[a]ll persons whose Private Information was maintained on Defendant Nelnet's computer systems and compromised in its June-July 2022 Data [Incident]").]

Cir. 2021) (noting that putative class members "become parties to an action . . . after class certification" (internal quotation marks and citation omitted)).

Second, the only party who would be prejudiced absent a stay would be Edfinancial. As both Plaintiff Quinn and Plaintiff Kohrell admit, it is Nelnet, not Edfinancial, who was allegedly breached in the Nelnet Data Incident. [*See, e.g.*, *Quinn* Compl., ¶ 3 ("Defendants became aware that *a group of cybercriminals had accessed Defendant Nelnet's accounts on its computer systems,* compromising information held by [Edfinancial] as well as another student loan service, Oklahoma Student Loan Authority.") (emphasis added); *Kohrell* Compl., ¶ 3 ("Nelnet notified state Attorney Generals about [the Nelnet Data Incident] . . . [and] explained in the required notice letter that it discovered *an unauthorized third-party gained access to a portion of Nelnet's system*.") (emphasis added).] Thus, Edfinancial's systems and data security procedures it had in place to protect those systems are not at all relevant to the claims at issue in any of the cases. Indeed, whether Edfinancial can be liable at all for any of the "shotgun" allegations generically made against both Edfinancial and Nelnet in the *Quinn* or *Kohrell* Actions necessarily turns on a finding first that *Nelnet* is liable for any or all of the claims stated against it. In fact, it is suspected that the only reason Edfinancial was named in the *Quinn* or *Kohrell* Actions was in a failed tactical ploy to try to avoid transfer to this District. In short, there can be no dispute that Nelnet should be the main and only defendant in the *Nelnet* Actions and litigation against Edfinancial is both premature and prejudicial.

Third, the efficient use of judicial and party resources and the Court's efficient management of its cases is likewise promoted by the grant of a stay. Should consolidation be denied for these two cases and a stay granted, the parties will avoid engaging in duplicative, costly, and ultimately irrelevant discovery as to an additional defendant (Edfinancial) and the judiciary will avoid confusion of the issues that can be more efficiently resolved in focused litigation against

Nelnet only.  In sum, and as required by the Court's order to take a position on consolidation by January 17, 2023, Edfinancial requests that the Court deny consolidation and grant a stay of the *Quinn* and *Kohrell* Actions.

### III.    IF THE COURT GRANTS CONSOLIDATION OF THE *QUINN* AND *KOHRELL* ACTIONS, EDFINANCIAL REQUESTS THAT THE COURT PERMIT BRIEFING REGARDING EDFINANCIAL'S REQUEST FOR A STAY IF EDFINANCIAL IS NAMED IN ANY AMENDED CONSOLIDATED COMPLAINT

If the Court disagrees and grants consolidation and denies a stay of the *Quinn* and *Kohrell* Action, Edfinancial requests that the Court set a briefing schedule regarding Edfinancial's anticipated request to stay the claims against it should it be named in an amended consolidated complaint.[3]  Specifically, Edfinancial requests that the Court permit Edfinancial to meet and confer with appointed interim lead counsel, and should meet and confers fail to produce a successful agreement, submit a motion to stay all claims against it no later than thirty (30) days after the filing of an amended consolidated complaint naming Edfinancial.  Edfinancial's alternative request allows for the possibility of efficient and cost-effective resolution of Edfinancial's request for a stay without adversarial motion practice.

In the end, Edfinancial supports the efficient, judicious resolution of the *Nelnet* Actions, including the *Quinn* and *Kohrell* Actions.  However, Edfinancial is in the difficult position of engaging in guesswork and forcing to take a position before it knows who will be appointed interim

---

[3] Although Edfinancial could request that the Court stay the *Quinn* and *Kohrell* Actions immediately after consolidation, which the Court is well within its "inherent power" to do, *see, e.g.*, *Golden v. Stein*, Case No. 4:18-cv-00331-JAJ-CFB, Case No. 4:19-cv-83-JAJ-CFB, 2019 WL 11005236, at *5 (S.D. Iowa June 3, 2019) (granting consolidation of first filed "Malpractice Action" and later, separately-filed "Attorneys' Fees Action" but staying "Attorneys' Fees Action" until resolution of the "Malpractice Action" because "[s]uch a stay w[ould] conserve judicial resources, as well as the parties' resources, by avoiding duplicative discovery, motions, and trials, all in a single forum [and] [would] also provide for a just determination of the issues in both cases, because all of those issues [wer]e already in or c[ould] be addressed in the Malpractice Action"), there is, as Edfinancial explains herein, a possibility that Edfinancial may not be named at all in a consolidated amended complaint or that leadership (once appointed) and Edfinancial may reach a joint stipulation to stay the claims against Edfinancial.  Either future scenario would obviate the need for Edfinancial to move the Court to stay the claims or actions against Edfinancial.

lead counsel and whether, if at all, it will be named in any forthcoming amended consolidated complaint. Accordingly, while Edfinancial is happy to meet and confer and resolve these requests, to the extent possible, in a mutually beneficial and cooperative manner, at this juncture it must maintain its consistent position and preserve its right to request that the Court deny consolidation and instead stay the later-filed, duplicative *Quinn* and *Kohrell* Actions in which Edfinancial was named as a purely tactical measure.

## IV.    CONCLUSION

Edfinancial respectfully requests that the Court deny consolidation and grant a stay of the *Quinn* and *Kohrell* Actions, or if the Court grants consolidation, delay the resolution of whether any claims against Edfinancial in any amended consolidated complaint should proceed.

DATED: January 17, 2023                    **BAKER & HOSTETLER LLP**

By: */s/ Casie D. Collignon*
    Casie D. Collignon
    Sarah A. Ballard
    1801 California Street, Suite 4400
    Denver, CO  80202-2662
    Tel: 303-861-0600
    Fax: 303-861-7805
    Email: ccollignon@bakerlaw.com
              sballard@bakerlaw.com

*Attorneys for Defendant*
*Edfinancial Services, LLC*

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ANTHONY QUINN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| vs. | Case No. 8:22-cv-00413-JMG-CRZ |
| EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC, | |
| Defendants. | |

**PLAINTIFF ANTHONY QUINN'S STATEMENT IN SUPPORT OF MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC, MORGAN & MORGAN COMPLEX LITIGATION GROUP AND STUEVE SIEGEL HANSON LLP'S MOTION FOR APPOINTMENT AS INTERIM CO-LEAD COUNSEL**

Now Comes Plaintiff Anthony Quinn, by and through counsel, and for his statement in support of Milberg Coleman Bryson Phillips Grossman LLC ("Milberg"), Morgan & Morgan Complex Litigation Group ("Morgan & Morgan")and Stueve Siegel Hanson LLP's ("Stueve Siegel Hanson ") Motions for Appointment as Interim Co-Lead Counsel and states as follows:

1. On January 3, 2023, Milberg, Morgan & Morgan and Stueve Siegel Hanson jointly and separately moved to consolidate this, and a number of other, cases and to jointly appoint the three firms as Interim Co-Lead Counsel for the putative classes in these actions.

2. After reviewing the motions and accompanying memorandums and declarations, Plaintiff Anthony Quinn and his counsel wishes to indicate their support for the consolidation of this case and strongly supports the appointment of Gary Klinger of Milberg, John Yanchunis of Morgan & Morgan and Normal Siegel of Stueve Siegel Hanson as Interim Co-Lead Counsel in these actions.

1

3.      Specifically, the below signed counsel for Plaintiff believes that Gary Klinger of Milberg, John Yanchunis of Morgan & Morgan and Normal Siegel of Stueve Siegel Hanson and their respective firms will act as strong proponents of the classes and have the resources and experience to serve as Interim Co-Lead Counsel.

4.      Milberg, Morgan & Morgan and Stueve Siegel Hanson have worked to seek consensus from all parties in these cases, which will help ensure the speedy and efficient prosecution of this action. The Firms' conferral and cooperation with counsel in the related actions is helping to narrow the initial issues in this case and will allow the parties to move more quickly to the merits of the matter.

Wherefore, for the reasons stated above, Plaintiff Anthony Quinn and his respective counsel wishes to make known their support of Gary Klinger of Milberg, John Yanchunis of Morgan & Morgan and Normal Siegel of Stueve Siegel Hanson, and their respective firms, in their application to consolidate and for appointment as Interim Co-Lead Counsel.

Respectfully Submitted,

By: /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
33 N. Dearborn St., Suite 400
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com
*Counsel for Plaintiff Anthony Quinn*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on Wednesday, January 04, 2023, a copy of this document was filed electronically with the court's CM/ECF System, causing notice to be sent to all parties registered with the system.

By: /s/ *Bryan Paul Thompson*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY QUINN, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>        Defendants. | Case No. 8:22-cv-00413-JMG-CRZ |
| GARNER J. KOHRELL, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC, and EDFINANCIAL SERVICES, LLC,<br><br>        Defendants. | Case No. 4:22-cv-03267-JMG-CRZ |

## DEFENDANT EDFINANCIAL SERVICES, LLC'S POSITION REGARDING CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD COUNSEL

Defendant Edfinancial Services, LLC ("Edfinancial") submits this Position Brief Regarding Consolidation and Appointment of Interim Lead Counsel in response to the motions filed by Plaintiffs Anthony Quinn and Garner Kohrell in the above-captioned actions (the "*Quinn* Action" and the "*Kohrell* Action," respectively) in support of appointment of Milberg Coleman Bryson Phillips Grossman LLC, Morgan & Morgan Complex Litigation Group, and Stueve Siegel Hanson LLP as interim co-lead counsel and in support of consolidation of the 23 related actions involving Defendant Nelnet Servicing, LLC ("Nelnet"), captioned *In re: Data Security Cases*

*against Nelnet Servicing, LLC*, Case No. 8:22-cv-00413-JMG-CRZ, et al. (the "*Nelnet* Actions"). [*See Quinn* Action, Case No. 8:22-cv-00413-JMG-CRZ, Dkt. No. 46; *Kohrell* Action, Case No. 4:22-cv-03267-JMG-CRZ, Dkt. No. 67.]

Specifically, Edfinancial opposes consolidation of just the *Quinn* Action and *Kohrell* Action where it is named as a defendant and requests that those two cases be stayed pending resolution of the other 21 *Nelnet* Actions naming only Nelnet as a defendant. Alternatively, if the Court is inclined to consolidate all 23 *Nelnet* Actions, including the *Quinn* and *Kohrell* Actions naming Edfinancial as a defendant, and if Edfinancial is ultimately named as a defendant in any amended consolidated complaint, Edfinancial requests that the Court allow briefing on Edfinancial's request to stay the claims against it until resolution of the claims against Nelnet. Edfinancial takes no position on leadership.

## I.    **BACKGROUND**

Edfinancial is a student loan service provider that provides student loan services for fifteen of the top one hundred lenders in the United States, including regional and national banks, secondary markets, state agencies, and other student loan providers. As alleged in the *Quinn* and *Kohrell* Complaints (collectively, the "Complaints,"), co-Defendant Nelnet, also a student loan service provider, contracted with Edfinancial to provide Edfinancial's servicing system and customer website portal. [*See, e.g.*, *Quinn* Compl., Dkt. No .1, ¶ 2 ("Nelnet, a student loan servicer, provided services to [Edfinancial], to assist [Edfinancial] in servicing student loans."); *Kohrell* Compl., Dkt. No. 1, ¶¶ 5, 7, 21 ("Edfinancial is a student loan servicing company that uses Nelnet, a different student loan servicing company, as its servicing system and customer website portal provider.").] Specifically, Nelnet is alleged to host public-facing registration web portals for Edfinancial, which grants users access to student loan accounts of Edfinancial borrowers. [*Quinn* Compl., ¶ 3; *Kohrell* Compl., ¶ 7.]

2

As alleged in the Complaints, in August 2022, Nelnet suffered a data incident during which an unauthorized third-party infiltrated a portion of Nelnet's system and allegedly accessed personal and private information of hundreds of thousands of individuals, including student loan borrowers affiliated with certain Nelnet clients like Edfinancial (the "Nelnet Data Incident").  [*Quinn* Compl., ¶¶ 1-3; *Kohrell* Compl., ¶¶ 1-4.]  Nelnet reported the Nelnet Data Incident to Edfinancial and Oklahoma Student Loan Authority, another student loan servicer, and informed them both that they had been victimized *vis à vis* the Nelnet Data Incident perpetrated on Nelnet.  [*Quinn* Compl., ¶¶ 3, 28.]  Thereafter, Edfinancial was required to send notification letters to certain of its student loan borrowers, including, allegedly, Plaintiff Quinn,[1] informing them that their information may have been impacted in the Nelnet Data Incident.  [*Quinn* Compl., ¶¶ 3, 28.]  In short, Edfinancial's customers' data was impacted in the Nelnet Data Incident.

Importantly, none of the Complaints make one allegation that Edfinancial's systems were impacted in the Nelnet Data Incident or that Edfinancial did anything at all to cause the Nelnet Data Incident or allow the Nelnet Data Incident to occur.  [*Quinn* Compl., ¶ 3 ("Defendants became aware that *a group of cybercriminals had accessed Defendant Nelnet's accounts on its computer systems,* compromising information held by [Edfinancial] as well as another student loan service, Oklahoma Student Loan Authority.") (emphasis added); *Kohrell* Compl., ¶ 3 ("Nelnet notified state Attorney Generals about [the Nelnet Data Incident] . . . [and] explained in the required notice letter that it discovered *an unauthorized third-party gained access to a portion of Nelnet's system*.") (emphasis added).]  Nevertheless, Edfinancial has been named in two lawsuits against

---

[1] Plaintiff Kohrell specifically states that he received a "Notice of Security Incident" from Edfinancial dated August 26, 2022.  [*Kohrell* Compl., ¶ 13.]  Plaintiff Quinn does not allege that he received a letter from Edfinancial or Nelnet notifying him of the Nelnet Data Incident.  [*See generally Quinn* Compl.]  Rather, he alleges that his information was impacted in the Nelnet Data Incident and that "[o]n information and belief, even though millions of consumers have had their personal data breached due to Defendants' actions and inactions, Defendants have not specifically provided notice to all of these consumers."  [*See id.* at ¶¶ 1, 5, 6, 29.]

Nelnet: (1) the *Quinn* Action, originally filed in Illinois state court, and (2) the *Kohrell* Action, commenced in federal court in Tennessee.

The *Quinn* and *Kohrell* Actions have now been transferred to this District and designated as related actions to the *Nelnet* Actions, along with 21 other cases naming only Nelnet. This Court has ordered any party opposing motions for consolidation file responses by no later than January 17. [*See In re: Data Sec. Cases against Nelnet Serv., LLC*, Case No. 4:22-cv-03267-JMG-CRZ, Dkt. No. 45.] This has placed Edfinancial in a challenging spot and in the unenviable position of having to brief issues to this Court that could be entirely speculative at this time. For example, neither counsel for the *Quinn* or *Kohrell* Actions have sought appointment of interim class counsel; thus, it is entirely possible that whoever is appointed interim lead counsel will decide not to even name Edfinancial in any amended consolidated complaint because none of the candidates for interim lead counsel originally sued Edfinancial. Indeed, Edfinancial tried to meet and confer with all three proposed interim leadership on these issues prior to filing this brief; one did not respond and the other two believed it was premature for them to make binding decisions on this issue. Thus, depending on which counsel the Court appoints as interim lead counsel, it is entirely possible that Edfinancial will not be named a defendant at all or the parties could agree to stipulate to stay the claims against Edfinancial until the claims against Nelnet are resolved.

Ultimately, although Edfinancial would like to promote and facilitate the efficient resolution of claims related to the Nelnet Data Incident against Nelnet, Edfinancial opposes consolidation of the *Quinn* and *Kohrell* Actions. Edfinancial respectfully requests that the Court deny consolidation of the *Kohrell* and *Quinn* Actions and stay those cases pending resolution of the soon-to-be consolidated remaining 21 *Nelnet* Actions. Alternatively, if the Court is inclined to consolidate the *Quinn* and *Kohrell* Actions, and if Edfinancial is named a defendant in any

4

amended consolidated complaint, Edfinancial requests permission to meet and confer with appointed interim lead counsel, and if meet and confers are unsuccessful, permission to file a motion to stay the claims against it within thirty (30) days after any amended consolidated complaint is filed naming Edfinancial.

## II.    EDFINANCIAL OPPOSES CONSOLIDATION OF THE *QUINN* AND *KOHRELL* ACTIONS AND REQUESTS THAT THOSE ACTIONS BE STAYED

The Court has "broad discretion" to decide whether actions involving common questions of law or fact should be consolidated under Federal Rule of Civil Procedure 42. *Cisler v. Paul A. Willsie Co.*, Nos. 8:09CV364, 8:09CV365, 8:09CV366, 2010 WL 3237222, at *2 (D. Neb. Aug. 13, 2010). The decision whether to consolidate "inevitably is contextual" and involves weighing "the saving of time and effort that would result from consolidation and inconvenience, expense, or delay that it might cause." *Id.* (citation omitted). "Consolidation of cases is inappropriate if it leads to inefficiency, inconvenience, or unfair prejudice to a party.'" *Fornari v. Guillen*, 4:19-CV-3030, 8:19-CV-565, 2021 WL 5639261, at *2 (D. Neb. Dec. 1, 2021) (citing *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). Consolidation may also be inappropriate where a duplicative action is filed for a "tactical purpose," and where the prior litigation adequately protects the rights of the litigants in the second case. *See, e.g.*, *Leftwich v. Cty. of South Dakota*, Civ. No. 18-1144 (JNE/BRT), Civ. No. 19-393 (JNE/BRT), 2019 WL 13241669, at *3–4 (D. Minn. May 29, 2019) (denying plaintiff's motion to consolidate second, duplicative action with first because even though there "c[ould] be little doubt that both cases ar[o]se from a common nucleus of operative fact," plaintiff's filing of the second suit was a clear "tactical" move to expand his procedural rights by adding different legal theories, additional allegations, and a handful of new defendants in the second action after the court had denied his request to amend his complaint in the first action).

Courts likewise have "broad discretion" to stay actions on their docket. *Cybertek, Inc. v. Bentley Sys., Inc.*, 182 F. Supp. 2d 864, 872 (D. Neb. 2002) ("[I]t is within the court's inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the pending cases pending before it.") (citing *Cont. N.W., Inc.*, *v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983)). Courts also have "an ample degree of discretion in the decision to stay . . . a proceeding based on duplicative federal litigation," including in cases in the same court and before the same judge. *See, e.g., Golden v. Stein*, Case No. 4:18-cv-00331-JAJ-CFB, Case No. 4:19-cv-83-JAJ-CFB, 2019 WL 11005236, at *5 (S.D. Iowa June 3, 2019). Like requests for consolidation, requests for stays involve weighing several factors, including, as relevant here, "(1) the plaintiffs' interest in proceeding expeditiously with litigation and the potential prejudice to the plaintiffs of a delay; (2) the burden that the proceeding will cause the defendants; [and] (3) the convenience of the court in the management of its cases and the efficient use of judicial resources." *Kozlov v. Assoc. Wholesale Grocers, Inc.*, Nos. 4:10–CV–03211, 4:10–CV–03212, 8:10–CV–03191, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011) (citation omitted). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.* (quoting *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

Edfinancial cannot and does not dispute that consolidation of the 21 *Nelnet* Actions *naming only Nelnet* is desirable and will save time and effort and avoid duplicative motion practice and discovery. And Edfinancial does not wish to undermine mutual and collective, cooperative consolidation of the *Nelnet* Actions. However, consolidation of the *Quinn* and *Kohrell* Actions naming Edfinancial should be denied and those cases should be stayed based primarily on two considerations: (1) prejudice and (2) efficiency.

6

First, neither Plaintiff Quinn nor Plaintiff Kohrell will be prejudiced by denial of consolidation and the grant of a stay because they are putative class members in each of the 21 *Nelnet* Actions naming only Nelnet.[2]  There is also complete overlap in the claims made by Plaintiffs Quinn and Kohrell and plaintiffs in the other 21 *Nelnet* Actions, including Plaintiff Quinn's state statutory claim.  [*See, e.g.*, *Quinn* & *Kohrell* Compls. (stating claims for negligence, unjust enrichment, breach of express and implied contract, invasion of privacy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA"), 815 Ill. Comp. Stat. §§ 510/2, *et seq*.) *with Bump, et al.* Compl. (stating claims for negligence, unjust enrichment, invasion of privacy, breach of implied contract, and violation of the Illinois CFDBPA, 815 Ill. Comp. Stat. §§ 510/2, *et seq*.) & *Sayers & Williams* Compl., Case No. 4:22-cv-03203-JMG-CRZ, Dkt. No. 1 (stating claims for negligence, unjust enrichment, breach of express and implied contract, and invasion of privacy).]  Thus, Plaintiff Quinn's and Plaintiff Kohrell's positions will be adequately represented in the other 21 related *Nelnet* Actions whose resolution will resolve their duplicative class claims.  *See, e.g.*, *Moser v. Benefytt, Inc.*, 8 F.4th 872, 878 (9th

---

[2] Although consolidation and the filing of an amended consolidated complaint has not yet occurred, it is clear that a review of even only a handful of the complaints in the other 21 related *Nelnet* Actions seek to represent the same putative class that Plaintiff Quinn and Plaintiff Kohrell seek to represent.  [*Compare, e.g.*, *Quinn* Compl., ¶ 42 (seeking to represent "[a]ll individuals whose PII was exposed while in the possession of Defendants, or any of their subsidiaries and/or agents, during the [Nelnet] Data [Incident]" and an Illinois subclass) & *Kohrell* Compl., ¶ 99 (seeking to represent a class of "[a]ll persons residing in the United States whose PII was compromised in the 2022 data breach announced by Nelnet Servicing, LLC in August 2022"), *with Bump, et al.* Compl., Case No. 4:22-cv-03204-JMG-CRZ, Dkt. No. 1, ¶¶ 98, 102 (seeking to represent a nationwide class of "[a]ll persons in the United States whose personal information was compromised in the [Nelnet] Data [Incident] made public by Nelnet in August 2022" and various state-subclasses, including an Illinois subclass); *Spearman, et al.* Compl., Case No. 4:22-cv-03191-JMG-CRZ, Dkt. No. 1, ¶ 93 (seeking to represent a nationwide class of "[a]ll persons in the United States whose personal information was compromised in the Data Breach made public by Nelnet in August 2022" and various state sub-classes); *Miller* Compl., Case No. 4:22-cv-03193-JMG-CRZ, Dkt. No. 1, ¶ 61 (class defined as "[a]ll persons residing in the United States whose PII was compromised in the [Nelnet] Data [Incident] disclosed by Nelnet in August 2022"); *Simmons* Compl., Case No. 4:22-cv-03194-JMG-CRZ, Dk. No 1, ¶ 110 (defining class as "[a]ll persons whose Private Information was maintained on Defendant Nelnet's computer systems and compromised in its June-July 2022 Data [Incident]").]

Cir. 2021) (noting that putative class members "become parties to an action . . . after class certification" (internal quotation marks and citation omitted)).

Second, the only party who would be prejudiced absent a stay would be Edfinancial. As both Plaintiff Quinn and Plaintiff Kohrell admit, it is Nelnet, not Edfinancial, who was allegedly breached in the Nelnet Data Incident. [*See, e.g.*, *Quinn* Compl., ¶ 3 ("Defendants became aware that *a group of cybercriminals had accessed Defendant Nelnet's accounts on its computer systems,* compromising information held by [Edfinancial] as well as another student loan service, Oklahoma Student Loan Authority.") (emphasis added); *Kohrell* Compl., ¶ 3 ("Nelnet notified state Attorney Generals about [the Nelnet Data Incident] . . . [and] explained in the required notice letter that it discovered *an unauthorized third-party gained access to a portion of Nelnet's system*.") (emphasis added).] Thus, Edfinancial's systems and data security procedures it had in place to protect those systems are not at all relevant to the claims at issue in any of the cases. Indeed, whether Edfinancial can be liable at all for any of the "shotgun" allegations generically made against both Edfinancial and Nelnet in the *Quinn* or *Kohrell* Actions necessarily turns on a finding first that *Nelnet* is liable for any or all of the claims stated against it. In fact, it is suspected that the only reason Edfinancial was named in the *Quinn* or *Kohrell* Actions was in a failed tactical ploy to try to avoid transfer to this District. In short, there can be no dispute that Nelnet should be the main and only defendant in the *Nelnet* Actions and litigation against Edfinancial is both premature and prejudicial.

Third, the efficient use of judicial and party resources and the Court's efficient management of its cases is likewise promoted by the grant of a stay. Should consolidation be denied for these two cases and a stay granted, the parties will avoid engaging in duplicative, costly, and ultimately irrelevant discovery as to an additional defendant (Edfinancial) and the judiciary will avoid confusion of the issues that can be more efficiently resolved in focused litigation against

Nelnet only. In sum, and as required by the Court's order to take a position on consolidation by January 17, 2023, Edfinancial requests that the Court deny consolidation and grant a stay of the *Quinn* and *Kohrell* Actions.

### III. IF THE COURT GRANTS CONSOLIDATION OF THE *QUINN* AND *KOHRELL* ACTIONS, EDFINANCIAL REQUESTS THAT THE COURT PERMIT BRIEFING REGARDING EDFINANCIAL'S REQUEST FOR A STAY IF EDFINANCIAL IS NAMED IN ANY AMENDED CONSOLIDATED COMPLAINT

If the Court disagrees and grants consolidation and denies a stay of the *Quinn* and *Kohrell* Action, Edfinancial requests that the Court set a briefing schedule regarding Edfinancial's anticipated request to stay the claims against it should it be named in an amended consolidated complaint.[3] Specifically, Edfinancial requests that the Court permit Edfinancial to meet and confer with appointed interim lead counsel, and should meet and confers fail to produce a successful agreement, submit a motion to stay all claims against it no later than thirty (30) days after the filing of an amended consolidated complaint naming Edfinancial. Edfinancial's alternative request allows for the possibility of efficient and cost-effective resolution of Edfinancial's request for a stay without adversarial motion practice.

In the end, Edfinancial supports the efficient, judicious resolution of the *Nelnet* Actions, including the *Quinn* and *Kohrell* Actions. However, Edfinancial is in the difficult position of engaging in guesswork and forcing to take a position before it knows who will be appointed interim

---

[3] Although Edfinancial could request that the Court stay the *Quinn* and *Kohrell* Actions immediately after consolidation, which the Court is well within its "inherent power" to do, *see, e.g.*, *Golden v. Stein*, Case No. 4:18-cv-00331-JAJ-CFB, Case No. 4:19-cv-83-JAJ-CFB, 2019 WL 11005236, at *5 (S.D. Iowa June 3, 2019) (granting consolidation of first filed "Malpractice Action" and later, separately-filed "Attorneys' Fees Action" but staying "Attorneys' Fees Action" until resolution of the "Malpractice Action" because "[s]uch a stay w[ould] conserve judicial resources, as well as the parties' resources, by avoiding duplicative discovery, motions, and trials, all in a single forum [and] [would] also provide for a just determination of the issues in both cases, because all of those issues [wer]e already in or c[ould] be addressed in the Malpractice Action"), there is, as Edfinancial explains herein, a possibility that Edfinancial may not be named at all in a consolidated amended complaint or that leadership (once appointed) and Edfinancial may reach a joint stipulation to stay the claims against Edfinancial. Either future scenario would obviate the need for Edfinancial to move the Court to stay the claims or actions against Edfinancial.

lead counsel and whether, if at all, it will be named in any forthcoming amended consolidated complaint. Accordingly, while Edfinancial is happy to meet and confer and resolve these requests, to the extent possible, in a mutually beneficial and cooperative manner, at this juncture it must maintain its consistent position and preserve its right to request that the Court deny consolidation and instead stay the later-filed, duplicative *Quinn* and *Kohrell* Actions in which Edfinancial was named as a purely tactical measure.

## IV.    CONCLUSION

Edfinancial respectfully requests that the Court deny consolidation and grant a stay of the *Quinn* and *Kohrell* Actions, or if the Court grants consolidation, delay the resolution of whether any claims against Edfinancial in any amended consolidated complaint should proceed.

DATED: January 17, 2023

**BAKER & HOSTETLER LLP**

By: */s/ Casie D. Collignon*
    Casie D. Collignon
    Sarah A. Ballard
    1801 California Street, Suite 4400
    Denver, CO 80202-2662
    Tel: 303-861-0600
    Fax: 303-861-7805
    Email: ccollignon@bakerlaw.com
           sballard@bakerlaw.com

*Attorneys for Defendant*
*Edfinancial Services, LLC*